**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| JOSHUA A. WILSON, *et al.,* | |
| Plaintiffs, | |
| v. | Case No. 4:22-cv-00438-ALM |
| LLOYD J. AUSTIN III, *et al.,* | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

I.      The COVID-19 Pandemic .......................................................................................... 3

II.     Federal Regulation of and Guidance Concerning COVID-19 Vaccines ...................... 3

III.    Department of Defense Vaccination Directives .......................................................... 5

IV.     The Armed Services' Implementation of the COVID-19 Vaccination Directive ......... 6

V.      This Action ................................................................................................................. 9

VI.     Other Litigation Regarding the Military's Vaccination Requirement ......................... 11

LEGAL STANDARDS ............................................................................................................ 13

ARGUMENT .......................................................................................................................... 14

I.      Plaintiffs are unlikely to succeed on the merits of their claims. ................................. 14

        A.      The Court lacks subject-matter jurisdiction, and Plaintiffs' claims are
                otherwise not justiciable. ................................................................................ 14

                i.      Plaintiffs' claims are not ripe for review. .............................................. 14

                ii.     Plaintiffs' claims are not justiciable because they have failed to
                        exhaust all available inter-service remedies and, in any event, have not
                        satisfied the factors necessary for this Court to review claims
                        implicating military personnel matters ................................................... 20

                iii.    The Court lacks jurisdiction with respect to Plaintiffs' statutory
                        claims. ................................................................................................... 23

        B.      Plaintiffs' constitutional claims are meritless. ................................................. 25

                i.      All of Plaintiffs' constitutional claims are subject to rational basis
                        review. ................................................................................................... 26

                ii.     Plaintiffs cannot meet their burden under rational basis review. ............ 28

        C.      Plaintiffs' APA claims against the military are meritless. .................................. 30

        D.      Plaintiffs' statutory claims are meritless ......................................................... 34

II.     Plaintiffs are not likely to suffer irreparable harm absent preliminary relief. ...............................35

III.    The Equities and the Public Interest Weigh Against a Preliminary Injunction. .........................38

IV.     The requested injunction would violate Rule 65(d)'s specificity requirement. ...........................39

CONCLUSION ............................................................................................................................40

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Biden,*
    --- F. Supp. 3d ----, 2022 WL 2287547 (E.D. Tex. June 24, 2022)..................................11, 28, 29, 31

*Air Force Officer v. Austin,*
    --- F. Supp. 3d ---, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022)..........................................12, 38

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,*
    878 F.2d 806 (5th Cir. 1989) .................................................................................................13

*Am. Petroleum Inst. v. EPA,*
    683 F.3d 382 (D.C. Cir. 2012) ..........................................................................................18, 19

*Anderson v. Oakley,*
    77 F.3d 475 (5th Cir. 1995) ...................................................................................................14

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.,*
    897 F.3d 314 (D.C. Cir. 2018) ...............................................................................................37

*Ass'n. of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.,*
    13 F.4th 531 (6th Cir. 2021) ..................................................................................................11

*Ass'n of Am. Physicians & Surgeons v. FDA,*
    No. 20-1784, 2020 WL 5745974 (6th Cir. Sept. 24, 2020) ....................................................36

*Ass'n of Christian Schs. Int'l v. Stearns,*
    362 F. App'x 640 (9th Cir. 2010) ...........................................................................................11

*Ass'n of Irritated Residents v. EPA,*
    10 F.4th 937 (9th Cir. 2021) .............................................................................................15, 18

*Austin v. Navy SEALs 1-26,*
    142 S. Ct. 1301 (2022) ....................................................................................................*passim*

*Bellinger v. Bowser,*
    288 F. Supp. 3d 71 (D.D.C 2017) ..........................................................................................37

*Bolling v. Sharpe,*
    347 U.S. 497 (1954) ...............................................................................................................27

*Bors v. Allen,*
    607 F. Supp. 2d 204 (D.D.C. 2009).......................................................................................39

*Bridges v. Hous. Methodist Hosp.,*
    543 F. Supp. 3d 525 (S.D. Tex. 2021). ..................................................................................28

*Brown v. Smith,*
   24 Cal. App. 5th 1135 (2018) ..............................................................................29

*Butts v. Aultman,*
   953 F.3d 353 (5th Cir. 2020) ...............................................................................27

*Cargill v. Marsh,*
   902 F.2d 1006 (D.C. Cir. 1990) ..........................................................................21

*Chacon v. Granata,*
   515 F.2d 922 (5th Cir. 1975) ...............................................................................37

*Chappell v. Wallace,*
   462 U.S. 296 (1983) .............................................................................................39

*Chilcott v. Orr,*
   747 F.2d 29 (1st Cir. 1984) ..................................................................................38

*Children's Health Def. v. FDA,*
   No. 21-6203, 2022 WL 2704554 (6th Cir. July 12, 2022) ...........................25, 26

*Choice Inc. v. Greenstein,*
   691 F.3d 710 (5th Cir. 2012) ...............................................................................18

*Church v. Biden,*
   --- F. Supp. 3d ----, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ....................*passim*

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .............................................................................................17

*Coal. for Mercury-Free Drugs v. Sebelius,*
   671 F.3d 1275 (D.C. Cir. 2012) ..........................................................................25

*Crawford v. Tex. Army Nat'l Guard,*
   794 F.2d 1034 (5th Cir. 1986) .............................................................................22

*Creaghan v. Austin,*
   No. 21-981, 2022 WL 1500544 (D.D.C. May 12, 2022) .....................................12

*Crosby v. Austin,*
   No. 8:21-cv-2730, 2022 WL 603784 (M.D. Fla. Mar. 1, 2022) ..........................36

*Cruzan ex rel. Cruzan v. Director, Missouri Department of Health,*
   497 U.S. 261 (1990) .............................................................................................28

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC,*
   710 F.3d 579 (5th Cir. 2013) ...............................................................................36

*Daugherty v. United States,*
   73 F. App'x 326 (10th Cir. 2003) ................................................................22

*Denis v. Ige,*
   538 F. Supp. 3d 1063 (D. Haw. 2021) .........................................................30

*Dep't of Com. v. New York,*
   139 S. Ct. 2551 (2019) ...............................................................................31

*Dierlam v. Trump,*
   977 F.3d 471 (5th Cir. 2020) ......................................................................25

*Diraffael v. Cal. Mil. Dep't,*
   No. 10-cv-7240, 2011 WL 13274364 (C.D. Cal. Mar. 21, 2011) ................15

*DM Arbor Ct., Ltd. v. City of Houston,*
   988 F.3d 215 (5th Cir. 2021) .................................................................15, 18

*Doe #1-#14 v. Austin,*
   --- F. Supp. 3d ---, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021) ........11, 30, 31, 35

*Doe v. Sullivan,*
   938 F.2d 1370 (D.C. Cir. 1991) ..................................................................29

*Doe v. Zucker,*
   520 F. Supp. 3d 217 (N.D.N.Y. 2021) ........................................................27

*Doster v. Kendall,*
   --- F. Supp. 3d ---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ...............13

*Duarte v. City of Lewisville,*
   136 F. Supp. 3d 752 (E.D. Tex. 2015) ........................................................36

*Dunn v. Austin,*
   142 S. Ct. 1707 (2022) ...............................................................................12

*Elrod v. Burns,*
   427 U.S. 347 (1976) ...................................................................................37

*Enter. Int'l Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
   762 F.2d 464 (5th Cir. 1985) ......................................................................14

*Envt'l Conservation Org. v. City of Dallas,*
   529 F.3d 519 (5th Cir. 2008) ......................................................................24

*Farmer v. Mabus,*
   940 F.2d 921 (5th Cir. 1991) ......................................................................14

*F.F. on behalf of Y.F. v. State,*
   65 Misc. 3d 616, 633, (N.Y. Sup. Ct. 2019) .................................................................29

*Gilligan v. Morgan,*
   413 U.S. 1 (1973) ...........................................................................................14, 20, 21, 31

*Glass v. Paxton,*
   900 F.3d 233 (5th Cir. 2018) .........................................................................................29

*Goldman v. Weinberger,*
   475 U.S. 503 (1986) ........................................................................................................14

*Google, Inc. v. Hood,*
   822 F.3d 212 (5th Cir. 2016) .........................................................................................38

*Guerra v. Scruggs,*
   942 F.2d 270 (4th Cir. 1991) .....................................................................................37, 39

*Guettlein v. U.S. Merch. Marine Acad.,*
   --- F. Supp. 3d ---, 2021 WL 6015192 (E.D.N.Y. Dec. 20, 2021) ...............................12

*Guilfoyle v. Beutner,*
   No. 2:21-cv-05009, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) ...............................36

*Guitard v. Sec'y of Navy,*
   967 F.2d 737 (2d Cir. 1992) ...........................................................................................38

*Harris v. Univ. of Mass., Lowell,*
   557 F. Supp. 3d 304 (D. Mass. 2021) ............................................................................28

*Hartikka v. United States,*
   754 F.2d 1516 (9th Cir. 1985) ....................................................................................37, 38

*Heidman v. United States,*
   414 F. Supp. 47 (N.D. Ohio 1976) .................................................................................21

*Hines v. Quillivan,*
   982 F.3d 266 (5th Cir. 2020) .........................................................................................30

*Hodges v. Callaway,*
   499 F.2d 417 (5th Cir. 1974) .........................................................................................21

*Honig v. Students of Cal. Sch. for the Blind,*
   471 U.S. 148 (1985) ........................................................................................................25

*Huawei Techs. USA, Inc. v. FCC,*
   2 F.4th 421 (5th Cir. 2021) ........................................................................................15, 18

*Hunt v. Wash. St. Apple Advert. Comm'n,*
    432 U.S. 333 (1977) .......................................................................................................11

*In re Scruggs,*
    392 F.3d 124 (5th Cir. 2004) ......................................................................................24

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905) .......................................................................................................27

*Jiahao Kuang v. Dep't of Def.,*
    778 F. App'x 418 (9th Cir. 2019) ...............................................................................22

*John Doe Co. v. Consumer Fin. Prot. Bureau,*
    849 F.3d 1129 (D.C. Cir. 2017) ..................................................................................37

*Johnson v. Brown,*
    567 F. Supp. 3d 1230 (D. Or. 2021) ...........................................................................28

*K.P. v. LeBlanc,*
    627 F.3d 115 (5th Cir. 2010) ......................................................................................20

*Klaassen v. Trs. of Ind. Univ.,*
    7 F.4th 592 (7th Cir. 2021) ...................................................................................27, 28

*Knick v. Austin,*
    No. 22-1267, 2022 WL 2157066 (D.D.C. June 15, 2022) ...............................11, 15, 22

*Kotab v. U.S. Dep't of Air Force,*
    No. 2:18-cv-2031, 2019 WL 4677020 (D. Nev. Sept. 25, 2019) .................................22

*Kreis v. Sec'y of Air Force,*
    866 F.2d 1508 (D.C. Cir. 1989) ..................................................................................20

*La. Power & Light Co. v. Fed. Power Comm'n,*
    526 F.2d 898 (5th Cir. 1976) ......................................................................................18

*Lacewell v. Off. of Comptroller of Currency,*
    999 F.3d 130 (2d Cir. 2021) .......................................................................................15

*Layman v. Harvey,*
    No. 8:05-cv-2208, 2007 WL 430678 (M.D. Fla. Feb. 5, 2007) ..................................22

*League of Women Voters of the U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ........................................................................................37

*Leicht v. McHugh,*
    No. 13-60015, 2013 WL 11971266 (S.D. Fla. May 24, 2013) ....................................22

*Lloyd v. Sch. Bd. of Palm Beach Cnty.*,
570 F. Supp. 3d 1165 (S.D. Fla. 2021) ...................................................................30

*Lopez v. City of Houston*,
617 F.3d 336 (5th Cir. 2010)..........................................................15, 17, 18, 19

*Love v. State Dep't of Educ.*,
29 Cal. App. 5th 980 (2018) ...................................................................29

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................17

*Mark Short v. Berger*,
No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022).........................*passim*

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ...................................................................13

*McCurdy v. Zuckert*,
359 F.2d 491 (5th Cir. 1966)..........................................................22, 39

*Mindes v. Seaman*,
453 F.2d 197 (5th Cir. 1971)..........................................................21, 22

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
760 F.2d 618 (5th Cir. 1985) ...................................................................13

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ...................................................................15

*Navy SEAL 1 v. Austin*,
--- F. Supp. 3d ---, 2022 WL 1294486 (D.D.C. Apr. 29, 2022)........................*passim*

*Navy SEAL 1 v. Biden*,
---F. Supp. 3d---, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021)...........................36

*Navy SEAL 1 v. Biden*,
No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022) ...........................12

*Navy SEALs 1–26 v. Biden*,
--- F. Supp. 3d ---, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022)...........................12

*Navy SEALs 1-26 v. Austin*,
No. 4:21-cv-1236, 2022 WL 1025144 (N.D. Tex. Mar. 28) ...........................7, 13

*Nelson v. Miller*,
373 F.2d 474 (3d Cir. 1967) ...................................................................22

*Nken v. Holder,*
556 U.S. 418 (2009) .......................................................................................................38

*Norris v. Stanley,*
558 F. Supp. 3d 556 (W.D. Mich. 2021) .......................................................................24

*Norris v. Stanley,*
567 F. Supp. 3d 818 (W.D. Mich. 2021) .......................................................................28

*North Dakota v. United States,*
495 U.S. 423 (1990) .......................................................................................................39

*Oklahoma v. Biden,*
--- F. Supp. 3d ---, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021)....................12, 31, 33

*Orloff v. Willoughby,*
345 U.S. 83 (1953) ....................................................................................................20, 41

*Overton Power Dist. No 5 v. O'Leary,*
73 F.3d 253 (9th Cir. 1996) ..........................................................................................36

*Parisi v. Davidson,*
405 U.S. 34 (1972) .........................................................................................................21

*Parker v. Levy,*
417 U.S. 733 (1974) .......................................................................................................21

*PMC, Inc. v. Sherwin-Williams, Co.,*
151 F.3d 610 (7th Cir. 1998)..........................................................................................40

*Poffenbarger v. Kendall,*
--- F. Supp. 3d ---, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022)..............................13, 18

*Prince v. Massachusetts,*
321 U.S. 158 (1944) .......................................................................................................27

*Prison Legal News v. FBI,*
944 F.3d 868 (10th Cir. 2019) .......................................................................................25

*Qualls v. Rumsfeld,*
357 F. Supp. 2d 274 (D.D.C. 2005).................................................................................39

*Robert v. Austin,*
No. 21-cv-2228, 2022 WL 103374 (D. Colo. Jan. 11, 2022)...................11, 15, 17, 22

*Roberts v. Roth,*
--- F. Supp. 3d ---, 2022 WL 834148 (D.D.C. Mar. 21, 2022)...............................*passim*

*Roe v. Dep't of Def.,*
   947 F.3d 207 (4th Cir. 2020) ................................................................21

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
   141 S. Ct. 63 (2020) ...............................................................26, 28

*Rostker v. Goldberg,*
   453 U.S. 57 (1981) ..............................................................14, 31

*Roth v. Austin,*
   No. 8:22CV3038, 2022 WL 1568830 (D. Neb. May 18, 2022)................11, 29, 33

*Rucker v. Sec'y of the Army,*
   702 F.2d 966 (11th Cir. 1983) ................................................................22

*S. Bay United Pentecostal Church v. Newsom,*
   140 S. Ct. 1613 (2020) ................................................................32

*Sample v. Morrison,*
   406 F.3d 310 (5th Cir. 2005) ................................................................15

*Sampson v. Murray,*
   415 U.S. 61 (1974) ................................................................36, 38

*Schlesinger v. Ballard,*
   419 U.S. 498 (1975) ................................................................14

*Schlesinger v. Councilman,*
   420 U.S. 738 (1975) ................................................................21

*Scott v. Schedler,*
   826 F.3d 207 (5th Cir. 2016) ................................................................40

*Shaw v. Austin,*
   539 F. Supp. 3d 169 (D.D.C. 2021) ................................................................16, 37

*Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs,*
   849 F. App'x 459 (5th Cir. 2021) ................................................................18

*Smith v. Harvey,*
   541 F. Supp. 2d 8 (D.D.C. 2008) ................................................................19

*Solorio v. United States,*
   483 U.S. 435 (1987) ................................................................14

*Spadone v. McHugh,*
   842 F. Supp. 2d 295 (D.D.C. 2012)................................................................37

*Standage v. Braithwaite,*
  526 F. Supp. 3d 56 (D. Md. 2021)...................................................................................15

*Stein v. Mabus,*
  No. 3:12-cv-00816, 2013 WL 12092058 (S.D. Cal. Feb. 14, 2013) ...............................39

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007) .........................................................................................................3

*Tex. Clinical Labs, Inc. v. Sebelius,*
  612 F.3d 771 (5th Cir. 2010)...........................................................................................31

*Thomas Short v. Berger,*
  No. 22-cv-444, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022) ...................................*passim*

*Thomas v. Union Carbide Agric. Prods. Co.,*
  473 U.S. 568 (1985) .......................................................................................................15

*Toilet Goods Ass'n v. Gardner,*
  387 U.S. 158 (1967) .......................................................................................................18

*TOTAL Gas & Power N. Am., Inc. v. FERC,*
  859 F.3d 325 (5th Cir. 2017)...........................................................................................19

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) ...................................................................................................30

*United States. v. Hardy,*
  46 M.J. 67 (C.A.A.F. 1997) .............................................................................................39

*United States v. Ford,*
  882 F.3d 1279 (10th Cir. 2018).......................................................................................18

*United States v. Stark,*
  No. NMCM200000243, 2000 WL 1456299 (N-M. Ct. Crim. App. Aug. 31, 2000) ..............39

*Valdez v. Grisham,*
  559 F. Supp. 3d 1161 (D.N.M. 2021),
  *aff'd,* No. 21-2105, 2022 WL 2129071 (10th Cir. June 14, 2022) .................................28

*Vance v. Wormuth,*
  No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022)................................12, 15

*Veitch v. Danzig,*
  135 F. Supp. 2d 32 (D.D.C. 2001)...................................................................................37

*Von Hoffburg v. Alexander,*
   615 F.2d 633 (5th Cir. 1980) ............................................................................................21, 22

*We The Patriots USA, Inc. v. Hochul,*
   17 F.4th 266 (2d Cir.), *opinion clarified,* 17 F.4th 368 (2d Cir. 2021) .............................28

*West v. Brown,*
   558 F.2d 757 (5th Cir. 1977) ..................................................................................................23

*White v. Carlucci,*
   862 F.2d 1209 (5th Cir. 1989) ...............................................................................................37

*Williams v. Brown,*
   567 F. Supp. 3d 1213 (D. Or. 2021) ....................................................................................28

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ..............................................................................................13, 32, 37, 39

*Wis. Gas. Co. v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985) ..............................................................................................36

*Zucht v. King,*
   260 U.S. 174 (1922) ................................................................................................................27

## **Statutes**

5 U.S.C. § 701 ............................................................................................................................34, 35

10 U.S.C. § 113(b) ..........................................................................................................................34

10 U.S.C. § 1107a ...........................................................................................................................34

10 U.S.C. § 7013(b)(9) ...................................................................................................................34

10 U.S.C. § 8013(b)(9) ...................................................................................................................34

10 U.S.C. § 9013(b)(9) ...................................................................................................................34

21 U.S.C. § 337(a) ..........................................................................................................................35

21 U.S.C. § 360bbb-3 ...................................................................................................................3, 35

Pub. L. No. 117-81, 135 Stat. 1541 (2021) ...................................................................................8

## **Federal Rules**

Fed. R. Civ. P. 65 ...........................................................................................................................39

**Other Authorities**

Army Regulation ("AR")  40–562,
  https://perma.cc/82YE-EA3U ...........................................................................................6

Army Regulation ("AR") 40–562, Table D-1 (Feb. 16, 2018),
  https://perma.cc/82YE-EA3U ...........................................................................................5

Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)
  Outbreak, Pres. Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020) ........................3

DoD Instruction ("DoDI") 1332.45,
  https://perma.cc/9FNU-ZR89 ...........................................................................................6

DoD Instruction ("DoDI") 6205.02 (July 23, 2019),
  https://perma.cc/8HLA-AXQB...........................................................................................5

DoD Instruction ("DoDI") 6205.02,
  https://perma.cc/8HLA-AXQB...........................................................................................6

DoD Instruction ("DoDI") 6025.19,
  https://perma.cc/TR75-JRVD ...........................................................................................5

EUA Declaration, 85 Fed. Reg. 18,250 (Apr. 1, 2020) ............................................................3

Sec'y of Air Force Mem.,
  https://perma.cc/6E2W-3EQM ...........................................................................................6

Sec'y of Def. Mem. (Aug. 9, 2021),
  https://perma.cc/S4R3-2VZW ...........................................................................................6

Sec'y of Def. Mem. (Aug. 24, 2021),
  https://perma.cc/N759-S758.....................................................................................6, 32, 35

## INTRODUCTION

In warfare, disease has historically accounted for more service member deaths than battlefield injuries, and a healthy fighting force has long been a key part of America's military readiness. Prior to the COVID-19 pandemic, the Department of Defense's ("DoD") decades-old immunization program required that all service members obtain a least nine immunizations, and an additional eight depending on circumstances. In the midst of a deadly pandemic that has killed over one million Americans, and seeking to protect the health and readiness of the Armed Forces by reducing the risk of infections, hospitalizations, and deaths among service members, DoD added vaccination against COVID-19 to this long list of immunizations already required for service members.

This lawsuit challenges the military's COVID-19 vaccination requirement, claiming that adding certain COVID-19 vaccines to the list of required vaccinations violates the Constitution and various federal statutes. Plaintiffs now ask this Court to preliminarily enjoin DoD from enforcing its COVID-19 vaccination requirement against them and from "taking any adverse . . . action against any Plaintiff as a result of" his or her refusal to comply.

As a threshold matter, Plaintiffs' challenge is not justiciable because their claims are not ripe for review and have not been exhausted. Plaintiffs seek to avoid the possibility of involuntary separation or other disciplinary action for refusing to comply with DoD's vaccination requirement. But no Plaintiff has been discharged or otherwise disciplined based on their vaccination status (and may never be), and extensive military procedures remain available to them to challenge the vaccination order and any related administrative actions. This defect alone warrants denial of their motion.

On the merits, Plaintiffs' argument boils down to two factual allegations that are both wrong as a matter of fact and irrelevant as a matter of law. Plaintiffs first argue that the military cannot require them to take a COVID-19 vaccine authorized only under an Emergency Use Authorization ("EUA") "without [a] Presidential waiver." Compl. for Decl. & Inj. Relief ("Compl.") ¶ 199, ECF No. 1.

Plaintiffs suggest instead that the military can require only vaccines that have received full U.S. Food and Drug Administration ("FDA") Biologics License Application ("BLA") approval. But this EUA challenge is moot, Plaintiffs have no standing to assert it, and in any event, they are wrong on the merits. Plaintiffs' EUA challenge is based on the incorrect assumption that BLA-approved COVID-19 vaccine doses are not available. Compl. ¶ 93, *see, e.g.*, *id.* ¶¶ 55, 57, 92, 185, 187. That is wrong—the DoD has received more than 42,000 vaccine doses in vials labeled "Comirnaty," the brand name of Pfizer's BLA-approved product. *See infra*. After this lawsuit was filed, the Armed Services, through undersigned counsel, offered to provide shots from a Comirnaty vial to any Plaintiff and to any member of the unincorporated association. But no individual has accepted that offer. Plaintiffs accordingly have no standing to bring an EUA challenge, because every Plaintiff has the ability to receive a COVID-19 vaccine from a Comirnaty vial. Any harm they face for non-compliance with the military's vaccination requirement is not caused by the unavailability of BLA-approved vaccine doses and could not be redressed by this Court enjoining the military from requiring Plaintiffs to take an EUA COVID-19 vaccine.

Plaintiffs also claim that mRNA COVID-19 vaccines (like Comirnaty) are not really vaccines, but actually "gene therapy products." Pls.' Mot. for Prelim. Inj. ("Mot.") at 13, ECF No. 9. Whatever Plaintiffs want to call the COVID-19 vaccines, the terminology has no bearing on whether DoD's vaccine requirement is constitutional or satisfies the Administrative Procedure Act. Rational basis review applies to Plaintiffs' constitutional challenges, which Defendants' policy easily meets. And the requirement to receive a COVID-19 vaccine is not contrary to law or arbitrary and capricious. Indeed, the Supreme Court has indicated that the military's vaccine requirement furthers a compelling government interest—a much higher standard than rational-basis or arbitrary-and-capricious review.

For these reasons and others described below, the Court should deny Plaintiffs' motion.

# BACKGROUND

## I.      The COVID-19 Pandemic

The virus SARS-CoV-2 causes a respiratory disease known as COVID-19 that can result in severe symptoms and death.[1] COVID-19 "spreads when an infected person breathes out droplets and very small particles that contain the virus."[2] It has caused a global pandemic and spread rapidly throughout the United States, leading the President to declare a national emergency.[3] More than 88 million Americans have been infected, and over one million have died from COVID-19.[4]

To date, 96 service members have died from COVID-19, and over 400,000 have contracted the disease. Ex. 1, Stanley Decl. ¶ 3. Of those 96 service members, only two were fully vaccinated. *Id.* Many otherwise healthy Service members have also developed "long-haul" COVID-19, potentially affecting their long-term ability to perform their missions. Ex. 2, Rans Decl. ¶¶ 9–10.

## II.     Federal Regulation of and Guidance Concerning COVID-19 Vaccines

In March 2020, the Secretary of Health and Human Services ("HHS") determined that "circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic." EUA Declaration, 85 Fed. Reg. 18,250, 18,250 (Apr. 1, 2020). Based on that determination, and pursuant to its authority under 21 U.S.C. § 360bbb-3, FDA issued an EUA for a COVID-19 vaccine developed by Pfizer, Inc., as well as EUAs for three other COVID-19 vaccines.[5] On August 23, 2021, Pfizer's COVID-19 vaccine, under the name Comirnaty, obtained FDA

---

[1] Centers for Disease Control and Prevention ("CDC"), *COVID-19*, https://perma.cc/A9D5-AUHV. The Court may take judicial notice of factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007).

[2] CDC, *How COVID-19 Spreads* (updated July 14, 2021), https://perma.cc/4ZBC-8WYQ.

[3] Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Pres. Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

[4] CDC, *COVID Data Tracker*, https://perma.cc/S6MP-SX46?view-mode=server-side&type=image.

[5] FDA, *Emergency Use Authorization*, https://perma.cc/UYH2-GHE7; FDA, *Novavax COVID-19 Vaccine, Adjuvanted*, https://perma.cc/4DBA-DE5E. FDA has since reissued the Pfizer EUA multiple times to update the authorized labeling with information on any safety issues and to incorporate EUA amendments. FDA, *Comirnaty and Pfizer-BioNTech COVID-19 Vaccine*, https://perma.cc/5TU7-SMY7.

approval for intended use by people aged 16 years and older even outside the "emergency" context pertinent to the EUA.[6] FDA determined the vaccine was 91.1% effective in preventing COVID-19 disease and between 95% and 100% effective in preventing severe COVID-19, based on an analysis of effectiveness data from approximately 20,000 vaccine and 20,000 placebo recipients.[7] On January 31, 2022, the FDA approved a second COVID-19 vaccine, Spikevax, manufactured by ModernaTX, Inc., concluding it "meets the FDA's rigorous standards for safety, effectiveness and manufacturing quality required for approval."[8]

That same day, FDA issued responses to three citizen petitions regarding the COVID-19 vaccines. In two responses, FDA addressed the petitioners' expressed safety concerns with vaccinating individuals who have had COVID-19, finding that their assertions had no scientific basis or were unsupported by the cited sources.[9] FDA also addressed a petitioner's expressed concern with the efficacy of the COVID-19 vaccine for individuals who have had COVID-19, stating that while "there is scientific uncertainty about the duration of protection provided by previous natural infection, . . . the scientific community believes that vaccines may provide a longer duration of protection than that provided by natural infection."[10] The CDC also has recommended that individuals who have already had COVID-19 get vaccinated.[11] It based this recommendation on a study showing that unvaccinated

---

[6] FDA, *BLA Approval*, https://perma.cc/G4PD-GAW5; FDA, *News Release – FDA Approves First COVID-19 Vaccine*, https://perma.cc/C4DD-PWE5.
[7] FDA, *Comirnaty Approved Prescribing Information*, at 15–18, https://perma.cc/P87N-YGX2. The FDA also allowed the Pfizer/BioNTech EUA license to remain in place because the brand-name Comirnaty was not yet available in sufficient quantities and the emergency underlying the EUA was still ongoing. FDA, Letter of July 8, 2022, at 12 n.23, https://perma.cc/C3ZE-BRWD.
[8] FDA, *Coronavirus (COVID-19) Update: FDA Takes Key Action by Approving Second COVID-19 Vaccine*, https://perma.cc/L5LJ-SYYA.
[9] FDA, Response to Citizen Petition, at 13–15 (Dkt. No. FDA-2021-P-0529) (Aug. 23, 2021); FDA Response to Citizen Petition, at 8 n.31 (Dkt. No. FDA-2021-P-0786) (Aug. 23, 2021).
[10] FDA Response to Citizen Petition, at 8 n.31 (Dkt. No. FDA-2021-P-0786) (Aug. 23, 2021).
[11] CDC, *FAQs about COVID-19 Vaccination* (updated July 11, 2022), https://perma.cc/3SAD-VTDN.

people who already had COVID-19 are more than 2 times as likely than fully vaccinated people to get COVID-19 again.[12]

## III.   Department of Defense Vaccination Directives

Vaccines have played a longstanding and important role in America's military readiness. Military deaths due to infectious diseases outnumbered those due to direct combat injuries until World War II, when vaccines became widespread. Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military* at 3, Nat'l Acad. Press, 2002, https://perma.cc/E545-TQ9G. Even more recently, disease accounted for nearly 70% of U.S. Army hospital admissions during the Persian Gulf War. *Id.* at 10, Fig. 1-1. Military-mandated vaccines mitigate this threat and reduce infectious disease morbidity and mortality among military personnel. *Id.* at 10–11 (highlighting historical use of vaccines in armed conflict). The U.S. military instituted its first immunization program in 1777 when General Washington directed the inoculation of the Continental Army for smallpox. *Id.* at 12, Table 1-1. And for the past several decades, the military has implemented a variety of enduring or situational inoculation measures to maintain the readiness of its force. Cong. Rsch. Serv., *Defense Health Primer: Military Vaccinations,* https://crsreports.congress.gov/product/pdf/IF/IF11816/2.

DoD's current immunization program is governed by DoD Instruction ("DoDI") 6205.02 (July 23, 2019), https://perma.cc/8HLA-AXQB. Prior to COVID-19, nine vaccines were required for all service members, including the annual influenza vaccine, and eight other vaccinations are required when certain elevated risk factors are present, such as deployment to certain parts of the world. *See* Army Regulation ("AR") 40–562, Table D-1 (Feb. 16, 2018), https://perma.cc/82YE-EA3U. It is part of DoD's overarching requirement that each service member be medically ready for service and mobilization, called Individual Medical Readiness. *See* DoDI 6025.19, https://perma.cc/TR75-JRVD.

---

[12] *Id.* (citing Cavanaugh, Alyson, et al., Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021, Morbidity & Mortality Weekly Report, 70(32):1081–83 (Aug. 13, 2021), http://dx.doi.org/10.15585/mmwr.mm7032e1).

DoD has determined that "[t]o maximize the lethality and readiness of the joint force, all Service members are expected to be deployable." DoDI 1332.45 ¶ 1.2, https://perma.cc/9FNU-ZR89. DoD generally aligns its immunization requirements and eligibility determinations for service members with recommendations from the CDC and its Advisory Committee on Immunization Practices. DoDI 6205.02 at 3, https://perma.cc/8HLA-AXQB. The military's service branches have separately issued regulatory guidance for administering vaccines to service members, including processes to seek medical and religious exemptions. *See* AR 40–562, ch. 2-6, https://perma.cc/82YE-EA3U.

On August 9, 2021, the Secretary of Defense, noting the impact of COVID-19 on military readiness and concluding that vaccination "will ensure we remain the most lethal and ready force in the world," announced that he would add the COVID-19 vaccine to the list of vaccines required for all service members by the earlier of mid-September 2021 or upon approval by FDA. Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. On August 24, 2021, after FDA announced the approval of the Pfizer vaccine, the Secretary directed the Secretaries of the Military Departments to immediately ensure that all members of the Armed Forces were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. Only vaccines that have received full licensure from the FDA are required, but service members can satisfy the requirement by voluntarily receiving a vaccine under FDA EUA or World Health Organization Emergency Use Listing. *Id.* Those with a previous COVID-19 infection who have not received a COVID-19 vaccine are not considered fully vaccinated. *Id.*

## IV. The Armed Services' Implementation of the COVID-19 Vaccination Directive

Shortly after the Secretary of Defense issued his vaccine directive, the Armed Services began issuing their initial implementing guidance and setting deadlines for full vaccination. *See* Sec'y of Air Force Mem., https://perma.cc/6E2W-3EQM; Ex. 4, Mahoney Decl. ¶¶ 7–8; Ex. 5, Merz Decl. ¶ 3. The guidance of each Military Department establishes processes for granting medical, administrative,

and religious exemptions from the military's vaccine requirement. Service members are not required to receive a COVID-19 vaccine if they have an exemption or while any exemption request is pending.

- **Medical Exemptions.** Service members may be granted a medical exemption if, for example, they currently have COVID-19, are pregnant, or are allergic to an ingredient in the vaccine. Ex. 24, Chapa Decl. ¶ 6; Ex. 6, Bradley Decl. ¶ 13; Ex. 4 ¶ 11; Ex. 5 ¶ 6.

- **Administrative Exemptions.** Service members who, for example, are on terminal leave (*i.e.*, they are no longer coming into their workspace and are taking leave until the date they retire or separate from service) or who are otherwise retiring or separating from military service in the near future may be granted an administrative exemption. Ex. 7, Little Decl. ¶¶ 3–4; Ex. 4, Army Directive 2022-02 ¶ 4.c.2; Ex. 5 ¶ 11.

- **Religious Exemptions.** Service members may seek a religious accommodation by submitting a written request to the appropriate high-level approval authority. *See* Ex. 8, Streett Decl. ¶ 4; Ex. 4 ¶ 15; Ex. 5 ¶ 12. Religious accommodation requests (or "RARs") undergo a multi-stage review process before the approval authority makes a final decision whether to approve or deny the request. Ex. 8 ¶¶ 3–16; Ex. 4 ¶¶ 15–22; Ex. 5 ¶ 16. If a request is denied, the service member may appeal to the Department's final appellate authority, who renders a final decision on the RAR. Ex. 8 ¶ 16; Ex. 4 ¶¶ 20; Ex. 5 ¶ 16. A member is temporarily exempt from the military's vaccination requirement while his or her request is being adjudicated. Ex. 8 ¶¶ 15–16; Ex. 4 ¶¶ 18, 21; Ex. 5 ¶ 16 n.9.

If a service member refuses to take the COVID-19 vaccine and does not have a pending or approved exemption, commanders may take a variety of administrative and disciplinary actions.[13] Ex. 3 ¶ 5; Ex. 4 ¶ 23; Ex. 5 ¶¶ 13–17; Ex. 9, Scutt Decl. ¶ 11–13. Active-duty service members who refuse to comply with the COVID-19 vaccination mandate, absent an exemption, will be subject to initiation of administrative discharge proceedings. Ex. 3 ¶ 10; Ex. 4 ¶ 26; Ex. 5 ¶ 13. Generally, before discharge begins, commanders will issue an administrative action (*e.g.*, Letter of Reprimand (Army); written counseling (Navy)) to provide the member an additional chance to come into compliance. Ex. 3 ¶ 6; Ex. 4 ¶ 24; Ex. 5 ¶ 14. Should an individual continue to refuse to come into compliance, the service member's immediate commander will notify the member of a recommendation for administrative

---

[13] To comply with a class-wide preliminary injunction against the Navy, *see Navy SEALs 1–26 v. Austin*, No. 4:21-cv-1236, 2022 WL 1025144, at *9 (N.D. Tex. Mar. 28), *appeal filed* No. 22-10534 (5th Cir. May 27, 2022), the Navy is not currently separating or taking adverse action against any service members who have submitted RARs, Ex. 5 ¶ 23.

discharge. Ex. 3 ¶ 10; Ex. 4 ¶¶ 26–27; Ex. 5 ¶ 15. The procedures available in discharge proceedings vary by Military Department, time in service, and other factors. But in all events, these procedures enable a service member, with the help of free defense counsel, to respond and present arguments against separation, with some members further entitled to a Board of Inquiry or to appear before an administrative separation board. Ex. 3 ¶ 10; Ex. 4 ¶¶ 26–33; Ex. 5 ¶¶ 15; Ex. 9 ¶ 13. And to ensure consistency and uniformity in disposition, a high-ranking official must review the case before any service member is separated based on a COVID-19 vaccine refusal.

All together, the administrative discharge process generally takes several months (if not more) to complete and may result in the service member being retained. Ex. 9 ¶ 15, 23; Ex. 3 ¶ 10; Ex. 4 ¶ 28; Ex. 5 ¶¶ 13 n.10. A service member may be removed only after a final decision by the separation authority. Ex. 4 ¶ 32; Ex. 5 ¶ 15; Ex. 9 ¶ 21. The decision to discharge an individual is not final until the final discharge order is issued—until that point, the separation authority is not required to follow any discharge recommendation. *See Roberts v. Roth*, --- F. Supp. 3d ---, 2022 WL 834148, at *4 (D.D.C. Mar. 21, 2022). Additionally, under the National Defense Authorization Act—and absent other misconduct—a service member who is discharged for refusing to receive the COVID-19 vaccine will receive either an Honorable or Under Honorable Conditions (General) characterization of service. Pub. L. No. 117-81, § 736(a), 135 Stat. 1541, 1800 (2021).

Even if a service member is discharged at the conclusion of the administrative proceedings, further military options remain available to them. The member may, for instance, appeal the characterization of her discharge to a Discharge Review Board, which has the authority to review administrative discharges. Ex. 3 ¶ 16; Ex. 4 ¶ 33; Ex. 5 ¶ 24.  That process may take six months to a year to complete. *See, e.g.*, Ex. 3 ¶ 16. The member may also request correction of her military record through a Board for Correction of Military Records. Ex. 3 ¶ 17; Ex. 4 ¶ 34; Ex. 5 ¶ 24; Ex. 9 ¶¶ 24–25. That process may take three months to a year to complete. *See, e.g.*, Ex. 3 ¶ 17.

The process may differ for Reservists and the National Guard. To date, the Army has not issued guidance on the process that should follow for members of the National Guard and Reserve Component who refuse to vaccinate. Ex. 4 ¶ 36. However, there will be no DoD funding for pay for Army National Guard and Reserve Soldiers who do not comply with the vaccination requirement by July 1, 2022, unless they have a pending or approved exemption request. *Id.* Further, those Army National Guard and Reserve Soldiers will not be allowed to participate in drills, training, or other federal duties conducted in a Title 10 or Title 32 U.S. Code status. *Id.*

Traditional Reservists and Individual Mobilization Augmentees in the Air Force who refuse to comply with the COVID-19 vaccination mandate, absent an exemption, will be placed in a "no pay/no points status" (*i.e.*, the member will not drill with his or her unit and thus will not earn pay for that work or credit toward retirement) and involuntarily reassigned to the Individual Ready Reserve (or "IRR"). Ex. 3 ¶ 11; Ex. 10, Heyen Decl. ¶ 8. Similarly, Active Guard and Reserve (or "AGR") members of the Air Force will have their AGR tour curtailed and be involuntary reassigned to the IRR. Ex. 3 ¶ 11. Reassignment to the IRR is not a discharge or separation; it allows the Reserve to transfer a member with remaining military service obligation to the IRR, where they may complete their service obligation, rather than discharging the member. Ex. 10 ¶¶ 13–14. Members reassigned to the IRR are eligible to return to a participating status should they meet readiness standards in the future. *Id.* ¶¶ 12–13. The reassignment process generally takes a few months. *Id.* ¶ 12.

## V.    This Action

On May 23, 2022, fourteen service members serving in the Army, Air Force, Navy, or Marines, along with an unincorporated association, sued DoD, the Department of HHS, and FDA on behalf of themselves and a yet-uncertified class. *See generally* Compl. Plaintiffs allege that the military's vaccine requirement is unconstitutional, exceeds Defendants' statutory authority, violates various federal statutes, and is arbitrary and capricious under the APA. *Id.* ¶¶ 134–212.

According to materials submitted with Plaintiffs' complaint, none of the fourteen service-member Plaintiffs have received a COVID-19 vaccine pursuant to DoD's vaccination directive. Five Plaintiffs, however, are currently exempt from the vaccination requirement because they (i) have been granted a medical exemption or have a request pending;[14] or (ii) have a pending RAR or a pending appeal from an RAR denial.[15] These Plaintiffs thus cannot currently be involuntarily separated or otherwise disciplined for refusing to vaccinate. *Supra* p. 7. Six Plaintiffs have been issued either a Letter of Reprimand or administrative counseling for not complying with the vaccination requirement, but are not currently in separation proceedings.[16] Lastly, three Plaintiffs are currently on terminal leave or will be later this month, and each will voluntarily separate later this year.[17]

On July 1, 2022, Plaintiffs filed a motion for a preliminary injunction, seeking to enjoin DoD (i) from enforcing the military's vaccination requirement "or administering any COVID-19 vaccine" "with respect to . . . Plaintiffs," or (ii) "from taking any adverse or retaliatory action against any Plaintiff" for failing to comply with the military's vaccination requirement or for seeking an exemption. ECF No. 9-1 at 1.[18] Plaintiffs concede, however, that their motion "does not seek to preclude consideration of Plaintiffs' 'vaccination status in making deployment, assignment, and other

---

[14] Ex. 11, Shnowske Decl. ¶ 3–9 (Maj. Wilson); Ex. 12, Prouty Decl. ¶ 7 (Lt. Commander Groothausen); Gibson Decl. ¶ 7, ECF No. 4-6.

[15] Ex. 13, Tubiolo Decl. ¶ 5 (Capt. Gross); Compl. ¶ 26 (Lt. Col. Wells).

[16] Ex. 14, May Decl. ¶ 15 (Cap. Doughty); Ex. 15, Schoenenberger Decl. ¶ 7 (Capt. Madigan); Ex. 16, Osbeck Decl. ¶ 8 (Staff Sgt. Puckett); Ex. 17, Harrell Decl. ¶ 8 (Maj. King) Ex. 18, Radliff Decl. ¶ 6 (Col. Fields); Ex. 21, Chandler Decl. ¶ 8 (Maj. Walker).

[17] Ex. 18, ¶ 3 (Col. Christen); Ex. 19, Kittle Decl. ¶ 1 (Staff Sgt. Brown); Ex. 20, Roy Decl. ¶ 9 (Lt. Blankenship).

[18] Plaintiffs' motion does not seek preliminary relief on behalf of any non-party "members" of the plaintiff association. ECF No. 9-1 (seeking to enjoin DoD from taking certain actions against "Plaintiffs"). Any members of the association, assuming they exist, who are not named in this lawsuit are not "plaintiffs" or "parties" to this lawsuit, and thus would not fall within the scope of the requested injunction. *See, e.g., Ass'n. of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 540–41 (6th Cir. 2021); *accord Ass'n of Christian Schs. Int'l v. Stearns*, 362 F. App'x 640, 644 (9th Cir. 2010). In any event, Plaintiffs do not attempt to satisfy Article III requirements for an association to seek relief on behalf of its members, *see Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); they have thus failed to carry their burden of demonstrating the plaintiff association's standing

operational decisions.'" Mot. at 1 (quoting *Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022) (mem)).

## VI. Other Litigation Regarding the Military's Vaccination Requirement

In addition to this case, there have been numerous other challenges to the military's vaccination requirement brought in district courts across the country. At least twelve other courts have either rejected similar arguments for preliminary injunctive relief against the military or dismissed the service members' claims entirely. *See Doe #1-#14 v. Austin*, --- F. Supp. 3d ----, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021) (denying preliminary injunction on Fifth Amendment, APA, and other statutory claims against DoD); *Abbott v. Biden*, --- F. Supp. 3d ----, 2022 WL 2287547, at *7 (E.D. Tex. June 24, 2022) (denying preliminary injunction on Tenth Amendment and APA claims against DoD), *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022); *Roth v. Austin*, No. 8:22CV3038, 2022 WL 1568830, at *31 (D. Neb. May 18, 2022) (denying preliminary injunction on First Amendment and statutory claims against DoD and Air Force), *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022); *Knick v. Austin*, No. 22-1267, 2022 WL 2157066, at *3 (D.D.C. June 15, 2022) (denying preliminary injunction on Fifth Amendment, First Amendment, statutory, and APA claims against DoD and Air Force); *Robert v. Austin*, No. 21-cv-2228, 2022 WL 103374 (D. Colo. Jan. 11, 2022) (denying preliminary injunction on and dismissing APA, constitutional, and other statutory claims against DoD), *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022); *Church v. Biden*, --- F. Supp. 3d ----, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) (denying preliminary injunction on Fifth Amendment, First Amendment, and statutory claims against DoD and Navy); *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ----, 2022 WL 1294486 (D.D.C. Apr. 29, 2022) (denying preliminary injunction on Fifth Amendment, First Amendment and statutory claims against Navy), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022); *Creaghan v. Austin*, No. 21-981, 2022 WL 1500544 (D.D.C. May 12, 2022) (denying preliminary injunction on constitutional and statutory claims against Space Force); *Thomas Short v. Berger*, No. 22-cv-444, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022) (denying preliminary injunction on statutory claim against Marine Corps), *appeal*

*filed*, No. 22-15755 (9th Cir. May 18, 2022); *Vance v. Wormuth*, No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022) (dismissing constitutional and statutory claims against Army); *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022) (denying preliminary injunction on constitutional and statutory claims against Marine Corps); Ex. 25, *Dunn v. Austin*, No. 22-cv-288 (E.D. Cal. Feb. 22, 2022) ("Dunn Op.") (denying preliminary injunction on constitutional and statutory claims against Air Force); *Oklahoma v. Biden*, --- F. Supp. 3d ----, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021) (denying preliminary injunction on constitutional and statutory claims against DoD); *Guettlein v. U.S. Merch. Marine Acad.*, --- F. Supp. 3d ----, 2021 WL 6015192 (E.D.N.Y. Dec. 20, 2021) (denying preliminary injunction on constitutional claims against United States Merchant Marine Academy, DoD, and Navy). Moreover, in *Dunn*, where the district court denied the service member's preliminary-injunction motion, the Supreme Court recently denied the member's application for an injunction pending appeal. *Dunn v. Austin*, 142 S. Ct. 1707 (2022).

Five courts have preliminary enjoined DoD and the respective service from applying COVID-19 vaccination requirements or taking adverse action against plaintiffs in those cases. *See Navy SEALs 1–26 v. Biden*, --- F. Supp. 3d ----, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022); *Navy SEAL 1 v. Biden*, No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022); *Air Force Officer v. Austin*, --- F. Supp. 3d ---, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022); *Poffenbarger v. Kendall*, --- F. Supp. 3d ----, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022); *Doster v. Kendall*, --- F. Supp. 3d ----, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022).[19] The government strongly disagrees with those decisions and has filed a notice of appeal in all but one. In *Navy SEALs 1-26*, the Supreme Court granted the government's application for a partial stay of the district court's injunction. 142 S. Ct. at 1301.[20] Similarly, in *Navy SEAL 1*, the Eleventh

---

[19] The district court in *Doster* subsequently certified a class and has entered a TRO against the Air Force. *Doster v. Kendall*, No. 1:22-cv-84, (S.D. Ohio July 14, 2022), ECF No. 72.
[20] The district court in *Navy SEALs 1-26* subsequently entered a class-wide preliminary injunction against the Navy, which the Government has also appealed. *Supra* p. 7 n.13.

Circuit stayed the district court's injunction pending appeal "insofar as it precludes the Navy from considering the plaintiffs' vaccination status in making deployment, assignment, and other operational decisions." No. 22-10645 (11th Cir. Mar. 30, 2022).

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule."). To justify this "drastic remedy," a plaintiff must make a "*clear showing*" that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without the requested injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Failure to demonstrate any one of these indispensable elements requires denial of preliminary relief. *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Additionally, courts extend great deference to the military when called to review the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," which are "essentially professional military judgments." *Winter*, 555 U.S. at 24 (citation omitted); *accord Farmer v. Mabus*, 940 F.2d 921, 923 (5th Cir. 1991) ("[J]udicial intrusion into military matters is to be most cautiously . . . approached."). As the Supreme Court has repeatedly emphasized, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see also Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975) ("[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise," and the "responsibility for determining how best our Armed Forces shall attend to that business rests with Congress" and "the President."); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Such deference extends to constitutional claims and military decisions about the

health and welfare of the troops. *See, e.g., Solorio v. United States*, 483 U.S. 435, 448 (1987); *Thomas Short*,

2022 WL 1203876, at \*13; *Mark Short*, 2022 WL 1051852, at \*7–8; *Dunn* Op. at 36, 46–48.

## ARGUMENT

I.  **Plaintiffs are unlikely to succeed on the merits of their claims.**

A.  **The Court lacks subject-matter jurisdiction, and Plaintiffs' claims are otherwise not justiciable.**

For Plaintiffs to succeed on the merits of their claims, the Court must resolve in their favor a

host of threshold issues, including standing, ripeness, mootness, exhaustion, and the justiciability of

claims implicating military personnel decisions. Plaintiffs are unlikely to succeed on any one of these

issues, and thus are unlikely to succeed on the merits. *See Anderson v. Oakley*, 77 F.3d 475 (5th Cir. 1995);

*Enter. Int'l Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470–71 (5th Cir. 1985).

i.  **Plaintiffs' claims are not ripe for review.**

Plaintiffs' claims are neither constitutionally nor prudentially ripe. The ripeness doctrine

"ensures that federal courts do not decide disputes that are 'premature or speculative,'" and reflects

both "'Article III limitations on judicial power,' as well as 'prudential reasons for refusing to exercise

jurisdiction.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (citation omitted);

*accord Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). This doctrine is "designed 'to

prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements over administrative policies, and also to protect the agencies from judicial

interference until an administrative decision has been formalized and its effects felt in a concrete way

by the challenging parties." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citation omitted);

*accord Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 (5th Cir. 2021).

*Constitutional ripeness.* "[T]he doctrine of constitutional ripeness overlaps with the standing

doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than

conjectural or hypothetical." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021)

(citation omitted); *accord Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021). Thus, if a "purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)); *see also, e.g.*, *Sample*, 406 F.3d at 312 ("Given the temporally distant and speculative nature of [plaintiff's] claim, his allegations do not establish that he will sustain immediate injury and that such injury would be redressed by the relief requested. Accordingly, [plaintiff's] petition is not ripe for review . . . .").

For this reason, several courts have declined to review challenges brought by service members who—like Plaintiffs—challenged the military's vaccination requirement to avoid the *possibility* of separation for their refusal to comply. *See Knick*, 2022 WL 2157066, at *3; *Vance*, 2022 WL 1094665, at *4–7; *Robert*, 2022 WL 103374, at *2–3; *Church*, 2021 WL 5179215, at *10; *see also, e.g.*, *Roberts*, 2022 WL 834148, at *4–6; *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 94 (D. Md. 2021) (concluding case was unripe while service member's potential discharge was "pending review"); *Diraffael v. Cal. Mil. Dep't*, No. 10-cv-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011) ("[T]he commencement of discharge proceedings" is not sufficient injury when "those discharge proceedings are still underway and to date no final determination has been reached").

In *Roberts*, for example, the court held that the plaintiff's claim was not constitutionally ripe—*despite* having been issued a Letter of Reprimand for refusing to vaccinate after his religious-accommodation request was denied, and *despite* an administrative board making a non-binding recommendation that he be discharged from the Air Force—because the plaintiff had not yet been discharged. 2022 WL 834148, at *2–6. Claims seeking relief from military-discharge decisions, the court explained, "are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged." *Id.* at *5. In so holding, the court rejected plaintiff's suggestion that it was "unlikely" that the Secretary of the Air Force would overturn the administrative board's

recommendation, as it was "in no position to make predictions as to what other entities might conclude," and nothing could "change[] the fact that [the plaintiff] ha[d] yet to be discharged." *Id.* at *6; *see also Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021) ("Despite Plaintiff's skepticism about the show-cause process, the Court cannot so easily dismiss the possibility that he will have a fair opportunity to make his case to a Board of Inquiry."). The plaintiff's alleged injuries therefore remained "theoretical, rather than certain and impending." *Roberts*, 2022 WL 834148, at *4.

So too here. Like the plaintiffs in the cases cited above, Plaintiffs have filed this lawsuit to avoid the *possibility* of involuntary separation (and a series of adverse consequences that they believe would follow) or other disciplinary action for refusing to comply with DoD's vaccination directive. *See* Wilson Decl. ¶¶ 11, 14, ECF No. 3-5; Groothousen Decl. ¶¶ 16, 18–20, ECF No. 3-6; Madigan Decl. ¶ 12, ECF No. 3-7; Walker Decl. ¶¶ 24, 27–28, 30, ECF No. 3-8; Puckett Decl. ¶¶ 12–13, ECF No. 3-9; Doughty Decl. ¶¶ 17–21, ECF No. 4-1; King Decl. ¶¶ 16, 18, 20, ECF No. 4-3; Blankenship Decl. ¶¶ 13, 15–17, ECF No. 4-4; Gross Decl. ¶ 12, ECF No. 4-5; Gibson Decl. ¶ 9. But no matter how confident they are that these events will someday come to pass, "[n]othing plaintiff[s] ha[ve] argued changes the fact that [they] ha[ve] yet to be discharged." *See Roberts*, 2022 WL 834148, at *6. As outlined above, five Plaintiffs are currently exempt from separation proceedings or other disciplinary action while they possess a medical exemption or their RARs or medical-exemption requests are pending or on appeal. *Supra* p. 10. Three Plaintiffs are on terminal leave and will soon retire, and thus will not be required to be vaccinated. *Id.* And the others are not currently in separation proceedings—and may never be. *Id.*; *see also Roberts*, 2022 WL 834148, at *5 ("[M]ilitary discharge complaints . . . are ripe only after a plaintiff has been discharged"). In fact, each Plaintiff who is still serving still has several opportunities to be heard before any discharge decision could be made. *Supra* pp. 7–9. And even if the separation authority were to decide to discharge a Plaintiff, he or she would still be able to seek adequate administrative relief from that decision before coming to federal court. *Id.*

In sum, Plaintiffs are seeking to invoke this Court's jurisdiction to remedy injuries that are merely theoretical, and are "based on nothing more than speculation" about events "that might never come to pass." *See Roberts*, 2022 WL 103374, at *2–3; *see also Lopez*, 617 F.3d at 342. As a constitutional matter, these claims are not ripe for review.[21]

<u>*Prudential ripeness.*</u> Plaintiffs' claims are also not ripe as a prudential matter. To determine whether a claim is prudentially ripe, a court must evaluate "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez*, 617 F.3d at 341; *see also DM Arbor Ct.*, 988 F.3d at 219 (explaining that this inquiry reflects prudential considerations); *accord Ass'n of Irritated Residents*, 10 F.4th at 944; *United States v. Ford*, 882 F.3d 1279, 1283 (10th Cir. 2018); *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). Because a plaintiff must satisfy both prongs of this inquiry, a court need not "address the fitness of the issues for judicial decision" where a plaintiff "has not satisfied the hardship prong," *Choice Inc. v. Greenstein*, 691 F.3d 710, 718 (5th Cir. 2012), nor does a court need to evaluate potential hardship if it finds that the issues are unsuitable for review, *Huawei Techs.*, 2 F.4th at 435 n.30. Plaintiffs fail to satisfy either prong.

*First*, Plaintiffs' claims are not fit for judicial resolution, because "matters 'still pending before'" an agency are "not yet ripe for judicial review." *Shrimpers & Fisherman of the RGV v. U.S. Army Corps*

---

[21] Plaintiffs cannot establish Article III standing based on the dubious suggestion that they would face physical injury (or worse) if they were to receive a COVID-19 vaccine. Mot. at 10–11. For one thing, this allegation deals in hypotheticals, as most Plaintiffs have expressed no intention of becoming vaccinated, and some seem to have rejected the possibility. *See, e.g.*, Walker Decl. ¶¶ 10–11; Gibson Decl. ¶ 9; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (an injury in-fact must be "actual," not "hypothetical"). Indeed, that is precisely why Plaintiffs have brought this action; and as Plaintiffs' counsel appears to acknowledge, were Plaintiffs to become vaccinated, this case would become moot. *See* https://perma.cc/BTL2-JX7M ("[T]aking this shot would be a complete compromise of our— your—litigation position."). Also, because no Plaintiff has indicated an intention of becoming vaccinated in the near future, and because neither DoD's COVID-19 vaccine directive nor the Armed Services' implementing guidance require the "involuntary administration of the vaccine," *contra* Mot. at 39; *see, e.g.*, Scutt Decl. ¶ 11, the "physical injury" they allege is in no way "*certainly* impending," such that it could justify issuance of prospective relief. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

*of Eng'rs*, 849 F. App'x 459, 462 (5th Cir. 2021) (quoting *La. Power & Light Co. v. Fed. Power Comm'n*, 526 F.2d 898, 910 (5th Cir. 1976)). As explained, *supra* pp. 7–8, 15–17, were this Court to address the merits of Plaintiffs' claims before the resolution of any separation proceedings, this Court would be required "to adjudicate internal military affairs before the military chain of command has had full opportunity to consider" them. *Church*, 2021 WL 5179215, at \*11; *accord Roberts*, 2022 WL 834148, at \*5–6; *Poffenbarger*, 2022 WL 594810, at \*9.

The fact that, at some point in the future, the Armed Services *may* separate or otherwise discipline a Plaintiff for refusing to comply with DoD's vaccination directive cannot ripen this case. Whether to separate or discipline a service member is a discretionary decision that is left, in the first instance, to the Armed Services. *See, e.g., Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163–64 (1967) (rejecting challenge to a regulation's validity on ripeness grounds because the regulation was permissive rather than mandatory—*i.e.*, it did not compel the agency to act but merely authorized the agency to exercise a discretionary power). The "initiation of separation proceedings is [thus] a tentative action not fit for judicial review," because "one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008). As explained, those Plaintiffs that are currently in separation proceedings still have several opportunities to be heard by decision-making bodies that have the authority to retain their service. Therefore, at this point in time, it is entirely "possible that something" raised by a Plaintiff during his or her separation proceedings "will compel [the Armed Services] to drop the [separation]," obviating the need for any judicial involvement. *See TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 336 (5th Cir. 2017) *accord Am. Petroleum Inst.*, 683 F.3d at 387 ("[A court should] declin[e] jurisdiction over a dispute [when] there is still time for the challenging party to 'convince the agency to alter a tentative position,' provid[ing] the agency 'an opportunity to correct its own mistakes and to apply its expertise,' [and] potentially eliminating the need for (and costs of) judicial review." (citation omitted)); *Roberts*, 2022 WL 834148, at \*5.

As a separate matter, it is unclear whether Plaintiffs are asking this court to *also* enjoin the Armed Services from taking any other "adverse," non-disciplinary employment actions based on Plaintiffs' refusal to vaccinate. On the one hand, they have conceded that they are "not seek[ing] to preclude" the Armed Services from considering "Plaintiffs' 'vaccination status in making deployment, assignment, and other operational decisions,'" recognizing that any such relief could not be squared with the Supreme Court's order in *Navy SEALs 1-26*. *See* Mot. at 1 (quoting 142 S. Ct. at 1301). But on the other hand, Plaintiffs allege that they may face various adverse employment actions for refusing to vaccinate, *id.* at 4–5, 9, and their requested injunction would prohibit the Armed Services from "taking any adverse . . . action against Plaintiffs" based on their vaccination status, ECF No. 9-1 at 1.

For several reasons, these claims for relief also would not be fit for judicial resolution. First off, Plaintiffs' allegations that they are "hypothetical[ly]" or "potentially facing" various adverse employment actions are based on speculation about what *might* happen in the future. *See, e.g.*, Groothousen Decl. ¶16; Walker Decl. ¶ 27; Doughty Decl. ¶¶ 17–18; *see also Lopez*, 617 F.3d at 342. But even assuming that a Plaintiff has, for example, been restricted in their duties or training opportunities, those purported "harms" would not be redressable through the federal courts. "The Constitution vests [such] complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force exclusively in the legislative and executive branches." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (cleaned up) (quoting *Gilligan*, 413 U.S. at 10). For decades, the Supreme Court has made clear that "judges are not given the task of running the Army. The responsibility for setting up channels through which" complaints regarding internal military affairs "can be considered and fairly settled rests upon" Congress, the President, and his subordinates. *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953). "The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be

scrupulous not to intervene in judicial matters." *Id.* at 94. Therefore, if Plaintiffs are asking the Court to enjoin the Armed Services from taking any "adverse," non-disciplinary employment action against Plaintiffs based on their refusal to vaccinate, this would not only conflict with the partial stay granted by the Supreme Court in *Navy SEALs 1-26,* but with long-standing and binding principles of inter-branch comity and judicial restraint in the military context. *See Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) ("[T]he Navy has an extraordinarily compelling interest . . . over decisions about military readiness").

*Second*, Plaintiff have not established that delaying resolution of their claims would cause them any hardship. As discussed above, *see supra* pp. 16–17, and below, *see infra* § II, Plaintiffs have not shown a likelihood that they will suffer irreparable harm as a result of Defendants' challenged actions, and all claims to the contrary rest on layers of speculation.

In sum, under either a constitutional or prudential rubric, Plaintiffs' claims are not ripe.

      **ii. Plaintiffs' claims are not justiciable because they have failed to exhaust all available inter-service remedies and, in any event, have not satisfied the factors necessary for this Court to review claims implicating military personnel matters.**

Setting aside the ripeness issue, Plaintiffs' claims are not justiciable for another reason: They have not properly exhausted available inter-service remedies. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 38 (1972). Requiring exhaustion in the military context is particularly appropriate, "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger v. Councilman,* 420 U.S. 738 (1975); *Parker v. Levy*, 417 U.S. 733 (1974); *Gilligan*, 413 U.S. at 10). The Fifth Circuit has thus long required that a plaintiff first

exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)); *accord Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (collecting cases); *see also Cargill v. Marsh*, 902 F.2d 1006, 1007–08 (D.C. Cir. 1990) (per curiam) (affirming dismissal of service member's claim for failure to exhaust administrative remedies). And even when a plaintiff meets this threshold exhaustion requirement, a court still must weigh several factors to determine the propriety of reviewing a claim challenging internal military matters: (i) the nature and strength of the plaintiffs' challenge; (ii) the potential injury to the plaintiffs if review is refused; (iii) the type and degree of anticipated interference with the military function; and (iv) the extent to which the exercise of military expertise or discretion is involved. *Mindes*, 453 F.2d at 201.[22]

    *Exhaustion.* Plaintiffs acknowledge the Fifth Circuit's binding exhaustion requirement (as they must), Mot. at 6–7, but they do not seriously contend that they satisfy it (because they don't). Although Plaintiffs assert that they have "unsuccessfully challenged the lawfulness of the DoD mandate," it is beyond dispute that they have not pursued their claims through all available administrative procedures, *supra* pp. 16–19, during which the Armed Services can build a factual record and determine in the first instance whether a Plaintiff should be granted relief.[23] For that reason, courts have recently denied relief to service members who similarly failed to exhaust available separation remedies before pursuing challenges relating to DoD's vaccine directive. *See, e.g., Church*, 2021 WL 5179215, at *10–11; *Robert*, 2022 WL 103374, at *3; *Knick*, 2022 WL 2157066, at *3; *Mark Short*, 2022 WL 1051852, at *4.

---

[22] Plaintiffs suggest that their APA claims are not subject to *Hodges* and *Mindes*' military-exhaustion rule. Mot. at 7 n.12. But they cite no case adopting that assertion, and a number of courts have applied this rule in reviewing APA challenges to internal military matters. *See, e.g., Roe v. Dep't of Def.*, 947 F.3d 207, 218–19 (4th Cir. 2020); *Jiahao Kuang v. Dep't of Def.*, 778 F. App'x 418, 420–21 (9th Cir. 2019); *Daugherty v. United States*, 73 F. App'x 326, 331–32 (10th Cir. 2003).

[23] Courts routinely require service members to exhaust claims before the Board for Correction of Military Records before filing suit. *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986); *Rucker v. Sec'y of the Army*, 702 F.2d 966, 970 (11th Cir. 1983); *Von Hoffburg*, 615 F.2d at 638, 641; *Mindes*, 453 F.2d at 198; *McCurdy v. Zuckert*, 359 F.2d 491, 495 (5th Cir. 1966).

Rather than acknowledge the administrative remedies still available to them, Plaintiffs argue that they "qualify for one or more exemptions from exhaustion." Mot. at 7–8. But none of the "exemptions" they invoke apply here. Plaintiffs suggest that exhausting their administrative remedies would be futile, or that the remedies would be inadequate, because a medical exemption is the "only military 'remedy' [that was] potentially available," and even that remedy has been "categorically eliminated." *Id.* But for reasons already explained, that assertion is contradicted by the record. *Supra* pp. 7–9 (outlining available administrative remedies); *supra* p. 10 (listing several Plaintiffs that either have been granted exemptions or have exemption requests pending). Further, as explained below, neither Plaintiffs' unsupported allegations of irreparable harm nor their meritless constitutional claims are sufficient to exempt them from exhausting available administrative remedies, *contra* Mot. at 8.

*Mindes factors.* But even if Plaintiffs had properly exhausted all available administrative remedies before bringing this action, their claims would still be unreviewable because each of the *Mindes* factors weighs against judicial review. *First*, Plaintiffs' constitutional, statutory, and APA claims are all exceedingly weak and are unlikely to succeed on the merits (as discussed below). *Second*, as explained above, *supra* pp. 16–18, and below, *infra* § II, Plaintiffs have offered no evidence on which to find that they are likely to suffer harm absent this Court's review.

*Finally*, the third and fourth *Mindes* factors weigh decidedly against reviewing Plaintiffs' claims. *See West v. Brown*, 558 F.2d 757, 760–61 (5th Cir. 1977) (these factors "present a single inquiry, focusing on disruption of military functions."). "[M]ilitary readiness and unit cohesion would be unacceptably harmed should the Court" issue the prayed-for declaratory or injunctive relief implicating the "DoD Vaccine Mandate." *Church*, 2021 WL 5179215, at *18; *see also, e.g.*, Ex. 5 ¶ 36; Ex. 1 ¶ 21. "[F]orcing the [Army] to adjust to the risks of including unvaccinated [soldiers] in its ranks is a substantial interference." *Thomas Short*, 2022 WL 1203876, at *15 (quoting *Mark Short*, 2022 WL 1051852, at *5). Even the risk of a single Plaintiff going unvaccinated is a serious concern because, *inter alia*,

unvaccinated individuals have many times the risk of testing positive for COVID-19. Ex. 1 ¶ 17. To review Plaintiffs' claims, the Court "would necessarily involve itself in 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force.'" *Thomas Short*, 2022 WL 1203876, at *15 (citation omitted). By requiring the military to retain, deploy, or assign each Plaintiff without regard for his or her vaccination status, the Court would improperly insert itself into a Plaintiff's chain of command, overriding military commanders' expert judgments about operational needs, including Plaintiffs' fitness to serve and carry out their duties. "[T]he public's interest in military readiness and the military's interest in Plaintiff[s'] health outweigh Plaintiff[s']" purported interests in the resolution of their claims. *See Navy SEAL 1*, 2022 WL 1294486, at *16.

### iii.  The Court lacks jurisdiction with respect to Plaintiffs' statutory claims.

Plaintiffs assert various statutory claims challenging the DoD vaccination directive. Compl. ¶¶ 184–97. These claims center on Plaintiffs' allegation that the Armed Services are "unlawfully mandat[ing]" Plaintiffs to obtain an "EUA vaccine" or "face discipline and discharge." Mot. at 29–37. Setting aside the fact that no service member has been required to take a vaccine authorized only for emergency use to comply with DoD's directive, *infra* § I.D, Plaintiffs' statutory claims are now moot. *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004) ("A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." (citation omitted))

Plaintiffs allege (incorrectly) that the Armed Services have only EUA COVID-19 vaccines to administer to service members pursuant to DoD's vaccination directive. *E.g.*, Compl. ¶¶ 77, 196. Based on this false assumption, they allege that DoD is violating various statutory provisions by obligating service members—including Plaintiffs—either to take an "EUA vaccine" or to face potential disciplinary action, and that FDA committed its own statutory violations. Mot. at 29–37.

But Plaintiffs are wrong. The Armed Services have obtained over 42,000 doses of Comirnaty-labeled vaccines, Ex. 2 ¶ 19, and have offered to administer them to all willing Plaintiffs, Ex. 26. No

Plaintiff has yet informed DoD whether he or she will accept or decline its offer (and, it seems, they have been advised *not* to accept it because it would undermine their "litigation position," *see* https://perma.cc/BTL2-JX7M). But regardless, Plaintiffs now "lack a legally cognizable interest" in the resolution of their statutory claims. *See Envt'l Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (citation omitted). Plaintiffs can obtain a BLA-labeled COVID-19 vaccine through available inter-service procedures, and they offer no reason to think that they would be required to take another vaccine. *See Norris v. Stanley*, 558 F. Supp. 3d 556, 559 (W.D. Mich. 2021) (no likelihood of success on EUA claim because it "would be moot" if offered the BLA-approved Pfizer vaccine); *cf. Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275 (D.C. Cir. 2012) (Kavanaugh, J.) (explaining that availability of vaccines other than the ones to which plaintiffs objected eliminated plaintiffs' standing). Accordingly, this Court's resolution of Plaintiffs' statutory claims—all of which challenge a purported mandate to receive an "EUA vaccine"—would have no practical impact on Plaintiffs. *See Prison Legal News v. FBI*, 944 F.3d 868, 880 (10th Cir. 2019) ("An action becomes moot if an intervening circumstance deprives the plaintiff of a personal stake at any point[.]" (cleaned up with citation omitted)). Nor is there "any effectual relief" that the Court could grant to Plaintiffs based on their statutory claims that they have not already been obtained from DoD. *See Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citation omitted); *accord Honig v. Students of Cal. Sch. for the Blind,* 471 U.S. 148, 149 (1985). Thus, all of Plaintiffs' statutory claims are moot.

Setting mootness aside, Plaintiffs also lack Article III standing to assert their statutory claims against FDA, for reasons discussed in a recent Sixth Circuit decision. *See Children's Health Def. v. FDA*, No. 21-6203, 2022 WL 2704554 (6th Cir. July 12, 2022). There, the Sixth Circuit held that an organization lacked associational standing to challenge, on behalf of a group of military servicemembers, "FDA's licensure of Pfizer's Comirnaty and simultaneous extension of the Pfizer-BioNTech EUA." *Id.* at *2, 3–4. In support of its claim, the organization alleged that its unvaccinated

military members "who refuse to comply with the military's vaccine requirements are facing or will face adverse consequences." *Id.* at *2. The court found that, even assuming the organization had shown that a member suffered or imminently would suffer an injury in fact, the "plaintiffs' alleged injuries" were not "fairly traceable to FDA's actions," because "[t]he military's vaccination requirements, and the alleged possible consequences from failing to comply, stem from DOD decisionmakers." *Id.* at 3. Moreover, the court rejected the argument that their alleged injuries were redressable because (as Plaintiffs also assert) DoD "relied on" FDA's "interchangeability" determination, *id.* at 4—*i.e.,* that Comirnaty has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns, FDA, Letter of July 8, 2022, at 3 n.15, 16–17, https://perma.cc/AJU6-8WUW. The court explained that "DOD's vaccine mandate is not tied to FDA's actions," and thus no relief granted against FDA could "redress their alleged injuries," because, among other reasons, "DOD could administer COVID-19 vaccines manufactured by other companies with licenses . . . not challenged here." *Children's Health Def.,* 2022 WL 2704554, at *4.

Although Plaintiffs' claims differ from those asserted in *Children's Health Defense,* the same general analysis applies here. Plaintiffs challenge FDA's exercise of enforcement authority concerning labeling requirements, as well as its so-called "interchangeability" determination. *See* Mot. at 34–37. But, for the same reasons discussed in *Children's Health Defense,* Plaintiffs have alleged no injury that would be fairly traceable to FDA's actions, nor any injury that could be redressed by an order entered against the agency. Accordingly, Plaintiffs lack standing to assert their statutory claims against FDA.

### B.    Plaintiffs' constitutional claims are meritless.

Plaintiffs argue that the military's COVID-19 vaccination requirement violates the Fifth Amendment's guarantees of substantive and procedural due process and equal protection. Mot. at 14–26. These constitutional claims are unlikely to succeed on the merits. By arguing that strict scrutiny

applies to their claims, Plaintiffs rely on the wrong standard of review and ignore longstanding precedent (consistently reaffirmed) that vaccine requirements are subject to rational basis review.

### i.    All of Plaintiffs' constitutional claims are subject to rational basis review.

"Rational basis review is the test [that] *normally* applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring).  Under rational-basis review, a plaintiff must show that the challenged government policy bears no "rational relationship to a legitimate governmental purpose" to succeed on an Equal Protection or Due Process challenge. *Butts v. Aultman*, 953 F.3d 353, 358 (5th Cir. 2020).

This case does not involve a suspect class. Plaintiffs admit that "vaccination status has not historically been a 'suspect class.'" Mot. at 23.  Moreover, they fail to identify any group that the DoD vaccine requirement treats differently, much less any suspect classification that would trigger strict scrutiny. Plaintiffs even admit that the military is "[t]reating all servicemembers the same" by requiring vaccination absent a pending or approved exemption.  *Id.* at 19. Instead, Plaintiffs argue that individuals who do not comply with the requirement should be treated as a suspect class since they are the only ones who face the consequences of non-compliance.  *Id.* at 22–23. But no court has adopted that argument and for good reason—if non-compliers could be defined as a suspect class, then *every* law and regulation with any consequences would be subject to strict scrutiny.[24]

Rational basis review also applies because the mandate does not burden any "fundamental right ingrained in the American legal tradition"—"vaccination requirements, like other public-health measures, have been common in this nation" throughout history. *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th

---

[24] Plaintiffs also argue that a regulation motivated "by irrational animus" or "prejudice" should be subject to a "heightened rational basis review."  Mot. at 23.  Setting aside that it is unclear whether a "heightened rational basis review" standard exists under the law of this Circuit, Plaintiffs offer no evidence that the military's COVID-19 vaccine requirements were the result of improper motives.

592, 593 (7th Cir. 2021) (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)); *accord, e.g., Doe v. Zucker*, 520 F. Supp. 3d 217, 249–53 (N.D.N.Y. 2021) ), *appeal filed*, No. 21-537 (2d Cir. Mar. 5, 2021); *see also Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944); *Zucht v. King*, 260 U.S. 174, 177 (1922). Vaccination requirements have also been commonplace in the military which "began requiring immunization in 1777" and for "the past several decades, the military has required at least nine immunizations, such as an annual flu shot." *Abbott*, 2022 WL 2287547, at *2.

Courts reviewing due process challenges to COVID-19 vaccination requirements have consistently held that rational basis review applies. *E.g., Klaassen.*, 7 F.4th at 593; *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) (rejecting the argument that COVID-19 vaccine requirement violated any "fundamental rights to privacy, medical freedom, and bodily autonomy under the Fourteenth Amendment"); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1251 (D. Or. 2021) (same); *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or. 2021); *Norris*, 567 F. Supp. 3d at 820; *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1173 (D.N.M. 2021), *aff'd*, No. 21-2105, 2022 WL 2129071 (10th Cir. June 14, 2022); *Harris v. Univ. of Mass., Lowell*, 557 F. Supp. 3d 304, 313 (D. Mass. 2021), *appeal filed*, No. 21-1770 (1st Cir. Sept. 28, 2021); *see Cuomo*, 141 S. Ct. at 70 (Gorsuch, J., concurring).

Plaintiffs' reliance on *Cruzan ex rel. Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 279 (1990), to argue otherwise misses the mark. Mot. at 17. *Cruzan* held only that the Constitution granted "competent persons a constitutionally protected right to refuse lifesaving hydration and nutrition" should they later become terminally ill and non-responsive. 497 U.S. at 279 (cleaned up). The DoD vaccine requirement at issue here is nothing like forcing someone to undergo intrusive, years-long treatment against their will even if they are in a vegetative state. *See, e.g., We The Patriots USA*, 17 F.4th at 294 (rejecting argument based on *Cruzan* because "[v]accination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers"—"they

do have a choice"); *Bridges v. Hous. Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021), *aff'd*, 2022 WL 2116213 (5th Cir. June 13, 2022). Instead, vaccinations are a fairly routine occurrence, and of course, Plaintiffs volunteered to join the military where vaccinations have long been a requirement. *Supra* p. 5.

Plaintiffs propose, with no supporting case law, that the COVID-19 vaccine requirement violates a fundamental right to bodily integrity should be subject to strict scrutiny as "gene therapy treatments" instead of vaccinations. Mot. at 14. Plaintiffs are wrong on the facts. Rans ¶ 16. They can also take a non-mRNA vaccine like Johnson & Johnson or Novavax to satisfy the vaccination requirement. But more importantly, Plaintiffs provide no authority that policies requiring "treatments" receive higher scrutiny than policies requiring "vaccines." Indeed, the military has medical readiness requirements that involve treatments, including being free of any deployment-limiting medical conditions, which sometimes may require a service member to receive treatment to resolve the limiting condition, and being up to date with dental exams, including completing "urgent or emergent dental treatment." *See* DoDI 6025.19, Encl. 3, ¶¶ 3, 4.[25]

### ii. Plaintiffs cannot meet their burden under rational basis review.

Under rational basis review, the Court must uphold the mandate unless plaintiffs overcome "every conceivable basis which might support it." *Glass v. Paxton*, 900 F.3d 233, 245 (5th Cir. 2018) (citation omitted). When "mounting a facial challenge" under rational basis review, a plaintiff's "burden is heavy: he must demonstrate that no possible application" of the regulation "can be squared with the Fifth Amendment." *Doe v. Sullivan*, 938 F.2d 1370, 1383 (D.C. Cir. 1991).[26] "Given the

---

[25] Plaintiffs claim the definition of "vaccine" on CDC's website changed, but do not explain how that would inform judicial scrutiny. Plaintiffs also contend that judicial scrutiny should depend on disease-specific facts, but provide no legal support for that proposition. Mot. at 18.

[26] Even if strict scrutiny applied, the requirements would still be constitutional because mandatory vaccines are the least restrictive means to further a compelling government interest in preventing infectious disease. *E.g.*, *F.F. on behalf of Y.F. v. State*, 65 Misc. 3d 616, 633, (N.Y. Sup. Ct. 2019); *Brown*

standard of review, it should come as no surprise that [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018).

The military's COVID-19 vaccine requirement easily satisfies this standard—as every court that has considered the issue has found. *E.g.*, *Doe #1–#14*, 2021 WL 5816632, at *11 ("[P]laintiffs have not met their extraordinary burden of showing the mandate lacks any rationality[.]"). Plaintiffs cite no case in which DoD's vaccination requirement has been found to lack a rational basis. Instead, Plaintiffs claim that the COVID-19 vaccination requirement fails rational basis review because it does not include an exemption for those who were previously infected by COVID-19. First, that argument fails because Plaintiffs bring a facial challenge. *Id.* (holding that the argument that "natural immunity provides greater protection than vaccination alone . . . is insufficient to sustain [plaintiff's] facial challenge"). Second, requiring vaccination for those who have previously been infected easily clears the low burden of rationality given the CDC's recommendation that those with prior infection still be vaccinated. The CDC's guidance is dispositive in this case, and the CDC recommends all persons ages 6 months and over receive the COVID-19 vaccine "regardless of a history of symptomatic or asymptomatic SARS-CoV-2 infection."[27] Nothing alleged in Plaintiffs' complaint can overcome the high hurdle required to show the military was not acting rationally in following CDC guidance. *See Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1185 (S.D. Fla. 2021) ("[T]he Court cannot find that Defendants are irrational for following the recommendations of the CDC."); *accord Denis v. Ige*, 538 F. Supp. 3d 1063, 1078 (D. Haw. 2021).[28]

---

*v. Smith*, 24 Cal. App. 5th 1135, 1145 (2018); *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 996 (2018); *cf. Roth*, 2022 WL 1568830, at *28 (finding military's COVID-19 vaccine requirement as-applied satisfied RFRA standard of compelling government interest and least restrictive means).

[27] CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines* (updated June 30, 2022), https://perma.cc/HG5T-YTDV; *see also* Ex. 1 ¶ 20

[28] Plaintiffs also argue that DoD's reliance on CDC recommendation is not rational because the CDC recommends boosters, which DoD does not currently require. That argument fails because "policies survive this standard even when they are 'significantly over-inclusive or under-inclusive,' so long as

### C.    Plaintiffs' APA claims against the military are meritless.

Plaintiffs claim that the military's COVID-19 vaccine requirement violates the APA as arbitrary and capricious. Mot. at 37–39.[29] Arbitrary-and-capricious review of agency action is highly deferential. Under this standard, "there is a presumption that the agency's decision is valid, and the plaintiff has the burden to overcome that presumption by showing that the decision was erroneous." *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010). Judicial review is "narrow" and limited to "whether the [agency] examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a rational connection between the facts found and the choice made.'" *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (citation omitted). A court "may not substitute [its] judgment for that of the [agency], but instead must confine [itself] to ensuring that [the agency] remained 'within the bounds of reasoned decisionmaking.'" *Id.* (citation omitted). Challenges to military judgments under the APA are subject to an even higher bar, *see Goldberg*, 453 U.S. at 66, given that they are based on "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force" and are "subject *always* to civilian control of the Legislative and Executive Branches." *Gilligan*, 413 U.S. at 10; *see Oklahoma*, 2021 WL 6126230, at *11 n.29; *Doe #1-#14*, 2021 WL 5816632, at *4 (plaintiffs not likely to succeed on the merits of their APA claim challenging the military vaccination mandate).

"The vaccination requirement at issue here passes that deferential review." *Abbott*, 2022 WL 2287547, at *6. To date, 96 service members have died from COVID-19, and over 400,000 have contracted the disease. Ex. 1 ¶ 3. Beyond the human toll, the pandemic also had a significant impact on military operations. *Id.* ¶¶ 3–13 (detailing such impacts). After consulting with "medical experts

---

they bear some rational connection to the policy's goal." *Doe #1-#14*, 2021 WL 5816632, at *11; *see Hines v. Quillivan*, 982 F.3d 266, 275 (5th Cir. 2020).

[29] Plaintiffs also claim that the policy is contrary to law since it requires the National Guard to be vaccinated. Mot. at 37. That argument is meritless. *See Abbott*, 2022 WL 2287547 at *7.

and military leadership," the Secretary of Defense "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." [30] Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. The Court must "give great deference" to these leaders' "professional military judgments." *See Winter*, 555 U.S. at 24–25 (citation omitted); *supra* pp. 13–14, 20. And this "deference is layered on top of the deference that courts must give to expert policymakers on matters involving complex medical or scientific uncertainties." *Mark Short*, 2022 WL 1051852, at *7. When officials "undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad" and "they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not [publicly] accountable." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring) (cleaned up).

The military's requirement to be vaccinated against infectious disease is nothing new. *Supra* p. 5. Long before COVID-19, the military required service members to be vaccinated against numerous diseases. *Id.* The military's judgment that COVID-19 vaccination is necessary for medical readiness is supported by significant evidence showing COVID-19's harmful impact on the military. Ex. 2 ¶¶ 10–13; Ex. 1 ¶¶ 3–13; *accord Church*, 2021 WL 5179215, at *18 (DoD vaccination requirement is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate"). Vaccinations have promoted military readiness by reducing the risk of infections, hospitalizations, and deaths of service members. Ex. 1 ¶¶ 16–21; Ex. 2 ¶¶ 17.  Of the 96 Service members who have died

---

[30] COVID-19 has "impacted exercises, deployments, redeployments, and other global force management activities," Ex. 1 ¶ 6 (including rendering one of the Navy's eleven aircraft carriers non-operational because of an outbreak, *id.* ¶ 8); caused the cancellation of "19 major training events, many of which involved preparedness and readiness training with our foreign partners," *id.* ¶ 9; and "required significant operational oversight" by the most senior military leaders, *id.* ¶ 4.  In addition, because health care providers have had to care for COVID-19 patients, certain service members have not been able to "address non-emergency conditions and undergo routine medical and health assessments that are required under military directives to maintain medical readiness." *Id.* ¶¶ 12–13.

from COVID-19, 89 were unvaccinated, 3 were partially vaccinated, and 2 were vaccinated but not boosted. Ex. 1 ¶ 3. "[T]he latest statistics for the U.S. population show that an unvaccinated person has a 10-times greater chance of getting infected, a 17-times greater chance of getting hospitalized, and a 20-times chance of dying compared to a vaccinated person." *Id.* ¶ 16. "Of all active duty personnel hospitalized with COVID-19 since December 2020 through this month, only 0.012% were vaccinated." Ex. 1 ¶ 18. Individuals who have not been fully vaccinated against COVID-19 are at higher risk of serious illness, hospitalization, and death. Ex. 2 ¶ 6. Unvaccinated persons are also at higher risk of conditions like long-haul COVID. *Id.*

Vaccines have reduced the number of service members required to quarantine, and permitting a return to higher levels of occupancy in DoD facilities and in-person trainings. Ex. 1 ¶ 14. Vaccinations also permit service members to engage in joint training exercises with other countries that have vaccination requirements. Ex. 1 ¶ 10. Vaccinations are also required now to ensure troops can respond and deploy quickly. Ex. 2 ¶ 3. On this record and under the highly deferential standard of review, Plaintiffs are unlikely to show that the military's vaccine requirement is arbitrary and capricious. *See Oklahoma*, 2021 WL 6126230, at *11 n.29.

Plaintiffs ask the Court to ignore the reliable scientific evidence relied on by military leaders that support the COVID-19 requirement, and instead rely on the "expert" opinion of Dr. McCullough. Mot. at 18–19; ECF No. 3-2 and 3-3; *see also* Compl. ¶¶ 8, 116, 117, 120, 122, 151. Although parties challenging the military's COVID-19 vaccine requirement have frequently relied on Dr. McCullough's opinions, no court reviewing that requirement has relied on his opinions. Quite to the contrary, courts that have considered his opinions have found them not credible. *Roth*, 2022 WL 1568830, at *21 ("The Court concludes that Dr. McCullough is hardly a 'real expert' in the field."); *Navy SEAL 1*, 2022 WL 1294486, at *11 (finding Dr. McCullough's "opinion[s] outside the scientific mainstream" and noting that "one court has entered a preliminary injunction against him for false

statements"). Plaintiffs cannot show a likelihood of success on the merits by relying on the opinions of Dr. McCullough.

Plaintiffs also argue that the requirement to be vaccinated is arbitrary and capricious because alternative measures "had been effectively employed over the previous two years prior to the mandate." Mot. at 38. That argument has consistently been rejected by other courts: "[M]erely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them." *Navy SEAL 1*, 2022 WL 1294486, at \*12 (quoting *Mark Short*, 2022 WL 1051852 at \*9).[31]

Finally, Plaintiffs argue that the military's policy not to grant exemptions for prior infection is contrary to law or arbitrary and capricious. Neither is true. Plaintiffs point to Army Regulation (AR) 40-562 to support their argument that those with prior infection must be given a medical exemption. Compl. ¶ 98. But that regulation states that only "[f]or *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations." AR 40-562, ch. 2-1(g) (emphasis added). Human immunity for diseases such as flu, tetanus, and diphtheria, and COVID-19 wane over time, so the military requires vaccination. Ex. 2, ¶ 24; *see* AR 40–562, §§ 4-7(b) (flu), 4-16(c) (tetanus, diphtheria, and pertussis). Plaintiffs are also unlikely to succeed on a claim that requiring the vaccine for those who have previously been infected is arbitrary and capricious for the simple reason, noted above, that the CDC recommends those who have had a prior COVID-19 infection to still receive the vaccine.

---

[31] Plaintiffs also point to a handful of courts that have issued preliminary injunctions based on alleged violations of RFRA to argue that the military's COVID-19 requirement is arbitrary and capricious. Mot. at 38–39. But Defendants are vigorously litigating those preliminary decisions, which have not reached final judgment. And the fact that a handful of courts have (incorrectly) found a likelihood of success under the heightened scrutiny of RFRA has no bearing on whether the requirement meets the significantly more deferential arbitrary and capricious standard under the APA.

### D.    Plaintiffs' statutory claims are meritless

Finally, Plaintiffs also contend that Defendants have violated various federal statutes that Plaintiffs (mistakenly) believe are pertinent to DoD's vaccine directive. Mot. 29–37. As explained above, *supra* § I.A.iii, these claims are moot, and Plaintiffs lack standing to assert them. But even so, these claims are wrong on both the facts and the law, and thus fail on the merits.

Plaintiffs principally contend that DoD's vaccine directive violates 10 U.S.C. § 1107a because it "mandate[s]" that service members receive an "unlicensed EUA vaccine[]." Mot. at 29. But DoD's vaccination directive does not implicate § 1107a. Congress has given the Secretary of Defense and the Armed Services wide latitude to establish a vaccination program for the welfare and readiness of troops. *See* 10 U.S.C. §§ 113(b), 7013(b)(9), 8013(b)(9), 9013(b)(9). Section 1107a places a narrow condition on that authority by requiring a presidential "waiver" of a notification requirement when the military seeks to require service members to take products authorized only for "emergency use." *Id.* § 1107a(a). Contrary to what Plaintiffs suggest, however, *no* service member is required under the DoD directive to take a COVID-19 vaccine authorized only for "emergency use." Under that directive, service members are required to receive only "COVID-19 vaccines that receive full licensure . . . in accordance with FDA-approved labeling and guidance." Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758.

As discussed, FDA has already approved Pfizer's BLA for its vaccine to prevent COVID-19 in individuals 16 years of age and older, meaning that it has received licensure for that use under the name "Comirnaty." *Supra* pp. 3–4. While Plaintiffs complain that BLA-approved vaccines are unavailable, Compl. ¶ 77, it is beyond dispute that DoD has offered each of them Comirnaty-labeled vaccines, Ex. 26.[32] Plaintiffs thus have no basis to claim that DoD is requiring them to receive a

---

[32] Plaintiffs make much of FDA's "interchangeability" determination (*supra* § I.A.iii). Mot. at 29–33, 36–37. But their arguments on this score are irrelevant to whether DoD's vaccination directive violates

vaccine authorized only for "emergency use." *See* 10 U.S.C. § 1107a(a); *see also Doe #1–#14*, 2021 WL 5816632, at *6 ("[If DoD is] administering Comirnaty . . . plaintiffs' § 1107a issue disappears."); *accord Crosby v. Austin*, No. 8:21-cv-2730, 2022 WL 603784, at *2 (M.D. Fla. Mar. 1, 2022).

Plaintiffs also allege that FDA has violated 21 U.S.C § 360bbb-3. As already explained, Plaintiffs lack standing to assert this claim. *Supra* § I.A.iii. But even assuming otherwise, Plaintiffs have no private right of action to challenge FDA's compliance with this statutory provision. *See, e.g.*, *Navy SEAL 1 v. Biden*, --- F. Supp. 3d ---, 2021 WL 5448970, at *3 (M.D. Fla. Nov. 22, 2021) ("[Section 360bbb-3] confers no private right of action, creates no 'opportunity to sue the government,' and permits enforcement by the United States and by the states in specific circumstances only." (alterations adopted and citations omitted)); *accord Crosby*, 2022 WL 603784, at *1–2. Congress instead reserved exclusive enforcement authority to the United States—*not* individual plaintiffs—with one limited exception for state enforcement. 21 U.S.C. § 337(a); *Guilfoyle v. Beutner*, No. 2:21-cv-05009, 2021 WL 4594780, at *26–27 (C.D. Cal. Sept. 14, 2021). That express limitation, in turn, precludes Plaintiffs' attempt to assert their § 360bbb-3 claim under the APA. 5 U.S.C. § 701(a)(1) ("[The APA] applies" except to the extent that a statute "preclude[s] judicial review."); *see also, e.g.*, *Overton Power Dist. No 5 v. O'Leary*, 73 F.3d 253, 257–58 (9th Cir. 1996). Moreover, actions taken under the authority of 21 U.S.C. § 360bbb-3 are expressly committed to FDA's discretion. *Id.* § 360bbb-3(i); *Ass'n of Am. Physicians & Surgeons v. FDA*, 2020 WL 5745974, at *3 (6th Cir. Sept. 24, 2020). For that reason as well, Plaintiffs' allegations against FDA are not reviewable under the APA. 5 U.S.C. § 701(a)(2).[33]

## II.    Plaintiffs are not likely to suffer irreparable harm absent preliminary relief.

Setting the merits aside, Plaintiffs are not entitled to a preliminary injunction because they

---

§ 1107a, because Plaintiffs have been offered doses of Comirnaty, and thus are not required to receive an "EUA vaccine" to comply with DoD's directive.

[33] Although Plaintiffs challenge FDA's "exercise of 'enforcement discretion'" regarding labeling requirements for BLA-compliant, EUA-labeled vials, Mot. at 34–36, for reasons already explained, this claim is moot, and Plaintiffs lack standing to assert it, *supra* § I.A.iii.

have failed to show that they are likely to suffer irreparable harm in the absence of such relief. "[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical," *Duarte v. City of Lewisville*, 136 F. Supp. 3d 752, 791 (E.D. Tex. 2015) (Mazzant, J.) (citation omitted), and must be "so imminent that there is a clear and present need for equitable relief to prevent" it. *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citation omitted); *accord Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975); *Winter*, 555 U.S. at 22. A "movant [also] must show that the alleged harm will directly result from the action which [he] seeks to enjoin." *Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Importantly, a plaintiff cannot "make a clear showing of irreparable harm" based on "speculative injur[ies]" or "unfounded fear[s]." *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (alteration adopted and citation omitted). Nor can a plaintiff make this showing with "unsubstantiated and conclusory assertions," *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1134 (D.C. Cir. 2017), but must substantiate any claim or irreparable injury with "independent proof, or no injunction may issue," *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). And "[i]n cases involving claims related to military personnel decisions, . . . the showing of irreparable harm must be especially strong before an injunction is warranted." *Shaw*, 539 F. Supp. 3d at 183; *accord Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) ("[Plaintiffs] must make a much stronger showing of irreparable harm" when seeking to enjoin "a military discharge" "due to the magnitude of the interests weighing against judicial interference with the internal [military] affairs." (citation omitted)); *Guerra v. Scruggs*, 942 F.2d 270, 274 (4th Cir. 1991); *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *Veitch v. Danzig*, 135 F. Supp. 2d 32, 36–37 (D.D.C. 2001).

Plaintiffs claim that they would be irreparably harmed if they were "permanently prevent[ed]" from "exercising their right to refuse unwanted experimental medical treatment." Mot. at 39–40. Even

assuming that is true, Plaintiffs do not show that any such harm would be the result of Defendants' actions. *See Wis. Gas. Co.*, 758 F.2d at 674. Again, contrary to Plaintiffs' repeated assertions, neither the DoD's COVID-19 vaccine directive nor the Armed Services' implementing guidance require the "involuntary administration of the vaccine." *Contra* Mot. at 39; *see also, e.g.*, Ex. 9 ¶ 11. Service members are and have been free to refuse vaccination. *Supra* pp. 6–10. DoD's directive and its implementing guidance simply provide that refusal to vaccinate may subject a service member to certain disciplinary or other adverse actions. *Id.* Indeed, Plaintiffs' own circumstances prove the point, as most of them continue to serve and continue to voluntarily refuse to become vaccinated. *Supra* p. 10. But, while Plaintiffs may be subject to discipline for refusing to follow a lawful order to be vaccinated, no Plaintiff avers that they will ever be "involuntarily" vaccinated as a result of the military's vaccination directive.

Furthermore, as already discussed, *supra* § I.B, Plaintiffs have not demonstrated that Defendants' challenged actions implicate their constitutional or statutory rights, *contra* Mot. at 39, let alone imminently threaten them, *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see also, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that, to show irreparable harm based on loss of constitutional rights, a movant must show likely success on the merits); *Mark Short*, 2022 WL 1051852, at *9; *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 88–89 (D.D.C 2017); *Thomas Short*, 2022 WL 1203876, at *7–8. A preliminary injunction is inappropriate "unless the party seeking it can demonstrate that '[constitutional] interests are either threatened or in fact being impaired at the time relief is sought.'" *Google, Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016) (citation omitted). And even if Plaintiffs could show likely success on the merits of their claims, the irreparable-harm requirement is not excised any time a plaintiff asserts a colorable constitutional claim. The mere "invocation of the [Constitution] cannot substitute for" a plaintiff's obligation to show "the presence of an *imminent*, *non-speculative* irreparable injury" that will occur absent preliminary relief. *Id.* at 228.

Finally, Plaintiffs do not allege or attempt demonstrate that they will suffer imminent,

irreparable harm as a result of any separation or discipline during the pendency of this litigation. As explained, Plaintiffs' fears of future separation and its alleged consequences are, at best, remote, theoretical injuries that may never come to pass. *Supra* § I.A.i–ii. But even if a Plaintiff faced imminent separation or discipline, such actions would not cause Plaintiffs *irreparable* injury. *See, e.g.*, *Sampson*, 415 U.S. at 92 n.68; *Air Force Officer*, 2022 WL 468799, at \*12 ("While it is true that Plaintiff has 'gradually [been] stripped of her duties, benefits, and pay, and forced into early retirement'" as a result of non-compliance with the military's vaccine requirement, "these harms are redressable as monetary damages and therefore insufficient to obtain injunctive relief." (citation omitted)). Courts routinely find that military administrative and disciplinary actions, including separation and a-less-than-honorable discharge, are not irreparable injuries because the service member could later be reinstated and provided back pay if he prevailed on his claim. *See, e.g.*, *McCurdy*, 359 F.2d at 493; *Hartikka*, 754 F.2d at 1518; *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *Guitard v. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Church*, 2021 WL 5179215, at \*17; *Thomas Short*, 2022 WL 1203876, at \*7–8.

## III.   The Equities and the Public Interest Weigh Against a Preliminary Injunction.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors tilt decidedly against the issuance of a preliminary injunction here.

The public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. at 24–26, and the military has a compelling interest in requiring its forces to be vaccinated, healthy, and ready to accomplish any and every military mission, *see North Dakota v. United States*, 495 U.S. 423, 443 (1990); *Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). An injunction that allows Plaintiffs to continuing serving without being vaccinated against COVID-19 would threaten harm not only to Plaintiffs and the other service members serving alongside them, but would also compromise their

units' collective abilities to execute their military and intelligence duties, maintain their necessary readiness, and accomplish their missions. *See, e.g.*, Ex. 5 ¶ 36; Ex. 1 ¶ 21.[34] And unlike service members with medical and administrative exemptions, some Plaintiffs seek to remain in their posts without any changes to their duties. The Armed Services' judgment that it cannot accept avoidable risk to the health and readiness of its fighting forces serves the public interest, outweighs any interests Plaintiffs may have in premature preliminary relief, and deserves this Court's deference. *See, e.g.*, *Navy SEAL 1*, 2022 WL 1294486, at \*16–17; *Church*, 2021 WL 5179215, at \*18–19.

Moreover, the national defense depends on service members' compliance with lawfully issued orders. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983). No military can successfully function where members feel free to define the terms of their own military service and which orders they will choose to follow.[35] Plaintiffs' requested injunction would harm the public interest in a strong and ready national defense by interfering with the military's clear discretion to handle matters of good order and discipline, to the detriment of military effectiveness and trust between commanding officer and subordinate. *Orloff*, 345 U.S. at 95.

## IV.     The requested injunction would violate Rule 65(d)'s specificity requirement.

Granting Plaintiffs' request that DoD be "preliminarily enjoined from taking any adverse or retaliatory action against any Plaintiff as a result of, arising from, or in conjunction with" any exemption request or non-compliance with the military's vaccine requirement, ECF No. 9-1, would

---

[34] *See, e.g.*, *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286 (D.D.C. 2005) ("In evaluating the harm to the [military], the court must consider the aggregate harm of all these possible claims."); *accord Bors v. Allen*, 607 F. Supp. 2d 204, 212 (D.D.C. 2009); *Guerra*, 942 F.2d at 275.

[35] *E.g.*, *Stein v. Mabus*, No. 3:12-cv-00816, 2013 WL 12092058, at \*7–8 (S.D. Cal. Feb. 14, 2013) ("Military officers are better suited than civilian courts to determine" whether a service member's refusal to "follow all orders from" the Commander-in-Chief "disrupted good order and discipline"); *United States v. Stark*, No. NMCM200000243, 2000 WL 1456299, at \*2 (N.-M. Ct. Crim. App. Aug. 31, 2000) (concluding that, upon receiving an order to take the anthrax shot, the service member could not "pick and choose which immunizations he should receive"); *cf. United States. v. Hardy*, 46 M.J. 67, 74 (C.A.A.F. 1997).

also violate the requirement that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). The terms "adverse . . . action," "arising from," and "in conjunction with," ECF No. 9-1, are (even when read in context) "hopelessly vague," *see PMC, Inc. v. Sherwin-Williams*, Co., 151 F.3d 610, 619 (7th Cir. 1998). DoD could only guess what such an order restrained, because the requested injunction only "refers generally" to adverse actions without "clearly defin[ing]" the particular "conduct [that would be] proscribed." *See Scott v. Schedler*, 826 F.3d 207, 211–14 (5th Cir. 2016) (citation omitted).

This vagueness problem is compounded by the fact that Plaintiffs have conceded that they are "not seek[ing] to preclude consideration of Plaintiffs' 'vaccination status in making deployment, assignment, and other operational decisions.'" Mot. at 1 (quoting *Navy SEALs 1–26*, 142 S. Ct. at 1301). And yet their requested injunction appears to directly contradict that concession, as well as the Supreme Court's recent grant of the government's request for a partial stay of a similar injunction in *Navy SEALs 1–26*. There, as Plaintiffs acknowledge, the Supreme Court granted the government's request to partially stay the relevant injunction "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." 142 S. Ct. at 1301. Yet, by its terms, Plaintiffs' requested injunction would seek to enjoin DoD from taking *any and all* "adverse" actions "as a result of" or "in conjunction with" Plaintiffs' failure to receive the COVID-19 vaccine or requests for religious or medical exemptions. Therefore, even if this Court were to determine that Plaintiffs are entitled to some form of relief, the Court should not grant the overly vague injunction requested by Plaintiffs or issue any relief contrary to the Supreme Court's order in *Navy SEALs 1–26*.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: July 15, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar. No. 55816869
ZACHARY A. AVALLONE
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2022, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch