# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **JOSHUA WILSON,** *et al* | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cv-438-ALM** |
| | § | |
| **LLOYD AUSTIN, III,** *et al.,* | § | |
| | § | |
| **Defendants** | § | |

Annmarie Acevedo
William Adams
Kevin Aflatooni
Charles Albertson
Mayra Alexander
James Allen
Jared Allen
Israel Alvarado
Brett Andersen
Joshua Anderson
Marc Anderson
Coy Andrew
Brian Anecito
Charles Arbuckle
Derek Archer
James Armstrong
Catherine Arnett
Alexandra Arrabito
Jared Arteaga
Wade Ashley
Frank Aucompaugh
Kevin Austin
Kahmaal Autman
Anthony Autry
Scott Bailey Jr.
Lanii Baillie
Bryant Baker
John Baker
Alec Banse
Canaan Barger
Zackery Barkell

1

Matthew Barlow
Amos Bartlow
Mark Bashaw
Charles Baumann
Andrew Bean
Andrew Beardsley
David Beckerman
Nathanial Bergan
David Bergman
Michael Bernard
Anthony Bevers
Alec Birchfield
Kim Bitter
Jeffrey Blasiak
Nathan Blevins
Matthew Boedeker
Cameron Bois
Brandon Bond
Rocio Boone
Aaron Borszich
Panagiotis Boutsikaks
John Bowes
Camille Braccio
Sean Brady
Zachary Braida
John Branch
Jonathan Braunstein
Matthew Bridge
Anthony Brooks
Brandon Brown
Jonah Brown
Evelyn Bruno
Jock Bryant
Todd Buchanan
Benjamin Buchta
Thomas Budge
Paige Bump
Christopher Burge
Eric Burgess
Dominick Burkhardt
Claire Burns
Israel Caban
Donald Calkins
Tessa Callender
Christopher Campbell

2

Michael Capelle
Ryan Carey
David Carlo
Eric Carlo
David Carr
Andrew Carson
Alexander Carver-Robbins
Michael Casano
Nicholas Castle
Matthew Castro
Austen Catlin
Mario Ceccarelli
Anthony Cecora
Briana Chavez
Jonathan Cheek
Brent Chisholm
Lorne Christopher
Michael Chuzie
Tanya Clark
Tyler Clawson
Jason Clendenin
Joshua Cobin
Catherine Cochran
Zachary Cochran
Kristopher Cockburn
Jacob Cole
Nathan Collins
Ralph Collins
Michael Coloney
Bryan Colucci
Rylan Commins
Brendon Connor
Lydia Cook (Rhyne)
Daniel Cooke
Ryan Cooke
John Cooper
Ronnie Cooper, Jr
Gregg Costin
Joseph Cotton
Deborah Countryman
Joseph Cristi
William Cronkright
Caroline Crumbacker
Melissa Cunningham
Richard Cunningham

3

Michael Curley
Daniel Dahlby
Patrick Daly
Andrew Daniele
Michael Darnell
Michael Davenport
Nathan Davies
Kyle Davis
Alexander Decampi
Darren DeCarlo
Daniel Decker
Robert Dee
Matthew Deister
Lucian Dekich
Anthony Delikat
George Deliyanides
Jason Delmar
Philip DeMola
Nathan Dennen
David Densmore
Christopher DePasquale
Ethan Desoto
Hayden Deverill
Cheyne Dewolfe
James Dickens
Justin Diercks
Adrian Dimas
Zebulon Dimmett
Joshua Donaldson
Crystal Donders
Zackary Donohue
Christopher Doscher
James Douglas
Jonah Dreyfus
Crystal Dubois
Elijah Duffy
Justin Dumais
Elizabeth Dumlao
Christopher Duncan
Kyle Dunlap
Aaron Dunn
Aaron Dunson
Kieran Durden
Adam Dyess
Phillip Edwards

Aaron Elliott
Abigail Elliott
Katheryn Ellis
Jacob Ellwood
Elden Engelhard
Garrett Ericksen
Jacob Erickson
John Eschmann
Caroline Essex
Peter Evans
Christopher Evatt
Carlos Fabian
Scott Farrar
Avery Farson
Ryan Faucheux
Joshua Feagley
John Felbinger
Daniel Ferris
Leah Fiedler
Luke Findley
Alexander Fogassy
Nicole Foy
John Frankman
Jonathan Franzone
Joshua Frazier
Yulia Frazier
Rose Fredericks
William Freincle
Carl Friend
Jeremy Frix
George Fuller
Johnathan Fyffe
Baron Gaines
Alexander Galloway
Ryan Games
Christopher Garcia
Dannielle Garcia
Raquel Garcia
Chayse Garrett
Eric Gayoso
Sarah Georgiades
Benjamin Gepford
Patrick Gibson
Micah Gillette
Shay Gilliam

Austin Gillis
Sean Gilson
David Glenn
Andrew Glowa
James Goeppinger
John Goff
Caleb Gooch
Jamie Goodman
Erik Gorczok
Joseph Goris
Joshua Gorny
Max Goulas
Leslie Graham
Sydney Graham
Daniel Greer
Andrew Grieb
Ryan Grim
David Gritsavage
James Groves
Desirae Grumbine
Katherine Guarino
Thaddeus Guerrero
John Gurley
Reed Guthrie
Travis Hagel
Joel Hakes
Kimberly Hall
Henry Hamilton
Daniel Hanna
Gabe Harcrow
Jordan Harriott
Joy Harris
Kenneth Harris
Kristan Harrison
Jason Hart
Jon Hauger
Matthew Hawke
Jonathan Healey
Andrew Helman
Murray Hemstreet
Katie Henschel
Crystal Hensley
Briar Herb
Marcella Herster-Dudley
Robert Herster-Dudley

Shane Hesse
Joseph Heyser
Shannon Hickman
Peter Hickson
Kevin Hill
Paul Hinen
James Holden
Nathan Hollander
Nicole Hollander
Kristopher Holstege
Charles Hood III
Alexander Hooks
Katherine Hoops
Joshua Hoppe
Henry Hortenstine
James Houchin
Benjamin Hough
Caleb Howard
Mark Hryhorchuk
Donald Huggins
David Humiston
Michael Humiston
Nickolas Hurst
Paul Hyde
John Ihrig
Jensine Indorf
Noah Inglesby
Joseph Irwin
Denis Isenburg Jr.
Curtis Ivins
Jay Jacobsen
Michael Jaeger
Jared Jaquish
Nathan Jaquish
Nathan Jenkins
Justin Jensen
Wade A Jensen
Jose Jimenez
James Job
David Johnsen
Melanie Johnson
Jason Jones
Troy Jones
Christopher Jordan
Thomas Jordan

Robert Jovin
Kaleb Kaetterhenry
Jordan Kahrs
Seth Kaiser
Melissa Kalas
Nicholas Kastilahn
William Kazyak
Clinton Kelley
Dwayne Kennedy
Marissa Kester
John Kieffer
Cecil Kindle III
Brandi King
Morgan Kissane
Douglas Kissell
Sarah Klaeser-Fernandez
Justin Koch
David Kopp
Michael Koslow
John Koza
David Kucharik
Paul Kuhn
Zarah Oshin Lacsamana
Zachary Lafreniere
Jonathan Lanser
Jordan Lantzy
Matthew Larkin
Wade Latham
Christopher Laughrun
James LaViola
Ryan Leavitt
Royce Legg
Matthew Leiferman
Matthew Lemoine
Matthew Lettieri
Jonathan Lightfoot
Kyle Lindsay
Neil Lisowski
Billy Lively
Austin Locke
Matthew Long
Christopher Lott
Max Lubitz
Michael Lucky
Andrew Luiken

Jamie Luna
Stephanie Lunstrum
Joel Mack
Jeffrey MacNeill
Kevin MacNeill
Paula Macomber
Stephen Maksim
Ivan Maldonado
David Manrrique
Stephen Maro
Eric Marple
Brady Marsh
Tyler Marsh
John Martin
Neil Martin
Jon Martinez
Michaeles Martinez
Morgan Martinez
Brittani Mathis
Leidy Matos
Brett McAuliff
William McCary
Christopher Mccauley
Austen McClain
Joshua McClure
Randy McCoy
Justin McDowell
Rick McGettigan
David McIlroy
Jesse McLean
Kelly McLean
Derek McMann
Joel McNally
Cameron Medford
Brad Melichar
David Mendoza
Kyle Meyer
Timothy Meyer
James Miller
Leman Miller
Stephanie Miller
Tamra Mills
Jameson Millspaugh
Dustin Moll
Acarya Monge

9

Anthony Monteleone
John Montes
Brian Moody
Cristen Moore
Joshua Moore
Kyle Moore
Nicholas Moore
Colin Morella
Vincent Morgan Jr.
Eric Morris
Jamie Morris
Kyle Morris
Nicholas Morrison
Michael Moseley
Christopher Moss
William Moxey
Stephen Moy
Marcus Moyer
Neil Mulvihill
Melanie Muma
Jordan Muntain
Bryan Murdock
Carra Murdock
Nicholas Murdock
Richard Murphy
Shannon Murray
Chase Myers
Katherine Myers
Emily Nankivell
Derek Neal
Jason Nettrouer
Katherine Newcom
Russell Newman
Giancarlo Nilsson-Antonelli
Danielle Nottle
Dan Oberg
Andrew Ogle
Rovi Orion
Matthew Orozco
Ryan Orr
Sterling Orren
David Orwig
Nicola Paille
Travis Palmer
Trenton Palmer

Millicent Parker
David Partin
Russell Patten
Frankie Paulino
Matthew Peltier
Christopher Perry
Ryan Petersen
Casey Peterson
Casey Peterson
James Peterson
Andrei Petrov
Justin Phillips
Lloyd Pichelmayer
Caleb Pickard
Brandon Pieper
Zachary Pierce
Jennifer Piggott
Russell Piggott
Robert Pike
Michael Pizzari
William Plowman
David Pointer
Ryan Potter
Ryan Pritchard
Megan Proano
Zachary Proano
Frank Prokop
Alvaro Provencio
Roman Ramirez
Larissa Randell
Joel Rasanen
John Rath
Kenneth Reber
Stephen Redmon
Joshua Reeder
Jordan Reeves
Daniel Reuter
Lucas Revaul
Ryan Rex
Jeremy Rhyan
Paul Rhyne II
Thomas Richmond
Samuel Rinaldi
Favio Rivera
Anthony Roberto

Blaine Roberts
Susanna Roberts
Chauncy Rockwell
Daniel Rocoff
Shannan Roddy
Carlos Rodriguez
Daniel Romero
Adele Rosas
Greg Rosener
Melanie Roserie
Trenton Ross
Devon Rousseau
Stanley Ruda
William Ruehl
Eliot Rupe
Sean Russell
Thomas Rutt
Victoria Rutt
Thomas J. Ryan
Scott Saffran
Roberto Salinas-Jiminez
Richard Sanders
Matthew Sasser
Zachary Sasser
Patrick Scannell
Garrett Scarborough
Austin Schaeffer
Brogan Schaeffer
Samuel Schielke
Strom Schiereck
Joshua Schineller
Joseph Schlueter
Jerry Schmaljohann
Sara Schmidt
Daniel Schneider
Kenneth Schneider
Sebastian Schneider
Justin Schreiner
Kyle Schriever
Daniel Schultz
Aaron Seaman
Haina Searls
Ethan Senn
Zachary Senn
Jeremy Severson

Andrew Severt
Hayley Sewell
Devin Shaloy
Nolan Sharp
Ryan Sharp
Matt Shaw
Nathan Shaw
Jaime Sherwood
Kathleen Shields
Richard Shirley
Jonathan Shour
David Shrift
Jeffrey Siegman
Daniel Simoneaux
John Simpson
George Skinner
Christopher Skoutas
Marcus Smart
Aaron Smith
Grant Smith
Jimmy Smith
Joshua Smith
Matthew Smith
Raquel Smith
Robert Smith
Sander Smith
Stephen Smith
Steven Smith
Joshua Snodgrass
Rita Sorensen
Kelly Soule
Bryan Spence
William Sponheimer
Christian Springer
May SquibbAnderson
Jonathan Stafford
Gregory Stammen
James Stanley
David Stebbins
Jonathan Steel
David Stein
Philip Stein
Ryan Stepp
Cody Stewart
Zachary Stolp

Ashley Strong
Matthew Strongin
Ross Studwell
William Sullivan
Jesse Summers
Mark Suthard
Michael Sward
Seth Swartz
Daniel Syzdek
Andrew Teague
Samantha Teague
Dominic Teich
John Thackrah
Dean Thibodeau
Hunter Thibodeau
Chelisha Thomas
Daniel Thomas
Preston Thompson
Trey Thompson
Catherine Tighe
Mary Tighe
Allen Toepfer
Micah Tollis
Hans Toohey
Refugio Toscano
Adam Treaster
Matthew Trowbridge
Thomas Trowbridge
Naomi Troy
Alejandro Trujillo
David Trupe
Cameron Turner
Courtney Tutela
Eevee Uzumaki
Killian Valencia
Victor Valencia
Nathan Valle
Stephen Van Doren
Micah Van Mersbergen
Kimberly Vasquez
Roberto Vazquez
Aaron Vidal
Andrew Villarreal
Steven Vladiff
Frederick Volcansek

Zafer Vurgun
Justin Wade
Vincent Wagner
Justin Wahlster
Jordan Wall
John Walsh
Brandon Ward
Jason A. Ward
Jason J. Ward
Seth Way
Joseph Weakley
Russell Weber
Curtis Weddle
Stephen Weddle
Tricha Weeks
Ashley Welch
Stephen Welch
Gerald Welker
Christopher Wells
Scott Wells
Mark Westphal
Bryan White
Tyler Whitney
Alexander Wieczorek
Joseph Wier
Patrick Wier
Philip Wier
Ryan Wilcox
Amber Wilk
Jacob Wilkins
Austin Will
Lauren Williams
Stephen Williams
Steven Wisniewski
Derek Woellhof
Kirsten Wolfford
Brandon Wood
Juan Woods
Ross Woods
Patrick Woolcock
Jesse Wooster
Eden Woznick
Jericho-Miguel Woznick
Jessika Wray
Cassidy Wright

Jonathan Wright
Mark Yackley
Michael Yenchko III
Taylor Yontz
David Yorck
Rachel Young
Tomasz Zaremba
Michael Zentgraf
Josiah Zimmerman
Noah Zuniga
John Doe, unnamed Navy officer
John Doe, unnamed Marine Corps officer
John Doe, unnamed Army Staff NCO
John Doe, unnamed Air Force officer
John Doe, unnamed Army officer
John Doe, unnamed Air Force Staff NCO
John Doe, unnamed Army officer
Jane Roe, unnamed Air Force officer
Jane Roe, unnamed Air Force enlisted
Jane Roe, unnamed Air Force enlisted
Jane Roe, unnamed Air Force enlisted
John Doe, unnamed Air Force officer
John Doe, unnamed Army Nat'l Guard officer
John Doe, unnamed Air Nat'l Guard officer
John Doe, unnamed Marine Corps Staff NCO
John Doe, unnamed Air Force/Nat'l Guard officer
John Doe, unnamed Air Force Reserve officer
John Doe, unnamed Navy officer
John Doe, unnamed Air Force Staff NCO
Jane Roe, unnamed Air Force Reserve Staff NCO
John Doe, unnamed Air Force officer
John Doe, unnamed Marine Corps officer
Jane Roe, unnamed Air Force/Nat'l Guard enlisted
John Doe, unnamed Air Force Reserve officer
John Doe, unnamed Air Force Reserve enlisted
John Doe, unnamed Air Force officer
John Doe, unnamed Marine Corps officer
Jane Roe, unnamed Army Nat'l Guard enlisted
John Doe, unnamed Air Force officer
John Doe, unnamed Navy Reserve officer
John Doe, unnamed Navy enlisted
Jane Roe, unnamed Air Force/Nat'l Guard Staff NCO
John Doe, unnamed Navy officer
John Doe, unnamed Army Reserve enlisted
John Doe, unnamed Air Force Reserve officer

16

John Doe, unnamed Marine Corps officer
John Doe, unnamed Army Nat'l Guard officer
John Doe, unnamed Air Force enlisted
John Doe, unnamed Air Force/Nat'l Guard officer
John Doe, unnamed Army Nat'l Guard officer
John Doe, unnamed Air Force officer
John Doe, unnamed Air Force enlisted
John Doe, unnamed Marine Corps officer
John Doe, unnamed Army enlisted
Jane Roe, unnamed Air Force officer
John Doe, unnamed Air Force/Nat'l Guard Staff NCO
John Doe, unnamed Navy Reserve officer
John Doe, unnamed Navy Reserve officer
Jane Roe, unnamed Army officer
John Doe, unnamed Marine Corps Reserve officer
John Doe, unnamed Army enlisted
Jane Roe, unnamed Air Force enlisted
John Doe, unnamed Air Force Staff NCO
John Doe, unnamed Air Force enlisted
John Doe, unnamed Marine Corps officer
John Doe, unnamed Air Force enlisted
John Doe, unnamed Army enlisted
Jane Roe, unnamed Air Force enlisted
Jane Roe, unnamed Air Force officer
Jane Roe, unnamed Army Reserve enlisted
John Doe, unnamed Army Reserve enlisted
John Doe, unnamed Air Force enlisted
John Doe, unnamed Army Staff NCO
John Doe, unnamed Air Force Reserve officer
John Doe, unnamed Air Force officer
John Doe, unnamed Marine Corps NCO
John Doe, unnamed Army officer
John Doe, unnamed Army Nat'l Guard enlisted

Intervening Plaintiffs

v.

LLOYD AUSTIN III, Secretary of Defense,

JANET WOODCOCK, Acting Commissioner of
the Food and Drug Administration,

XAVIER BECERRA, Secretary of the
Dept. of Health & Human Services

17

Defendants

## **INTERVENING COMPLAINT OF 739 ADDITIONAL PLAINTIFFS**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure ("FRCP"), the 739 Plaintiffs (combined named and pseudonymously) appearing above move this honorable Court to intervene in the captioned action. The Additional plaintiffs are (1) all military members of various branches of the Armed Forces, (2) all subject to the Department of Defense's (DOD) Vaccine Mandate. The additional Plaintiffs are all equally situated as the named plaintiffs with respect to the DOD Mandate, and all pursue the same exact legal claims and remedies against the Defendants as the original Plaintiffs in this action. *See* ECF #1. All of these 739 are also members of MAFL, but given the government's position with respect to named and unnamed plaintiffs, these Plaintiffs move the Court to be recognized on the same footing as their named colleagues so they are not processed for separation during the pendency of the action while their rights are being adjudicated.

## **PARTIES**

1.      Defendant DOD is an agency of the United States Government. It is led by Secretary Lloyd Austin, III who is sued in his official capacity as the Secretary of Defense ("SecDef").

2.      Defendant Food and Drug Administration (FDA) is an agency of the United States Government. It is led by acting Commissioner Janet Woodcock who is sued in her official capacity as head of the FDA.

3.      Defendant Department of Health and Human Services (DHHS) is an agency of the United States Government and oversees many of the sub-agencies that are the subject of litigation in this action. It is led by Secretary Xavier Becerra who is sued in his official capacity as head of

18

DHHS.

4.      Of the 739 plaintiffs listed above, 68 are appearing pseudonymously because they fear reprisals and other adverse actions will be taken against them by their chains of command for seeking judicial relief. These fears are a direct result of Defendants' actions in adopting policies that specifically discriminate against the "unvaccinated" by punishing those who have not yet taken the mRNA shots, including: denying normal leave, liberty, travel, professional schools, removing unvaccinated members from leadership or command positions that they have been selected for, denying temporary duty for career progression, identifying their medical status their medical status publicly by requiring masks to be worn while outside on base, and even denying access to necessary services, such as the chow hall – that is, some unvaccinated plaintiffs have been denied the ability to eat alongside their colleagues in the dining facilities, among many, many other gross and dishonorable actions taken by their "leadership" in enforcing this mandate.

5.      Most (i.e. greater than 90%) of the 739 plaintiffs have applied for Religious Accommodations or Medical Exemptions from the Mandate and, despite the Defendants' written policies claiming that no adverse actions will be taken against those who request exemptions, the overwhelming majority of the Plaintiffs who have filed for an exemption of one kind or another have been targeted for harassment, public censure, and humiliation over their vaccination status by the Defendants and their agents, with complete disregard for policies claiming that this would not be done.[1]

---

[1] Intervening Plaintiffs all have signed declarations detailing their individual circumstances, but to include them would make an already-voluminous filing unmanageable. The Intervening Plaintiffs rely upon their 14 named colleagues in the original complaint as representative of the harms they have all seen – but all can provide their own stories to verify the factual claims made herein. Additionally, counsel twice attempted to file this motion by the date originally noticed in the PI

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court under Administrative Procedures Act review (5 U.S.C. §704 and §706), the Declaratory Judgment Act (28 U.S.C. §2201), and under 28 U.S.C. §§1331, 1346, and 1361 because it presents federal questions regarding Plaintiffs' statutory and constitutional rights under U.S. Const. Amends. V & XIV, 10 U.S.C. §1107 and §1107a, 21 U.S.C. §360bbb-3; and 42 U.S.C. §262.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(e)(1) and §1402(a)(1) because a significant number of the Plaintiffs, are domiciled or stationed in the Eastern District of Texas. Other members of the plaintiff class are aboard Defendant DoD military reservations in the court's district subject to the DOD COVID-19 Vaccine Mandate Order, and all members are directly affected by and subject to its mandate to take an experimental, mRNA gene-therapy shot that has never before been licensed for use in the United States.

## PROCEDURAL HISTORY

8.      On May 23, 2022, 14 individually named Plaintiffs and an unincorporated association filed the original complaint. (ECF #1). The unincorporated association, Members of the Armed Forces for Liberty ("MAFL") was created to represent the interests of unnamed plaintiffs along with the named plaintiffs.

9.      The original complaint challenges a number of related agency actions: (1) Defendant Department of Defense's ("DoD") August 24, 2021 COVID-19 "vaccine" Mandate ("DoD Mandate") that attempted to circumvent several pieces of federal law by placing a non-

---

Reply, but due to technical glitches with ECF were twice dropped from the system after entering more than 400 plaintiffs'.

approved and novel mRNA gene-therapy on the list of DoD required vaccines; (2) determinations

by the DoD and Defendant Food and Drug Administration ("FDA") that unlicensed COVID-19

"vaccines" subject to an Emergency Use Authorization ("EUA") are "interchangeable" with, and

may be mandated "as if" they were FDA-licensed vaccines labeled in accordance with FDA

requirements; (3) Defendant DoD's categorical elimination of existing medical exemptions and

denial of Plaintiffs' medical exemption requests; (4) Defendant Health and Human Services'

("HHS") September 1, 2021 change to the definition  of  "vaccines" and "vaccination" to

encompass Pfizer/BioNTech and Moderna messenger RNA ("mRNA") gene therapy  treatments

so that these treatments could be mandated; (5) Defendant FDA's approvals of Pfizer/BioNTech

and Moderna's mRNA gene therapy treatments by miscategorizing them as "vaccines" in order to

rely upon a legal paradigm that does not apply, and (6) Defendant DoD's punishment and actual

or imminent discharge of Plaintiffs and similarly situated class members based on their alleged

non-compliance with the unlawful DoD Mandate and refusal to take an unwanted, unproven, and

dangerous medical treatment.

## **FACTS CONCERNING PLAINTIFFS' CLAIMS**

10.     During the pendency of this action, Defendant DOD has continued to discharge

members of the plaintiff class (as well as other military members) for refusing to take the mRNA

shots. The government Defendants have taken the legal position that the members of the

unincorporated association that is also named as a plaintiff in the original action have no legal

standing or status before this Court; thus, the 739 intervening Plaintiffs move this Court to be

added as Plaintiffs so that they can have legal status during the pendency of this action.

11.     Of the 739 intervening plaintiffs, more than 675 have submitted some form of

Religious Accommodation (RA) or Medical Exemption (ME) to the mandate; none of the RARs

have been granted and the few medical exemptions granted were either temporary and/or have been revoked. In many cases, Plaintiffs have been targeted and discriminated for even attempting to their rights, whether those rights are religious or medical. *See, e.g.*, Compl. ¶¶124-126.

12.     Close to 100 of the additional plaintiffs are facing a drop to the IRR, some with more than 18 years of service and who by law should be allowed to remain in their active status in order to retire absent proven misconduct. 10 U.S.C. §1176 (for enlisted members); 10 U.S.C. §12646 (for officers).

13.     Additional Plaintiffs are all in exactly the same situation as the named plaintiffs with respect to these claims: they are members of the military subject to Defendant Austin's mandate, which is being pushed based upon the collusion and fraud of both Defendants FDA and DOD attempting an end-run around Congressional statutes enacted to prohibit and prevent exactly these kinds of acts from occurring. The Intervening Complainants press the same claims as the 14 named plaintiffs – and members of MAFL – in the original complaint in this action, which are re-pleaded in summarized form below.[2]

14.     All of the intervening plaintiffs have signed and executed declarations attesting to the impact of the Defendants' actions in forcing these shots on them against their will.

15.     All of the intervening plaintiffs have signed and executed declarations detailing the Defendants' actions in denying the intervening plaintiffs their rights that instigated the current action.

## FIRST CAUSE OF ACTION

### Violation of Fifth and Fourteenth Amendment Procedural Due Process Rights

---

[2] To the extent allowable by rule and law, Additional Plaintiffs incorporate the original complaint by reference, but re-plead the claims in shortened form.

**U.S. Const. amends. V & XIV**

**(All Plaintiffs Against Defendants DOD and HHS)**

16.     Intervening Plaintiffs incorporate the foregoing as if fully set forth herein.

17.     The Fifth Amendment Due Process Clause provides that no person may "be deprived of life, liberty or property without due process of law." U.S. CONST. AMEND. V. The DOD Mandate would deprive Plaintiffs of all three, as well as and does so without providing "fair notice" of the rules to which they are subject.

18.     The DOD Mandate requires Plaintiffs to take an mRNA gene-therapy without their consent and thereby exposes them to a non-negligible risk of death or serious injury.

19.     The DOD Mandate "threatens to substantially burden the liberty interests" of Plaintiffs "put to a choice between their job(s) and their jab(s)." *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 2021 WL 5279381, at *8 (5th Cir. 2021) ("*OSHA*"). Plaintiffs face not only the loss of the current employment, but also will be barred from employment by the federal government or federal contractors due to the Federal Employee and Federal Contractor Mandates, and they will also face significantly difficulties with private employers due to their vaccination, loss of security clearances for "misconduct," and discharge status.

20.     Refusal may also result in deprivation of protected property interests. Disciplinary action or discharge status may cause Plaintiffs to lose retirement, veterans and other governmental benefits to which they are entitled. Loss of pay and benefits amount to hundreds of thousands or even millions of dollars in many cases for pilots and other highly-trained specialists.

21.     Even if Plaintiffs were to become "fully vaccinated," they would be threatened with the loss of this status (and consequent deprivation of protected life, liberty and property interests), at any time and without fair notice, due to changes in the CDC or FDA approval of booster shots

23

and change to the definition of "fully vaccinated." So would the majority of service members who are currently deemed "fully vaccinated." The rapid decline in efficacy and need for booster shots demonstrates that there is no scientific consensus on Comirnaty's efficacy, protection provided, or even dosage, while Pfizer has acknowledged that the two-dose regimen required by the DOD Mandate does not protect against the Omicron variant. *See Compl.* ¶ **Error! Reference source not found.**. "As COVID-19 is a new disease, and the vaccines are even newer, the long-term efficacy of immunity derived from vaccination and infection is not proven." *Klaassen v. Trustees of Ind. Univ.,* --- F.Supp.3d. ---, 2021 WL 3073926, at *12 (N.D. Ind. July 18, 2021).

22.     The injections are not vaccines, but are, as a factual, legal, and scientific  matter, medical treatments. The CDC intentionally changed its own definitions of "Vaccine" and "Vaccination" overnight on Sep. 1, 2021, to eliminate the word "immunity" from the definition. Immunity is the *sine qua non* of all vaccines; it is the entire point of vaccination as a public health measure. *See Compl.* ¶¶ 85-92. The Defendant DOD's own regulation explicitly defines a "vaccine" and "vaccination" and both definitions make clear beyond cavil that these shots do not meet the requirements to be defined as vaccines. *See* DODI 6205.02 ("Definitions.").

23.     This definitional change without public comment or input was an intentional act, taken by Defendant FDA's agents after it was clear that the mRNA shots did not produce sterilizing immunity. This was also done despite the fact that the manufacturer had already specifically applied for, and received a BLA license from Defendant FDA "to manufacture the product, COVID-19 Vaccine, mRNA, which is indicated for *active immunization to **prevent** coronavirus disease 2019 (COVID-19) caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) in individuals 16 years of age and older." See ECF #1-18, BioNTech FDA BLA Approval Letter at 1-2.

24

24.     This action as designed to obviate plaintiffs' rights to refuse unwanted medical treatment by recategorizing a "treatment" as a "vaccine" and thereby relying upon legal precedent around mandatory vaccination in order to compel plaintiffs to take a medical treatment without their informed consent and to deprive them of their rights to life, liberty and property without procedural due process.

25.     Accordingly, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief restraining Defendants from enforcing the Defendant DoD's Vaccine Mandate.

26.     Pursuant to 28 U.S. Code §§ 2201-02 and other applicable law, Plaintiffs are entitled to a declaration that the Defendant DoD's Vaccine Mandate is unlawful and any further relief which may be appropriate.

## SECOND CAUSE OF ACTION

### Violation of Fifth and Fourteenth Amendment Substantive Due Process Rights
### U.S. CONST. AMENDS. V & XIV

### (All Plaintiffs Against Defendant DOD)

27.     Intervening Plaintiffs incorporate all of the foregoing as if fully set forth in this cause of action.

28.     The military "vaccine" mandate violates the liberty protected by the Fifth and Fourteenth Amendments to the Constitution, which includes rights of personal autonomy, self-determination, bodily integrity and the right to reject medical treatment.

29.     The ability to decide whether to accept or refuse medical treatment is a fundamental right. Accordingly, Defendant Austin's "Vaccine" Mandate violates Plaintiffs' constitutional rights with regard to medical treatment.

30.     Because the injections are treatments, and not vaccines, strict scrutiny applies. The

U.S. Supreme Court has recognized a "general liberty interest in refusing medical treatment." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278, 110 S. Ct. 2841, 2851, 111 L.Ed.2d 224, 242 (1990). It has also recognized that the forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty. *Washington v. Harper*, 494 U.S. 210, 229, 110 S. Ct. 1028, 1041, 108 L.Ed.2d 178, 203 (1990), see also *id*. at 223 (further acknowledging in dicta that, outside of the prison context, the right to refuse treatment would be a "fundamental right" subject to strict scrutiny).[3]

31.     Because mandated medical treatments are a substantial burden, Defendants must prove that the Vaccine Mandate is narrowly tailored to meet a compelling interest.

32.     No such compelling interest exists because, as alleged above, the injections are not effective against the now dominant Omicron variant of SARS-CoV-2 in that they do not prevent the recipient from becoming infected, getting reinfected, or transmitting SARS-CoV-2 to others. Indeed, evidence shows that vaccinated individuals have more SARS-CoV-2 in their nasal passages than unvaccinated people do. *See* Compl. ¶¶ 108-119.

---

[3] Although *Cruzan* was decided under the due process clause of the Fourteenth Amendment, the Supreme Court has long held that the same substantive due process analysis applied to the states under the due process clause of the Fourteenth Amendment also applies to the federal government under the due process clause of the Fifth Amendment. *See, e.g., Bolling v. Sharpe,* 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government.") *See also, Adarand Constructors v. Pena*, 515 U.S. 200 (1995)(same); *Frontiero v. Richardson*, 411 U.S. 677 (1973) (holding federal law discriminating on basis of sex unconstitutional under the Fifth Amendment due process clause based on Fourteenth Amendment analysis); *Califano v. Goldfarb*, 430 U.S. 199 (1977)(striking down federal racial classification on basis of Fifth Amendment due process clause stating that strict scrutiny is the proper standard for analysis of all racial classifications, whether imposed by a federal, state, or local actor. *Id*. at 231, superseded by statute); *Jimenez v. Weinberger*, 417 U.S. 628 (1974) (striking down provision of the Social Security Act based upon illegitimacy applying substantive due process analysis through the due process of clause of the Fifth Amendment).

33.     By Defendant FDA's own standards, the current EUA shots only demonstrate that they *may* have been effective against the original SARS-CoV-2 Alpha variant, but that strain has come and gone, and the injections—designed to fight yesterday's threat—are simply "obsolete" against the current variant. *See* ECF #1-3, *McCullough Supp. Decl.*, ¶12.

34.     Since the injections are ineffective against the Delta and Omicron viral variants, and the original variant has been supplanted, there can be no compelling interest to mandate their use.

35.     Even if there were a compelling interest in mandating the injections, the Defendant DoD's mandate is not narrowly tailored to achieve such an interest.

36.     The blanket mandate ignores individual factors increasing or decreasing the risks that the plaintiffs pose to themselves or to others. For example, many of the plaintiffs are fighter pilots or crew in aircraft that use individual oxygen, such that some of these plaintiffs do not even share the same air with anyone else while performing their duties.

37.     Defendants also entirely disregard whether Plaintiffs have already obtained natural immunity despite the fact that natural immunity does actually provide immunity whereas the injections do not.

38.     Treating all servicemembers the same, regardless of their individual medical status, risk factors, and natural immunity status is not narrowly tailored.

39.     Moreover, the Vaccine Mandate fails entirely to consider other existing treatment options beyond the injections as part of a more narrowly tailored approach.

40.     Given these facts, the Vaccine Mandate has no real or substantial relation to Force Protection and is, instead, a public health policy backed by force, turning the entire program into a plain, palpable invasion of rights secured by the fundamental law.

41.     Accordingly, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief restraining Defendants from enforcing the Defendant DoD's Vaccine Mandate.

42.     Pursuant to 28 U.S. Code §§ 2201-02 and other applicable law, Plaintiffs are entitled to a declaration that the Defendant DoD's Vaccine Mandate is unlawful and any further relief which may be appropriate.

### THIRD CAUSE OF ACTION

**Unconstitutional Conditions**
**(All Plaintiffs Against Defendant DOD)**

43.     Intervening Plaintiffs reallege the foregoing as if fully set forth in this Count.

44.     The Vaccine Mandate violates the unconstitutional conditions doctrine, under which the government may not condition employment "on a basis that infringes [an employee's] constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); see also *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) ("[T]he unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.").

45.     Unconstitutional conditions case law focuses on the existence of coercion by the government to induce a citizen – or class of citizens – to give up a right or benefit. According to this doctrine, the Defendants cannot impair Plaintiff's right to refuse medical care through forms of coercion and through this mandate. *See, e.g.*, *Memorial Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974) ("[An] overarching principle, known as the unconstitutional conditions doctrine ... vindicates the Constitution's enumerated rights by preventing the government from coercing the people into giving them up.")

46.     The decision whether or not to take a medical treatment is a fundamental human

28

right which all Plaintiffs have. The Plaintiffs cannot be forced to choose between their right to refuse medical treatment, on the one hand, and on the other hand, the loss of their livelihoods, benefits, and fundamental rights, as well as further punishment under Article 92 of the UCMJ for refusal to obey what is in actuality an unlawful order.

47.     Accordingly, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief restraining Defendants from enforcing the Defendant DoD's Vaccine Mandate.

48.     Pursuant to 28 U.S. Code §§ 2201-02 and other applicable law, Plaintiffs are entitled to a declaration that the Defendant DoD's Vaccine Mandate is unlawful and any further relief which may be appropriate.

### FOURTH CAUSE OF ACTION

**Violation of Fifth and Fourteenth Amendment Equal Protection**
**U.S. CONST. AMENDS. V & XIV**
**(All Plaintiffs Against Defendants DOD and HHS)**

49.     Intervening Plaintiffs reallege all of the foregoing as if fully set forth in this cause of action.

50.     The Equal Protection Clause prohibits legal classifications that affect equally situated groups of citizens differently than others. (*Engquist v. Or. Dept. of Agric.* (2008) 553 U.S. 591, 601.) The touchstone of this analysis is whether a state creates disparity between classes of individuals whose situations are arguably indistinguishable. (*Ross v. Moffitt* (1974) 417 U.S. 600, 609.)

51.     The Defendant DoD's Mandate creates two new classes of soldier that is recorded in no doctrine – and exists completely at the whim of the Defendant Lloyd Austin: (1) the "fully vaccinated, an undefined medical term also creates its own opposing sub-class (2) known as those "*not* fully vaccinated." The members of the second class get removed from their jobs even if they

request religious or medical accommodation – in flagrant violation of the Religious Freedom Restoration Act and the DoD's own orders that claims that no adverse action will be taken against them during the "accommodation process."[4]

52.     The "not fully vaccinated" also includes Plaintiffs who have had a severe adverse reaction or injury to the shot(s), but whose adverse reactions are being ignored in pursuit of the "mission" to inoculate every member of the Armed Services, individual medical conditions or needs be damned.

53.     The "not fully vaccinated" are threatened with discharge and punishment for speaking out or refusing to take unlicensed, EUA products under the aegis of "failure to obey a lawful order" under Article 92, UCMJ. At best, they cannot advance their careers because they are refused assignments, shifted out of their career field, and told they will be separated for "misconduct" for refusing a medical treatment. Further, they may receive less than a full honorable discharge from the Armed Forces, severely damaging their future employment prospects (if they can find employment at all due to federal and private vaccine mandates).

54.     Those who apparently comply with whatever number of injections and boosters the Secretary eventually decides is sufficient to be considered "fully vaccinated," in stark contrast, are applauded, get to advance in their profession and careers, provide for their families, and they will be given an "honorable" characterization for their voluntary military service. The number of shots

_____

[4] *See, e.g.*, *Navy SEAL 1 v. Biden,* No. 8:21-cv-2429, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021). The Air Force and Marine Corps purport to have recently granted a handful of RARs (*i.e.*, roughly a dozen out of nearly 25,000). However, these RARs appear to have been granted to those on terminal leave or conditioned upon their separation from the military. *See Navy SEAL 1 v. Austin*, --- F.Supp.3d ---, 2022 WL 534459, at *19 (M.D. Fla. Feb. 18, 2022); *Poffenbarger v. Kendall*, No. 3:22-cv-1, 2022 WL 594810, at *13 n.6 (S.D. Oh. Feb. 28, 2022).

required for full vaccination with mRNA COVID-19 vaccines is currently two, but if the DOD follows the CDC/ACIP recommendations, this will likely increase and may even become an annual requirement.

55.     But the situations of these two classes of service member are *indistinguishable* with regard to the entire justification for forcing them to take the injections: fully vaccinated soldiers can and frequently do become infected or re-infected with SARS-CoV-2 and can transmit SARS-CoV-2 to fellow soldiers, *just like those who are not fully vaccinated*. The injections make *no difference* in this critical respect between the injected and un-injected. (In fact, the evidence continues to point toward the conclusion that the injected catch and transmit Covid-19 more than the un-injected. *See* Compl. ¶¶ 120-124.) In any case, the CDC openly admits that the injections' only function is to make symptoms of the virus *less severe*.

56.     Discriminating against the un-injected controverts the Equal Protection Clause's goal of equality before the law. The Equal Protections Clause's requirement is for the laws of the Nation to treat similarly situated individuals *equally*.

57.     The Defendant DoD's arbitrary choices and Defendant HHS's new definitions that exclude those who have already had the virus as being "not fully vaccinated" are incoherent, illogical, and violate the Equal Protection rights of those who are un-injected, particularly where DoD considers those who have *already had* SARS-CoV-2 as "not fully vaccinated." Such an arbitrary and irrational policy cannot survive even rational basis review.

58.     This is inexplicable given that the DoD's own regulation (AR 40-562) on service wide vaccination, written and published in 2013, specifically exempts those whom have already had infection with a virus from vaccination for it.

59.     The additional Plaintiffs' who have already had Covid-19 number in the hundreds;

their Equal Protection rights under the Fourteenth Amendment are violated by the Defendant DoD and HHS/CDC's arbitrary, unscientific, unsupportable distinctions between Natural Immunity Plaintiffs, who have naturally acquired immunity, and other similarly situated military members who have only artificially induced immunity through mRNA injectables. The scientific evidence shows that vaccines (a) do not stop reinfection among the vaccinated, and (b) do not stop spread of the virus by the vaccinated. Thus, there is no impact on good order and discipline or the health of the Total Force by Plaintiffs who have already had COVID-19 remaining unvaccinated; and no logical reason why the class of Plaintiffs should be treated any differently than their peers. Accordingly, the policy cannot satisfy either rational basis review, much less the strict or intermediate scrutiny that should be applied here.

60.     The DOD's asserted justifications—military health and military readiness—are belied by the facts, and should be considered pretextual justifications that are not due deference by this Court.  The health and safety rationale is belied by the DOD's own numbers. *See*  ECF 1-1, Rans Decl. (31 total active-duty servicemember deaths over two years) as compared to the 119 deaths from these mRNA injectables over less than 6 months reported by the CDC in the VAERS system. *See* ECF 1-38, pp. 6, 13-14. DOD claims that the DOD Mandate is needed for military readiness are not plausible, because the vaccine mandate itself will create a crisis in readiness, as it may ultimately result in loss of 25,000 to 50,000 servicemembers based on the number of servicemembers seeking religious accommodations and the uniform denials of these requests.

61.     Moreover, the fact that Defendants target those with natural immunity and disregard their medical exemptions proves Defendants' policy is driven by improper animus against the small minority (1-2% for active-duty personnel) of servicemembers who are unvaccinated nearly all of whom also have sought religious accommodations. *See Trump v.*

*Hawaii*, 138 S.Ct. 2392, 2420 (2018) (quoting *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973)(noting that the Court has struck down policies as illegitimate under rational basis where "a common thread has been that the laws at issue lack any purpose other than a 'bare. . . desire to harm a politically unpopular group'").

62.      Defendant DOD and the Armed Service are thus discriminating against Plaintiffs both based on their medical condition or perceived disability and their religious beliefs, with a near perfect overlap, triggering strict scrutiny.

63.      As a result of the Defendants' unlawful actions, the Plaintiffs have suffered damages, including being required to take an unlicensed drug of unknown long-term safety profile; being subject to or threatened with disciplinary action under the Uniform Code of Military Justice (UCMJ), and including adverse administrative action that would characterize Plaintiffs' voluntary service as less than a full honorable discharge.

64.      Pursuant to the Fifth and Fourteenth Amendments, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief restraining Defendants from enforcing the DoD's Vaccine Mandate.

## FIFTH CAUSE OF ACTION

**Violation of Informed Consent Laws and the PHSA**
**10 U.S.C. §1107a, 21 U.S.C. 360bbb-3, 42 U.S.C. §262, & 5 USC § 706(2)(C)**
**(All Plaintiffs Against Defendants DOD and FDA)**

65.      Intervening Plaintiffs reallege all of the foregoing as if fully set forth in this count.

66.      Defendants have violated the Informed Consent Laws, the PHSA, and the FDA's mandatory labeling regulations. These laws do not provide a private right of action. Accordingly, Plaintiffs' claims for Defendants' *ultra vires* actions in excess of their statutory authority, and in violation of Plaintiffs' rights under applicable statutes and regulations, are brought under the APA.

33

*See, e.g., Austin*, at *2 & *7 n.12 (informed consent violations are "APA claims"). It is well-settled that, where a statute does not provide a cause of action, plaintiffs "are nevertheless entitled to enforce [the statute's] substantive requirements through the judicial review provisions of the APA." *Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.,* 393 F.Supp.2d 1362, 1378 (M.D. Ga. 2005).

67.    It is undisputed that the FDA-licensed COVID-19 vaccines (Comirnaty and Spikevax) are not available and have not been available since the announcement of the mandate. Defendant DOD is instead mandating EUA vaccines that prominently bear EUA labels while Defendant FDA allows it to happen, in complete abandonment of its charter. *See Austin*, 2021 WL 5816632, at *7. The Informed Consent Laws prohibit the mandatory administration of an EUA product. *See* 10 U.S.C. § 1107a and 21 U.S.C. § 360bbb-3. Plaintiffs' statutory rights are reflected in the fact sheet that the FDA requires to be included as part of product labeling, which expressly states that recipients have the "option to accept or refuse" the EUA product (*i.e.*, it cannot be mandated). *See* ECF #1-21, Pfizer-BioNTech EUA Vaccine Fact Sheet, at 13.

68.    Defendants seek to circumvent this express statutory prohibition on mandating an EUA product, stated clearly in the FDA's required product labeling, through guidance documents asserting that ***any EUA vaccine*** may be used interchangeably with, or "as if" it were, an FDA-licensed vaccine. *See, e.g.,* ECF #1-34, Air Force Guidance, §3.1.1.

69.    Defendants' guidance relies on FDA statements regarding interchangeability in the EUA Re-issuance Letters. *See, e.g.,* ECF #1-17, Aug. 23, 2021 EUA Re-Issuance Letter, at 2 n.8. But the FDA—the agency expressly delegated the authority to make EUA determinations under 21 U.S.C. § 360bbb-3 and to make statutory interchangeability determinations under 42 U.S.C. § 262—has never made any finding that an EUA product may be mandated, nor any statutory

34

interchangeability determination. Nor has the FDA waived the labeling required by the Informed Consent Laws, the PHSA and the FDA's labeling regulations thereunder, if it even could legally.

70.     The FDA documents relied on by Defendants expressly state that the EUA and the licensed product are "legally distinct" and acknowledge that there are "certain differences" between these products. These legal distinctions include the fact that the EUA BioNTech Vaccine is subject to the laws governing EUA products, including the statutory right of informed consent (*i.e.*, the "option to accept or refuse"). The FDA-licensed Comirnaty, by contrast, is subject to the heightened statutory requirements under the PHSA for FDA-licensed products, namely, that it meets the PHSA's requirements for safety, potency (or efficacy), and purity, and must use FDA-approved labeling and manufacturing facilities and processes.

71.     While the FDA initially asserted that EUA products and the FDA- licensed products are interchangeable because they have the "same formulation," while admitting that there are "certain differences" between them, the FDA subsequently expanded the scope of interchangeable products to encompass products with different formulations that are chemically distinct but "analytically comparable." *Cf.* ECF #1-17, Aug. 23, 2021 Pfizer/BioNTech EUA Re-Issuance Letter & ECF #1-29, March 29, 2022 Pfizer/BioNTech EUA Re-Issuance Letter.

72.     In short, the FDA has abandoned enforcement of a huge swath of the Act it has been chartered by Congress to enforce, 42 U.S.C. §262, and the marketing and labeling requirements in its own regulations.

73.     The DOD Mandate and the Armed Services Guidance are *ultra vires* actions taken in excess of their statutory authority, and in violation of the substantive requirements of the Informed Consent Laws, the PHSA, and the FDA's labeling regulations.

74.     The DOD Mandate and Armed Services Guidance must therefore be declared

unlawful and enjoined insofar as they seek to mandate an EUA product, consistent with applicable precedent. *See generally John Doe #1 v Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004), *modified sub nom.* 2005 WL 774857 (D.D.C. 2005)(enjoining mandatory administration of EUA anthrax vaccine).[5]

75.     As a result of the defendants' unlawful actions, the Plaintiffs have suffered damages, including being required to take an unlicensed drug of unknown long-term safety profile; being subject to or threatened with disciplinary action under the Uniform Code of Military Justice (UCMJ), or adverse administrative action that would characterize Plaintiffs' voluntary service as anything less than "honorable."

### SIXTH CAUSE OF ACTION

**Violation of Administrative Procedures Act,
5 U.S.C. §§ 706(2)(A) & 706(2)(E)
(All Plaintiffs Against Defendant DOD)**

76.     Intervening Plaintiffs reallege the foregoing as if fully set forth in this count.

77.     The DOD Mandate and Armed Services' guidance are *ultra vires* actions "in excess of statutory jurisdiction [and] authority," 5 U.S.C. § 706(2)(C), for the reasons set forth under the Fourth and Fifth Causes of Action above. The DOD and the Armed Services are departments and agencies of the United States Government. As such, they are agencies created by statute, and "it is axiomatic that an administrative agency's power to promulgate legislative regulations," like the

---

[5] It is worth noting that the final chapter to the *Doe v. Rumsfeld* saga was an Equal Access to Justice Act (EAJA) suit by the *Doe* plaintiffs for payment of their legal fees. The court there found that the FDA and DoD's arguments for the mandatory immunization of an unlicensed biologic – the same exact issue present here using the exact same arguments – were "not substantially justified" and the government was eventually ordered to pay plaintiffs' reasonable attorneys' fees. *Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 190 (D. D.C. 2007).

DOD Mandate, "is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, L.Ed.2d 493 (1988); *see also La. Pub. Serv. Comm'n v. FERC*, 476 U.S. 355, 375, 106 S. Ct. 1890, 90 L.Ed.2d 369 (1986) ("an agency literally has no power to act, ..., unless and until Congress confers power on it."). While Congress and the President have delegated the Secretary of Defense broad authority, they have expressly withheld the authority to mandate an EUA vaccine without Presidential waiver, which Secretary Austin has neither received nor requested.

78.     The DOD Mandate and the Armed Services' guidance must be set aside as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(A), and because it is not supported by "substantial evidence." 5 U.S.C. § 706(E). The entirety of the DOD Mandate is a two-page memorandum from the Secretary of Defense that cites no statute, regulation, executive order or other legal authority, and indeed in many places appears to patently exceed his authority, insofar as it seeks to regulate State Guardsman. The DOD Mandate is also arbitrary and capricious insofar as it imposes an entirely new mandate on over two million active duty and reserve service members without any explanation, justification, legal basis or authority; any findings of facts or analysis (cost-benefit or otherwise) supporting the directive; seeks to exercise *ultra vires* action in excess of DOD or Secretary Austin's authority and/or that is expressly delegated to another agency; and is based on patent misrepresentations of the law.

79.     The DOD Mandate is arbitrary and capricious insofar as its sole justification or explanation is a conclusory statement that the Secretary has "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." ECF #1-22, SECDEF Memo, at 1. Given that the DOD Mandate was issued on the very next day after FDA Comirnaty Approval, it is apparent the DoD either blindly relied on the FDA

approval and out-of-context FDA statements regarding interchangeability or was fully involved in a scheme to commit fraud upon members of the Armed Forces by denying them their Constitutional and statutory rights and obviate the Congressional requirements of 10 U.S.C §1107a by placing a completely novel injectable onto the DOD's own list of Required Vaccines.

80.     Defendants also purport to rely on the CDC's recommendations in adopting the two-dose regimen, but have ignored the CDC's unanimous recommendation that all eligible adults should receive a third booster shot. *See* CDC, *CDC Expands Eligibility for COVID-19 Booster Shots to All Adults,* CDC Media Statement (Nov. 19, 2021), available at: https://www.cdc.gov/media/releases/2021/s1119-booster-shots.html. Such selective picking and choosing of which recommendations to follow, without any explanation, is the essence of arbitrary and capricious decision-making.

81.     The DOD Mandate is also arbitrary and capricious because it constitutes an unannounced and unexplained departure from a prior policy. As the Fifth Circuit recently noted in issuing a Preliminary Injunction against the OSHA vaccine mandate:

> Because it is generally "arbitrary or capricious" to "depart from a prior policy *sub silentio*," agencies must typically provide a "detailed explanation" for contradicting a prior policy, particularly when the "prior policy has engendered serious reliance interests." OSHA's reversal here strains credulity, as does its pretextual basis. Such shortcomings are all hallmarks of unlawful agency actions.[6]

82.     The first vaccine that Defendant FDA ever granted EUA status to was the anthrax vaccine in 2005 – and it is directly relevant because in that prior case, both the Defendants DoD

---

[6] *BST Holdings, LLC v. OSHA*, No. 21-60845, p. 12 (5th Cir. 2021)(citations omitted)(emphasis added).

and FDA took the exact *opposite* legal position on the record than that which they are taking right now.

83.     After the D.C. District Court enjoined the Defendant DoD's anthrax vaccine program in 2003, *see Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003) ("*Rumsfeld I*"), the defendant DoD and FDA both took various actions to continue Secretary Cohen's 1998 anthrax vaccine mandate. *See Doe v. Rumsfeld*, 341 F.Supp.2d 1 (D.D.C. 2004) ("*Rumsfeld II*"). After being enjoined again, and facing a permanent injunction, the Defendant DoD filed an emergency motion with that court to Modify the Injunction because Defendant FDA had reclassified the anthrax vaccine as an EUA product – the first time any vaccine had ever been granted that status:

> Defendants have now filed an Emergency Motion to Modify the Injunction, seeking clarification that there exists a third option - an alternative to informed consent or a Presidential waiver - by which defendants can administer AVA to service members even in the absence of FDA approval of the drug: that is, pursuant to an Emergency Use Authorization ("EUA") under the Project BioShield Act of 2004, 21 U.S.C.A. § 360bbb-3.

*John Doe #1 v Rumsfeld*, 2005 WL 774857 (D.D.C. 2005) (enjoining mandatory administration of EUA anthrax vaccine).

84.     The FDA placed several conditions on granting the EUA, but only one is important to this litigation. Noting that 21 USC 360bbb-3(e)(1)(A)(ii)(III) contains not only an informed consent requirement, but also a requirement that individuals to whom the product is administered be informed of the option to accept or refuse administration of the product, the FDA determined that an option to refuse vaccination meant that DOD's AVIP could not be mandatory, and that there could be no disciplinary or other punitive measures taken against service members, civilian employees, or civilian contractors who refused the shot.

With respect to condition (3), above, relating to the option to accept or refuse

administration of AVA, the AVIP will be revised to give personnel <u>the option to</u> <u>refuse vaccination</u>. <u>Individuals who refuse</u> anthrax vaccination <u>will not be</u> <u>punished</u>. <u>Refusal may not be grounds for any disciplinary action</u> under the Uniform Code of Military Justice. <u>Refusal may not be grounds for any adverse</u> <u>personnel action</u>. <u>Nor would either military or civilian personnel be considered non-</u> <u>deployable or processed for separation based on refusal</u> of anthrax vaccination. *There may be no penalty or loss of entitlement for refusing anthrax vaccination.*

70 Fed Reg. 5452, 5455 (Feb.2, 2005)(emphasis added).

85.     In other words, in circumstances virtually identical to those presented here, the FDA determined that the statutory requirement of an option to refuse a mandatory EUA vaccination meant that there can be no punitive action against someone who does not want the shot. This requirement applied to both military members and civilian employees and contractors, all of whom were subject to the anthrax vaccination program in its original form.

86.     Additionally, in a July 6, 2021 memorandum from the Office Legal Counsel, the DOD interpreted the informed consent requirements in 10 U.S.C. § 1107a "to mean that DOD may not require service members to take an EUA [vaccine]" without first obtaining a Presidential Waiver under 10 U.S.C. § 1107a.[7] There has been no Presidential Waiver, yet the Defendants are mandating use of EUA vaccines. "[A]gencies must typically provide a 'detailed explanation' for contradicting a prior policy;" they may not, as DOD has done here, "depart from a prior policy *sub silentio*." *OSHA*, 2021 WL 5279381, at *5 (*quoting FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515, 129 S. Ct. 1800, 173 L.Ed.2d 738 (2009)).

87.     Finally, the DOD Mandate and Armed Services Guidance are arbitrary and capricious, and unsupported by substantial evidence, insofar as they categorically eliminated

---

[7] *See* Compl.*,* <u>Exhibit 39</u>, Office of Legal Counsel, Vaccine Mandate Opinion, at 16.

existing exemptions for previous documented infections under AR 40-562, or to consider natural immunity in its religious exemption decisions. *See, e.g., Navy SEAL 1*, at \*16 & n.10; *Navy SEALs 1-26*, at \*10; *Air Force Officer*, at \*10. In doing so, Defendants have "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

88.     As a result of Defendants' unlawful actions, Plaintiffs will be required either to take an unlicensed vaccine, pursuant to an unlawful directive, or else face the serious disciplinary consequences outlined above that will result in the loss of their livelihoods, careers, benefits, and fundamental rights.

89.     As a result of the Defendants' unlawful actions, the Plaintiffs have suffered damages, including being required to take an unlicensed drug of unknown long-term safety profile; being subject to or threatened with disciplinary action under the Uniform Code of Military Justice (UCMJ), and including adverse administrative action that would discharge the Plaintiffs for "misconduct" and characterize their voluntary service as anything less than "honorable."

WHEREFORE, Plaintiffs respectfully ask this Court to:

A.     Find that the use of Pfizer-BNT COVID-19 and Moderna Covid-19 mRNA shots for forcible inoculation of U.S. military members to be illegal until and unless the Secretary of Defense complies with his statutory requirements in requesting a waiver of informed consent and until the President makes the requisite finding under 10 U.S.C. §1107a; and

B.     Find that all members of the Plaintiffs' class that have survived infection with COVID-19 are still entitled to a medical exemption from vaccination even after the Defendants have complied with their legal obligations under the implementing DoDI 6200.02;

If applicable,

C.     Find that the use of vaccines under an EUA is illegal until and unless all of the Defendants comply with their statutory obligations in requesting a waiver of informed consent under 10 U.S.C. §1107a and the implementing regulations and laws;

D.     Find that all members of the Plaintiffs' class that have survived infection with COVID-19 are entitled to individual assessment to determine their eligibility for a medical exemption from vaccination even after the Defendants have complied with their legal obligations under DoDI 6200.02;

Plaintiffs also ask this Honorable Court to:

E.     Find and declare that any order issued by DoD requiring the Plaintiffs to receive inoculation with COVID-19 EUA vaccines are *per se* unlawful;

F.     Enjoin the DoD from vaccinating any service members until this action has completed and the status of any vaccine has been determined and the requirements for taking away Plaintiffs' rights of informed consent have been met;

G.     Find that there is no longer any Emergency with respect to the Members of the Plaintiff class that justifies vitiating their rights, as Plaintiffs are all young, healthy, and at less risk from the Covid-19 virus than they are from the treatments currently being mandated by the government; and

H.     Award Plaintiffs their costs and attorneys' fees and any other relief this Court may find appropriate.

Dated: July 28, 2022

Respectfully submitted,

  */s/ Dale Saran*

Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 480-466-0369
Email: dalesaran@gmail.com

  */s/ Jerri Lynn Ward*
Jerri Lynn Ward, Esq.
Texas Bar #20844200
Garlo Ward, P.C.
1017 Rose Circle

42

College Station, Texas 77840
(512) 302-1103 ext. 115
jward@garloward.com

Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

This 28th day of July, 2022, the foregoing Plaintiffs' Motion was e-filed using the CM/ECF system; Plaintiffs' counsel is also cognizant of the requirements of Local Rule CV-5(a)(9) and a paper copy of this motion has been sent to the court's chambers contemporaneously with the electronic filing.

Counsel have complied with the meet and confer requirement in Local Rule CV-7(h) and the government has not taken a position on the plaintiffs' motion. Both the movant's counsel and defendants' counsel have well-considered legal positions regarding the substantive and procedural aspects of the motion and the collateral, practical consequences that generates the need for this motion.


  */s/ Dale Saran*
Dale Saran