**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| JOSHUA A. WILSON, *et al.,* | |
| Plaintiffs, | |
| v. | Case No. 4:22-cv-00438-ALM |
| LLOYD J. AUSTIN III, *et al.,* | |
| Defendants. | |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

     I.     Plaintiffs' claims are not likely to succeed on the merits. .................................... 2

          A.     Plaintiffs have not established this Court's subject-matter jurisdiction, nor have they demonstrated that their claims are otherwise justiciable. ........... 2

          B.     Plaintiffs' constitutional claims are meritless. ......................................... 11

          C.     Plaintiffs' statutory claims are meritless. ................................................ 13

          D.     Plaintiffs' "Major Policy Decision" and "Major Question" arguments are meritless. ............................................................................................ 15

     II.     Plaintiffs have failed to establish the remaining preliminary-injunction factors. ............................................................................................................... 17

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Biden,*
  --- F. Supp. 3d ---, 2022 WL 2287547 (E.D. Tex. June 24) ..............................................................16

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ..............................................................................................................................7

*Am. Charities for Reasonable Fundraising Regul., Inc. v. O'Bannon,*
  909 F.3d 329 (10th Cir. 2018) .........................................................................................................10

*Am. Petroleum Inst. v. EPA,*
  683 F.3d 382 (D.C. Cir. 2012) ...........................................................................................................5

*Anderson v. Oakley,*
  77 F.3d 475 (5th Cir. 1995) ................................................................................................................2

*Aransas Project v. Shaw,*
  775 F.3d 641 (5th Cir. 2014) ..............................................................................................................4

*Ass'n of Am. Physicians & Surgeons v. FDA,*
  No. 20-1784, 2020 WL 5745974 (6th Cir. Sept. 24, 2020) ...........................................................15

*Austin v. U.S. Navy SEALs 1–26,*
  142 S. Ct. 1301 (2022) ............................................................................................................5, 11, 16

*Bowles v. Russell,*
  551 U.S. 205 (2007) ..........................................................................................................................10

*Buchholz v. Meyer Njus Tanick,*
  946 F.3d 855 (6th Cir. 2020) ..............................................................................................................4

*Campbell-Ewald Co. v. Gomez,*
  577 U.S. 153 (2016) ............................................................................................................................8

*Charboneau v. Box,*
  No. 4:13-cv-678, 2017 WL 1159765 (E.D. Tex. Mar. 29, 2017) ......................................................6

*Children's Health Def. v. FDA,*
  No. 21-6203, 2022 WL 2704554 (6th Cir. July 12, 2022) ...............................................................10

*Conner v. Biden,*
  No. 21-cv-74, 2021 WL 6773174 (N.D. Tex. Dec. 28, 2021) ..........................................................18

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC,*
    710 F.3d 579 (5th Cir. 2013) ........................................................................18

*Doe v. Rumsfeld,*
    172 F. App'x 327 (D.C. Cir. 2006) ...............................................................14

*Doe #1–#14 v. Austin,*
    72 F. Supp. 1224 (N.D. Fla. 2021) ...............................................................13

*Env't Conservation Org. v. City of Dallas,*
    529 F.3d 519 (5th Cir. 2008) ..........................................................................7

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs,*
    873 F. Supp. 2d 363 (D.D.C. 2012) ...............................................................3

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) .......................................................................3

*Gilligan v. Morgan,*
    413 U.S. 1 (1973) .........................................................................................16

*Green Valley Special Util. Dist. v. City of Schertz,*
    969 F.3d 460 (5th Cir. 2020) ..........................................................................8

*Guilfoyle v. Beutner,*
    No. 2:21-cv-05009, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) .............14

*Harkness v. Sec'y of the Navy,*
    858 F.3d 437 (6th Cir. 2017) ..........................................................................5

*Hawaii v. Trump,*
    233 F. Supp. 3d 850 (D. Haw. 2017) ...........................................................18

*Hodges v. Callaway,*
    499 F.2d 417 (5th Cir. 1974) .....................................................................6, 15

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) ...................................................................................8, 9

*Hollis v. Lynch,*
    827 F.3d 436 (5th Cir. 2016) ........................................................................17

*In re Navy Chaplaincy,*
    534 F.3d 756 (D.C. Cir. 2008) .......................................................................9

*In re Scruggs,*
    392 F.3d 124 (5th Cir. 2004) ..........................................................................8

*Int'l Refugee Assistance Project v. Trump,*
  No. 17-cv-0361, 2017 WL 1315538 (D. Md. Apr. 10, 2017)........................................18

*Kreis v. Sec'y of Air Force,*
  866 F.2d 1508 (D.C. Cir. 1989) .........................................................................................5

*Lacewell v. Off. of Comptroller of Currency,*
  999 F.3d 130 (2d Cir. 2021) ...............................................................................................3

*Lemaire Illumination Techs., LLC v. HTC Corp.,*
  No. 2:18-cv-21, 2019 WL 1489065 (E.D. Tex. Apr. 4, 2019) ...........................................8

*Lopez v. City of Houston,*
  617 F.3d 336 (5th Cir. 2010) ........................................................................................2, 4

*Markel Ins. Co. v. 2 RJP Ventures, LLC,*
  No. 19-cv-41, 2020 WL 1881083 (E.D. Tex. Feb. 27, 2020) ..........................................17

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) ..........................................................................................................2

*Memphis A. Philip Randolph Inst. v. Hargett,*
  978 F.3d 378 (6th Cir. 2020) .....................................................................................16, 17

*Mindes v. Seaman,*
  453 F.2d 197 (5th Cir. 1971) ......................................................................................6, 15

*Monumental Task Comm., Inc. v. Foxx,*
  157 F. Supp. 3d 573 (E.D. La. 2016) ..............................................................................18

*Nat'l Fam. Planning & Reprod. Health Ass'n, Inc. v. Gonzales,*
  468 F.3d 826 (D.C. Cir. 2006) ..........................................................................................4

*Nat'l Fed'n of Indep. Bus. v. OSHA,*
  142 S. Ct. 661 (2022) ......................................................................................................12

*Nat'l Treasury Emps. Union v. Horner,*
  854 F.2d 490 (D.C. Cir. 1988) ........................................................................................15

*Navy SEALs 1–26 v. Austin,*
  --- F. Supp. 3d --, 2022 WL 1025144 (N.D. Tex. Mar. 28) ..............................................5

*Optimus Steel, LLC v. U.S. Army Corps of Eng'rs,*
  492 F. Supp. 3d 701 (E.D. Tex. 2020) ......................................................................4, 8, 9

*Orloff v. Willoughby,*
  345 U.S. 83 (1953) ............................................................................................................5

*Renne v. Geary,*
  501 U.S. 312 (1991) ............................................................................................................3

*Roberts v. Roth,*
  --- F. Supp. 3d ---, 2022 WL 834148 (D.D.C. Mar. 21, 2022)...................................2, 3, 5

*Roe v. Department of Defense,*
  947 F.3d 207 (4th Cir. 2020)...........................................................................................19

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
  141 S. Ct. 63 (2020)..........................................................................................................11

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ........................................................................................................8, 10

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) .......................................................................................................4, 8

*Taylor v. FDIC,*
  132 F.3d 753 (D.C. Cir. 1997) ...........................................................................................4

*Thomas v. Union Carbide Agric. Prods. Co.,*
  473 U.S. 568 (1985) ...........................................................................................................2

*TOTAL Gas & Power N. Am., Inc. v. FERC,*
  859 F.3d 325 (5th Cir. 2017).............................................................................................5

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) .....................................................................................................11

*Truelove v. Trs. of Univ. of D.C.,*
  No. 90-2237, 1994 WL 499086 (D.D.C. Sept. 2, 1994) .................................................10

*Washington v. Trump,*
  No. C17-0141, 2017 WL 4857088 (W.D. Wash. Oct. 27, 2017).....................................18

*Waskul v. Washtenaw Cty. Cmty. Mental Health,*
  900 F.3d 250 (6th Cir. 2018)..............................................................................................3

*West Virginia v. EPA,*
  142 S. Ct. 2587 (2022) ...............................................................................................15, 16

*White v. Carlucci,*
  862 F.2d 1209 (5th Cir. 1989) ..........................................................................................18

*Williams v. Luminator Holding L.P.,*
  No. 4:12-cv-734, 2014 WL 174413 (E.D. Tex. Jan. 10, 2014)..........................................6

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ...................................................................................................................18

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) ...............................................................................................................16

**Statutes**

5 U.S.C. § 701 ...........................................................................................................................14

10 U.S.C. § 121 .........................................................................................................................16

10 U.S.C. § 1107a .................................................................................................................13, 14

10 U.S.C. § 7013 ..................................................................................................................12, 16

10 U.S.C. § 8013 ..................................................................................................................12, 16

10 U.S.C. § 9013 ..................................................................................................................12, 16

21 U.S.C. § 337 .........................................................................................................................14

21 U.S.C. § 360bbb-3 ........................................................................................................13, 14, 15

32 U.S.C. § 110 .........................................................................................................................16

**Other Authorities**

70 Fed. Reg. 5452 (Feb. 2, 2005) .............................................................................................14

## INTRODUCTION

Plaintiffs ask this Court to preliminarily enjoin the Armed Services from enforcing the military's COVID-19 vaccination requirement against them. Yet, for the reasons explained in Defendants' opposition to Plaintiffs' preliminary-injunction motion, ECF No. 14 ("Opp."), Plaintiffs have come nowhere close to satisfying their heavy burden to show entitlement to such an extraordinary remedy. In their reply brief, ECF No. 15 ("Reply"), Plaintiffs offer no cogent response to the host of jurisdictional and other threshold issues that prevent the Court from reaching the merits of their claims, which seek to avoid only the remote *possibility* of alleged harms that are merely theoretical and may never occur, and for which Plaintiffs have not exhausted available inter-service remedies. Nor do Plaintiffs have an answer to the fact that the availability of a BLA-approved COVID-19 vaccine has mooted their claims that rest on the allegation that they are required to take a vaccine under an Emergency Use Authorization ("EUA"). Plaintiffs fare no better on the merits: The military's COVID-19 vaccination requirement does not impinge on any fundamental right or implicate any constitutionally protected class of individuals, and Plaintiffs cannot show that it fails to survive the exceedingly low level of judicial scrutiny required under rational-basis review. Having also failed to show that the military's vaccination requirement violates any federal statutes, Plaintiffs' statutory claims are likewise meritless.

Plaintiffs have also failed to establish the remaining requirements to obtain preliminary relief. Plaintiffs rest their claim of irreparable harm on alleged injuries neither imminent nor irreparable and wholly speculative and unsubstantiated. And Plaintiffs do not seriously contend that an injunction preventing the Armed Services from enforcing a lawful order for service members to become vaccinated against COVID-19 would serve the interests of either the military or the public. The Court should therefore deny Plaintiffs' motion for a preliminary injunction.

**ARGUMENT**

I.      **Plaintiffs' claims are not likely to succeed on the merits.**

    A.      **Plaintiffs have not established this Court's subject-matter jurisdiction, nor have they demonstrated that their claims are otherwise justiciable.**

As explained in Defendants' opposition, for Plaintiffs to show a likelihood of success on the merits of their claims, they must first demonstrate that they are likely to succeed on a host of threshold issues. Opp. at 14–25. But Plaintiffs have not persuasively responded to most of Defendants' threshold arguments, and have simply ignored the rest. They have thus failed to make the requisite "*clear showing*" that they are likely to succeed on the merits. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *accord Anderson v. Oakley*, 77 F.3d 475 (5th Cir. 1995) (per curiam). The Court should deny preliminary relief on that score alone.

    *Constitutional ripeness.* To begin, Plaintiffs' claims are not constitutionally ripe, and Plaintiffs offer no argument to the contrary. As explained, *see* Opp. at 14–17, a claim is ripe as a constitutional matter where it seeks to remedy a cognizable injury that is not "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *See Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

    Here, Plaintiffs seek prospective relief to avoid the *possibility* of involuntary separation or other disciplinary action for not complying with the military's COVID-19 vaccination requirement. *See* Compl. for Decl. & Inj. Relief ("Compl.") at 83–84, ECF No. 1; *see also* Opp. at 16 (citing Plaintiffs' declarations alleging that injunctive relief is necessary to avoid discharge). But the Armed Services have not initiated separation proceedings for any Plaintiff. *See* Opp. at 10. And there is nothing that Plaintiffs can argue that will change the fact that they have "yet to be discharged." *See Roberts v. Roth*, --- F. Supp. 3d ---, 2022 WL 834148, at *6 (D.D.C. Mar. 21, 2022); *see also* Opp. at 15 (collecting cases in accord). Plaintiffs' claims thus seek to remedy alleged injuries that depend on the uncertain outcomes of proceedings that have not even commenced (and may never have to be). Accordingly, at

this point, Plaintiffs' alleged injuries are merely "theoretical, rather than certain and impending." *See Roberts*, 2022 WL 834148, at *4–6. Their claims are therefore not constitutionally ripe. *See* Opp. at 15 (collecting cases finding claims challenging the military's COVID-19 vaccination requirement not constitutionally ripe for review).[1]

Plaintiffs fail to acknowledge their burden to establish the constitutional ripeness of their claims. *See Renne v. Geary*, 501 U.S. 312, 316 (1991); *accord Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012). Instead, Plaintiffs attempt to satisfy the "hardship" prong of the *prudential*-ripeness test—which is doctrinally distinct from *constitutional* ripeness, *see* Opp. at 14–15, 17—by alleging that they face "imminent threats" of discharge or transfer to the Individual Ready Reserve (or "IRR"). Reply at 18–19. Yet they point to no evidence to support these allegations, and ignore the unrebutted record evidence showing that the opposite is true. *See* Opp. at 10 & nn.14–17; *see also, e.g., Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) ("[W]here a plaintiff moves for a preliminary injunction, the district court . . . should normally evaluate standing 'under the heightened standard for evaluating a motion for summary judgment'"—*i.e.*, by requiring plaintiff to support its allegations with evidence. (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015))). Plaintiffs also allege (again without support) that they "face the imminent threat[] of separation proceedings," Reply at 18, but they do not grapple with wide body of caselaw finding that the mere initiation of separation proceedings is not a cognizable injury. *See* Opp.

---

[1] Plaintiffs claim not to be challenging "discrete, individual . . . discharge proceeding[s]." Reply 18. But that is unsurprising, given that the Armed Services have not initiated discharge proceedings for any Plaintiff. *See* Opp. at 10 & nn.14–17. At any rate, it makes no difference for ripeness purposes whether Plaintiffs frame their claims as a challenge to "generally applicable rules" or to "discrete, individual personnel actions." *See* Reply at 18. Constitutional ripeness is concerned with whether the alleged *injuries* that a claim seeks to remedy are both imminent and certain to occur. *See, e.g., Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021). Here, Plaintiffs seek to avoid the possibility of involuntary separation and a host of consequences that they believe will follow. But those alleged injuries may never come to pass, as they depend on the uncertain outcomes of "individual personnel" proceedings that have yet to be initiated.

at 15 (collecting cases). Finally, Plaintiffs claim that they have suffered *past* injury, pointing to one Plaintiff's decision to retire. Reply at 18; *see also* Opp. at 10 & n.17. A voluntary retirement decision is not a cognizable injury in-fact, however, nor would it be fairly traceable to any of Defendants' challenged actions. *See, e.g., Taylor v. FDIC*, 132 F.3d 753, 767 (D.C. Cir. 1997) ("The plaintiffs' voluntary departure creates a large hole in their cause of action" because "they seek a remedy for injury that is in large part self-inflicted."); *Buchholz v. Meyer Njus Tanick*, 946 F.3d 855, 866–67 (6th Cir. 2020); *Nat'l Fam. Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). Moreover, only ongoing or "imminent *future* injury" (as opposed to *past* injury) can confer standing to pursue the prospective relief that Plaintiffs seek. *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009); *accord Optimus Steel, LLC v. U.S. Army Corps of Eng'rs*, 492 F. Supp. 3d 701, 725 (E.D. Tex. 2020) ("Injunctions are forward looking remedies that may be issued 'only if *future* injury is certainly impending.' . . . [P]ast harms cannot form the basis for injunctive relief." (quoting *Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014)).

*Prudential ripeness.* Plaintiffs briefly address the two-pronged test for prudential ripeness, Reply at 18–19, but they fail to show that their claims satisfy either prong, *see Lopez*, 617 F.3d at 341 (directing a court to consider "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration" in determining prudential ripeness).

*First*, Plaintiffs fail to address any of Defendants' arguments demonstrating that Plaintiffs' claims are unsuitable for review. *See* Opp. at 17–20. Rather, Plaintiffs suggest that their claims are ripe for decision because they supposedly challenge "generally applicable rules that have been directly applied to[] and enforced against" Plaintiffs and other service members in "exactly the same way." Reply at 18. But the record belies such a claim. As explained in Defendants' opposition, each Plaintiffs' circumstances vary significantly from one another. For example, five Plaintiffs are currently exempt from the vaccination requirement (and any discipline for refusing to vaccinate) because they (i) have

been granted a medical exemption or have a request pending, or (ii) have a pending religious accommodation request ("RAR") or a pending appeal from an RAR denial. *See* Opp. at 10. And three Plaintiffs are currently on terminal leave or will be later this month, and each will voluntarily separate later this year. *Id.* Moreover, at least one Plaintiff has indicated his willingness to receive Comirnaty. *See* Brown Decl. ¶ 8, ECF No. 3-4. But *all* Plaintiffs would still have multiple opportunities to present their claims to the Armed Services before any refusal to comply with DoD's vaccine directive could result in involuntary separation or other disciplinary action. Accordingly, "there is still time for" Plaintiffs "to 'convince the agency to alter'" its position, "to correct its own mistakes and to apply its expertise," and to "potentially eliminat[e] the need for (and costs of) judicial review." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) (citation omitted); *accord TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 336 (5th Cir. 2017); *Roberts*, 2022 WL 834148, at *5.

   *Second*, as already explained above, *supra* pp. 2–4, and throughout Defendants' opposition, *see* Opp. at pp. 16–25, 35–38, Plaintiffs have offered no evidence suggesting that they will suffer any irreparable injury if the resolution of their claims were delayed while they exhausted available administrative remedies.[2] And while Plaintiffs maintain that they will suffer hardship absent immediate

---

[2] As explained in Defendants' opposition, *see* Opp. at 19–20, it is unclear whether Plaintiffs are asking this Court to enjoin the Armed Services from taking any "adverse," non-disciplinary actions (*e.g.*, duty or training restrictions) based on a Plaintiff's refusal to vaccinate. But if they are, such relief would conflict not only with the partial stay granted by the Supreme Court in *Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301 (2022), but with long-standing and binding principles of inter-branch comity and judicial restraint in the military context, *see, e.g., Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989); *Harkness v. Sec'y of the Navy*, 858 F.3d 437, 443–45 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 2648 (2018). Plaintiffs seem to quarrel with those principles and with the Supreme Court's decision in *Orloff*. Reply at 15. But contrary to what Plaintiffs seem to suggest, the Court in *Orloff* did not find that military duty assignments were generally justiciable. *Contra id.* Rather, after the Court agreed with the government that a federal statute authorizing the conscription of certain medical specialists required the Army to assign inductees to the general medical field for which they were conscripted, *Orloff*, 345 U.S. at 84–88, the court went on to reject the plaintiff's argument that he was entitled to judicial review of his specific duty assignments and to some form of judicial redress, *id.* at 92–95. "While the courts have found occasion to determine whether one has been lawfully inducted" into the military, the Court explained, it "found no case

review, they claim that they have thus far "averted" any injuries because, for example, there are two "class-wide" injunctions enjoining the Navy and Air Force from enforcing the military's vaccination requirement against service members who have sought a religious exemption. *See Navy SEALs 1–26 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1025144, at *9 (N.D. Tex. Mar. 28), *appeal filed*, No. 22-10534 (5th Cir. May 31, 2022); *Doster v. Kendall*, No. 1:22-cv-84 (S.D. Ohio July 27, 2022), ECF No. 77. But, if anything, the fact that the Navy and Air Force are currently enjoined from requiring several Plaintiffs to become vaccinated *undermines* rather than supports any argument that those Plaintiffs will suffer hardship if resolution of their claims were delayed. *See infra* n.10.[3]

*Exhaustion.* It is beyond dispute that Plaintiffs have not yet exhausted all available administrative remedies, thus precluding judicial review of their claims challenging the military's vaccination requirement. As explained, *see* Opp. at 20–21, binding Fifth Circuit precedent requires Plaintiffs to exhaust all "available intraservice corrective measures"—including remedies available through separation and post-separation proceedings—before bringing to federal court their claims challenging "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974); *see also* Opp. at 20–21 (collecting Fifth Circuit cases in accord, as well as cases denying relief to service members who similarly failed to exhaust separation remedies before pursuing challenges relating to the military's vaccination requirement). Plaintiffs offer no response to this threshold justiciability

---

where [it] ha[d] assumed to revise duty orders as to one lawfully in the service." *Id.* at 94. Having found that the plaintiff was lawfully conscripted, the Court held that it had no authority to inquire into whether his duty orders were discriminatory. *Id.* 93–94. "It is not difficult to see that the exercise of such jurisdiction . . . would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." *Id.* at 94–95. "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Id.* at 94.

[3] Plaintiffs also suggest that DoD has "agree[d] to pause [separation] proceedings until this Court acts on" Plaintiffs' preliminary-injunction motion. Reply at 18–19. DoD has made no such agreement, and it continues to require that Plaintiffs who do not have an approved or pending exemption or are on terminal leave receive a COVID-19 vaccine. But the point remains that Plaintiffs will suffer no harm if required to exhaust available administrative remedies, and any separation itself would not constitute irreparable harm. *See infra* § II.

argument, thus effectively conceding it and abandoning any opposition. *See, e.g., Williams v. Luminator Holding L.P.*, No. 4:12-cv-734, 2014 WL 174413, at *7–8 (E.D. Tex. Jan. 10, 2014); *Charboneau v. Box*, No. 4:13-cv-678, 2017 WL 1159765, at *13–14 (E.D. Tex. Mar. 29, 2017) (Mazzant, J.).

Because Plaintiffs have not properly exhausted all available administrative remedies before bringing this action, there is no need for this Court to weigh the *Mindes* factors to determine whether review of their claims would be proper. *See* Opp. at 20–21. But in any event, each of these factors weighs decidedly against judicial review in this case (for reasons already explained, *see id.* at 22–23). Plaintiffs disagree, suggesting that their challenge to the military's vaccination requirement will not interfere with military functions or invade areas of military expertise. Reply at 16.[4] But Plaintiffs ignore the unrebutted record evidence showing that the relief that Plaintiffs request would cause substantial harm to military readiness, unit cohesion, and the military's interest in Plaintiffs' ability to carry out their duties. *See* Opp. at 22–23. And they fail to grapple with decisions from several courts finding that declaratory or injunctive relief implicating the military's COVID-19 vaccination requirement would unacceptably harm these public and military interests, thus militating against judicial review in this context. *See id.* (collecting cases).

*Mootness.* As explained in Defendants' opposition, Plaintiffs' statutory claims are moot. *See* Opp. at 23–25. These claims rest on the contention that the Armed Services are requiring Plaintiffs to take an "EUA vaccine" or "face discipline or discharge." Pls' Mot. for Prelim. Inj. ("Mot.") at 29–37, ECF No. 9; Compl. ¶¶ 184–97. But it is undisputed, *see* Reply at 12–13, that each Plaintiff can comply with the military's vaccination requirement by receiving doses of Comirnaty, a BLA-approved

---

[4] Plaintiffs repeat their claim that DoD has a "Categorical [Medical-Exemption] Ban," preventing it from "mak[ing] individualized determinations regarding servicemembers' fitness for service." Reply at 16 (citation omitted). Plaintiffs not only offer no support for that assertion, but their claim is belied by the record, which shows that one Plaintiff has been *granted* a medical exemption from the military's COVID-19 vaccination requirement, and another currently has a medical-exemption request that is pending review of his individual circumstances. *See* Opp. at 10 n.14.

COVID-19 vaccine, which DoD has made available to each Plaintiff, *see* Opp. at 23–24. Therefore, because Plaintiffs are not obligated to receive an "EUA vaccine" to comply with DoD's vaccine directive, they lack a personal stake in the resolution of their statutory claims. *See Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) ("[A] case will become moot . . . 'when the parties lack a legally cognizable interest in the outcome' of the litigation." (citation omitted)); *accord Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the [alleged] conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." (internal quotation marks and citation omitted)).

Plaintiffs offer no cogent argument to the contrary. *First*, they suggest that the availability of Comirnaty at the time "the Complaint was filed" has some relevancy to whether their statutory claims are now moot. Reply at 12. That has it backwards: the mootness doctrine concerns developments *after* the complaint has been filed. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016). Moreover, this Court has a "continuing obligation" to consider its jurisdiction at all times, *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020); *see also In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004) ("A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." (citation omitted)), and it "cannot proceed at all" to the merits of Plaintiffs' statutory claims if it finds that it lacks jurisdiction at any stage of litigation, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 102 (1998); *accord Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("Article III demands that an 'actual controversy' persist throughout all stages of litigation."); *Lemaire Illumination Techs., LLC v. HTC Corp.*, No. 2:18-cv-21, 2019 WL 1489065, at *2 (E.D. Tex. Apr. 4, 2019) ("[F]ederal courts lack jurisdiction to reach the merits of a mooted claim.").

*Second*, Plaintiffs appear to suggest that it is relevant to the mootness issue that the "injuries alleged in the Complaint occurred" when DoD was purportedly "mandat[ing] EUA vaccines." Reply

at 13. As an initial matter, no Plaintiff has been required to take a vaccine authorized only for emergency use to comply with the military's vaccination requirement, *see* Opp. at 34, and Plaintiffs offer no evidence to support their bald assertion that they have been "disciplined" or otherwise injured "for refusal to take EUA vaccines," *see* Reply at 12–13. But setting that aside, Plaintiffs seek only injunctive and declaratory relief in this case, *see* Compl. at 83–84, and any alleged *past* injury cannot confer standing to pursue such prospective relief, *Summers*, 555 U.S. at 495; *accord Optimus Steel, LLC*, 492 F. Supp. 3d at 725. The fact that Comirnaty is available to Plaintiffs now moots their claims concerning "EUA vaccines" and forecloses prospective injunctive relief based on those claims.

*Third*, Plaintiffs argue that the availability of 42,000 doses of Comirnaty will not "preclude any future injuries" to "the eligible population" because that is not a "sufficient quantit[y] to provide to" all unvaccinated and partially vaccinated service members. Reply at 13 & n.15. But insofar as Plaintiffs suggest that their statutory claims are not moot because someday there may not be enough Comirnaty-labeled doses to vaccinate *other* service members who are not parties to this litigation, Plaintiffs lack standing to assert such a claim based on the alleged rights or interests of these third parties, including purported members of a non-certified class. *See, e.g., Hollingsworth*, 570 U.S. at 708 ("[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." (citation omitted)); *see also In re Navy Chaplaincy*, 534 F.3d 756, 760–61 (D.C. Cir. 2008) (Kavanaugh, J.). As to the fourteen service-member Plaintiffs, DoD has more than enough Comirnaty-labeled vaccines to administer, and their argument that they may someday no longer have access to Comirnaty is speculative at best.

*Fourth*, Plaintiffs contend that their statutory claims satisfy "the 'voluntary cessation' exception to mootness" based on the false claim that DoD "agreed to pause enforcement of" the military vaccination requirement while Plaintiffs' preliminary-injunction motion "is being briefed . . . in exchange for Plaintiffs' agreement not to file" a motion for a temporary restraining order. Reply at 14.

But DoD has made no such agreement, and it continues to require that Plaintiffs who do not have an approved or pending exemption or are not on terminal leave receive a COVID-19 vaccine. *See* Opp. at 10. And the availability of Comirnaty is not a voluntary cessation of any conduct; it is simply a fact that negates any claim concerning "EUA vaccines."

*Fifth*, Plaintiffs resort to arguing that "equity demands" that this Court grant them "the relief they request," regardless of the fact that their statutory claims are now moot. Reply at 14. But "there is no equitable exception to the constitutional 'case or controversy' prohibition on federal courts hearing a moot claim." *Truelove v. Trs. of Univ. of D.C.*, No. 90-2237, 1994 WL 499086, at *5 (D.D.C. Sept. 2, 1994); *accord Am. Charities for Reasonable Fundraising Regul., Inc. v. O'Bannon*, 909 F.3d 329, 334 (10th Cir. 2018) ("Because mootness is jurisdictional, we cannot ignore the issue based on our notions of [equity]."); *Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[Courts have] no authority to create equitable exceptions to jurisdictional requirements . . . ."); *Steel Co.*, 523 U.S. at 101–02 ("For a court to" resolve a claim "when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

<u>Standing.</u> Assuming their statutory claims are not moot, Plaintiffs contend that they have standing to challenge certain FDA actions based on the unsupported claim that the FDA was "the proximate and 'but for' cause of" the military's vaccination requirement. Reply at 17. But as already explained, *see* Opp. at 25, the Sixth Circuit recently rejected a similar argument based on basic standing principles, *see Children's Health Def. v. FDA*, No. 21-6203, 2022 WL 2704554, at *3 (6th Cir. July 12, 2022) ("The military's vaccination requirements, and the alleged possible consequences from failing to comply, stem from DOD decisionmakers."); *id.* at *4 (finding that, because "DOD's vaccine mandate is not tied to FDA's actions," no relief granted against FDA could "redress [the association members'] alleged injuries" because, *inter alia*, "DOD could administer [licensed] COVID-19 vaccines . . . not challenged here"). And contrary to what Plaintiffs appear to suggest, *see* Reply at 17, the fact that DoD is a defendant in this case does not alter the standing analysis, as they point to no

authority for this Court to grant relief against one agency defendant solely based on another agency defendant's alleged actions. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross . . . .").[5]

      **B.**      **Plaintiffs' constitutional claims are meritless.**

There is no question that rational basis review applies to Plaintiffs' constitutional claims. Plaintiffs do not even try to explain how this case involves a suspect class or a fundamental right, which is a necessary showing for a heightened standard of review. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). Instead, Plaintiffs continue to argue that the level of judicial scrutiny should turn on whether what the military requires is a "vaccine" or "treatment." Reply at 20. But Plaintiffs never explain how that purported distinction makes a suspect class or implicates a fundamental right, which are the only recognized bases for higher judicial scrutiny.

The military's COVID-19 vaccination requirement easily satisfies rational basis review. Plaintiffs cite no case in which a vaccination requirement has been found to lack a rational basis, and Defendants are aware of none. COVID-19 is incredibly disruptive to the military, and the disease impacted the military's ability to defend our Nation. *See* Stanley Decl. ¶¶ 3–13, ECF No. 14-1. Vaccines have allowed the military to become resilient to disruptions caused by COVID-19. *Id.* ¶¶ 16–18. Vaccines have reduced hospitalization and death rates—even during recent waves of the Omicron variant. *Id.* (unvaccinated persons are 8 times more likely to die from COVID-19); *id.* ¶ 38.[6] Against

---

      [5] The plaintiff association has disclaimed Article III standing to seek relief on behalf of any non-party "members." Reply at 16 n.21; *see also* Opp. at 10 n.18.

      [6] Plaintiffs' newly filed report from Dr. Jayanta Bhattacharya confirms this key point. *See* ECF No. 15-3, ¶ 28 (concluding "vaccine provides durable private protection versus severe disease, but declining protection versus infection (and hence transmission)"); *id.* ¶ 25 (explaining that the Pfizer vaccine provides "a robust level [of protection] against hospitalization and death"). His other conclusions do not show that the military's vaccination requirements are arbitrary and capricious for at least two reasons. First, Dr. Bhattacharya's views on the need to vaccinate individuals with past infection are not consistent with current CDC recommendations. CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines* (updated June 30, 2022), https://perma.cc/HG5T-YTDV. And

this factual backdrop, our military leaders have decided that vaccination is the best way to ensure military readiness; and of course, military leaders are in the best position to assess military readiness—not the judiciary. *See Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (finding no basis "for employing the judicial power in a manner that military commanders believe would impair the military of the United States as it defends the American people").

Plaintiffs' arguments to the contrary are irrelevant and wrong. First, Plaintiffs argue that vaccinations are no longer necessary since no active-duty service member has recently died from COVID-19. Reply at 21. Of course, Plaintiffs ignore that a decline in deaths is expected as service members become vaccinated, which protects against severe illness, hospitalization, and death. *See* ECF No. 14-1, ¶¶ 3, 16. Second, Plaintiffs wrongly rely on the VAERS database to argue that the vaccine "has killed more servicemembers (119) than the virus itself (96)." Reply at 21. Claims like this have been debunked many times over. *See, e.g.*, M. Wadman, "Antivaccine activists use a government database on side effects to scare the public," Science (May 26, 2021), https://perma.cc/4MBD-KD3S; G. Bromfiel, "Anti-Vaccine Activists Use A Federal Database to Spread Fear About COVID Vaccines," NPR (June 14, 2021), https://perma.cc/A7DV-L8M7; *see also* ECF No. 14-2, ¶ 40(E).[7] Third, the executive branch has the responsibility to recruit service members and set related

---

following CDC recommendations cannot be arbitrary or capricious. *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1185 (S.D. Fla. 2021); *accord Denis v. Ige*, 538 F. Supp. 3d 1063, 1078 (D. Haw. 2021). Second, Dr. Bhattacharya never claims to be an expert in military readiness, and he clearly is not. For example, he frequently compares COVID-19 mortality risks to seasonal influenza without recognizing that the military has long required vaccination for seasonal influenza because of the disruptive effect that disease can have on military readiness, regardless of its mortality rate. He also ignores that the military has an interest in minimizing the effects of diseases beyond just preventing human-to-human transmission. For example, the military requires service members to be up-to-date on tetanus vaccination to prevent and minimize the effects of a disease that is not transmissible. *See* AR–562.

[7] The real statistics are quite different: more than 599 million doses of COVID-19 vaccines have been administered in the United States, and the CDC has confirmed just nine deaths causally linked to COVID-19 vaccines—all from J&J/Janssen. CDC, "Selected Adverse Events Reported after COVID-19 Vaccination," https://perma.cc/7W9F-6TX2. Based on those statistics and other data, FDA now limits the authorized use of the J&J/Janssen vaccine. FDA "FDA Limits Use of Janssen COVID-19 Vaccine to Certain Individuals," (May 5, 2022), https://perma.cc/JJ5L-988N.

regulations—not the judiciary.  *See* 10 U.S.C. §§ 7013, 8013, and 9013.

Plaintiffs also argue that their constitutional claims are valid under what they call the "major policy decisions" doctrine and appear to argue that only Congress can set health readiness requirements for service members. Reply at 19 (citation omitted). That argument is unsupported by the cited cases, which analyzed whether Congress properly delegated authority to the executive branch to set the challenged policy. *See Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661, 667 (2022) (Gorsuch, J., concurring). But Plaintiffs here have not brought a separation of powers claim. Instead, they assert Fifth Amendment Due Process and Equal Protection Claims, which do not turn on which branch of government enacts the policy.

### C.      Plaintiffs' statutory claims are meritless.

As explained in Defendants' opposition, *see* Opp. at 34–35, although Plaintiffs' statutory claims are moot and Plaintiffs lack standing to assert them, these claims also fail on the merits. Plaintiffs' arguments to the contrary are either unpersuasive or irrelevant.

*First*, Plaintiffs claim that DoD's vaccine directive violates 10 U.S.C. § 1107a. That provision requires a presidential "waiver" of a notification requirement when the military seeks to require service members to take products authorized only for "emergency use." 10 U.S.C. § 1107a(a). While Plaintiffs spend their reply brief quibbling over Defendants' use of the term "notification requirement," Reply at 23–24, they fail to acknowledge that DoD's vaccine directive does not implicate § 1107a, because it does not require any service member to take a COVID-19 vaccine authorized only for "emergency use." *See* Opp. at 34–35; *see also* Compl. ¶ 192 (claiming that the military vaccination requirement violates § 1107a and § 360bbb-3 only "insofar as [it] seek[s] to mandate an EUA product"). And in any event, Plaintiffs do not dispute that they can comply with this directive by receiving doses of Comirnaty, a BLA-approved vaccine. *See, e.g., Doe #1–#14 v. Austin*, 72 F. Supp. 1224, 1234 (N.D. Fla. 2021) ("If the DoD is . . . administering Comirnaty . . . plaintiffs' § 1107a issue disappears."). Their

§ 1107a claim, which rests on the assertion that DoD is "mandat[ing]" that service members receive an "unlicensed EUA vaccine[]," Mot. at 29, is therefore legally and factually incorrect.

Furthermore, although DoD's vaccine directive does not implicate § 1107a, it is worth noting that a court recently rejected Plaintiffs' understanding of what that statutory provision requires. *See Miller v. Austin*, No. 4:22-cv-1739 (S.D. Tex. June 1, 2022), ECF No. 9. In *Miller*, a service member sought emergency relief to enjoin enforcement of the military's COVID-19 vaccination requirement. *Id.* at 1. There, like here, the plaintiff argued that § 1107a and 21 U.S.C. § 360bbb-3 "prohibit[] the military from requiring members to receive an EUA product" absent a presidential waiver under § 1107a. *Id.* at 1–2. The court rejected that argument, holding instead that federal law "only requires that [a service member] have been *informed* that he has a choice whether to get the vaccine or not and to be told of what consequences may follow if he decides to not get the vaccine." *Id.* at 3. Because the plaintiff (like each Plaintiff here) had been informed that he had "a choice" whether to receive a COVID-19 vaccine "and the consequence[s] of refusing" to vaccinate, the court found that neither § 1107a nor § 360bbb-3 had been violated. *Id.*[8]

Finally, Plaintiffs continue to maintain that they can challenge FDA's compliance with § 360bbb-3 under the Administrative Procedure Act ("APA"). They contend (mistakenly) that the

---

[8] Defendants cannot make sense of Plaintiffs' disjointed references to a series of decades-old cases and agency actions pertaining to the DoD's anthrax vaccine program. *See* Reply at 23; *see also* Mot. at 31–33. Plaintiffs appear to suggest that DoD and FDA interpreted the requirements of § 1107a and § 360bbb-3 with respect to an anthrax vaccine's EUA and the military's anthrax vaccine program differently than they do here (and differently than the court in *Miller*). *See* Reply at 23. But Plaintiffs point to no contradictory interpretation from either agency. Instead, they point to an EUA from 2005, which included various conditions on the anthrax vaccine's emergency use, including that no adverse or disciplinary action could be taken against a service member who refused to receive the vaccine. Mot. at 32 (citing 70 Fed. Reg. 5452, 5455 (Feb. 2, 2005)). But contrary to what they seem to suggest, Plaintiffs point to nothing in that EUA stating that those conditions were *statutorily required*. Nor do Plaintiffs point to any "public, official" DoD or FDA statements to that effect. At any rate, Plaintiffs offer no cogent explanation why conditions placed on an EUA for a *different* vaccine, or a decades-old, *dissolved* injunction on a *different* vaccination program at issue in a *different* case, would have any relevance here. *See Doe v. Rumsfeld*, 172 F. App'x 327, 328 (D.C. Cir. 2006) (per curiam).

APA provides a private right of action anytime an individual is "harmed by agency action" but does "not have an express [statutory] right of action" to challenge that action. Reply at 23 n.14. But Plaintiffs fail to acknowledge that the APA expressly does *not* provide a right of action where, as here, a statute "preclude[s] judicial review" or an action is "committed to agency discretion by law." 5 U.S.C. § 701(a). As explained, *see* Opp. at 35, 21 U.S.C. § 337(a) reserves exclusive enforcement of § 360bbb-3 to the United States (with one exception not applicable here), *Guilfoyle v. Beutner*, No. 2:21-cv-05009, 2021 WL 4594780, at *26–27 (C.D. Cal. Sept. 14, 2021). And Congress expressly committed to FDA's discretion any actions taken under the authority of § 360bbb-3. 21 U.S.C. § 360bbb-3(i); *see also Ass'n of Am. Physicians & Surgeons v. FDA*, No. 20-1784, 2020 WL 5745974, at *3 (6th Cir. Sept. 24, 2020). Accordingly, because Plaintiffs have no cause of action to challenge FDA's compliance with § 360bbb-3, they are unlikely to succeed on the merits of that claim.

### D.    Plaintiffs' "Major Policy Decision" and "Major Question" arguments are meritless.

Plaintiffs also raise an argument that appears nowhere in their opening brief—that DoD lacks the authority to enact a COVID-19 vaccine requirement for the military under what Plaintiffs are calling the "Major Question" or "Major Policy Decision" doctrine. Reply at 6–7 (citing *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 496 (D.C. Cir. 1988), and *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022)). Plaintiffs' argument conflates two different legal concepts: justiciability and the scope of congressionally delegated authority. Plaintiffs' arguments fail on both.

*First*, the Fifth Circuit has its own controlling precedent regarding justiciability of military questions, which Defendants have already discussed at length. *See* Opp. at 20–23 (discussing *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), and *Hodges*). Plaintiffs never explain the relevance of the out-of-circuit decision in *Horner*, which concluded that the challenged action was not "committed to agency discretion by law" and thus reviewable under the APA. 854 F.2d at 496. In this Circuit, a claim challenging military policy is only justiciable if it alleges "the deprivation of a constitutional right, or

an allegation that the military has acted in violation of applicable statutes or its own regulations" *and* the plaintiff has exhausted all "available intraservice corrective measures." *Mindes*, 453 F.2d at 201. And if those threshold requirements are met, courts go on to consider additional factors to determine whether a particular claim is justiciable. *Id.* at 201–02. As discussed above, Plaintiffs have failed to exhaust available remedies and do not meet the other factors.

*Second*, the so-called Major Questions doctrine does not apply to this case. That doctrine involves the question of whether Congress delegated authority to enact the challenged policy. *See West Virginia*, 142 S. Ct. at 2608; *id.* at 2617 (Gorsuch, J., concurring) (explaining that the doctrine "protect[s] the Constitution's separation of powers"). The Major Questions doctrine is inapplicable here because the Constitution gives the *President* the authority to command the military, U.S. Const. art. II, § 2, cl. 1, and Congress has unambiguously delegated authority over the military, including over the health and welfare of the troops, to the President and relevant Secretaries. 10 U.S.C. § 121; 32 U.S.C. § 110; *see also* 10 U.S.C. § 7013 (Sec'y of the Army); 10 U.S.C. § 8013 (Sec'y of the Navy); 10 U.S.C. § 9013 (Sec'y of the Air Force). And unlike cases where the Court claimed that there was a lack of historical precedent supporting the challenged action, *see West Virginia*, 142 S. Ct. at 2608 (collecting examples), the military's COVID-19 vaccination requirement conforms with a long history of requiring vaccination and inoculations that stretches back to before the founding of our Republic, *see Abbott v. Biden*, --- F. Supp. 3d ---, 2022 WL 2287547, *2 (E.D. Tex. June 24) ("The federal military began requiring immunization in 1777," and "[f]or the past several decades, the military has required at least nine immunizations, such as an annual flu shot."), *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022).[9]

---

[9] In another section of their reply brief, Plaintiffs ask the Court to consider "[w]ho decides" whether requiring COVID-19 vaccinations support military readiness. Reply at 19 (citation omitted). The answer is that military leaders decide. The Constitution vests the Executive as commander-in-chief of the Armed Forces, and Congress has directed the President, the Secretary of Defense, and

## II.    Plaintiffs have failed to establish the remaining preliminary-injunction factors.

As explained in Defendants' opposition, *see* Opp. at 35–38, Plaintiffs have not shown that the military's vaccination requirement will cause them imminent, irreparable injury during the pendency of this litigation, "an 'indispensable' requirement for a preliminary injunction," *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (citation omitted). And on the other side of the ledger, the issuance of a preliminary injunction would severely harm the interest of the military and the public in the health and readiness of the Armed Forces and in service members' compliance with lawful orders. *See* Opp. at 38–39.

In their motion, Plaintiffs claimed that they would be irreparably harmed if they were "permanently prevent[ed]" from "exercising their right to refuse unwanted experimental medical treatment." Mot at 39–40. As an initial matter, an FDA-approved vaccine that the Secretary of Defense, in his expert judgment, determined was necessary to add to the list of nine other vaccines that service members are required to obtain when they join the military is in no sense an "experimental medical treatment." *See* Opp. at 3–6. But regardless, as Defendants pointed out, *see id.* at 36–37, neither DoD nor the Armed Services require the "involuntary administration of the vaccine," *contra* Mot. at 39. Plaintiffs now argue, however, that the military's vaccination requirement is not really voluntary because DoD and the Armed Services may enforce it through disciplinary action. Reply at 24 (presumably cross-referencing an argument made in section II.C of their reply brief). But for obvious

---

the Service Secretaries to regulate and manage military readiness. *See* U.S. Const. art. II, § 2, cl. 1; 10 U.S.C. §§ 121, 7013, 8013, 9013; 32 U.S.C. § 110. The Supreme Court has also made clear who should *not* decide whether a policy supports military readiness—the federal judiciary. "It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not"—than the "complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force [which] are essentially professional military judgments." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). The Court "should indulge the widest latitude" to sustain the President's "function to command the instruments of national force, at least when turned against the outside world for the security of our society." *Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 645 (1952) (Jackson, J., concurring)).

reasons, that argument is a non sequitur. As Plaintiffs' own circumstances demonstrate, *see* Opp. at 10, they have a choice: receive a COVID-19 vaccine or exercise their "right to refuse" vaccination and face potential discipline for not complying with a lawful military order.

Plaintiffs also contend for the first time in their reply brief that they would suffer irreparable harm if they were eventually discharged for failing to comply with the military's vaccination requirement. Reply at 24. As an initial matter, Plaintiffs waived this argument by failing to raise it in their motion. *See, e.g.*, *Markel Ins. Co. v. 2 RJP Ventures, LLC*, No. 19-cv-41, 2020 WL 1881083, at *4 (E.D. Tex. Feb. 27, 2020) ("Reply briefs cannot be used to raise new arguments." (quoting *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016))).

In any event, this allegation—like many of Plaintiffs' arguments—rests on nothing more than speculation about remote, theoretical events that may never come to pass. *See, e.g.*, *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (explaining that a plaintiff cannot make a clear showing of irreparable harm based on "speculative injur[ies]" or "unfounded fear[s]" (alteration adopted and citation omitted)); *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 584 (E.D. La. 2016) ("[I]njunctions will not be granted merely to allay fears and apprehensions, or to soothe anxieties."). As already explained, *see* Opp. at 10, no Plaintiff has entered separation proceedings for failing to comply with DoD's vaccine directive, and most Plaintiffs currently are exempt from any disciplinary action for refusing to vaccinate or are not required to become vaccinated.[10] It is thus far from certain that any Plaintiff will be involuntarily separated based on his

---

[10] No Plaintiff who is covered by the class-wide injunctions issued against the Navy and Air Force, *see supra* p. 6, can claim imminent, irreparable harm resulting from the military's vaccination requirement while those injunctions are in place. *Cf. Hawaii v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) (finding no irreparable harm where a nationwide injunction already provided plaintiffs with all the relief they requested); *Int'l Refugee Assistance Project v. Trump*, No. 17-cv-0361, 2017 WL 1315538, at *2 (D. Md. Apr. 10, 2017) (same); *Washington v. Trump*, No. C17–0141, 2017 WL 4857088, at *6 (W.D. Wash. Oct. 27, 2017) (same); *Pars Equality Ctr. v. Trump*, No. 17-cv-0255-TSC (D.D.C. Mar. 2, 2018), ECF No. 143 (same); *Conner v. Biden*, No. 21-cv-74, 2021 WL 6773174, at *6 (N.D. Tex. Dec.

or her refusal to comply with the military's vaccination requirement, let alone that any separation would occur before this Court is able to issue a decision on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (requiring a plaintiff to show that it "is likely to suffer irreparable harm *before a decision on the merits can be rendered*" (emphasis added and citation omitted)). Stated simply, Plaintiffs have adduced no evidence that they are likely to suffer any irreparable harm resulting from a discharge in the absence of a preliminary injunction. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (requiring any claim of irreparable injury to be substantiated by "independent proof, or no injunction may issue").

Even if Plaintiffs were able to support the speculative contention that they "will be discharged" for refusing to comply with the military's vaccination requirement, Reply at 24 (cleaned up), that still would not constitute irreparable harm, *see* Opp. at 38 (collecting cases). Plaintiffs' reliance on *Roe v. Department of Defense*, 947 F.3d 207 (4th Cir. 2020), is misplaced. The court in *Roe* affirmed (and Plaintiffs concede, *see* Reply at 24) that "a general discharge [is] insufficient to demonstrate irreparable injury." *Id.* at 229. It held simply that it was not clear error for the district court to find that two exceptional circumstances that would "surround[]" the discharges in that case (but not present here) would create irreparable injury. *Id.* at 229–30. The court first explained that it was not clearly erroneous to find that the plaintiffs would be irreparably harmed by a discharge "based on outmoded policies related to HIV that bears no relationship to [the plaintiffs'] ability to perform their jobs." *Id.* at 229 (cleaned up with citation omitted). But the same cannot be said of a discharge for failure to comply with DoD's COVID-19 vaccine directive, for reasons already explained in Defendants' opposition and amply supported in the record. *See, e.g.,* Opp. at 22–23. The court in *Roe* also explained that it was not clearly erroneous to find that discharging the plaintiffs because they have HIV would likely force

---

28, 2021) (doubting whether plaintiffs had standing to challenge the enforcement of an Executive Order where a nationwide injunction had "already given the plaintiffs what they seek in this suit").

them "to reveal" their stigmatized condition to others. *Roe*, 947 F.3d at 229–30. But Plaintiffs cannot claim a similar injury here: they are the ones who have voluntarily "disclose[d] . . . their unvaccinated status" in public court filings. *See* Reply at 24; *see also* ECF Nos. 3-4–4-6. Moreover, Plaintiffs do not contend that being unvaccinated is stigmatizing or comparable to the circumstances at issue in *Roe*.

Finally, the interests of the military and the public militate against granting Plaintiffs any preliminary relief. As explained in Defendants' opposition, and as the record indicates, a preliminary injunction allowing Plaintiffs to continue serving without becoming vaccinated against COVID-19 would threaten Plaintiffs' and other service members' health and would compromise their units' ability to perform their duties, ensure good order and discipline among the Armed Forces, maintain military readiness, and accomplish their missions. *See* Opp. at 22–23, 38–39. Plaintiffs do not seriously contend that a preliminary injunction would serve those interests. Instead, Plaintiffs claim that the public has an interest in upholding the constitutional rights of service members. Reply at 25. But because Plaintiffs fail to show that the military's vaccination requirement implicates any of their constitutional rights, *see supra* § I.B, they likewise fail to carry their burden to show that the equities and the public interest favor granting their requested injunction.

## CONCLUSION

For the reasons stated in Defendants' opposition and elaborated on above, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: July 29, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Mont. Bar. No. 55816869
ZACHARY A. AVALLONE
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2022, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch