**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

JOSHUA A. WILSON, *et al.,*

      Plaintiffs,

v.

LLOYD J. AUSTIN III, *et al.,*

      Defendants.

Case No. 4:22-cv-00438-ALM

**DEFENDANTS' OPPOSITION TO 733 PUTATIVE INTERVENORS'
MOTION TO INTERVENE**

# TABLE OF CONTENTS

BACKGROUND .................................................................................................................2

ARGUMENT ....................................................................................................................3

I.     Allowing several hundred individuals to intervene as plaintiffs in this action would be unmanageable and inconsistent with the Federal Rules of Civil Procedure. ..................................3

II.    The 733 putative intervenors are not entitled to intervene as of right. ...........................4

II.    The 733 putative intervenors have not shown that permissive intervention is warranted. ......10

CONCLUSION ................................................................................................................15

Four months ago, fourteen members of the Armed Forces initiated this lawsuit, alleging that the military's COVID-19 vaccination requirement is unconstitutional or otherwise unlawful. Now, a group comprising 733 individuals who purportedly serve in the military have sought to intervene in this action as plaintiffs, whether as of right or, alternatively, with the Court's permission. But these several hundred putative intervenors—who have submitted *no* identifying information other than their names—do not satisfy the requirements for intervention under Federal Rule of Civil Procedure 24 and, indeed, appear to misapply that rule in an effort to expand this lawsuit.

As a threshold matter, this Court lacks subject-matter jurisdiction over this suit, a prerequisite to intervention. But even setting jurisdiction aside, the putative intervenors have not demonstrated their right to intervene. While they contend that, absent intervention, the Court's disposition of this action will impair their alleged interests in avoiding future discharges, they do not explain why they cannot seek to protect those interests in separate actions (and in appropriate venues). Moreover, their suggestion that Plaintiffs will not adequately represent their interests in this litigation is, at best, unconvincing. The individual Plaintiffs do not directly represent the interests of any individual putative intervenors who, again, can file their own lawsuit in a proper forum. And the putative intervenors cannot credibly claim that their interests would not be adequately represented where Plaintiffs are seeking class certification and where they are, in fact, represented by the same counsel and filed complaints that are, in all substantive respects, virtual carbon copies of Plaintiffs' complaint. Indeed, where class certification is being sought by the same counsel on the same theories, it is pointless to simultaneously seek intervention under Rule 24: if a class is certified, the putative intervenors would become class members; and if a class if not certified, there still would be no basis to "intervene" in a case brought by fourteen other individuals and no prejudice to the putative intervenors if intervention is denied. As for permissive intervention, a host of issues militate against permitting 733 additional, unidentified individuals to join this action. The motion to intervene should therefore be denied.

## BACKGROUND

*Proceedings between the parties.* Fourteen members serving in the Army, Air Force, Navy, or the Marines, along with an unincorporated association, initiated this lawsuit on May 23, 2022, seeking declaratory and injunctive relief pertaining to DoD's COVID-19 vaccination requirement, including to vacate and to enjoin any orders for Plaintiffs and a yet-uncertified class of "similarly situated" service members to become vaccinated. *See* Compl. for Decl. & Inj. Relief ("Pls.' Compl.") ¶¶ 4, 11, pp. 83–84, ECF No. 1. Plaintiffs allege that the military's vaccination requirement is unconstitutional, violates various federal statutes, and is arbitrary and capricious under the Administrative Procedure Act ("APA"). *Id.* ¶¶ 134–212.

On July 1, 2022, Plaintiffs filed a motion for a preliminary injunction, *see* ECF No. 9, seeking to enjoin DoD and the Armed Services from, among other things, enforcing the military's vaccination requirement against Plaintiffs, *see* ECF No. 9-1 at 1. Defendants opposed Plaintiffs' preliminary-injunction motion on July 15, 2022, *see* Defs.' Opp. to Pls.' Mot. for Prelim. Inj. ("PI Opp."), ECF No. 14; Plaintiffs thereafter filed a reply, *see* ECF No. 15, and Defendants filed a sur-reply, *see* ECF No. 22. The preliminary-injunction motion remains pending.

*Proceedings pertaining to the putative intervenors.* Since this action commenced, the Court has received two requests to intervene from two similar groups of individuals. The first request was submitted on July 28, 2022, by a group of 739 individuals who purportedly serve in the Armed Forces. *See* ECF No. 20. These individuals (who are represented by Plaintiffs' counsel) filed a motion for leave to seek intervention, *see* ECF No. 21, and filed a complaint that was, in all substantive respects, virtually identical to Plaintiffs' complaint. *Compare* ECF No. 20, *with* Pls.' Compl. They did not, however, file a separate "motion to intervene" addressing the requirements for intervention under Federal Rule of Civil Procedure 24. *See* Pl.-Intervenors' Opposed Mot. to Intervene ("Mot. of 733 Putative Intervenors") at 21, ECF No. 29 (acknowledging that the first request to intervene "omitted the actual

substantive motion"). More than a month later, after the Court granted leave to file their request to intervene, this group of 739 individuals filed a "notice" to withdraw their request. *See* ECF No. 27. That same day, they requested withdrawal by motion, *see* ECF No. 28, which the Court later granted.

The second request to intervene was submitted on September 9, 2022, by a group of 733 individuals who purportedly serve in the Armed Forces and who are also represented by Plaintiffs' counsel. *See* Mot. of 733 Putative Intervenors. This group consists of many of the same individuals who filed the original request to intervene, as well as 56 individuals attempting to proceed under pseudonyms. Appended to their motion to intervene is a complaint that recites nearly verbatim the same causes of action and requests for relief contained in Plaintiffs' complaint. *Compare* Intervening Compl. of 733 Additional Pls. ("Compl. of 733 Putative Intervenors") ¶ 17–89, pp. 41–42, ECF No. 29-2, *with* Pls.' Compl. ¶¶ 134–212, pp. 83–84.

## ARGUMENT

**I.    Allowing several hundred individuals to intervene as plaintiffs in this action would be unmanageable and inconsistent with the Federal Rules of Civil Procedure.**

As an initial matter, allowing 733 individuals to intervene as plaintiffs would be unwieldy and unmanageable—and would run contrary to the Federal Rules of Civil Procedure. In considering a motion to intervene, a Court should read the intervention provisions of Rule 24 in harmony "with the standard for joinder in Rule 19 and the class action provisions of Rule 23," as intended by the federal rules. *See United States v. City of Jacksonville*, 519 F.2d 1147, 1150 (5th Cir. 1975). Rule 23, for instance, contemplates cases in which the number of individuals seeking to become parties to an action are "so numerous that joinder" (or intervention) would be "impracticable." *See* Fed. R. Civ. P. 23(a); *accord Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985). Indeed, Plaintiffs seek to bring this action on behalf of themselves and a class of service members under Rule 23. *See* Pls.' Coml. ¶ 4, 39. Although the putative intervenors' have offered no individualized allegations or evidence regarding their identities or personal circumstances, the generalized allegations in their complaint suggest that

they all fall within Plaintiffs' putative class. *See* Compl. ¶ 5. The Federal Rules of Civil Procedure do not contemplate, however, that hundreds of individuals would use Rule 24 to intervene in a single case as plaintiffs. And common sense would suggest that a lawsuit with hundreds of active plaintiffs—who would, at an absolute minimum, need to participate intelligently in each substantive decision concerning the objectives of the litigation—would be nearly impossible to manage or resolve with any degree of efficiency or economy. *Cf. Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974) (refusing to adopt a rule that "would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure").

For these reasons, the putative intervenors' request to intervene is improper under the basic structure of the Federal Rules of Civil Procedure. As discussed further below, there are numerous independent reasons that this Court should deny intervention under Rule 24(a)(2) and (b), regardless whether a class is ever certified in this matter. Accordingly, the Court should deny the putative intervenors' motion and first consider whether any Plaintiff satisfies Rule 23's requirements to sue as a representative party on behalf of the putative class members.[1] If the Court ultimately certifies a class, that decision would obviate any need to allow 733 individuals to intervene in this lawsuit. And if the Court ultimately denies class certification, then, for the reasons set forth below, there still would be no basis to allow the 733 putative intervenors to become individual parties in this case.

## II.    The 733 putative intervenors are not entitled to intervene as of right.

Federal Rule of Civil Procedure 24(a)(2) allows an individual who is not a party to a lawsuit to intervene as of right only if, upon timely motion, he shows that (i) he possesses "an interest relating to the property or transaction which is the subject of the action," (ii) he is "so situated that the

---

[1] To be clear, at this stage, Defendants do not think it would be proper under Rule 23 to transform this case into a class action. But Defendants will fully consider their position on that issue after reviewing Plaintiffs' arguments in support of class certification, assuming they wish to proceed in that manner.

disposition of the action may, as a practical matter, impair or impede his ability to protect that interest," and (iii) his interest is "inadequately represented by the existing parties to the suit." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (citation omitted).[2] A putative intervenor bears the burden of establishing each requirement of Rule 24(a)(2), *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016); "[f]ailure to satisfy any one requirement precludes intervention of right," *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

The putative intervenors have failed to establish their right to intervene for at least three reasons.

*First,* the putative intervenors have failed to demonstrate that this Court has subject-matter jurisdiction over this lawsuit, a prerequisite to intervention. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) ("[A]n existing suit within the court's jurisdiction is a prerequisite of an intervention." (citation omitted)); *accord U.S. ex rel. Tex. Portland Cement Co. v. McCord*, 233 U.S. 157, 163–64 (1914); *Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160–61 (2d Cir. 2012) (collecting cases); 7C C. Wright, A. Miller & M. Kane, *Federal Prac. & Proc.* § 1917 (3d ed. 2022) ("[I]ntervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action."). As explained in Defendants' opposition to Plaintiffs' preliminary-injunction motion, Plaintiffs' claims suffer from a host of jurisdictional defects, including mootness and a lack of standing and ripeness. *See* PI Opp. at 14–17, 23–25. Accordingly, because this Court lacks jurisdiction over Plaintiffs' claims, the putative intervenors cannot "step into the breach" by way of intervention. *See Walters v. Edgar*, 163 F.3d 430, 432–33 (7th Cir. 1998); *see also Lopez v. Sw. Airlines Co.*, No. 3:08-cv-1975, 2013 WL 12121233, at *6 (N.D. Tex. July 10, 2013).

*Second,* there is no indication that, absent intervention, the disposition of this lawsuit would

---

[2] Because there is no federal statute granting the putative intervenors an "unconditional right to intervene," Rule 24(a)(1) is inapplicable.

impair the putative intervenors' ability to protect their alleged interests in remaining employed in the Armed Forces. *See* Mot. of 733 Putative Intervenors at 25–27.[3] The putative intervenors suggest that, without the ability to intervene in this lawsuit, they will have to "await a ruling from this Court" before seeking "to vindicate their interests." *See id.* at 26–27. But they fail to explain why that would be the case. Assuming a putative intervenor has a justiciable cause of action, nothing prevents him from bringing his own lawsuit in a proper venue. Indeed, many other service members have brought similar lawsuits in various venues across the country. *See* PI Opp. at 11–13 (collecting cases).

Courts routinely find that the impairment prong of Rule 24(a)(2) has not been met where, as here, a putative intervenor is free to file a separate action to protect his alleged interests. *See, e.g.*, *United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986); *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994).[4] And because the impairment of interests under Rule 24(a)(2) must be directly attributable to a court's disposition of the original action, not an extraneous practical or legal obstacle, *see Stewart v. City of*

---

[3] Contrary to the putative intervenors' unsupported assertion, the federal government has not had a "policy" in which "service members named in litigation" pertaining to the military's COVID-19 vaccination requirement "would not be discharged." *Contra* Mot. of 733 Putative Intervenors at 22.

[4] *Accord, e.g., Akina v. Hawaii*, 835 F.3d 1003, 1012 (9th Cir. 2016); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000); *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 292 (11th Cir. 2020); *Cmty. Hous. Improvement Program v. City of New York*, No. 19-cv-4087, 2019 WL 8163423, at *2 (E.D.N.Y. Oct. 8, 2019); *Westminster Am. Ins. Co. v. Spruce 1530, LLC*, No. 19-cv-4087, 2019 WL 9098155, at *1 n.1 (E.D. Pa. June 4, 2019); *City of Chicago v. Sessions*, No.17-cv-5720, 2017 WL 5499167, at *8–9 (N.D. Ill. Nov. 16, 2017); *A.D. v. Washburn*, No. 15-cv-1259, 2016 WL 5464582, at *2 (D. Ariz. Sept. 29, 2016); *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016); *Jackson v. Waterbury Police Dep't*, No. 11-cv-642, 2015 WL 5251533, at *9 (D. Conn. Sept. 8, 2015); *Blue Heron Beach Resort Dev., LLC v. Branch Banking & Trust Co.*, No. 13-cv-372, 2013 WL 12161446, at *7 n.7 (M.D. Fla. May 15, 2013); *Riddhi Sub. LLC v. One Exch. JC LLC*, No. 12-cv-42, 2012 WL 33903, at *1 (D.N.J. Jan. 6, 2012); *Lowe v. Am. Accounts Mgmt., Inc.*, No. 08-cv-137, 2009 WL 1360683, at *4 (N.D. Tex. May 15, 2009); *Hamilton v. First Am. Title Co.*, No. 07-cv-1442, 2008 WL 3876038, at *3 (N.D. Tex. Aug. 15, 2008); *Clark v. State Farm Mut. Auto. Ins. Co.*, No. 00-cv-1841, 2007 WL 1850996, at *4 (D. Colo. June 25, 2007); *Ross v. Donley*, No. 07-cv-3066, 2007 WL 1237927, at *1 (D. Kan. Apr. 26, 2007); *Seils v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 510–11 (W.D.N.Y. 2001); *Lucero ex rel. Chavez v. City of Albuquerque*, 140 F.R.D. 455, 459 (D.N.M. 1992); *cf. Coronado v. D N. W. Houston, Inc.*, No. 13-cv-2179, 2015 WL 13812297, at *5 (S.D. Tex. Dec. 23, 2015) ("If the disposition of a suit will not bar a proposed intervenor from asserting his or her rights in a separate action, the 'impairment' prong of Rule 24(a) typically is not met." (citation omitted)).

*Houston*, No. 07-cv-4021, 2009 WL 783319, at *1 (S.D. Tex. Mar. 24, 2009) (citing *United States v. City of New York*, 198 F.3d 360, 366 (2d Cir. 1999)), it is immaterial whether litigating separate actions would be more costly or inconvenient for a putative intervenor, *see, e.g.*, *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 21-cv-71, 2022 WL 974335, at *6 (N.D. Tex. Mar. 31, 2022) ("'[T]he 'mere inconvenience caused by requiring would-be intervenor to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2)).'" (citation omitted)).[5]

Moreover, while this is a putative class action, no class has been certified in this matter, and thus the putative intervenors' personal claims remain their own to pursue. And, as noted above, should this Court ultimately certify a class in which the putative intervenors qualify as members, there is no impairment to the putative intervenors' interests where, at that time, their interests would be protected through the class itself. *See, e.g.*, *Clark*, 2007 WL 1850996, at *4 (finding no impairment to putative intervenors' interests where they could "still protect [their interests] by qualifying as part of the class," if one were eventually certified, "or by filing separate actions"); *In re Safeguard Scientifics*, 220 F.R.D. 43, 48–49 (E.D. Pa. 2004). Indeed, a class may only be certified when a court finds that the named parties "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).[6]

**Third,** and finally, the putative intervenors have no reason to maintain that their alleged interests would be inadequately represented by Plaintiffs. If a class is not certified, the individual

---

[5] *Accord, e.g.*, *Buchanan v. Sirius XM Radio, Inc.*, No. 17-cv-728, 2019 WL 4054930, at *3 (N.D. Tex. Aug. 28, 2019); *Gilyard v. Tex. Laurel Ridge Hosp. LP*, No. 07-cv-650, 2009 WL 10670038, at *3 (W.D. Tex. Feb. 18, 2009) (citing *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977)); *Seils*, 199 F.R.D. at 511 (citing *In re Holocaust Victim Assets Litig.*, 225 F.3d at 196–99); *Anderson Columbia Env't Inc. v. United States*, 42 Fed. Cl. 880, 882 (1999).

[6] The putative intervenors draw inapt comparisons between themselves and individuals who successfully intervened as *defendants* in prior cases. *See* Mot. of 733 Putative Intervenors at 25–28. For example, in *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015), and *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014), the intervenors were the intended beneficiaries of a government program whose implementation the plaintiffs were seeking to enjoin. And in *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992 (5th Cir. 1994), the intervenors joined the litigation to defend the district court's rejection of a proposed consent decree between the plaintiffs and the original defendants.

Plaintiffs would not "represent" the putative intervenors in this case, in that the putative intervenors' claims would not be adjudicated along with the individual claims of the existing parties, and they would remain free to bring their own lawsuit. Moreover, if a class is certified and, assuming *arguendo*, that Rule 24 intervention applies in these circumstances, a court must presume adequate representation when a putative intervenor seeks "the same ultimate objective" as an existing party. *See Texas*, 805 F.3d at 661–62 (citation omitted). That presumption can be overcome only if the putative intervenor offers evidence of "adversity of interest, collusion, or nonfeasance on the part of" the existing party with which it is aligned. *Id.* (citation omitted); *accord Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969).[7]

Here, the putative intervenors allege that they seek to "pursue the same exact legal claims and remedies . . . as the original Plaintiffs in this action." *See* Compl. of 733 Putative Intervenors ¶ 1. In fact, according to the putative intervenors' own pleadings, there appears to be no discernable difference between their objectives and those that Plaintiffs aim to achieve in this case. The putative intervenors' complaint recites verbatim the same requests for relief that are contained in Plaintiffs' complaint—including asking the Court (i) to declare that any military order requiring a service member to receive a COVID-19 vaccine is facially unlawful, and (ii) to enjoin DoD from enforcing the military's vaccination requirement or vaccinating any service members until certain conditions are met. *Compare* Compl. of 733 Putative Intervenors ¶ 25, pp. 41–42, *with* Pls.' Compl. ¶ 11, pp. 83–84. Similarly, all six counts in the putative intervenors' complaint are virtually identical to the six counts in Plaintiffs' complaint. *Compare* Compl. of 733 Putative Intervenors ¶¶ 17–89, *with* Pls.' Compl. ¶¶ 134–212. There is thus no perceivable daylight between the putative intervenors' and Plaintiffs' ultimate objectives in this litigation—that is, to prevent the enforcement of the military's COVID-19

---

[7] *See also FM Properties v. City of Austin*, 71 F.3d 879, 1995 WL 727288, at *3 (5th Cir. 1995) (requiring "evidence" of adversity of interest, collusion, or nonfeasance to overcome the presumption of adequate representation); *Buchanan*, 2019 WL 4054930, at *5 (same); *First Mercury Ins. Co. v. Byrd*, No. 14-cv-326, 2014 WL 12680690, at *2 (S.D. Tex. Aug. 4, 2014) (same).

vaccination requirements. *See, e.g.*, *In re Toyota Hybrid Brake Litig.*, No. 20-cv-127, 2020 WL 6161495, at *18 (E.D. Tex. Oct. 21, 2020) (Mazzant, J.) (finding adequate representation where a putative intervenor's complaint and the plaintiffs' complaint were "practically carbon copies of one another," in that they "request[ed] almost indistinguishable forms of relief" and "allege[d] the exact same causes of action"); *cf. Associated Indus. of Ala., Inc. v. Train*, 543 F.2d 1159, 1161 (5th Cir. 1976) (finding adequate representation where "the position" of the putative intervenor and an existing party "regarding th[e] litigation" were "identical," and where the putative intervenor had "[n]o claim or defense" that was "not or [would] not be asserted by" the existing party).

The putative intervenors offer no serious argument or evidence suggesting that their overall objective in this case diverges materially from the objective of Plaintiffs. Instead, they concede that they "have the same 'ultimate objective' as the 14 named representative Plaintiffs.'" *See* Mot. of 733 Putative Intervenors at 29. And yet, they appear to contend that Plaintiffs' representation is inadequate because the putative intervenors must assert their own rights to protect themselves from discharge. *See* Mot. of 733 Putative Intervenors at 22, 29. But that is precisely why intervention under Rule 24 is *not* proper here: each putative intervenor *can* seek their own relief from the military's COVID-19 vaccination mandate through their own lawsuit in the proper venue, not through the procedural guise of intervention. And insofar as Plaintiffs' complaint seeks relief on behalf of "similarly situated" service members of a yet-uncertified class, intervention again is neither necessary nor proper. If a class were eventually certified, it is hard to see how the putative intervenors would not receive all the relief they have requested if Plaintiffs were ultimately successful in seeking either to vacate or to enjoin the implementation or enforcement of the military's COVID-19 vaccination requirement on a nationwide or class-wide basis.[8] And they do not contend that Plaintiffs (represented by the same counsel) will

---

[8] It also is remarkable that the putative intervenors take the position that their interests are not adequately represented by Plaintiffs, given that class certification requires a judicial determination that

not vigorously or competently pursue that relief in this litigation.

In these circumstances, because the putative intervenors cannot seriously dispute that they seek "the same ultimate objective" as the proposed class, there are no grounds for finding inadequate representation absent evidence of "adversity of interest, collusion, or nonfeasance on the part of" Plaintiffs. *See Texas*, 805 F.3d at 661–62 (citation omitted). The putative intervenors offer no such evidence. Indeed, such an argument would be rather difficult to make, given that they are represented by the same counsel as Plaintiffs—a fact that alone warrants a finding that the putative intervenors' alleged interests are adequately represented. *See Gabriel v. Standard Fruit & S. S. Co.*, 448 F.2d 724, 725–26 (5th Cir. 1971) ("[W]e hold that appellants have failed to prove that representation of their interests is now inadequate since their own attorney will take part in prosecuting . . . the suit."); *see also Black*, 2022 WL 974335, at *6 (explaining that "collaboration" between a would-be intervenor and the original plaintiff "shows alignment–not 'adversity'—of interest" (citation omitted)).

## III.     The 733 putative intervenors have not shown that permissive intervention is warranted.

A putative intervenor that has no right to intervene may alternatively seek permissive intervention under Rule 24(b). Upon timely motion, a court may permit intervention under Rule 24(b) where the movant has a "claim or defense" that shares "a question of law or fact in common" with the main action, and where intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." *Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 121 (5th Cir. 1991) (citation omitted). But even when "there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied," the court may refuse to allow intervention, as it is "wholly discretionary" with the district court whether to allow intervention under Rule 24(b). *New*

---

the putative class-representative plaintiffs and class counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4), (e)(1)(B)(i). It is not clear how Plaintiffs' representation can be adequate for Rule 23(a)(4) purposes but inadequate under Rule 24(a)(2), even accepting that the two inquiries are not identical. *See In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *16–19.

*Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (quoting 7C C. Wright, A. Miller & M. Kane, *Federal Prac. & Proc.* § 1913).

The Court should deny the putative intervenors request for permissive intervention for several reasons.

*First*, for reasons already explained, *see supra* pp. 5–6, permissive intervention is not "an appropriate device to cure" this Court's lack of jurisdiction. *See, e.g., McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir. 1979). Whether intervention is sought as of right or by permission, it "cannot create jurisdiction if none existed before." *Lopez*, 2013 WL 12121233, at *5 (citation omitted).

But even if this Court had jurisdiction, the fact that the putative intervenors' claims suffer from the same jurisdictional defects as Plaintiffs' would still be a "factor[] counsel[ing] against permissive intervention." *See West Virginia v. U.S. Dep't of Treasury*, 571 F. Supp. 3d 1229, 1248 (N.D. Ala. 2021), *appeal filed*, No. 22-10168 (11th Cir. Jan. 14, 2022). No putative intervenor alleges that he or she has been involuntarily separated based on his or her refusal to comply with an order to become vaccinated against COVID-19. And as explained in Defendants' opposition to Plaintiffs' preliminary-injunction motion, *see* PI Opp. at 15–16, claims seeking relief from military-discharge decisions are constitutionally ripe "only after a plaintiff has been discharged," *see Roberts v. Roth*, ---F. Supp. 3d---, 2022 WL 834148, at *5 (D.D.C. Mar. 21, 2022). Therefore, the Court should exercise its broad discretion under Rule 24(b) to deny permissive intervention given that putative intervenors lack justiciable claims for relief.

*Second*, while the putative intervenors share the same ultimate objective as Plaintiffs in seeking to challenge the military's COVID-19 vaccination requirement (*i.e.*, preventing enforcement of that requirement), they have not shown that their claims share a common question of law or fact. The putative intervenors suggest that they share several "common facts" with Plaintiffs because each is allegedly a "member[] of the United States Armed Forces" and many have allegedly "been

informed" that they may be discharged in the future despite their religious objections.[9] *See* Mot. of 733 Putative Intervenors at 30. But even assuming the putative intervenors' circumstances share some similarities with Plaintiffs'—which is unclear because the putative intervenors have submitted *no* identifying information in support of their allegations—that is not enough to show that their *claims* share a common question of law or fact. Because the putative intervenors develop no argument as to the commonality of any claims they seek to press in this litigation, they have failed to carry their burden to show that permissive intervention is warranted.[10]

*Third,* the fact that the putative intervenors are free to assert their claims in separate lawsuits also militates against permissive intervention. *See Korioth v. Brisco*, 523 F.2d 1271, 1279 n.25 (5th Cir. 1975) ("When an [individual] has other adequate means of asserting [his] rights, a charge of abuse of discretion in the denial of a motion for permissive intervention would appear to be almost untenable on its face."); *accord Burke*, 833 F. App'x at 294. Indeed, permitting intervention in such circumstances would seem to undermine the benefits of allowing important questions of law to be decided in multiple forums.[11] *See, e.g., Califano v. Yamaski*, 442 U.S. 682, 702 (1979) (highlighting the benefits of

---

[9] It is unclear from the putative intervenors' motion how many of these individuals allegedly object to the COVID-19 vaccine on religious grounds, as the motion states only that "XXX of the YYY Intervenors have filed Religious Accommodation Requests," appearing to use placeholder text where the actual figures should have been inserted. *See* Mot. of 733 Putative Intervenors at 25.

[10] For the same reason, the putative intervenors do not meet the requirements for permissive joinder under Rule 20(a)(1). *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (Rule 20 "creat[es] a two-prong test, allowing joinder of plaintiffs when" (i) "their claims arise out of the same transaction, occurrence, or series of transactions or occurrences," and (ii) "there is at least one common question of law or fact linking all claims. . . However, even if this test is satisfied, district courts have discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." (cleaned up with citations omitted)); *see also AIG Specialty Ins. Co. v. Stoller Enters., Inc.*, No. 4:16-cv-26, 2016 WL 6915965, at *2 (S.D. Tex. Sept. 9, 2016) ("Rule 24(b)(1)(B) contains language virtually identical to Rule 20(a)(1)'s.").

[11] That no putative intervenors specifically allege a connection to this District also "hints of forum shopping," especially considering their failure to explain why their claims must be heard in this Court. *See In re W. Caribbean Airways Crew Members*, No. 07-cv-22015, 2010 WL 11601239, at *10 (S.D. Fla. Jan. 8, 2010). That, too, would provide another reason to deny permissive intervention. *See, e.g., Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 388 (D. Md. 2004) (noting forum shopping

"adjudication by a number of different courts and judges"); *United States v. Mendoza*, 464 U.S. 154, 160 (1984); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring).

*Fourth,* adequacy of representation is also a relevant factor in determining whether permissive intervention is proper. *See, e.g., South Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978). As already discussed, the individual claims of the putative intervenors are not impacted by adjudication of the claims of the individual Plaintiffs, and the putative intervenors otherwise have not demonstrated that their interests would be inadequately represented by Plaintiffs' proposed class, if one is certified. *See supra* pp. 8–11.

*Fifth,* permitting intervention would serve only to delay the resolution of this lawsuit. As another court recently explained in granting the defendants' motion to sever the claims of 24 service-member plaintiffs who challenged the military's COVID-19 vaccination requirement, "jumbling" the plaintiffs' claims "into a single action" would have proven "unwieldy," "unmanageable," and a "uniquely poor idea." *Clements v. Austin*, --- F. Supp. 3d ---, 2022 WL 3224604, at *2–3 (D.S.C. July 27, 2022). As the putative intervenors seem to acknowledge, *see* Compl. of 733 Putative Intervenors ¶ 5 n.2, that would be even truer here, where 733 individuals seek to join this lawsuit. Resolution of their claims would raise serious pragmatic concerns that weigh heavily against permissive intervention. *See, e.g., Farouk Sys., Inc. v. Costco Wholesale Corp.*, No. 09-cv-3499, 2010 WL 1576690, at *3 (S.D. Tex. Apr. 20, 2010) (denying permissive intervention because it "could add considerable complication and delay" to the case); *Mac Sales Inc. v. E.I. Dupont De Nemours*, No. 89-cv-4571, 1995 WL 581790, at *4 (E.D. La. Sept. 29, 1995) (denying permissive intervention where it would serve to "complicate and delay" already "complicated litigation to the prejudice of the defendant").

Moreover, "[t]he duplicative nature" of certain "claims and interests" asserted by the putative

---

as "an additional consideration militat[ing] against permissive intervention"); *Pueblo of Zuni v. United States*, No. 01-cv-1046, 2005 WL 8163572, at *5 (D.N.M. Oct. 18, 2005); *In re River Park Square Project Bond Litig.*, No. 01-cv-127, 2001 WL 37126612, at *3 (E.D. Wash. Dec. 20, 2001).

intervenors would "threaten[] to unduly delay the adjudication of the rights of the parties in the lawsuit and makes it unlikely that any new light will be shed on the issues to be adjudicated." *Chiles v. Thornburgh*, 865 F.2d 1197, 1215 (11th Cir. 1989); *accord United States v. Territory of Virgin Islands*, 748 F.3d 514, 525 (3d Cir. 2014); *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, No. 1:11-CV-2087, 2011 WL 13221046, at *4 (N.D. Ga. Nov. 1, 2011). Indeed, the putative intervenors allege that they seek to "pursue the same exact legal claims and remedies" as Plaintiffs. *See* Compl. of 733 Putative Intervenors ¶ 1. Their involvement in this matter would thus likely result in even more duplicative briefing and, potentially, additional requests for emergency or preliminary relief, all of which would prolong the adjudication of the dispute between the original parties. All of these claims, moreover, would be subject to severance and dismissal without prejudice to refiling in a proper venue if mis-joined in the manner sought by the putative intervenors here.

*Sixth,* the record contains no allegations or evidence regarding the identities of any putative intervenors. *See generally* Compl. of 733 Putative Intervenors. And 56 putative intervenors are attempting to proceed under pseudonyms without first obtaining the requisite authorization from this Court to do so. *See, e.g., Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exchange v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989); *Doe (M.H.) v. G6 Hospitality LLC*, No. 4:22-cv-198, 2022 WL 2532489, at *1–3 (E.D. Tex. July 7, 2022); *Doe v. Univ. of the Incarnate Word*, No. 19-cv-957, 2019 WL 6727875, at *2 (W.D. Tex. Dec. 10, 2019). Without knowing who these individuals are, Defendants cannot be expected to defend against their claims, nor can the Court be expected to resolve them. *See, e.g., Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1251–52 (W.D. Okla. 2021) ("Absent permission" to proceed anonymously, a district court "lacks jurisdiction to grant relief to [any] unnamed plaintiffs." (citing *Gibbs*, 886 F.2d at 1245)). Indeed, without individualized allegations, it would be infeasible (if not impossible) to try to determine even basic information pertaining to their claims—*e.g.*, whether these individuals currently serve in the Armed Forces; the service and unit in which they serve; where they

are stationed; whether they have complied with an order to become vaccinated against COVID-19; and whether they have sought an exemption from the military's COVID-19 vaccination requirement.[12] These putative intervenors' allegations are thus clearly deficient under basic pleadings standards, providing one more reason that permissive intervention is unwarranted.

**Seventh,** and finally, permitting intervention in these circumstances could invite even more would-be intervenors to request the same treatment, even when they would be free (like the putative intervenors) to pursue their claims in separate actions and in appropriate venues. *See, e.g.*, *The Aransas Project v. Shaw*, No. 10-cv-75, 2010 WL 2522415, at *14 (S.D. Tex. June 17, 2010) ("[A]s part of its role in managing this litigation, the Court must prevent an overflow of additional attempted interventions, which would be a likely consequence of allowing" the putative intervenors "to intervene under Rule 24(b)(1)(B)."); *Farouk Sys., Inc.*, 2010 WL 1576690, at *3 (denying permissive intervention because, *inter alia*, there would then "be no basis on which to prevent" other parties "from also seeking to intervene"); *SEC v. Bear, Stearns & Co., Inc.*, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003) (same). Submerging the original parties and the Court in additional requests to intervene and, potentially, additional motions for emergency or preliminary relief would further detract from the prompt resolution of this lawsuit. Such a result would not be consistent with the purposes of Rule 24(b).

## CONCLUSION

For these reasons, the Court should deny the motion to intervene.

---

[12] It also appears that putative intervenors' counsel himself has found it difficult to verify the accuracy of the information some of his 700+ clients have provided him regarding their circumstances. *See* https://perma.cc/76LQ-AJ2W ("**Do NOT lie to me or the folks working for me.** . . . I need you to not act like a panicky mob and doing stupid stuff like 'fudging' or exaggerating your situation in order to get some benefit you think is out there to be had. . . . [T]his is NOT the time to start making [stuff] up or passing RumInt about when you're being discharged or dropped to the IRR. We wasted untold hours – and some credibility – because people think it's acceptable to [lie] about what their status is. I know you're being fed BS from your commands, but if you don't have an actual Seps date or paperwork, don't make [stuff] up. . . . I can't litigate on behalf of 750 people if some of you aren't being truthful; it hurts the Honest Majority and I won't tolerate it. 'Nuff said.").

Dated: September 22, 2022        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar. No. 55816869
ZACHARY A. AVALLONE
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2022, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch