# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **JOSHUA WILSON,** *et al* | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 4:22-cv-438-ALM |
| **LLOYD AUSTIN, III,** *et al.*, | § § § | |
| Defendants | § § | |

## 733 PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO MOTION TO INTERVENE

## PLAINTIFFS' REPLY

The Government's Response in Opposition would at least have *some* merit if not for 2 glaring factual omissions that nullify virtually every one of the government's arguments, both substantive and procedural – first, the Response ignores or intentionally mischaracterizes the nature of Plaintiffs "employment" as military servicemembers. As just one example, unlike in the normal course of a lawsuit regarding the Defendants are not merely the Plaintiffs' employers, but can also be Plaintiffs' Accusers, and Jailors. Second, Defendants Response wholly sidesteps the facts already presented to this Court that demonstrate unequivocally that Plaintiffs' need for intervention is driven entirely by Defendants' own actions in violating Plaintiffs' rights, targeting them for harassment, denying them promotions, keeping them from changing duty stations, restricting their liberty, grounding them from flying, and even punishing them for the exercise of their First Amendment rights. Plaintiffs' Reply addresses each of Defendants' arguments below *seriatim*.

## ARGUMENT

**I.   MOVING INTERVENORS HAVE PROPERLY PLEADED CLAIMS THAT ARE STATUTORILY COMMITTED TO THIS COURT FOR RESOLUTION.**

**A.   The Intervenor Plaintiffs Have Constitutional, and Statutory Claims Against the Interlocking Actions of both Defendants, FDA and DOD.**

The Defendants rehash arguments not properly before this Court in their Response by (yet again) raising Subject Matter Jurisdiction, citing to their own Opposition Brief (ECF 14) to the named Plaintiffs' Motion for Preliminary Injunction (ECF 9). Those

arguments have already been adequately briefed and answered by Plaintiffs in their Reply (ECF 15, pp. 7-15). To be clear, Intervenor Plaintiffs advance the same claim claims regarding both of the Defendants:

"Plaintiffs challenge a series of discrete, final, coordinated, and unlawful agency actions by Defendants to enable the illegal, *ultra vires* mandates and to discipline and discharge Plaintiffs and tens of thousands of similarly situated class members." (Plaintiffs Reply Brief, ECF 15, pp. 7-8). A declaratory judgment action regarding the status of an FDA regulatory action on the licensure of a biologic is quintessentially a matter for a federal district court; the Defendants' continual mischaracterization of the Plaintiffs' claims as nothing more than a "challenge to the DOD's vaccine mandate" is to miss entirely the scope of the Plaintiffs' and Intervenor Plaintiffs' claims. "In a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201. The same is true of Plainitffs' and Intervenor Plaintiffs' constitutional and APA claims. Intervenor Plaintiffs have properly pleaded such causes of action against both the DOD and FDA and this is the forum to which such questions are committed, notwithstanding Defendants desire that Plaintiffs never get to have the merits of their claims.

    **B.**    **The Federal Rules Provide for Both Intervention and Class Certification; Not One or the Other.**

The Defendants' Response makes a seemingly valid claim about the unwieldy nature of 733 Intervenors – and whether a Motion for Class Certification would obviate such – but it is here that the unavoidable facts of Defendant's own actions assert their primacy to nullify this claim. First, as Plaintiffs have already documented for the Court, it has never been Plaintiffs' preferred course of action to file a Motion to Intervene on behalf of 733 Plaintiffs. From the instigation of this action, in the Complaint itself, Plaintiffs attempted to use a procedural vehicle – namely, an unincorporated association as discussed under Rules 17(b)(3)(A) and 23.2 – to vindicate the rights of the entire group. (*See* ECF 1, ¶¶ 4, 38-39). Likewise, Plaintiffs' counsel has repeatedly engaged with DoJ counsel regarding ways to avoid the need for a Motion to Intervene through voluntary cooperation with the Defendants, including by providing spreadsheet with names and unit information for various Plaintiffs. (*See* ECF 29-4 and 29-5, Emails Between Plaintiffs' and DoJ Counsel). Second, it is Defendants' own litigation positions and actions – by continuing (and continuous) violations of the Religious Freedom Restoration Act ("RFRA") and other statutory rights of Plaintiffs that generates the necessity for Plaintiffs to gain party status in the suit, so that they may seek aegis under the equitable powers of the Court. Finally, the Defendant DOD has continually shifted the "rules" throughout the litigation with changing guidance, punitive actions, letters of counseling, frequent violations of its own rules and regulations, that makes it impossible for non-party putative Plaintiffs to simply "wait and see." Given these shifting sands, it is for good reason that the federal rules provide Plaintiffs – and judges – with the flexibility to have multiple procedural vehicles

to ensure that putative Plaintiffs' rights are not trampled while they await an adjudication where only the named Plaintiffs can avail themselves of the court for relief.

## II. THE DEFENDANTS EXERCISE AWESOME POWER OVER THE PLAINTIFFS AND HAVE ABUSED IT; PLAINTIFFS ARE NOT IN USUAL "EMPLOYMENT" CIRCUMSTANCES.

### A. The Defendant DOD Is NOT Merely the Plaintiffs' "Employer."

The next major argument advanced by the Defendants is the naked assertion that there is "*no* indication" that "disposition of this lawsuit would impair the putative intervenors' ability to protect their alleged interests in remaining employed in the Armed Forces." Def. Resp. Opp., at 7-8 (emphasis added). The Defendants' counsel continues in this vein, following with a series of arguments all related to the notion that this is simply a case about the conditions of Intervenor Plaintiffs' "employment." For example, Defendants' next argument is that each of the Intervenor Plaintiffs is "free to file a separate action" and that their ability to do so disqualifies them under the impairment prong of Rule 24(a)(2). *Id.*, at 8. ("Nothing prevents him from bringing his own lawsuit in a proper venue.") Likewise, for Defendant's follow-on argument that there is "no serious evidence suggesting that their overall objective in this case" diverges from the named Plaintiffs. (*Id.*, at 9.) After which, Defendants again argue that each individual Plaintiff could seek their own individual lawsuit. (*Id.*)

Whether intentional or not, however, counsel's characterization of the putative Plaintiffs' military service as mere "employment" is so far wrong as to be a difference in kind, and not merely quality, and lays bare the most critical fact about this litigation:

5

Plaintiffs are not "normal" employees. Indeed, it is the unique nature of military service that counsel for Defendant DOD has waved around like a bloody flag, invoking *Orlough v. Willoughby* before the Supreme Court in asking for a partial stay against the injunction in *U.S. Navy SEALs 1-26 v. Biden*, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ("Navy SEALs 1-26"), *stay denied*, 27 F.4th 346 (5th Cir. Feb. 28, 2022). Defendants use the "unique nature of the military" as a shield to defend against judicial oversight, but a sword against Plaintiffs, now claiming that the "unique nature of the military" is mere "employment" – and therefore all 733 Intervenors should just go file individual lawsuits. *Id*. Assuming, of course, (or ignoring), that Plaintiffs may well be deployed somewhere …by order of the Defendants.

    Plaintiffs are at the whim of the Defendant DOD. In the course of a more *normal* class action litigation regarding drug licensure, which is at the heart of this case, the Defendants don't have the authority to terminate the Plaintiffs' employment, or prohibit the Plaintiffs from going outside of a 50 mile radius of their home and being able to charge them criminally if they do, or forbid the Plaintiffs from moving up in their career by denying training and education opportunities, or taking back promotions, or publicly censuring Plaintiffs, or removing them from their (base) housing… But the Defendant DoD *does* claim and *use* that power – in this case – and has done all of these things and more, and continues to do so to a significant number of the Intervenor Plaintiffs. *See*, *e.g.*, ECF 3-7, Declaration of Capt. Ryan Madigan, USAF, ¶ 8 (Grounded from all flying, including simulators, after filing for a Religious Accommodation). Class action litigation in other

federal courts has repeatedly found – and enjoined – widespread, systemic discrimination against servicemembers' RFRA rights, such that 4 of the 6 Armed Services are now temporarily enjoined.[1] Those injunctions allow many of the Plaintiffs to be able to stay in the litigation, but there is no stay for either the Army or Coast Guard and, as noted in Intervenors' Motion, there are 155 putative Intervenors in the Army. *See* ECF 29, p. 26.

### B. Plaintiffs' Career Demands are Significantly More Than "Employment."

One of the named plaintiffs, Plaintiff Staff Sergeant (SSG) Steven Brown "is a cryptolinguist in the U.S. Army on active duty with the 173rd Infantry Brigade Combat Team (Airborne) at Caserma Del Din, Vicenza, Italy. His domicile is Plymouth, MA." (ECF 1, ¶ 6.) This is the other, more pragmatic aspect of "the unique nature of military service" that Defendants' counsel is ignoring. SSG Brown is in Italy serving in a paratroop regiment – how exactly is he going to find an attorney and participate meaningfully in his own lawsuit? Congress thought enough about similar kinds of questions during World War 2 to pass the "Soldiers and Sailors Civil Relief Act," to protect military members from having judgments, liens, or other legal matters taken against them in default because of

---

[1] *U.S. Navy SEALs 1-26 v. Biden*, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ("*Navy SEALs 1-26*"), *stay denied*, 27 F.4th 346 (5th Cir. Feb. 28, 2022) ("*Navy SEALs 1-26* Stay Order"); *Navy SEAL 1 v. Austin,* 2022 WL 534459 (M.D. Fla. Feb. 18, 2022) ("*Navy SEAL 1*"), *stay denied pending appeal* No. 22-10645 (11th Cir. Mar. 30, 2022); *Air Force Officer v. Austin*, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ("*Air Force Officer*"); *Poffenbarger v. Kendall*, 2022 WL 594810 (S.D. Oh. Feb. 28, 2022) ("*Poffenbarger*"); *Doster v. Kendall*, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) (*"Doster"*) stay denied, *Doster v. Kendall*, No. 22-3702 (6th Cir. 2022)

their military service. The current version is the "Serviceman's Civil Relief Act," 50 U.S.C. §3901 *et seq*.

> The purposes of this chapter are –
>
> (1) to provide for, strengthen, and expedite the national defense through protection extended by this chapter to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and
> (2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.

50 U.S.C. §3902.

There follow a significant number of subchapters governing, *inter alia*, "General Relief" (§§3931-3938a), "Installment Contracts, Mortgages, Liens, Assignments, and Leases, Communication Service Contracts" (§§3951-3959), and "Administrative Remedies," (§§4011-4013). There are sweeping protections regarding residency and relief from some of the requirements because of military service. *See* "Guarantee of Residency for military personnel and spouses of military personnel," 50 U.S.C. §4025. Indeed, some sections arguably have applicability to this case, but even if not, strongly counsel in favor of Plaintiffs being given Intervenor status. 50 U.S.C. §3932 "Stay of proceedings when servicemember has notice," requires a court to grant a servicemember a stay in "any civil action or proceeding, including any child custody proceeding," for a period of "not less than 90 days" provided certain conditions are met, which fundamentally are that the servicemember can demonstrate that he or she is deployed by a letter from their Commanding Officer. 50 U.S.C. § 3932(b)(2). A number of Intervenor Plaintiffs, whom

SSG Brown represents, continue to be deployed around the world, or in remote areas, despite their unvaccinated status (and notwithstanding legal claims on paper or in court about Intervenor Plaintiffs' "non-deployability.")

Finally, there is a section called of the Act that grants to "any person aggrieved by a violation of this chapter may in a civil action…be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary." 50 U.S.C. §4042(a)(3). The question becomes to what extent a Plaintiff could articulate a "violation of this chapter" and thus invoke this statute. Intervenor Plaintiffs do not seek to do so, regardless, but point to this as part of the larger rubric that illustrates as a judicially cognizable fact that Plaintiffs service is in no way "employment."

The Defendants remaining arguments all fail because they're based on the same fallacious premise. SCRA itself nullifies counsel's specious "forum shopping" claim but both the Plaintiffs Intervenors "unknown or lack of ties" about ties to the jurisdiction counsel's claims about having "no idea" who these Plaintiffs are can be dismissed summarily. First, Plaintiffs names are all on the complaint, with the exception of 59 who seek to proceed pseudonymously. Second, Plaintiffs' counsel has already sent a significant number of the names to Defendants' counsel and offered a framework for identifying every Plaintiff to counsel. There is nothing unusual, and there are procedural mechanisms for so doing, in seeking to provide some protection from public disclosure for a small number of Plaintiffs. Finally, Defendants know exactly who the Plaintiffs are because Defendants are

assiduously tracking and documenting every single person in every service who hasn't yet been vaccinated. Defendants' counsel can't seriously claim that the Plaintiffs are "unknown" to the Defendants. The central element of military life and service is accountability for every single person, from morning muster, to tables of organization and equipment. The Defendant DOD knows exactly who the Intervenor Plaintiffs are. Given that, Defendants are also aware that the vast majority of the would-be Plaintiffs are from the Great State of Texas, significant numbers from Sheppard Air Force Base, Joint Reserve Base Ft. Worth, and many other locations further south.

### III.   CONCLUSION

This Court should grant the Motion to Intervene. The Plaintiffs have earned and pleaded it as a matter of right, and should be as a matter of the court's discretion.

Dated: Sept. 29, 2022

Respectfully submitted,

        /s/ *Jerri Lynn Ward*
Jerri Lynn Ward, Esq.
Texas Bar #20844200
Garlo Ward, P.C.
1017 Rose Circle
College Station, Texas 77840
(512) 302-1103 ext. 115
jward@garloward.com

        /s/ *Dale Saran*
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace

        Olathe, KS 66061
        Telephone: 480-466-0369
        Email: dalesaran@gmail.com

        */s/ Brandon Johnson*
        Brandon Johnson, Esq.
        DC Bar No. 491370
        Defending the Republic
        2911 Turtle Creek Blvd.,
        Suite 300 Dallas, TX 75219
        Tel. 214-707-1775
        Email: bcj@defendingtherepublic.org

        Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that on this 29th day of September, 2022, the foregoing Plaintiffs' Reply Brief was e-filed using the CM/ECF system.

        Respectfully Submitted,
        */s/ Dale Saran*
        Dale Saran