IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JOSHUA A. WILSON, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>LLOYD J. AUSTIN III, *et al.*,<br><br>    Defendants. | Case No. 4:22-cv-00438-ALM |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO
733 PUTATIVE INTERVENORS' MOTION TO INTERVENE**

A group comprising 733 individuals who purportedly serve in the Armed Forces seek to join this lawsuit under the guise of an "intervention" motion. *See* ECF No. 29 ("Mot."). Yet, as explained in Defendants' opposition, *see* ECF No. 31 ("Opp."), these putative intervenors offer no persuasive reason to think that Federal Rule of Civil Procedure 24 authorizes their intervention, whether as of right or by this Court's permission. But if any doubt remained about that, the putative intervenors' reply brief[1] altogether fails to address the federal rules that govern their request to intervene, offering no relevant response to Defendants' opposition. Instead, they focus on matters wholly extraneous to whether intervention would be proper.

**1.** In opposing the motion to intervene, Defendants outlined why the putative intervenors have no right to intervene under Rule 24(a)(2), *see* Opp. at 5–10, and why numerous factors weigh heavily against permitting them to intervene pursuant to Rule 24(b), *see id.* at 10–15. The putative intervenors advance no serious argument in rebuttal; indeed, their reply brief does not even contend that they satisfy a single requirement for intervention under the federal rules.

For example, the putative intervenors fail to grapple with (or even acknowledge) the multitude

---

[1] The putative intervenors have not explained why they submitted a reply brief that is nearly twice the length permitted under the local rules. *See* E.D. Tex. L.R. CIV-7(a)(2).

1

of courts that have found the impairment prong of Rule 24(a)(2) unmet where (as here) a putative intervenor was free to file a separate action to protect his or her alleged interests. *See, e.g.*, *United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986); *see also* Opp. at 6 (collecting over a dozen other cases in accord). They also fail to explain how their alleged interests would be inadequately represented by Plaintiffs in this putative class action. As explained, *see* Opp. at 7–10, if no class is ever certified in this action, Plaintiffs would not "represent" the putative intervenors, who could assert their individual claims in their own lawsuit; and if a class were eventually certified, it is undisputed that Plaintiffs would share the same ultimate objective as the putative intervenors in seeking class-wide relief.

Because the putative intervenors have made no meaningful effort to rebut Defendants' arguments or to otherwise carry their burden to demonstrate that their intervention would be proper under Rule 24, *see, e.g.*, *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996), there is no reason for this Court to grant their request to intervene.

**2.** Even setting Rule 24's requirements aside, the Court's lack of subject-matter jurisdiction over Plaintiffs' claims precludes intervention. The putative intervenors suggest that Defendants' jurisdictional arguments are "not properly before this Court." *See* Reply at 2. But as explained, *see* Opp. at 5, "an existing suit within the court's jurisdiction is a *prerequisite* of an intervention," *see Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (emphasis added). The Court must therefore ensure that it has jurisdiction over this lawsuit before it may grant the putative intervenors' motion.

The putative intervenors also contend that Plaintiffs' claims (as well as their own) are properly before the Court, citing the Declaratory Judgment Act, 28 U.S.C. § 2201(a). But that Act permits an action for declaratory relief only if the action satisfies Article III's case-or-controversy requirement. *See* 28 U.S.C. § 2201(a); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) ("[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of "Cases" and "Controversies" that are justiciable under Article III."). As explained, *see* Defs.' Opp. to Pls.' Mot. for

Prelim. Inj. at 14–17, 23–25, ECF No. 14, Plaintiffs' claims suffer from a host of Article III jurisdictional defects (*i.e.*, mootness and lack of standing and ripeness) that preclude intervention. Moreover, the Declaratory Judgment Act merely provides a remedy, and says nothing about whether intervention is permissible. It does not establish an independent cause of action, *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc), nor somehow a *per se* rule permitting intervention.

**3.** Rather than attempt to make a case that their intervention is authorized under the federal rules, the putative intervenors focus their reply brief on matters that have no apparent relevance to this Court's resolution of their motion. Instead of responding to each extraneous point, however, the following addresses what appear to be the putative intervenors' three principal arguments.

*First*, the putative intervenors spend nearly half their reply brief quarreling with Defendants' "characterization" of their military service as "employment." *See* Reply at 2, 5–9. But that is precisely how the putative intervenors described the "interests" they allegedly seek to protect. *See, e.g.*, Mot. at 25 (claiming to "have a concrete interest in continued employment" (emphasis removed)); *id.* at 26 (claiming to have an "interest in continued employment"); *id.* at 27 (referring to their interest in "maintaining employment"); Compl. of 733 Putative Intervenors ¶ 19 (alleging that they face "loss of . . . current employment"); *see also, e.g.*, Mot. at 24 (equating discharge with "a loss of job"). Regardless, the putative intervenors offer no explanation what legal difference it makes, for purposes of an intervention analysis, whether their interests are cast in terms of continued "employment" or "military service." In either event, the putative intervenors cannot show that these interests would be impaired by the disposition of this action or that Plaintiffs would inadequately represent those interests in this litigation. *See supra*.

*Second*, the putative intervenors comment at length on the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901–4043, again without ever explaining what relevance it has to this case or their motion to intervene. *See* Reply at 7–9. In fact, they admit that they do not "invoke" any of the Act's provisions,

3

but instead "point to" these provisions only to "illustrate[]" that (contrary to their own arguments, *see* Mot. at 25–26) the putative intervenors' military service "is in no way 'employment.'" *See id.* at 9. But as just explained, the distinction between military service and employment is legally irrelevant to the Court's resolution of their motion to intervene.[2]

*Third*, the putative intervenors ask that the Court overlook their failure to provide any specific allegations or evidence regarding their identities. *See* Reply at 9–10. But that argument reflects a fundamental misunderstanding of elementary pleading standards, which require that a complaint, at a minimum, afford a defendant a meaningful opportunity to mount a defense. *See, e.g., Sky Toxicology, Ltd. v. United Healthcare Ins. Co.*, No. 5:16-cv-1094, 2018 WL 4211741, at *4 (W.D. Tex. Sept. 4, 2018). That, in turn, requires a complaint to set forth "basic details" pertaining to each claim for relief, like the "*who*, what, or when." *Gaff v. Ally Financial, Inc.*, No. 4:20-cv-644, 2021 WL 7540293, at *3 (N.D. Tex. Aug. 25, 2021) (emphasis added); *accord, e.g., Johnson v. Reed*, 21-cv-1683, 2022 WL 479768, at *1 (S.D. Ill. Feb. 16, 2022); *Fournier v. Baker*, No. 17-cv-40038, 2018 WL 988061, at *1 (D. Mass. Feb. 20, 2018). A complaint "needs these details" to provide the requisite "short and plain statement of the claim showing that the pleader is entitled to relief," and without them, a plaintiff cannot state a plausible claim. *Gaff*, 2021 WL 7540293, at *3 (quoting Fed. R. Civ. P. 8(a)(2)); *accord Balice v. United*

---

[2] Notably, in the course of this discussion, the putative intervenors point to Plaintiff Steven Brown, who they claim is serving as an Army cryptolinguist in Italy. *See* Reply at 7. They ask rhetorically how Brown (or any putative intervenor who is currently deployed) should be expected "to find an attorney and participate meaningfully" in a lawsuit while serving overseas. *See id.* at 8. This appears to be a response to Defendants' argument that it would be nearly impossible for this Court to manage a lawsuit with hundreds of plaintiffs who would need to participate intelligently in substantive decisions in this litigation. *See* Opp. at 4. But their argument is bewildering for two reasons. First, Brown *has* found an attorney: putative intervenors' own counsel purports to represent him in this lawsuit. (And, for that reason, the putative intervenors should know that Brown is no longer serving in Italy, but rather is on transition leave in Alabama and has elected to leave the Army in November 2022. *See* Decl. of Capt. Christopher Kittle ¶ 1, ECF No. 14-19.) Second, contrary to what putative intervenors suggest, whether deployed or not, *each* individual that joins this lawsuit as a party must, at a bare minimum, meaningfully participate in litigating their individual claims.

*States*, 776 F. App'x 779, 780 (3d Cir. 2019). Here, the putative intervenors have submitted a complaint that lists the names of 674 individuals without providing *any* allegations that would enable Defendants or the Court to determine their identities. Moreover, 59 other individuals are seeking to intervene under pseudonyms without this Court's authorization, for which the putative intervenors offer no explanation. That falls woefully short of their fundamental pleading obligations and cannot sustain a request to intervene. The failure to identify the putative intervenors in their complaint frustrates any effort to assess whether these individuals have any proper basis to intervene; indeed, it is impossible to tell on this record whether they could even establish venue in this District.

The putative intervenors assert that "Defendants know exactly" who they are, because they "track[] and document[]" unvaccinated service members. *See* Reply at 9–10. But their complaint cannot "survive the pleading standard in Rule 12(b)(6) by requiring [Defendants] to go on a fact-gathering mission" to try to determine these individuals' identities. *See Sky Toxicology*, 2018 WL 4211741, at *4 (quoting *Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Tex.*, No. 3:13-cv-2920, 2014 WL 4262164, at *3 n.2 (N.D. Tex. Aug. 29, 2014)). Defendants cannot be expected to mount a defense if the putative intervenors' complaint does not even explain, for example, *which* "Robert Smith" or "Jason Jones" or "John Martin" or "Stephen Williams," *see* Intervening Compl. of 733 Additional Pls. at pp. 7, 9, 13, 15, ECF No. 29-3, is serving (or has served) in the United States military and now seeks to intervene in this action. Providing those basic details in their complaint is the putative intervenors' obligation.[3]

## CONCLUSION

For the reasons explained in Defendants' opposition and elaborated on above, the Court should deny the 733 putative intervenors' motion to intervene.

---

[3] After acknowledging that dozens of individuals are seeking to intervene anonymously, the putative intervenors claim that they have "already sent a significant number of the names to Defendants." *See* Reply at 9. But the putative intervenors provided Defendants with information regarding only 69 individuals—far short of providing identifying information for the 733 individuals seeking to intervene—and nothing that identifies who is an anonymous putative intervenor.

Dated: October 6, 2022	Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar. No. 55816869
ZACHARY A. AVALLONE
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch