**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| JOSHUA A. WILSON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LLOYD J. AUSTIN III, *et al.*, <br><br> Defendants. | Case No. 4:22-cv-00438-ALM |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

ARGUMENT ....................................................................................................................8

    I.    Plaintiffs' Claims Are Moot. ........................................................................8

    II.    Congress Did Not Require the Military to Restore Those Who Refused a Lawful Order to the *Status Quo Ante*. ..........................................................12

        A.    The Text of the NDAA Does Not Show Clear Intent of Retroactivity. ....................................................................................13

        B.    Legislative History Confirms Congress Did Not Intend the NDAA to Have Retroactive Effect. ....................................................14

        C.    The Scope of Rescission Was Left to Agency Discretion. ...............16

    III.    Plaintiffs' Claims Are Not Justiciable. .......................................................17

        A.    Plaintiffs Requested Relief Is Not Available. ....................................17

        B.    Plaintiffs Have Not Exhausted Available Intra-Service Remedies. ...21

        C.    The Association Lacks Associational Standing. ................................25

    IV.    Plaintiffs Lack Standing to Pursue Claims Based on False Allegations They Were Required to Receive an EUA Vaccine. ...............................................29

    V.    Plaintiffs Lack Standing to Challenge the FDA's Actions. .........................31

    VI.    Plaintiffs' EUA Claims Are Meritless. ......................................................33

    VII.    Plaintiffs' Constitutional Claim Is Meritless. .............................................34

        A.    Plaintiffs Fail to Plausibly Allege an Equal Protection Claim. ...........34

        B.    Plaintiffs' Constitutional Claims Are Subject to Rational Basis Review. ..........35

        C.    Plaintiffs Cannot Meet Their Burden Under Rational Basis Review. ...............37

    VIII.    Plaintiffs' Request for Relief under *Rumsfeld* Fails as a Matter of Law. ..........................38

CONCLUSION ................................................................................................................40

# TABLE OF AUTHORITIES

## CASES

*AARP v. EEOC,*
  226 F. Supp. 3d 7 (D.D.C. 2016) .................................................................................................29

*Abbott v. Biden,*
  608 F. Supp. 3d 467 (E.D. Tex. 2022), *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022) ...............37

*Air All. Hous. v. U.S. Chem. & Safety Hazard Investigation Bd.,*
  365 F. Supp. 3d 118 (D.D.C. 2019)..............................................................................................29

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ...........................................................................................................................8

*Alvarado v. Austin,*
  No. 1:22-cv-876, 2023 WL 2089246 (E.D. Va. Feb. 17, 2023) .........................................11, 12

*Am. Bar Ass'n v. FTC,*
  636 F.3d 641 (D.C. Cir. 2011) .......................................................................................................9

*Antonellis v. United States,*
  723 F.3d 1328 (Fed. Cir. 2013) ...................................................................................................25

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................................................36

*Ass'n of Am. Physicians & Surgeons v. U.S. FDA,*
  No. 20-1784, 2020 WL 5745974 (6th Cir. Sept. 24, 2020) ........................................................34

*Ass'n of Am. Physicians and Surgeons v. Tex. Med. Bd.,*
  627 F.3d 547 (5th Cir. 2010)........................................................................................................26

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.,*
  713 F.3d 1187 (9th Cir. 2013) .....................................................................................................26

*Austin v. U.S. Navy SEALs 1-26,*
  142 S. Ct. 1301 (2022) .................................................................................................................19

*Bates v. Donley,*
  935 F. Supp. 2d 14 (D.D.C. 2013)..........................................................................................40, 41

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers,*
  941 F.3d 1195 (9th Cir. 2019) ..................................................................................................9, 10

*Boerschig v. Trans-Pecos Pipeline, LLC,*
  872 F.3d 701 (5th Cir. 2017)..........................................................................................................1

*Bolling v. Sharpe,*
  347 U.S. 497 (1954) ...................................................................................................36

*Brady Campaign to Prevent Gun Violence v. Salazar,*
  612 F. Supp. 2d 1 (D.D.C. 2009) ...............................................................................29

*Brown v. Smith,*
  24 Cal. App. 5th 1135 (Cal. Ct. App. 2018) ...............................................................38

*Butts v. Aultman,*
  953 F.3d 353 (5th Cir. 2020) .....................................................................................36

*C & H Nationwide v. Norwest Bank Tex. N.A.,*
  208 F.3d 490 (5th Cir. 2000) .....................................................................................10

*Chappell v. Wallace,*
  462 U.S. 296 (1983) ..................................................................................................25

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ..................................................................................................17

*Children's Health Def. v. U.S. FDA,*
  No. 21-6203, 2022 WL 2704554 (6th Cir. July 12, 2022), *cert. denied*, 143 S. Ct. 784 (2023) ........32, 33

*Children's Health Defense v. FDA,*
  --- F. Supp. 3d ---, 2023 WL 175004 (W.D. Tex. Jan. 12, 2023) ................................26

*Church v. Biden,*
  573 F. Supp. 3d 118 (D.D.C. 2021) ...........................................................................23

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983) ...............................................................................................27, 30

*Coal. for Mercury-Free Drugs v. Sebelius,*
  671 F.3d 1275 (D.C. Cir. 2012) .................................................................................31

*Colonel Fin. Mgmt. Officer v. Austin,*
  No. 8:22-cv-2429, 2023 WL 2764767 (M.D. Fla. Apr. 3, 2023) ................................11

*Crawford v. Tex. Army Nat'l Guard,*
  794 F.2d 1034 (5th Cir. 1986) ...................................................................................23

*Creaghan v. Austin,*
  No. 22-5135, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023) .......................................11

*Crosby v. Austin,*
  No. 8:21-cv-2730, 2022 WL 603784 (S.D. Fla. Mar. 1, 2022) ..............................31, 33

*DeGroat v. Townsend*,
    495 F. Supp. 2d 845 (S.D. Ohio 2007) ................................................................................... 19

*Denis v. Ige*,
    538 F. Supp. 3d 1063 (D. Haw. 2021) .................................................................................... 39

*Dierlam v. Trump*,
    977 F.3d 471 (5th Cir. 2020), *cert. denied sub nom.*, *Dierlam v. Biden*, 141 S. Ct. 1392 (2021) ................. 32

*Dodson v. Dep't of Army*,
    988 F.2d 1199 (Fed. Cir. 1993) .............................................................................................. 21

*Doe #1–#14 v. Austin*,
    572 F. Supp. 3d 1224 (N.D. Fla. 2021) ............................................................................ 31, 38

*Doe v. Rumsfeld*,
    172 F. App'x 327 (D.C. Cir. 2006) ......................................................................................... 40

*Doe v. Rumsfeld*,
    297 F. Supp. 2d 119 (D.D.C. 2003) ........................................................................................ 40

*Doe v. Rumsfeld*,
    341 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................................ 40

*Doe v. Rumsfeld*,
    No. 03-707, 2005 WL 774857 (D.D.C. Feb. 6, 2005) ........................................................... 40

*Doe v. Sullivan*,
    938 F.2d 1370 (D.C. Cir. 1991) .............................................................................................. 38

*Doe v. Zucker*,
    520 F. Supp. 3d 217 (N.D.N.Y. 2021), *aff'd sub nom.*, *Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022) .......... 37

*Doster v. Kendall*,
    342 F.R.D. 117 (S.D. Ohio, July 14, 2022) ............................................................................ 21

*Doster v. Kendall*,
    No. 1:22-cv-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022), *aff'd*,
    54 F.4th 398 (6th Cir. 2022) ............................................................................................. 7, 21

*Doster v. Kendall*,
    No. 22-3497, 2023 WL 2966353 (6th Cir. Apr. 17, 2023) ...................................................... 11

*Easom v. US Well Servs., Inc.*,
    37 F.4th 238 (5th Cir. 2002), *cert. denied*, 143 S. Ct. 427 (2022) ...................................... 17

*Env't Conservation Org. v. City of Dall.*,
    529 F.3d 519 (5th Cir. 2008) ................................................................................................... 32

iv

*F.F. ex rel. Y.F. v. New York,*
   65 Misc. 3d 616, (N.Y. Sup. Ct. 2019) ..............................................................................38

*Fisher v. United States,*
   402 F.3d 1167 (Fed. Cir. 2005) ........................................................................................18

*Flowers v. United States,*
   80 Fed. Cl. 201 (2008), *aff'd*, 321 F. App'x 928 (Fed. Cir. 2008) ..................................20

*Flyers Rts. Educ. Fund, Inc. v. U.S. Dep't of Transp.,*
   957 F.3d 1359 (D.C. Cir. 2020) ........................................................................................29

*Fontenot v. McCraw,*
   777 F.3d 741 (5th Cir. 2015) ........................................................................................8, 9

*Free Speech Coal., Inc. v. Attorney General,*
   974 F.3d 408 (3d Cir. 2020) .............................................................................................27

*Freedom From Religion Found., Inc. v. Abbott,*
   58 F.4th 824 (5th Cir. 2023) ..............................................................................................9

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.,*
   284 F.3d 575 (5th Cir. 2002) ......................................................................................28, 29

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC), Inc.,*
   528 U.S. 167 (2000) ..........................................................................................................26

*Gilligan v. Morgan,*
   413 U.S. 1 (1973) ........................................................................................................19, 22

*Glass v. Paxton,*
   900 F.3d 233 (5th Cir. 2018) ............................................................................................38

*Golden v. Zwickler,*
   394 U.S. 103 (1969) ..........................................................................................................11

*Guerra v. Scruggs,*
   942 F.2d 270 (4th Cir. 1991) ............................................................................................24

*Guilfoyle v. Beutner,*
   No. 2:21-cv-05009, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) ..................................34

*Harkness v. Sec'y of Navy,*
   858 F.3d 437 (6th Cir. 2017) ..............................................................................23, 24, 25

*Harris v. Univ. of Mass., Lowell,*
   557 F. Supp. 3d 304 (D. Mass. 2021), *appeal dismissed*, 43 F.4th 187 (1st Cir. 2022) ..............................37

*Heap v. Carter,*
    112 F. Supp. 3d 402 (E.D. Va. 2015) ................................................................................29

*Heidman v. United States,*
    414 F. Supp. 47 (N.D. Ohio 1976) ...................................................................................22

*Hodges v. Callaway,*
    499 F.2d 417 (5th Cir. 1974) ..............................................................................22, 23, 24

*Holdiness v. Stroud,*
    808 F.2d 417 (5th Cir. 1987) ............................................................................................19

*Honig v. Students of Cal. Sch. for the Blind,*
    471 U.S. 148 (1985) ..........................................................................................................32

*Hous. Chronicle Publ'g Co. v. League City,*
    488 F.3d 613 (5th Cir. 2007) ..............................................................................................9

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) ..........................................................................................................27

*In re Scruggs,*
    392 F.3d 124 (5th Cir. 2004) ..............................................................................................8

*Johnson v. Brown,*
    567 F. Supp. 3d 1230 (D. Or. 2021) .................................................................................37

*Johnson v. Mississippi,*
    586 F.2d 387 (5th Cir. 1978) ..............................................................................................9

*Johnson v. Reed,*
    609 F.2d 784 (5th Cir. 1980) ............................................................................................23

*K.P. v. LeBlanc,*
    729 F.3d 427 (5th Cir. 2013) ..............................................................................................8

*Keister v. Bell,*
    29 F.4th 1239 (11th Cir. 2022) ...........................................................................................9

*Klaassen v. Trs. of Ind. Univ.,*
    7 F.4th 592 (7th Cir. 2021), *emergency application for relief denied*, No. 21A15 (Aug. 12, 2021) .............37

*Knick v. Austin,*
    No. 22-cv-01267, 2022 WL 2157066 (D.D.C. June 15, 2022) ......................................23

*Kreis v. Sec'y of Air Force,*
    866 F.2d 1508 (D.C. Cir. 1989) .......................................................................................18

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ..................................................................................................................12

*Lawrence v. McCarthy*,
    344 F.3d 467 (5th Cir. 2003) ...................................................................................................22

*League of United Latin Am. Citizens v. Abbott*,
    604 F. Supp. 3d 463 (W.D. Tex. 2022) ...................................................................................27

*Lindenau v. Alexander*,
    663 F.2d 68 (10th Cir. 1981) ...................................................................................................19

*Lloyd v. Sch. Bd. of Palm Beach Cnty.*,
    570 F. Supp. 3d 1165 (S.D. Fla. 2021) ...................................................................................39

*Longhofer v. United States*,
    29 Fed. Cl. 595 (1993) .............................................................................................................21

*Love v. State Dep't of Educ.*,
    29 Cal. App. 5th 980 (Cal. Ct. App. 2018) .............................................................................38

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) .................................................................................................................28

*Maier v. Orr*,
    754 F.2d 973 (Fed. Cir. 1985) ...........................................................................................19, 20

*Mark Short v. Berger*,
    593 F. Supp. 3d 944 (C.D. Cal. 2022), *appeal dismissed*,
    2022 WL 2421096 (9th Cir. May 17, 2022) ............................................................................23

*Mass. Bd. of Retirement v. Murgia*,
    427 U.S. 307 (1976) .................................................................................................................37

*McCorvey v. Hill*,
    385 F.3d 846 (5th Cir. 2004) .....................................................................................................9

*McCurdy v. Zuckert*,
    359 F.2d 491 (5th Cir. 1966) ...................................................................................................23

*Meister v. Tex. Adjutant Gen.'s Dep't*,
    233 F.3d 332 (5th Cir. 2000) ...................................................................................................23

*Mier v. Owens*,
    57 F.3d 747 (9th Cir. 1995) .....................................................................................................23

*Miller v. Austin*,
    --- F. Supp. 3d ---, 2022 WL 3584666 (D. Wyo. Aug. 22, 2022) ...........................................23

*Miller v. United States,*
    42 F.3d 297 (5th Cir. 1995) ..................................................................................25

*Mindes v. Seaman,*
    453 F.2d 197 (5th Cir. 1971) ...................................................................11, 22, 23

*NAACP v. City of Kyle,*
    626 F.3d 233 (5th Cir. 2010) ..........................................................................26, 27

*Nat'l Ass'n of Gov't Emps. v. Mulligan,*
    914 F. Supp. 2d 10 (D. Mass. 2012) .........................................................27, 28, 29

*Navy SEAL 1 v. Austin,*
    No. 22-5114, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023) ............................11, 38

*Navy SEAL 1 v. Biden,*
    574 F. Supp. 3d 1124 (M.D. Fla. 2021) .................................................................33

*Navy SEAL I v. Austin,*
    600 F. Supp. 3d 1 (D.D.C. 2022), *vacated & remanded,*
    2023 WL 2482927 (D.C. Cir. Mar. 10, 2023) ......................................................38

*Norris v. Stanley,*
    558 F. Supp. 3d 556 (W.D. Mich. 2021) ...............................................................31

*Norris v. Stanley,*
    567 F. Supp. 3d 818 (W.D. Mich. 2021), *appeal dismissed,*
    2021 WL 6803021 (6th Cir. Nov. 24, 2021) .........................................................37

*North Carolina v. Rice,*
    404 U.S. 244 (1971) .............................................................................................11

*Northshore Development v. Lee,*
    835 F.2d 580 (5th Cir. 1988) ................................................................................22

*Oklahoma v. Biden,*
    577 F. Supp. 3d 1245 (W.D. Okla. 2021) .............................................................38

*Opati v. Republic of Sudan,*
    140 S. Ct. 1601 (2020) .........................................................................................12

*Orloff v. Willoughby,*
    345 U.S. 83 (1953) .........................................................................................19, 23

*Overton Power Dist. No 5 v. O'Leary,*
    73 F.3d 253 (9th Cir. 1996) ..................................................................................34

*Parisi v. Davidson,*
    405 U.S. 34 (1972) ...........................................................................................21, 22

*Parker v. Levy,*
    417 U.S. 733 (1974) ................................................................22

*Parsons v. U.S. Dep't of Just.,*
    878 F.3d 162 (6th Cir. 2017) ...................................................35

*Perpich v. Dep't of Def.,*
    496 U.S. 334 (1990) ................................................................18

*Prince v. Massachusetts,*
    321 U.S. 158 (1944) ................................................................37

*Prison Legal News v. FBI,*
    944 F.3d 868 (10th Cir. 2019) .................................................32

*Robert v. Austin,*
    No. 21-cv-02228, 2022 WL 103374 (D. Colo. Jan. 11, 2022), *appeal filed*
    No. 22-1032 (10th Cir. Feb. 2, 2022) ......................................23

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
    141 S. Ct. 63 (2020) ..........................................................36, 38

*Roth v. Austin,*
    603 F. Supp. 3d 741 (D. Neb. 2022) ......................................38

*Roth v. Austin,*
    62 F.4th 1114 (8th Cir. 2023) .................................................11

*Rucker v. Sec'y of the Army,*
    702 F.2d 966 (11th Cir. 1983) .................................................23

*Schlanger v. United States,*
    586 F.2d 667 (9th Cir. 1978) ...................................................24

*Schlesinger v. Councilman,*
    420 U.S. 738 (1975) ................................................................22

*Scott v. Schedler,*
    826 F.3d 207 (5th Cir. 2016) ...................................................28

*Sebra v. Neville,*
    801 F.2d 1135 (9th Cir. 1986) .................................................25

*Spell v. Edwards,*
    962 F.3d 175 (5th Cir. 2020) .....................................................9

*St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency,*
    556 F.3d 307 (5th Cir. 2009) ...................................................20

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ........................................................................................................8

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) ......................................................................................................38

*Turner v. Egan,*
  358 F. Supp. 560 (D. Alaska 1973) ..................................................................................24

*U.S. Navy SEALs 1–26 v. Biden,*
  27 F.4th 336 (5th Cir. 2022) ............................................................................................22

*United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.,*
  517 U.S. 544 (1996) .....................................................................................................26, 27

*United States v. Orellana,*
  405 F.3d 360 (5th Cir. 2005) ............................................................................................14

*United States v. Shearer,*
  473 U.S. 52 (1985) ............................................................................................................25

*Valdez v. Grisham,*
  559 F. Supp. 3d 1161 (D.N.M. 2021), *aff'd,* 2022 WL 2129071 (10th Cir. June 14, 2022)................37

*Vartelas v. Holder,*
  566 U.S. 257 (2012) ..........................................................................................................12

*Voge v. United States,*
  844 F.2d 776 (Fed. Cir. 1988) ..........................................................................................23

*Von Hoffburg v. Alexander,*
  615 F.2d 633 (5th Cir. 1980) ......................................................................................22, 23

*Wash. Legal Found. v. Leavitt,*
  477 F. Supp. 2d 202 (D.D.C. 2007).................................................................................29

*We The Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021), *opinion clarified,* 17 F.4th 368 (2d Cir. 2021), and
  *cert. denied sub nom.,* *Dr. A. v. Hochul,* 142 S. Ct. 2569 (2022) ........................................37

*West v. Brown,*
  558 F.2d 757 (5th Cir. 1977) ......................................................................................24, 25

*Williams v. Brown,*
  567 F. Supp. 3d 1213 (D. Or. 2021) ................................................................................37

*Williamson v. Tucker,*
  645 F.2d 404 (5th Cir. 1981)........................................................................................2, 31

*Woodard v. Marsh,*
  658 F.2d 989 (5th Cir. 1981)..................................................................................23, 25

*Yarls v. Bunton,*
  905 F.3d 905 (5th Cir. 2018)..........................................................................................9

*Zucht v. King,*
  260 U.S. 174 (1922)......................................................................................................37

**STATUTES**

1 U.S.C. § 109..................................................................................................................12

5 U.S.C. § 701..................................................................................................................34

10 U.S.C. § 113................................................................................................................34

10 U.S.C. § 531................................................................................................................18

10 U.S.C. § 1107a.....................................................................................................11, 34

10 U.S.C. § 7013..............................................................................................................34

10 U.S.C. § 8013..............................................................................................................34

10 U.S.C. § 9013..............................................................................................................34

21 U.S.C. § 337................................................................................................................34

21 U.S.C. § 360bbb-3......................................................................................................34

28 U.S.C. § 1346..............................................................................................................20

28 U.S.C. § 1491..............................................................................................................20

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023,
  Pub. L. No. 117-263, 136 Stat. 2395 (2022) ......................................................1, 5, 14

**REGULATIONS**

Biological Products; Bacterial Vaccines and Toxoids; Implementation of Efficacy Review,
  69 Fed. Reg. 255 (Jan. 5, 2004)....................................................................................40

**RULES**

Fed. R. Civ. P. 65............................................................................................................28

**UNITED STATES CONSTITUTION**

U.S. Const. art. I, § 8......................................................................................................18

U.S. Const. art. II, § 2.................................................................................................18

## OTHER AUTHORITIES

168 Cong. Rec. H9425 (Dec. 8, 2022)....................................................................15

CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines* (updated June 30, 2022),
   https://perma.cc/HG5T-YTDV.........................................................................39

FDA, Letter of July 8, 2022,
   https://perma.cc/AJU6-8WUW........................................................................33

Feb. 24, 2023, Deputy Secretary of Defense Memo,
   https://perma.cc/3MXS-2CNR...................................................................5, 6, 35

Feb. 24, 2023, SECAF Memo,
   https://perma.cc/VJH5-ENQM.......................................................................6, 17

Feb. 24, 2023, SECARMY,
   https://perma.cc/YG8Y-QZAW........................................................................6, 7

https://www.congress.gov/amendment/117th-congress/senate-amendment/6526/actions..............15

https://www.congress.gov/bill/117th-congress/house-resolution/1512/text........................14

https://www.merriam-webster.com/thesaurus/rescind.............................................13

https://perma.cc/BTL2-JX7M...................................................................30

Jan. 24, 2023, Sen. Cruz Press Release,
   https://perma.cc/49PR-SQ9Y..........................................................................16

Matrix,
   https://perma.cc/F66Y-PUFN...........................................................................6

NAVADMIN 065/23,
   https://perma.cc/7T5J-68A4.......................................................................6, 35

RESCIND, Black's Law Dictionary (11th ed. 2019) .............................................13

RESCIND, Merriam-Webster Dictionary,
   https://www.merriam-webster.com/dictionary/rescind........................................13

RESCISSION, Black's Law Dictionary (11th ed. 2019)....................................13, 14

S. Amdt. 6526 to H.R. 7776,
   https://www.congress.gov/amendment/117th-congress/senate-amendment/6526/text..............15

Sec'y of Def. Mem. (Aug. 24, 2021),
   https://perma.cc/N759-S758....................................................................2, 3, 34

Sen Rec. Col. 168, Issue 195, page S7233,
    https://www.congress.gov/117/crec/2022/12/15/168/195/CREC-2022
    -12-15-pt1-PgS7226.pdf.................................................................................................................15

## INTRODUCTION

Defendants previously moved to dismiss Plaintiffs' initial complaint challenging the military's now-defunct COVID-19 vaccination, ECF No. 40, explaining that the Secretary of Defense rescinded the COVID-19 vaccination requirement on January 10, 2023, at the direction of Congress. *See* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (2022). Since the COVID-19 vaccination requirement was rescinded, there is no supposedly unlawful action for this Court to enjoin. *See* Order, ECF No. 35 ("A request for injunctive relief generally becomes moot when the event sought to be enjoined takes place.") (citing *Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701 (5th Cir. 2017)). Instead of responding to Defendants' motion to dismiss explaining why their case is not moot, Plaintiffs amended their complaint. The new allegations and claims largely fall into three categories.

First, Plaintiffs argue that their claims are not moot because Congress, in directing the Secretary of Defense to "rescind" the COVID-19 vaccination requirement, required the military to retroactively unwind all consequences for prior noncompliance and restore all Service members to the *status quo ante*. First Am. Compl, Claims I–II, ECF No. 41 ("FAC"). But the text of the statute does not command the retroactive effect sought by Plaintiffs. And even if the statute were ambiguous, all canons of statutory interpretation direct the court to interpret the Act to ***not*** have retroactive effect.

The second category of claims focus on Plaintiffs' argument that they were required to take a vaccine authorized only under an Emergency Use Authorization ("EUA") "without [a] Presidential waiver." FAC ¶ 200; *see* Claims II–VIIIa.[1] But the now-rescinded COVID-19 vaccination policy did *not* require Plaintiffs to take an EUA vaccine—it only required Service members to receive a vaccine that had received full U.S. Food and Drug Administration ("FDA") Biologics License Application

---

[1] Plaintiffs identify two claims as "Eighth Cause of Action." For clarity, Defendants will refer to Claim VIIIa for FAC ¶¶ 271–283 and Claim VIIIb for FAC ¶¶ 284–306.

("BLA") approval. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. Thus, aside from the mootness of the matter, any facial challenge alleging otherwise is not viable considering the plain text of that now-rescinded policy.

To plead around the plain text of the now-rescinded policy, Plaintiffs allege a *de facto* policy of requiring EUA vaccines. Plaintiffs allege that "no FDA-licensed products were available to them." FAC ¶ 75. But, again leaving aside the fact that *no* COVID-19 vaccine is presently required, Plaintiffs admit in the next two paragraphs that the military had "FDA-licensed COMIRNATY®" and FDA-licensed SPIKEVAX® with branded labels during the time when the COVID-19 requirement was in force. FAC ¶¶ 76–77.[2] Despite the admitted availability of these products, no Plaintiff complied with the COVID-19 vaccination requirement. Moreover, after this suit was filed, Defendants offered BLA-approved Comirnaty from vials with branded labels to Plaintiffs and members of the unincorporated association. No one accepted that offer.[3]

Accordingly, this case is not only moot, but Plaintiffs also lack standing because they suffered no harm caused by the alleged lack of BLA-approved vaccines when the policy was in place. Their refusal to accept the offer of a BLA-approved vaccine from a vial with a BLA-approved label—which Plaintiffs concede means it is fully "FDA-licensed"—shows that any adverse action or alleged injury they faced for refusing to comply with the now-defunct mandate was not caused by the alleged lack of BLA-approved products. Plaintiffs also have no redressable injury because requiring DoD to

---

[2] As explained further below, even before DoD had product vials with branded labels, the FDA designated certain lots of EUA product as BLA-complaint, and those products were available to Plaintiffs from the Fall 2021. *See* Decl. of T. Rans, *Coker v. Austin*, 21-cv-1211, ECF No. 31-14 (N.D. Fla. Oct. 20, 2021) ("As of October 16, 2021, the DoD has in its possession hundreds of thousands of BLA-compliant vaccine doses that are EUA-labeled.")

[3] Plaintiffs' refusal to accept a BLA-approved vaccine dose when offered is a jurisdictional fact that this Court can rely on when considering dismissal for lack of standing. *See Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981) (when reviewing a motion to dismiss for lack of jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims").

provide them a BLA-approved vaccine would not change anything—there is no vaccination requirement, and even if there were, Defendants *already* provided the opportunity when the requirement was in force, and all Plaintiffs refused the offer. Thus, on both mootness and standing grounds, the Court lacks subject-matter jurisdiction to consider Plaintiffs' EUA-related claims.

Finally, Plaintiffs raise a single constitutional claim—that the military is violating the Equal Protection Clause by discriminating against those who are not vaccinated. *See* FAC Claim VIIIb. But this claim also lacks any jurisdictional foundation, and also fails to state a claim. As explained below, it is undisputed that the military has comprehensively removed the prior service, travel, and training restrictions for unvaccinated servicemembers. Plaintiffs point to no concrete injury or imminently threatened injury that could establish standing for their Equal Protection Claim. But even if Plaintiffs could overcome that threshold hurdle, any differing treatment of military personnel based on vaccination status would be subject to rational-basis review and easily satisfies that standard.

For these reasons and others, the Court should dismiss the complaint in its entirety.

## BACKGROUND

The history of the COVID-19 pandemic, its impact on our Nation and the military, and the implementation of the now-defunct COVID-19 vaccination mandate were detailed in Defendants' opposition to Plaintiff's motion for preliminary injunction. ECF No. 14. As relevant here, on August 24, 2021, the Secretary of Defense, by memorandum, directed the Secretaries of the Military Departments to ensure that members of the Armed Forces were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. The memorandum then in place made clear that "[m]andatory vaccination against COVID-19 will only use COVID-19 vaccines that received full licensure from the [FDA], in accordance with FDA-approved labeling and guidance." *Id.*

Since at least October 2021, DoD has had hundreds of thousands of BLA-complaint vaccine doses. In the fall of 2021, "the FDA determined that some lots of the vaccine produced at facilities

and released in accordance with Pfizer-BioNTech's licensed Comirnaty were manufactured in compliance with the BLA." Decl. of T. Rans ¶ 6, ECF No. 41-11. "Pfizer-BioNTech provided a memo in their shipping containers which referred to a link where lot numbers for these Pfizer-BioNTech BLA-compliant vials could be located. The memo and lot information are [publicly] accessible, though the link has been updated from Pfizer BioNTech's memo as additional COVID-19 vaccines have been added to their portfolio." *Id.* To the extent that Plaintiffs complain about whether the FDA-licensed brand name was on the label, DoD also received BLA-compliant product in branded packaging while the requirement was in effect. FAC ¶76.

On May 23, 2022, fourteen Service members serving in the Army, Air Force, Navy, or Marines, along with an unincorporated association, sued DoD, the U.S. Department of Health and Human Services, and FDA on behalf of themselves and a yet-uncertified class. *See generally* Compl. Plaintiffs allege that the military's vaccination requirement was unconstitutional, exceeded Defendants' statutory authority, violated various federal statutes, and was arbitrary and capricious under the APA. *Id.* Counts I–VI. Plaintiffs also alleged that no vaccine from vials with BLA labels was available.

On June 13, 2022, Defendants sent a written offer to Plaintiff's counsel notifying them that Plaintiffs were mistaken about the supposed unavailability of BLA-compliant vaccine with FDA-approved branded labels. *See* Email Z. Avallone to D. Saran (June 13, 2022), ECF No. 14-26 ("Defendants now have over 35,000 doses of Comirnaty-labeled vaccine.").

> [I]n order to address Plaintiffs' assertions they were unable to obtain a Comirnaty or BLA-manufactured dose, I wanted to confirm that any of the Plaintiffs who are still required to receive the COVID-19 vaccine to satisfy the military's requirement may receive a shot from a Comirnaty-labelled vial. If any of the Plaintiffs wish to do so, please prepare a memorandum addressed to the individual's commanding officer committing to taking a shot from a Comirnaty-labeled vial. Please provide the memorandum to me and I will ensure the request is appropriately transmitted.

*Id.* Not a single Plaintiff or member of the association took Defendants up on the offer.

On July 1, 2022, Plaintiffs moved for a preliminary injunction, seeking to enjoin DoD (i) from

enforcing the military's vaccination requirement "or administering any COVID-19 vaccine" "with respect to . . . Plaintiffs," or (ii) "from taking any adverse or retaliatory action against any Plaintiff" for failing to comply with the military's vaccination requirement, ECF No. 9-1 at 1. As explained below, that motion was later withdrawn after the challenged policy was rescinded.

On December 23, 2022, the President signed into law the NDAA. Section 525 directed the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of Service members against COVID-19. Pub. L. No. 117-263, § 525.

On January 10, 2023, the Secretary of Defense rescinded the mandate as directed. ECF No. 34-1. The memorandum rescinding the COVID-19 vaccination requirement directs that currently serving Service members who sought an exemption shall not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the Services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests." *Id.*[4]

On February 24, 2023, the Deputy Secretary of Defense issued further guidance clarifying that when the Secretary of Defense rescinded the COVID-19 vaccination requirement, he "thereby also rendered all DoD Component policies, directives, and guidance implementing those vaccination mandates as no longer in effect as of January 10, 2023," including but "not limited to, any COVID-19 vaccination requirements or related theater entry requirements and any limitations on deployability of Service members who are not vaccinated against COVID-19." Feb. 24, 2023, Deputy Secretary of Defense Memo ("Deputy SECDEF Memo"), https://perma.cc/3MXS-2CNR. The only time that COVID-19 vaccination may be necessary is when it is "required for travel to, or entry into, a foreign

---

[4] Former Service members administratively discharged on the sole basis that the service member failed to obey a lawful order to receive a vaccine for COVID-19 "may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction to their personnel records, including records regarding the characterization of their discharge." ECF No. 34-1.

nation." *Id.* Other than complying with entry requirements into a foreign country, "commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." *Id.* The Deputy Secretary also made clear that should any commander wish to require COVID-19 vaccination for any purpose, that request must be approved by the Assistant Secretary of Defense for Health Affairs, and any new requirements "will be made judiciously and only when justified by compelling operational needs and will be narrowly tailored as possible." *Id.*

The Services have also issued guidance implementing the rescission of the prior vaccination mandate. For example, the Navy implemented NAVADMIN 065/23, which states that "COVID-19 vaccination status shall not be a consideration in assessing individual Service member suitability for deployment or other operational assignments." *See* https://perma.cc/7T5J-68A4.[5] The Secretary of Air Force made clear that all COVID-19 vaccination requirements and related policies were rescinded, and he detailed steps it will take to remove adverse actions from the records of individuals who sought exemptions. Feb. 24, 2023, SECAF Memo, https://perma.cc/VJH5-ENQM. The Secretary of the Army also "rescind[ed] all Department of Army policies specifically associated with the implementation of the COVID-19 vaccination mandate." Feb. 24, 2023, SECARMY, https://perma.cc/YG8Y-QZAW. The National Guard clarified that "members who are not fully vaccinated for COVID-19, but are otherwise qualified and eligible are no longer prohibited from, and

---

[5] Plaintiffs claim that the Navy's NAVADMIN 038/23's "Operational Risk Management" gives commanders the option to consider vaccination status when making deployment decisions. FAC ¶ 113. But that interpretation would be contrary to the express directives of NAVADMIN 065/23 and of the Deputy Secretary of Defense's February 24 memorandum. Instead, the matrix is a tool to help commanders evaluate deployment risk factors based on characteristics such as location, medical care available, and the number of unvaccinated crew members. *See* Matrix at 3, https://perma.cc/F66Y-PUFN. Based on elevated risk factors a commander may take mitigation measures: for example, additional masking, testing, and movement restrictions, or carrying additional medical supplies such as COVID-19 boosters (for voluntary use) and anti-viral medication. *Id.* at 5. Thus, the matrix provides alternative means to a vaccination mandate to reduce the risk to mission.

may be directed to resume participation in drills, training and/or other duty." Jan. 18, 2023 NGB Memo, Ex. 1. The Air Force Reserve made clear that "COVID-19 vaccination status is no longer a barrier to service." Feb. 10, 2023 ARF Memo, Ex. 2. In short, no service member is currently required to receive the COVID-19 vaccine (other than a country entry requirement).

On February 13, 2023, this Court ordered Plaintiffs to show cause why their motion for preliminary injunction was not moot considering the rescinded COVID-19 vaccination requirement. ECF No. 35. Instead of explaining why their motion for a preliminary injunction was not moot, Plaintiffs withdrew their motion. ECF No. 38. Defendants then moved to dismiss the original complaint. ECF No. 40. Plaintiffs then filed an amended complaint on March 24, 2023. *See generally* FAC. Plaintiffs now raise claims alleging that the NDAA's use of the word "rescind" requires payment of back pay, retroactive promotions, and other retrospective relief. *Id.* Claims I–II. They raise various claims alleging that they were improperly required to take an EUA vaccine. *Id.* Claims III-VIIIa. Plaintiffs allege that Defendants' post-rescission actions and policies violate the Equal Protection Clause. *Id.* Claim VIIIb. And Plaintiffs seek declaratory and injunctive relief based on an injunction that expired on its own terms in 2005 related to an anthrax vaccine. *Id.* Claim IX.

Of the fourteen Plaintiffs in this action, eleven are still serving. Of the three who have left, none were discharged for failure to comply with the COVID-19 vaccine requirement. Steven Brown's service ended when his enlistment period ended, with an Honorable discharge. *See* DD-214, Ex. 3. Michael Groothousen was medically discharged (unrelated to COVID-19 vaccination requirement). Decl. of Lt. Commander. A. Oakes, ¶ 4, Ex. 4. And Karyn Christen voluntarily retired in August 2022.[6] Decl. of A. Chaponis, ¶ 9, Ex. 5.[7]

---

[6] Plaintiff Christen retired despite being protected by class-wide injunction in *Doster v. Kendall*, No. 1:22-cv-84, 2022 WL 2974733, at *1 (S.D. Ohio July 27, 2022), *aff'd*, 54 F.4th 398 (6th Cir. 2022).

[7] The claims of these individuals were all mooted even before the NDAA was signed because they either voluntarily retired or were discharged for reasons unrelated to the COVID-19 vaccination requirement.

Only one Plaintiff has adverse action that remains on his record. Plaintiff Brown refused an order to vaccinate without requesting an exemption, so he received a General Officer Memorandum of Reprimand (GOMAR), which remains in his military record. He has since ended his enlistment with an honorable discharge. Ex. 3. The other thirteen of the fourteen Plaintiffs submitted an exemption request, which means that adverse actions in their records have been removed in accordance with the Service-specific policies.

## ARGUMENT

### I.   Plaintiffs' Claims Are Moot.

The military no longer has a COVID-19 vaccination requirement in place and, consequently, all of Plaintiffs' claims are moot. No Plaintiff is required to receive a COVID-19 vaccine (EUA, BLA, or otherwise), so any request for prospective relief is moot. Moreover, Plaintiffs lack standing to seek retroactive relief because all members who submitted accommodation requests already have had any adverse actions removed from their records (or will be removed soon). Although one plaintiff—Steven Brown—will not have his GOMAR automatically removed from his record, he has no justiciable claim, as explained below. Any other claim he seeks to bring is also moot because he "left service at the end expiration [of] his enlistment." FAC ¶ 23; *infra* at III.A. If Brown wants to correct or seek changes to his military record, he must pursue that relief through the Board for Correction of Military Records and seek judicial review after that process is complete, if necessary.

"Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "Even when a plaintiff has standing at the outset '[t]here must be a case or controversy through all stages of a case.'" *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.*

(quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)); *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004) ("A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." (citation omitted)). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Fontenot*, 777 F.3d at 747 (citation omitted). "[A] case challenging a [government policy] usually becomes moot if the challenged [policy] has expired or been repealed." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). After all, "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.* In short, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (citation omitted).

Consistent with these principles, the Fifth Circuit and other circuits have repeatedly confirmed that when a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation, mootness is "the default." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023); *Hous. Chronicle Publ'g Co. v. League City*, 488 F.3d 613, 619 (5th Cir. 2007) ("It goes without saying that disputes concerning repealed legislation are generally moot."); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."); *Johnson v. Mississippi*, 586 F.2d 387, 388 (5th Cir. 1978) (per curiam) ("[T]he enactment of a superseding statute which satisfies all the principles sought in an attack on the prior statute simply moots the case."); *see also, e.g.*, *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) ("[W]hen a government fully repeals a challenged law, a case challenging that law is almost surely moot."); *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) ("[T]he repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal."); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011)

("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (clarifying the standard: "in determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it").

The Court should follow that ordinary practice here. There is no basis for any injunctive relief regarding the prior COVID-19 vaccine requirement challenged in this case because Defendants no longer require Plaintiffs to receive any COVID-19 vaccine (BLA, EUA, or otherwise). And Defendants will not be taking adverse actions against Plaintiffs for not complying with that now-rescinded mandate, so any request to enjoin DoD's interchangeability directives for the COVID-19 vaccine is also moot. FAC at 79 (Relief Requested). The NDAA is intervening legislation that terminates the challenged vaccination requirement, rendering moot Plaintiffs' requests for declaratory and injunctive relief. As the NDAA has been implemented, Defendants can no longer enforce the challenged DoD COVID-19 vaccination requirement against the named Plaintiffs or any member of the association, nor may Defendants take adverse action against them based on that defunct policy. ECF No. 34.[8]

The requests for declaratory relief are also moot. A declaration that "DOD Interchangeability Directives" or the "FDA Interchangeability Determination" or "FDA Waivers of mandatory statutory labeling" are unlawful will have no practical effect because there is no longer any COVID-19 vaccination requirement. *Id.*; *see C & H Nationwide v. Norwest Bank Tex. N.A.*, 208 F.3d 490, 493 (5th

---

[8] Plaintiffs' Claim II is based on the erroneous allegation that Service members are currently required to receive the COVID-19 vaccine. FAC ¶ 183. (alleging that Defendants are "continuing to enforce pre-Rescission mandates and punish service members for past non-compliance."). But there is no longer any requirement to receive a COVID-19 vaccine, and Plaintiffs have offered no evidence or plausible allegation that any Plaintiff is currently required to receive the COVID-19 vaccine or has been recently "punish[ed] . . .for past non-compliance." *Id.*

Cir. 2000) ("The 'case or controversy' requirement of Article III of the United States Constitution prohibits federal courts from considering questions 'that cannot affect the rights of litigants *in the case before them*.'" (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (emphasis added)); *see also Golden v. Zwickler,* 394 U.S. 103, 108-09 (1969) (dismissing declaratory judgment action because there was no case or controversy of "sufficient immediacy and reality").  Moreover, a declaration that Defendants must comply with 10 U.S.C. § 1107a does not provide any relief—as Defendants are *already* required to comply with applicable statutes.[9]

Numerous courts of appeals have already held that requests for injunctive relief are moot. The Ninth Circuit in *Short v. Berger*, Nos. 22-15755, 22-16607 (9th Cir. Feb. 24, 2023), and *Dunn v. Austin*, No. 22-15286 (9th Cir. Feb. 27, 2023), dismissed Service members' appeals from the denial of preliminary injunctions prohibiting enforcement of the military's COVID-19 vaccination requirement. Two separate panels concluded that the rescission of the vaccination requirement mooted the plaintiffs' preliminary-injunction appeals, vacated the district courts' orders, and remanded. The D.C. Circuit came to the same conclusion. *Navy SEAL 1 v. Austin*, No. 22-5114, 2023 WL 2482927, at *1 (D.C. Cir. Mar. 10, 2023); *Creaghan v. Austin.* No. 22-5135, 2023 WL 2482927, at *1 (D.C. Cir. Mar. 10, 2023); *Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023); *cf. Doster v. Kendall*, No. 22-3497, 2023 WL 2966353, at *1 (6th Cir. Apr. 17, 2023) (remanding for "the district court [to] review this mootness question in the first instance").

District courts have likewise found that challenges to the COVID-19 vaccination requirement are moot. *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-cv-2429, 2023 WL 2764767, at *3 (M.D. Fla. Apr. 3, 2023) ("The challenged and preliminarily enjoined mandate no longer exists"); *Navy SEAL 1*

---

[9] As Defendants explained when opposing the motion for preliminary injunction, Plaintiffs' claims were never ripe or justiciable to begin with because no Plaintiff faced final discipline or exhausted available intra-service remedies. ECF No. 14, at 14–23 (discussing ripeness and exhaustion requirements under *Mindes v. Seaman* 453 F.2d 197 (5th Cir. 1971)).

*v. Austin*, 8:21-cv-2429, Apr. 3, 2023 Order, ECF No. 203 (M.D. Fla.); *Alvarado v. Austin*, No. 1:22-cv-876, 2023 WL 2089246, at *3 (E.D. Va. Feb. 17, 2023) ("requests and any relief therefrom are now stale given the Rescission Memo"); *Chancey, v. Biden*, 1:22-cv-110, ECF No. 32 (N.D. Fla. Feb. 14, 2023) (dismissing case challenging military COVID-19 vaccine requirement as moot). Other cases have been voluntarily dismissed after the rescission. *See Oklahoma v. Biden*, No. 5:21cv1136 ECF Nos. 77 & 78 (W.D. Okla. Feb. 17, 2023); *Church, et al. v. Biden, et al.*, No. 21-2815.

## II.   Congress Did Not Require the Military to Restore Those Who Refused a Lawful Order to the *Status Quo Ante*.

When Congress passed the NDAA with the requirement that the Secretary of Defense rescind his memorandum requiring COVID-19 vaccination, it did not include any language that the rescission was required to apply retroactively to all prior actions taken by the military, in applying and enforcing the mandate, or consequences of those actions, but left to the military to determine how to implement the rescission. Indeed, the text, the legislative history, and statements from members of Congress since the passage of the NDAA all demonstrate that the rescission did not unwind any prior consequences for failure to follow a lawful order to receive the COVID-19 vaccine.

"The principle that legislation usually applies only prospectively 'is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.'" *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1607 (2020) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). Under "the principle against retroactive legislation," "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (citing *Landgraf*, 511 U.S. at 263); *Landgraf*, 511 U.S. at 272–73 (courts presume a statute is not retroactive unless Congress provides "clear intent" otherwise). Congress has codified the presumption that laws only apply in the future and do not apply retroactively "to release or extinguish any" previously imposed consequence. *See* 1 U.S.C. § 109. Unless Plaintiffs show that Congress clearly intended retroactive effect, the law does not apply retroactively. Plaintiffs have not done so here.

### A.     The Text of the NDAA Does Not Show Clear Intent of Retroactivity.

Plaintiffs here argue that a single word—"rescind"—shows clear intent to apply retroactively. FAC ¶¶ 3, 102, 169. Relying on just that one word and nothing more, Plaintiffs claim that Congress evinced a clear intent to require the military to restore the *status quo ante*—including reinstating discharged Service members, awarding promotions, and providing backpay for failure to comply with the former COVID-19 vaccination requirement. FAC ¶ 178. But that word alone cannot carry the heavy burden to show a clear intent that the law applies retroactively.

Use of the word "rescind"—standing alone—does not show clear intent that the NDAA should apply retroactively. Black's Law Dictionary defines "rescind" when used in the phrase to "rescind the legislation" as to "make void; to repeal or annul." RESCIND, Black's Law Dictionary (11th ed. 2019). Merriam-Webster defines "rescind" as "to take away," to "remove," to "take back," to "cancel," or "to make void." RESCIND, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/rescind. The words "rescind" and "repeal" are synonyms. https://www.merriam-webster.com/thesaurus/rescind. That is exactly what the Secretary of Defense did when he rescinded the COVID-19 vaccination requirement—he repealed the requirement.

Plaintiffs press a novel interpretation of the word "rescind" based on how a related term "rescission" is sometimes used in contract law. FAC ¶ 102 ("in the context of *rescission* of a contract").[10] But even in contract law, the "term 'rescission' is often used by lawyers, courts and businessmen in many different senses." RESCISSION, Black's Law Dictionary (11th ed. 2019). In some cases, "rescission" means "[a]n agreement by contracting parties to discharge all remaining duties of performance and terminate the contract." *Id.* In other situations, "rescission" means "unilaterally

---

[10] Plaintiffs' citation to Black's Law Dictionary (6th ed. 1990) is incomplete. FAC ¶¶ 102, 168. The Sixth Edition does not independently define the word "rescind." Plaintiffs instead cite to the definition for "Rescission of contract" but never identified the full legal phrase they were defining or reveal that they were citing to that contract-law-specific definition. RESCISSION OF CONTRACT, Black's Law Dictionary (6th ed. 1990), (excerpt attached at Ex. 7).

unmaking of a contract for a legally sufficient reasons, such as the other party's material breach, or a judgment rescinding the contract." *Id.* And "rescission" can also refer to "a remedy or defense for a nondefaulting party and is accompanied by restitution of any partial performance, thus restoring the parties to their precontractual positions." *Id.* Plaintiffs appear to rely on this last definition of "rescission"—a remedy for a non-defaulting party to seek restitution for partial performance, FAC ¶ 102. To state the obvious, Plaintiffs in this action are not non-defaulting contractual parties who seek restitution for partial performance under contract law. That highly technical—and inapplicable— definition of "rescission" does not mean that Congress intended a different word "rescind" to make Section 525 of the NDAA retroactive. The plain meaning of rescind, when used to discuss a rule or legislation, simply does not imply retroactive application; it simply ended the policy and left to the military to determine how to apply that rescission to prior actions.

### B. Legislative History Confirms Congress Did Not Intend the NDAA to Have Retroactive Effect.

The Court can decide this retroactivity issue on the text alone. And if there is any ambiguity in the text, the presumption against retroactivity weighs against Plaintiffs' theory. But in addition, legislative history confirms that Congress did not intend the word "rescind" to give the NDAA retroactive effect to rescind prior administrative actions. "If the statute is ambiguous, [courts] may look to the legislative history or agency interpretations for guidance." *United States v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005).

On December 8, 2022, the House voted to pass the NDAA, which included the provision stating that "the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19." NDAA, § 525; *see* https://www.congress.gov/bill/117th-congress/house-resolution/1512/text. An explanatory statement in the Congressional Record notes that DoD "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider

applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9425, H9441 (Dec. 8, 2022). This alone indicates Congress understood the rescission did not extend to retrospective relief that would involve things like correcting military records or unwinding discharges. Congress left that to the "mechanisms" of the military services.

In addition, floor debates and proposed amendments undermine Plaintiffs' position. For example, on December 15, 2022, even though the NDAA already included the word "rescind," Senator Ron Johnson proposed an amendment to require the military to reinstate and provide backpay to members who were discharged "solely on the refusal of such member to receive a vaccine for COVID-19," and for those who received any adverse action "to compensate such member for any pay and benefits lost as a result of such punishment." S. Amdt. 6526 to H.R. 7776, https://www.congress.gov/amendment/117th-congress/senate-amendment/6526/text.          The proposed amendment to provide such relief was ultimately rejected by the Senate by a vote of 40 to 54. https://www.congress.gov/amendment/117th-congress/senate-amendment/6526/actions.

Subsequent legislative proposals and statements by Members of Congress also indicate that the NDAA rescission was not recognized to require retroactive lifting of any prior administrative actions. For example, a month after the President signed the NDAA, nineteen senators introduced the Allowing Military Exemptions, Recognizing Individual Concerns About New Shows (AMERICANS) Act of 2023. Jan. 24, 2023, Sen. Cruz Press Release https://perma.cc/49PR-SQ9Y. Senator Cruz stated in a press statement that the proposed AMERICANS Act "builds off of the [NDAA]" and "includes measures not incorporated into the NDAA, including a requirement that the Secretary of Defense to offer reinstatement to service members who were fired over the military's COVID-19 vaccine mandate." *Id.* Representative Dan Bishop, who has offered a companion bill in the House, explained that "last year's NDAA . . . didn't provide any meaningful remedies for servicemembers who were kicked out due to the mandate." *Id.*; *see also id.* (statements from Sen. Mike

15

Lee, Sen. Mike Crapo, and Sen. Marsha Blackburn). These statements reflect a collective understanding that the military's now-rescinded COVID-19 vaccination requirement did not provide the remedies sought by Plaintiffs in this case.

### C.    The Scope of Rescission Was Left to Agency Discretion.

On January 10, 2023, per the direction from Congress, the Secretary of Defense rescinded his August 2021 memorandum requiring vaccination of Service members against COVID-19. ECF No. 34-1. The Act left discretion to the Secretary of Defense on precisely how to implement the rescission. For example, although not mandated by the NDAA, the Secretary of Defense ordered that any individual currently serving in the Armed Forces who had sought an accommodation from the COVID-19 vaccination requirement on religious, administrative, or medical grounds, would not "be separated solely on the basis for their refusal to receive the COVID-19 vaccination" and that the "Military Departments will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand." *Id.* The Services have likewise issued policies implementing the rescission, filling in areas left to their discretion by the NDAA and the Secretary. *See, e.g.*, Feb. 24, 2023, SECAF Memo, https://perma.cc/VJH5-ENQM. But, as nothing in the NDAA required it, neither the Secretary of Defense nor the Services have required reinstating individuals who were previously discharged, or required retroactive promotions or any of the other relief sought by Plaintiffs in this lawsuit.

Rather, the Secretary's rescission memorandum directs that currently serving service members who sought an exemption may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the Services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests." *Id.* It further directs that decisionmakers should "cease any ongoing reviews" of requests for accommodation from the COVID-19 vaccination requirement. Id. The Secretary's memorandum preserved "the ability of

Commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions." Id. Of note, however, the Secretary directed that former service members administratively discharged on the sole basis that the service member failed to obey a lawful order to receive a vaccine for COVID-19, "may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually review and correct personnel records, including records regarding the characterization of their discharge." Id. In other words, the Secretary specifically directed those certain prior adverse actions be lifted, but that other actions were subject to the usual process for seeking the correction of records.

"[I]f [a] statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 245 (5th Cir. 2002), cert. denied, 214 L. Ed. 2d 235, 143 S. Ct. 427 (2022) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). Here, the Secretary mandated certain specific remedies, but not others, in implementing the rescission. That fact reinforces that the kinds of remedies Plaintiffs seek are not mandated by the Act itself.

## III.    Plaintiffs' Claims Are Not Justiciable.

### A.    Plaintiffs Requested Relief Is Not Available.

Plaintiffs seek to salvage a moot lawsuit by requesting retrospective relief of "restor[ing] Plaintiffs to the pre-Mandate *status quo ante* and to return them to the position in which they would have been absent the unlawful mandates." FAC, Prayer for Relief, ¶ (6). Plaintiffs seek, among other things, promotions, reinstatement, specific assignments, and back pay. *See* FAC ¶ 178. But claims for such relief are not justiciable for several reasons, and thus cannot serve to resuscitate moot claims.

*Officer Commissions or Promotions.* Plaintiffs seek the Court to review "denial or restriction of promotions." FAC ¶ 86. But this Court may not order the commissioning or promotion of an

individual to officer. Article II of the Constitution specifies the exclusive mechanisms for the appointment of officers of the United States, including military officers. *See* U.S. Const. art. II, § 2, cl. 2; *see also* 10 U.S.C. § 531(a)(1) (providing that the President may appoint Air Force officers in grades up to and including that of captain without the advice and consent of the Senate). Likewise, the appointment of officers in the National Guard is an authority reserved to the States. *See* U.S. Const. art. I, § 8, cl. 16; *Perpich v. Dep't of Def.*, 496 U.S. 334, 345–47 (1990). The Constitution does not vest the judiciary with any power to order the commissioning of new military officers. U.S. Const. art. II, § 2, cl. 2; *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (stating plaintiff's demand for appointment as an officer is "squarely within the realm of nonjusticiable military personnel decisions"); *Fisher v. United States*, 402 F.3d 1167, 1180-81 (Fed. Cir. 2005) (en banc) (noting that "who should be allowed to serve on active duty, and in what capacity" is generally nonjusticiable). Therefore, Plaintiffs' claim for such relief must be dismissed.

*Enlistment or Re-enlistment.* The court also may not order the enlistment of a prospective Service member or reenlistment of a current or past Service member. For example, Staff Sergeant Steven Brown alleges that he completed his enlistment and "left service at the end expiration [of] his enlistment." FAC ¶ 23. Service members do not "have a property or liberty interest protected by the due process clause in continued military service . . . nor [do they] have a constitutionally protected right to re-enlist." *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987). Moreover, federal courts do not have the authority to order the military to allow an individual to re-enlist. *Maier v. Orr,* 754 F.2d 973, 983 (Fed. Cir. 1985) ("Federal courts have uniformly declined to order relief beyond a current enlistment."); *see also id.* at 980 ("[N]o one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military.") (citing *Gilligan v. Morgan*, 413 U.S. 1, 6 (1973), *Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir. 1981)); *DeGroat v. Townsend*, 495 F. Supp. 2d 845, 851 n.7 (S.D. Ohio 2007) ("Several cases

have held that a service secretary's determination of fitness for duty of a servicemember is beyond the competence of the judiciary to review and, thus, nonjusticiable.") (citing *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953)).  Accordingly, this claim for relief also must be dismissed.

*Assignments and Training.* To the extent that Plaintiffs seek a ruling ordering specific training/assignments, the Court lacks authority to interfere with the military's inherent authority to make assignment and operational decisions. *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022) (mem.) (granting a request to stay an injunction insofar as it interfered with military assignment and operational decisionmaking). The Supreme Court in *Orloff* held that military assignments are non-justiciable. 345 U.S. at 93 ("[W]e are convinced that it is not within the power of this Court by habeas corpus to determine whether specific assignments to duty fall within the basic classification of petitioner."). The same case also determined that the commissioning of officers is a non-reviewable assignment decision. *Id.* at 90 ("It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief. Whatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions.").

*Back Pay.* To the extent that Plaintiffs seek back pay, that is also something this Court cannot provide. First, this Court lacks jurisdiction over any claim for back pay since Plaintiffs have failed to identify any applicable waiver of sovereign immunity. "Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity." *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009). "Because sovereign immunity is jurisdictional in nature, Congress's waiver of it must be unequivocally expressed in statutory text and will not be implied." *Id.* at 316 (cleaned up). In their First Amended Complaint, Plaintiffs have not identified any statute that unequivocally waived sovereign immunity for any money damages. Second, even if Plaintiffs identified an applicable waiver, this Court does not have jurisdiction over any claims for

backpay greater than $10,000. *See* 28 U.S.C. §§ 1346(a)(2), 1491.[11]

Finally, no named plaintiff has stated a viable claim for back pay. All but three named Plaintiffs are still in the military and have not alleged any loss of pay.[12] The other three named Plaintiffs that have left the military do not have viable claims. Plaintiff Staff Sergeant Brown left the military at the end of his enlistment term. "Unless a statute or regulation confers upon a serviceperson the right to reenlist, an enlisted man has no right to reenlist when his previous enlistment period ends," and black-letter law states that no military backpay is available after the term of enlistment expires. *Flowers v. United States*, 80 Fed. Cl. 201, 217 (2008) (citation omitted) (collecting cases), *aff'd*, 321 F. App'x 928 (Fed. Cir. 2008); *see also Maier v. Orr*, 754 F.2d 973, 983 (Fed. Cir. 1985) (holding that when a service member has been improperly discharged, he or she is entitled to recover pay and allowances only to the date on which the term of enlistment would otherwise have expired); *Dodson v. Dep't of Army*, 988 F.2d 1199, 1208 (Fed. Cir. 1993).

Karyn Christen, a retired Air Force Reservist, likewise has no viable claim. She retired from the Air Force on August 1, 2022. "In military pay cases, where a plaintiff has voluntarily retired from the service by *sua sponte* accelerating his mandatory retirement date," courts have no jurisdiction to grant monetary relief. *Longhofer v. United States*, 29 Fed. Cl. 595, 601 (1993). There is a "rebuttable presumption that a retirement is voluntary" and that presumption may only be overcome "if the plaintiff succeeds in proving that his retirement was the result of duress, coercion, misrepresentation, or mental incompetence." *Id.* Plaintiffs do not allege any of those exceptions apply. Plaintiff Christen retired *after* a federal court enjoined the entire Air Force from taking certain actions against those who

---

[11] Counsel for Plaintiffs have filed putative class actions in the Court of Federal Claims seeking the same monetary relief sought in this case. *Bassen v. United States*, 1:23-cv-211 (Fed. Cl.); *Botello v. United States*, 1:23-cv-174 (Fed. Cl.).

[12] Plaintiff Brittany Puckett speculates that she is "at risk" of "having to pay back her $55,000 selective reenlistment pay" if she does not get vaccinated. FAC ¶ 41. But this is nothing more than speculation and cannot maintain the Court's jurisdiction; in any event, it would be a distinct claim that could be raised in a proper forum if and when it is ripe.

submitted religious accommodation requests. *Doster v. Kendall*, 342 F.R.D. 117, 130 (S.D. Ohio, July 14, 2022) (certifying class and issuing class-wide TRO); *Doster v. Kendall*, 2022 WL 2974733, at *1 (issuing class-wide preliminary injunction). There is no allegation to rebut the presumption that her retirement was involuntary. Although not in the complaint, Plaintiff Groothousen was medically discharged in the fall 2022 for reasons unrelated to the COVID-19 vaccine requirement.[13]

### B.   Plaintiffs Have Not Exhausted Available Intra-Service Remedies.

Plaintiffs' claims for the relief are not justiciable for another reason: They have not exhausted available intra-service remedies. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Requiring exhaustion in the military context is particularly appropriate, "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger v. Councilman*, 420 U.S. 738 (1975); *Parker v. Levy*, 417 U.S. 733 (1974); *Gilligan*, 413 U.S. at 10); *accord Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003).

The Fifth Circuit has thus long required that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes*, 453 F.2d at 201); *accord Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (collecting cases). And even if a plaintiff meets this threshold exhaustion requirement, a court still must weigh several factors to determine the propriety of reviewing a claim challenging internal military matters: (i) the nature and strength of the plaintiffs' challenge; (ii) the potential injury to the plaintiffs if review is refused; (iii) the type and

---

[13] Ryan Madigan alleges he "submitted his resignation from the Air Force, which will take effect in July 2023." FAC ¶ 31. Plaintiffs do not articulate any redressable harm arising from a future resignation date, especially now that he is no longer required to receive a COVID-19 vaccination.

degree of anticipated interference with the military function; and (iv) the extent to which the exercise of military expertise or discretion is involved. *Mindes*, 453 F.2d at 201.[14]

*Exhaustion.* Although Plaintiffs allege violations of constitutional and statutory rights, they do not allege that they have pursued their claims through all available administrative procedures, during which the Services can determine in the first instance whether a Plaintiff should be granted relief. *See Hodges*, 499 F.2d at 421 n.11 (noting that a claim is "premature" where further administrative review "could repair any possible injury"). No Plaintiff alleges that they have sought relief from their Service's Board for Correction of Military or Naval Records.[15] And until they do so, "the doors of the federal courthouse" must remain "closed pending exhaustion of available administrative remedies," *Von Hoffburg*, 615 F.2d at 637–38, requiring dismissal of Plaintiffs' claims, *see Hodges*, 499 F.2d at 424 (requiring dismissal for unexhausted claims).[16]

*Mindes factors.* But even if Plaintiffs had exhausted all intra-service remedies, their claims—

---

[14] The motions panel decision in *U.S. Navy SEALs 1–26 v. Biden*, 27 F.4th 336 (5th Cir. 2022), does not unsettle this precedent or call into question whether it applies in this case. There, unlike here, the plaintiffs challenged the military's now-rescinded COVID-19 vaccination requirement under the Religious Freedom Restoration Act ("RFRA"). Although the motions panel questioned whether *Mindes* applies specifically in the RFRA context, it "deferr[ed] to circuit precedent" in analyzing the justiciability of the plaintiffs' claims under *Mindes* and its progeny. *Id.* at 346–49. This Court should do the same here. And, in any event, the motions panel decision in *U.S. Navy SEALs 1–26* is not binding precedent, *see, e.g., Northshore Development v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988), unlike *Mindes*, *Hodges*, and other Fifth Circuit precedent requiring exhaustion in the military context.

[15] Courts routinely require Service members to exhaust claims before the applicable Board for Correction of Military or Naval Records before filing suit. *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986); *Rucker v. Sec'y of the Army*, 702 F.2d 966, 970 (11th Cir. 1983); *Von Hoffburg*, 615 F.2d at 638, 641; *Mindes*, 453 F.2d at 198; *McCurdy v. Zuckert*, 359 F.2d 491, 495 (5th Cir. 1966).

[16] Several courts have recently denied relief to Service members who similarly failed to exhaust available remedies before pursuing challenges relating to the military's vaccination requirement in federal court. *See, e.g., Church v. Biden*, 573 F. Supp. 3d 118, 136–38 (D.D.C. 2021)(explaining that review of plaintiffs' claims without first allowing the military's internal administrative process to conclude would "infringe on the military's expertise and interest in handling its own personnel matters"); *Miller v. Austin*, --- F. Supp. 3d ---, 2022 WL 3584666, at *5 (D. Wyo. Aug. 22, 2022); *Robert v. Austin*, No. 21-cv-02228, 2022 WL 103374, at *3 (D. Colo. Jan. 11, 2022), *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022); *Knick v. Austin*, No. 22-cv-01267, 2022 WL 2157066, at *3 (D.D.C. June 15, 2022); *Mark Short v. Berger*, 593 F. Supp. 3d 944 (C.D. Cal. 2022), *appeal dismissed*, 2022 WL 2421096 (9th Cir. May 17, 2022).

which seek relief regarding duty assignments, promotions, enlistment, and other personnel decisions—would still be unreviewable because each of the *Mindes* factors weighs against judicial review. This second step of the *Mindes* analysis "requires the court to balance the sufficiency of the complaint's allegations against the policies contravening review," *Johnson v. Reed*, 609 F.2d 784, 788–89 (5th Cir. 1980)—*e.g.*, judicial "unwillingness to second-guess" the military's expert judgments, "reluctance to substitute court orders for discretionary military decisions," and "concern that [judicial] review might stultify the military in the performance of its vital mission," *Woodard v. Marsh*, 658 F.2d 989, 993 (5th Cir. 1981) (citation omitted). And the traditional deference afforded to the military requires that courts treat certain challenges to military personnel decisions as non-justiciable under *Mindes*, even where a constitutional claim is raised. *See, e.g.*, *Orloff*, 345 U.S. at 93–94; *Meister v. Tex. Adjutant Gen.'s Dep't*, 233 F.3d 332, 341 (5th Cir. 2000); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 443-45 (6th Cir. 2017); *Mier v. Owens*, 57 F.3d 747, 749–50 (9th Cir. 1995); *see also Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (noting that there are "thousands of . . . routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with").[17]

The first *Mindes* factor—the strength of Plaintiffs' claims—weighs against review. As discussed below, their constitutional and statutory contentions are meritless.

The second *Mindes* factor also weighs against review because Plaintiffs face no imminent risk of harm. *See Guerra v. Scruggs*, 942 F.2d 270, 279 (4th Cir. 1991) (finding lack of irreparable harm showing determinative of second *Mindes* factor, where a less than honorable discharge was at stake).

---

[17] For example, in *Harkness*, a former Navy chaplain alleged that he was denied various promotions and duty assignments in violation of the First Amendment. 858 F.3d at 443. The Sixth Circuit explained that "courts are generally reluctant to review claims involving military duty assignments," noting that "[s]everal justifications for this rule exist: lack of expertise, deference to the unique role of the military in our constitutional structure, and the practical difficulties that would arise if every military duty assignment was open to judicial review." *Id.*

Plaintiffs allege that "paperwork" in their files impact their duty assignments, deployability, training opportunities, eligibility for promotions, or ability to reenlist. *See* FAC ¶¶ 150–59. But if, as in *Guerra*, less than honorable discharges do not warrant judicial interference, *see* 942 F.2d at 279, a change of duty assignment or deployability status, for example, is also not the sort of harm justifying judicial review. *See Harkness*, 858 F.3d at 444 ("the harm inflicted by the denial of a routine duty assignment is negligible") (quoting *Schlanger v. United States*, 586 F.2d 667, 671–72 (9th Cir. 1978)); *see also, e.g., West v. Brown*, 558 F.2d 757, 760 (5th Cir. 1977) (declining review under *Mindes* where plaintiffs would be ineligible to serve in the Army and would lose "the special benefits for military dependents"); *Turner v. Egan*, 358 F. Supp. 560, 563 (D. Alaska 1973) (declining review under *Mindes* where plaintiff sought to challenge forced retirement). Moreover, these harms are "exactly the sort of injury for which" internal military processes "can supply effective and adequate" relief when warranted. *See Hodges*, 499 F.2d at 422; *see also id.* at 424 (explaining that courts must presume that the military will afford its members the relief to which they are entitled). Therefore, Plaintiffs' alleged harms are not the types of harm justifying judicial interference in internal military personnel decisions.

The third and fourth *Mindes* factors—the "extent of interference with military functions" and the "extent to which military discretion or expertise is involved"—weigh decidedly against reviewing Plaintiffs' claims. *See West*, 558 F.2d at 760–61 ("[These factors] present a single inquiry, focusing on disruption of military functions"). The Fifth Circuit has recognized that "[s]uits in which 'commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military . . . decisions' are an improper interference by the judiciary in the management of the armed forces." *Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (citing *United States v. Shearer*, 473 U.S. 52, 58 (1985)); *accord Woodard v. Marsh*, 658 F.2d 989, 992–95 (holding that an equal-protection claim was not reviewable under *Mindes* because subjecting military decisions to rational-basis review would create a serious impediment to military decisionmaking).

"Duty assignments" and other operational decisions "lie at the heart of military expertise and discretion," and subjecting these decisions to judicial direction "would have a deleterious effect on the military's performance of its vital operations and would impede its overall preparedness." *Harkness*, 858 F.3d at 444–45; *see also Antonellis v. United States*, 723 F.3d 1328, 1336 (Fed. Cir. 2013) ("Courts are in no position to determine the 'best qualified Officer' or the 'best match' for a particular billet."). Rather, "'[c]omplex, subtle, and professional decisions as to the composition, training, . . . and control of a military force are essentially professional military judgments.'" *Miller*, 42 F.3d at 303 (citing *Chappell v. Wallace*, 462 U.S. 296, 302 (1983)); *see also Sebra v. Neville*, 801 F.2d 1135 (9th Cir. 1986) (declining to review military transfer decision). Plaintiffs' claims seeking injunctive relief regarding military personnel decisions are thus not subject to judicial review under *Mindes*.

### C.     The Association Lacks Associational Standing.

Assuming this case is not dismissed as moot, the Members of the Armed Forces for Liberty ("Association")—"an unincorporated association formed solely" for this lawsuit, FAC ¶ 43—should be dismissed for lack of standing. From the outset, Plaintiffs have tried to shoehorn the Association into this litigation. Unlike the individual plaintiffs, however, the Association does not allege that it has Article III standing in its own right. Rather, it claims to bring this action on behalf of 744 so-called "members" who are allegedly "all subject to" DoD's now-defunct COVID-19 vaccination requirement. *Id.* ¶¶ 12, 43. To have "standing to bring suit on behalf of its members"—that is, to possess "associational standing"—an organization like the Association must show that its "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC), Inc.*, 528 U.S. 167, 181 (2000). But the Association fails to satisfy two of these prerequisites.

Under the first prong of associational standing, "an organization suing as representative" must

"include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996); *see also Ass'n of Am. Physicians and Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (explaining the constitutional nature of this requirement). That requires an organizational plaintiff at the pleading stage to make "specific allegations establishing that at least one *identified member*" will suffer harm because of the challenged actions. *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194–95 (9th Cir. 2013) (citation omitted); *accord NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010).

The Association has failed to do so here. While all 14 individual plaintiffs are allegedly "members" of the Association, FAC ¶ 43, as explained throughout this brief, none assert a live or justiciable claim for relief. *See also, e.g.*, *Children's Health Defense v. FDA*, --- F. Supp. 3d ---, 2023 WL 175004, at *6 (W.D. Tex. Jan 12, 2023) ("[Because] the individual Plaintiffs, the only identified members of [the organizational plaintiff], failed to show that they independently possess Article III standing, the Court finds that [the organizational plaintiff] lacks associational standing."). Likewise, although Plaintiffs identify three other non-plaintiffs who are allegedly members of the Association, the amended complaint alleges only that these individuals have "paperwork" in their files that may impact their eligibility for deployment, training, promotion, or reenlistment. FAC ¶¶ 150–51. But as explained, *supra* III.A., those allegations identify no harms that this Court has authority to redress.

Nor can the Association base standing on the amended complaint's vague allegations regarding hundreds of unidentified Association members that also have purportedly been adversely affected because they refused to become vaccinated. FAC ¶¶ 147, 149–56. These allegations cannot support the Association's standing because they do not specifically *identify* any of these members, *see City of Kyle*, 626 F.3d at 237; *accord League of United Latin Am. Citizens v. Abbott*, 604 F. Supp. 3d 463, 485 (W.D. Tex. 2022), nor demonstrate that any of them will imminently suffer a redressable injury as a direct

26

result of the challenged actions, *see City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983). For that reason alone, the Association lacks standing to assert any claims on behalf of its members.

The Association also fails to satisfy the third prong of associational standing, which requires a showing that the particular "claims asserted" and the "relief requested" do not require "the participation of individual members in the lawsuit." *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This requirement "protects 'against the hazard of litigating a case only to find' that the representative association lacks detailed records or the evidence necessary" to adjudicate the merits of its claims or to prove its members' harm "with sufficient specificity." *Free Speech Coal., Inc. v. Attorney General*, 974 F.3d 408, 421 (3d Cir. 2020) (alterations adopted) (quoting *United Food*, 517 U.S. at 556); *accord Nat'l Ass'n of Gov't Emps. v. Mulligan*, 914 F. Supp. 2d 10 (D. Mass. 2012).

Here, Plaintiffs request an injunction compelling the Armed Forces "to restore Plaintiffs," and presumably the Associations' members, "to the pre-Mandate *status quo ante* and to return them to the position in which they would have been absent" DoD's COVID-19 vaccination requirement. FAC, Relief Requested ¶ 6. Such an injunction would be beyond this Court's remedial authority, for reasons already explained, *supra* III.A. It also would violate Rule 65(d), which requires that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." *See also Scott v. Schedler*, 826 F.3d 207, 211–14 (5th Cir. 2016) (citation omitted) (explaining that, under Fed. Rule Civ. P. 65(d), an "injunction should not contain broad generalities" or require a defendant to guess at its scope by failing to "clearly define" the particular "conduct [that would be] proscribed").

But more fundamentally, this Court would need to conduct an individualized, fact-intensive inquiry into each Association member's circumstances to determine whether any relief is warrant and, if so, the proper scope of such relief. *See Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (holding that an organizational plaintiff failed to satisfy the third prong of associational standing because the court "would need individualized information . . . to determine

the proper scope of an injunction"); *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) ("[I]njunctive relief should be no more burdensome" to Defendants "than necessary to provide complete relief to the plaintiffs." (citation omitted)). For example, considering whether to restore the Association's "members" to their "pre-Mandate *status quo ante*" would require each "member's" circumstances before and since the August 2021 vaccination requirement. Moreover, the Court would first need to determine whether each Association "member" could be returned to "the pre-Mandate *status quo ante*," or even wants to be. *See, e.g.*, Ex. 2 (Plaintiff Brown voluntarily separated in November 2022); Ex. 5, ¶ 9 (Plaintiff Christen voluntarily retired in August 2022). These questions cannot be answered based on testimony from a sample of "representative members," which would provide "an insufficient basis on which to ground" an injunction. *Nat'l Ass'n of Gov't Emps.*, 914 F. Supp. 2d at 14. Therefore, the "equitable relief requested" would "require extensive member participation because it cannot be granted" through an "injunction applicable to all members equally" or "without individualized consideration of each" member's circumstances. *Id.; accord Friends for Am. Free Enter.*, 284 F.3d at 577. In sum, the Association has failed to establish associational standing to assert any claims on behalf of its members.[18]

---

[18] Finally, Plaintiffs' amended complaint alleges no facts upon which the Court can determine whether the Association is the type of "organization capable of asserting associational standing." *see Heap v. Carter*, 112 F. Supp. 3d 402, 418–19 (E.D. Va. 2015). Associational standing is generally limited to "traditional membership organizations"—*e.g.*, "professional associations, labor unions, social clubs"—and organizations that are the "functional equivalent of a traditional membership organization." *Flyers Rts. Educ. Fund, Inc. v. U.S. Dep't of Transp.*, 957 F.3d 1359, 1361 (D.C. Cir. 2020) (citation omitted); *accord Air All. Hous. v. U.S. Chem. & Safety Hazard Investigation Bd.*, 365 F. Supp. 3d 118, 128–29 (D.D.C. 2019); *Wash. Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 208–09 (D.D.C. 2007). But there is no indication in the record that the Association is either. The amended complaint offers no allegations suggesting that the Association has any of the common characteristics of a traditional membership organization—*e.g.*, a provision for general members in its Bylaws, collection of dues, presentation to the public as a membership organization. *See, e.g., Air All. Hous.*, 365 F. Supp. 3d at 129; *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 28–29 (D.D.C. 2009). Nor do Plaintiffs allege sufficient facts to demonstrate that the Association is the "functional equivalent" of a traditional membership organization, which is determined by, *inter alia*, whether an organization "represents individuals that have all the indicia of membership, including (i) electing the entity's

**IV.      Plaintiffs Lack Standing to Pursue Claims Based on False Allegations They Were Required to Receive an EUA Vaccine.**

Again, apart from whether the case should be dismissed on mootness and other grounds discussed above, the Court may also dismiss Plaintiffs' various claims challenging the DoD vaccination directive for lack of standing. Claims III–VIIIa. To the extent Plaintiffs allege that they were required to receive an EUA vaccine (despite the policy to the contrary), undisputed facts show that Plaintiffs lacked standing to raise such an otherwise now moot claim.

For the same reasons this case is now moot, Plaintiffs also lack standing to obtain prospective injunctive relief. *See Lyons*, 461 U.S. at 101. Alleged past injuries (even assuming that the allegations are true) do not support standing for prospective relief. *Id.* at 103 (alleged "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy"). The challenged policy has been rescinded and they are not required to receive any COVID-19 vaccine at this time, let alone an EUA vaccine, and they cannot establish an imminent future threat for purposes of standing. No declaratory or injunctive relief would remedy any harm they faced for non-compliance with the now-defunct vaccination requirement.

Moreover, Plaintiffs also lack standing because they allege (incorrectly) that the Armed Services had only EUA COVID-19 vaccines and that BLA vaccines (*i.e.*, Pfizer's "Comirnaty" or

leadership, (ii) serving in the entity, and (iii) financing the entity's activities." *Heap*, 112 F. Supp. 3d at 418. Plaintiffs allege only that the Association "is an unincorporated association" that has 744 "members" who serve or had served in the Armed Forces and was formed solely to bring this lawsuit. FAC ¶¶ 43, 149. But that does not suffice to establish that the Association is an organization capable of possessing associational standing. *See, e.g., AARP v. EEOC*, 226 F. Supp. 3d 7, 16 (D.D.C. 2016) ("[A] mere assertion that an individual is a 'member' of an organization is not sufficient to establish membership."); *Heap*, 112 F. Supp. 3d at 418–19 (holding that an organization's statement that "it maintains an active membership, including members who are enlisted in the United States Navy" with no additional details is insufficient to determine whether it is a voluntary membership organization or the functional equivalent thereof); *Wash. Legal Found.*, 477 F. Supp. 2d at 210 (rejecting the assertion that, if "individuals view themselves as members of the organization and . . . are viewed by the organization as members," then general membership is established).

Moderna's "Spikevax") were not available. FAC ¶ 213. Based on this false premise, Plaintiffs argue that DoD violated various statutory provisions by *de facto* requiring Service members to take "EUA products" and that FDA committed its own statutory violations. *Id.* Claims III–VIIIa.

Plaintiffs' factual predicate is wrong. The Armed Services obtained tens of thousands of doses of BLA-licensed Comirnaty product in vials with BLA-approved labels while the requirement was still in force, Decl. of T. Rans ¶ 19, ECF No. 14-2, and Defendants offered to administer those doses to all willing Plaintiffs, ECF No. 14-26. No Plaintiff took DoD up on the offer (and, it seems, they have been advised *not* to accept it because it would undermine their "litigation position," *see* https://perma.cc/BTL2-JX7M). Plaintiffs were offered—and refused—the very vaccine product they allege was unavailable. Under these facts, Plaintiffs faced no harm from an alleged "unavailability" of BLA-labeled vaccines, because when those vaccines were made available to them, they all refused.

The offer and refusal show that any harm Plaintiffs faced for non-compliance with the now-defunct vaccine requirement was not caused by the alleged unavailability of doses of BLA-licensed products in vials with BLA-approved labels. Plaintiffs ask the Court to declare that DoD should have offered a BLA-licensed vaccine from a vial with a BLA-approved label—but *they were already offered exactly that* and still refused. There is no standing under these circumstances.

The fact that all Plaintiffs refused the offer of a BLA-licensed is undisputed. And, although that fact is not in the complaint, when deciding whether it has subject matter jurisdiction, the Court is not required to limit itself to the allegations in the complaint. "The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413. "[F]actual determinations decisive of a motion to dismiss for lack of jurisdiction are within the court's power." *Id.* at 414.

Additionally, separate from the rescission of the mandate itself, the undisputed fact that all Plaintiffs refused the offer to receive a BLA-approved vaccine from a vial with BLA-approved label also moots all of Plaintiffs' EUA-based claims and challenges to the so-called Interchangeability guidance. *See Norris v. Stanley*, 558 F. Supp. 3d 556, 559 (W.D. Mich. 2021) (no likelihood of success on EUA claim because it "would be moot" if offered the BLA-approved Pfizer vaccine); *Doe #1–#14 v. Austin*, 572 F. Supp. 3d 1224, 1234 (N.D. Fla. 2021) ("If the DOD is, in fact, administering Comirnaty . . . plaintiffs' § 1107a issue disappears."); *accord Crosby v. Austin* No. 8:21-cv-2730, 2022 WL 603784, at *2 (S.D. Fla. Mar. 1, 2022); *cf. Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275 (D.C. Cir. 2012) (Kavanaugh, J.) (explaining that availability of vaccines other than the ones to which plaintiffs objected eliminated plaintiffs' standing).

Accordingly, this Court's resolution of Plaintiffs' claims based on FDA labeling or interchangeability—all of which challenge a purported mandate to receive an "EUA vaccine"—would have no practical impact on Plaintiffs. *See Prison Legal News v. FBI*, 944 F.3d 868, 880 (10th Cir. 2019) ("An action becomes moot if an intervening circumstance deprives the plaintiff of a personal stake at any point[.]" (cleaned up)). Nor is there "any effectual relief" that the Court could grant to Plaintiffs based on their statutory claims that they have not already been obtained from the offer made by Defendants. *See Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citation omitted), *cert. denied sub nom., Dierlam v. Biden*, 141 S. Ct. 1392 (2021); *accord Honig v. Students of Cal. Sch. for the Blind,* 471 U.S. 148, 149 (1985). As a result, Plaintiffs "lack a legally cognizable interest" in the resolution of their statutory claims and thus the Court lacks jurisdiction on both mootness and standing grounds. *See Env't Conservation Org. v. City of Dall.*, 529 F.3d 519, 527 (5th Cir. 2008) (citation omitted).

## V.     Plaintiffs Lack Standing to Challenge the FDA's Actions.

Plaintiffs separately lack Article III standing to assert their statutory claims against FDA for reasons discussed in a recent Sixth Circuit decision addressing similar claims. *See Children's Health Def.*

*v. U.S. FDA*, No. 21-6203, 2022 WL 2704554 (6th Cir. July 12, 2022), *cert. denied*, 143 S. Ct. 784 (2023). There, the Sixth Circuit held that an organization lacked associational standing to challenge, on behalf of a group of military Service members, "FDA's licensure of Pfizer's Comirnaty and simultaneous extension of the Pfizer-BioNTech EUA." *Id.* at *2, 3–4. In support of its claim, the organization alleged that its unvaccinated military members "who refuse to comply with the military's vaccine requirements are facing or will face adverse consequences." *Id.* at *2. The court found that, even assuming the organization had shown that a member suffered or imminently would suffer an injury in fact, the "plaintiffs' alleged injuries" were not "fairly traceable to FDA's actions," because "[t]he military's vaccination requirements, and the alleged possible consequences from failing to comply, stem from DOD decisionmakers." *Id.* at *3. Moreover, the court rejected the argument that their alleged injuries were redressable because (as Plaintiffs also assert) DoD "relied on" FDA's "interchangeability" determination, *id.* at *4—*i.e.*, that Comirnaty and the EUA-authorized vaccine can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns, FDA, Letter of July 8, 2022, at 3 n.15, 16–17, https://perma.cc/AJU6-8WUW. The court explained that "DOD's vaccine mandate is not tied to FDA's actions," and thus no relief granted against FDA could "redress their alleged injuries," because, among other reasons, "DOD could administer COVID-19 vaccines manufactured by other companies with licenses . . . not challenged here." *Children's Health Def.*, 2022 WL 2704554, at *4.

The same analysis applies here. Plaintiffs challenge FDA's exercise of enforcement discretion concerning labeling requirements, as well as its so-called "interchangeability" determination. *See* FAC Claim VI–VIIIa. But, for the same reasons discussed by the Sixth Circuit in *Children's Health Defense*, Plaintiffs have alleged no injury that would be fairly traceable to FDA's challenged actions, nor any injury that could be redressed by an order entered against the agency. Accordingly, Plaintiffs lack standing to assert their statutory claims against FDA.

## VI.    Plaintiffs' EUA Claims Are Meritless.

Absent dismissal on other jurisdictional grounds, the Court may also dismiss Plaintiffs various statutory claims challenging the DoD vaccination directive for failure to statute a claim. Claims III–VIIIa. First, Plaintiffs admit that the statutes they rely on "do not provide a private right of action." Compl., ECF No.1, ¶ 184; *see also*, *Navy SEAL 1 v. Biden*, 574 F. Supp. 3d 1124, 1130 (M.D. Fla. 2021) ("[P]laintiffs sue under the 'informed consent' provisions of 21 U.S.C. § 360bbb-3(e)(1)(A). . . . But this statutory 'option to accept or refuse' an emergency vaccine confers no private right of action, creates no 'opportunity to sue the government,' and permits enforcement by the United States and by the states in specific circumstances only." (cleaned up)); *accord Crosby*, 2022 WL 603784, at *1-2.

Congress reserved exclusive enforcement authority to the United States—*not* individual plaintiffs—with one limited exception for state enforcement. 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."); *Guilfoyle v. Beutner*, No. 2:21-cv-05009, 2021 WL 4594780, at *26–27 (C.D. Cal. Sept. 14, 2021). That express limitation, in turn, precludes Plaintiffs' attempt to assert their claim under the APA. 5 U.S.C. § 701(a)(1)  ("[The APA] applies . . . except to the extent that . . . statutes preclude judicial review."); *see also, e.g.*, *Overton Power Dist. No 5 v. O'Leary*, 73 F.3d 253, 257–58 (9th Cir. 1996). Moreover, actions taken under the authority of 21 U.S.C. § 360bbb-3 are expressly committed to FDA's discretion. *Id.* § 360bbb-3(i); *Ass'n of Am. Physicians & Surgeons v. U.S. FDA*, No. 20-1784, 2020 WL 5745974, at *3 (6th Cir. Sept. 24, 2020). For that reason as well, Plaintiffs' allegations against FDA are not reviewable under the APA. 5 U.S.C. § 701(a)(2).

Second, the face of DoD's now-rescinded vaccination policy does not require an EUA vaccine and does not implicate the cited statutes. Congress has given the Secretary of Defense and the Armed Services wide latitude to establish a vaccination program for the welfare and readiness of troops. *See* 10 U.S.C. §§ 113(b), 7013(b)(9), 8013(b)(9), 9013(b)(9). Section 1107a places a narrow condition on

that authority by requiring a presidential "waiver" of a notification requirement when the military seeks to require Service members to take products authorized only for "emergency use." *Id.* § 1107a(a). Contrary to what Plaintiffs suggest, however, *no* Service member was required under the now-defunct COVID-19 vaccine requirement to take a COVID-19 vaccine authorized only for "emergency use." The policy was clear that Service members were required to receive only "COVID-19 vaccines that receive full licensure . . . in accordance with FDA-approved labeling and guidance," Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758.[19]

## VII.     Plaintiffs' Constitutional Claim Is Meritless.

Plaintiffs' constitutional claims are meritless and should be dismissed for failure to state a claim. FAC Claim VIIIb (¶¶ 284–305). Plaintiffs' entire Equal Protection Claim is based on a premise that the military's post-rescission orders "have created two new classes of service members" those who are "full vaccinated" and "those who are not." FAC ¶ 286. But Plaintiffs have failed to plausibly allege any such claim; they point to *no policy* to support that argument, because post-rescission implementation guidance makes clear that those who are fully vaccinated and those who are not are to be treated the same, with the sole exception for foreign country entry requirements. And they otherwise present no plausible allegations to support their claim.

### A.     Plaintiffs Fail to Plausibly Allege an Equal Protection Claim.

Plaintiffs argue that those who have not been vaccinated are subject to "adverse personnel

---

[19] Plaintiffs make much of FDA's "interchangeability" determination. FAC, ¶¶ 217–283. But their arguments on this score are irrelevant to whether DoD's vaccination directive violates § 1107a because Plaintiffs have been offered doses of Comirnaty, and thus were not required to receive a vaccine that is "EUA-authorized" to comply with DoD's directive. Moreover, the FDA's note that the products were medically interchangeable is not final agency action subject to challenge under the APA, even if DoD relied on that statement for its own determination. *Parsons v. U.S. Dep't of Just.*, 878 F.3d 162, 168 (6th Cir. 2017) (alleged "harms caused by agency decisions are not legal consequences if they stem from independent actions taken by third parties"—"[e]ven if those third parties are government actors relying on an agency report, their actions are not direct consequences of the report, but are the product of independent agency decisionmaking." (cleaned up)).

actions and restrictions, up to and including involuntary general discharge or separation and punishment under the UCMJ, based solely on their vaccination status." FAC ¶ 289; *see also* FAC ¶ 290. But nothing supports the plausibility of this bald, conclusory allegation. To begin with, military policy is precisely to the contrary. *See* "Deputy SECDEF Memo"), https://perma.cc/3MXS-2CNR; NAVADMIN 065/23 ("COVID-19 vaccination status shall not be a consideration in assessing individual Service member suitability for deployment or other operational assignments") https://perma.cc/7T5J-68A4; *see also* Exs. 1, 2, and 4 (Exs. A –D).

COVID-19 vaccination is no longer required, and vaccination status is no longer a barrier to service. Plaintiffs' bald—and inaccurate—allegations to the contrary cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss"). And Plaintiffs have not set forth any non-conclusory, plausible allegations concerning the existence of "two classes" of servicemembers. Moreover, even if there were distinctions made between those who were vaccinated and those who were not, those instances would be reviewed under the rational basis review standard, which Defendants would easily clear.

**B.     Plaintiffs' Constitutional Claims Are Subject to Rational Basis Review.**

"Rational basis review is the test [that] *normally* applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring).[20] Under rational-basis review, a plaintiff must show that the challenged government policy bears no "rational relationship to a legitimate governmental purpose" to succeed on an Equal Protection or Due Process challenge. *Butts v. Aultman*, 953 F.3d 353, 358 (5th Cir. 2020).

This case does not involve a suspect class. Plaintiffs admitted that "vaccination status has not

---

[20] The Equal Protection Clause of the Fourteenth Amendment applies to the Federal Government under the Fifth Amendment's Due Process Clause. *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954).

historically been a 'suspect class.'" Mot. for PI, ECF No. 9 at 23. Moreover, they fail to identify any group that the defunct DoD vaccine requirement treated differently, much less any suspect classification that would trigger strict scrutiny. Plaintiffs even admitted that the military was "[t]reating all servicemembers the same" by requiring vaccination absent a pending or approved exemption. *Id.* at 19. Instead, Plaintiffs argued that individuals who did not comply with the rescinded requirement should be treated as a suspect class since they were the only ones who faced the consequences of non-compliance. *Id.* at 22–25. But that is contrary to long-established law defining suspect classes for purposes of equal protection, *see, e.g.*, *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976), and for good reason—if any group alleging differential treatment could be defined as a suspect class, then *every* law and regulation with any consequences would be subject to strict scrutiny. That is not the law.

Rational basis review also applies because the rescinded policy did not burden any "fundamental right ingrained in the American legal tradition"—"vaccination requirements, like other public-health measures, have been common in this nation" throughout history. *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021), *emergency application for relief denied*, No. 21A15 (Aug. 12, 2021) (Barrett, J., in chambers); *accord, e.g.*, *Doe v. Zucker*, 520 F. Supp. 3d 217, 249–53 (N.D.N.Y. 2021), *aff'd sub nom.*, *Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022); *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944); *Zucht v. King,* 260 U.S. 174, 177 (1922). Vaccination requirements have also been commonplace in the military, which "began requiring immunization in 1777" and for "the past several decades, the military has required at least nine immunizations, such as an annual flu shot." *Abbott v. Biden*, 608 F. Supp. 3d 467, 471 (E.D. Tex. 2022), *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022).

Courts reviewing due process challenges to COVID-19 vaccination requirements have consistently held that rational basis review applies. *See, e.g.*, *Klaassen.*, 7 F.4th at 593; *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), and *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022); *Johnson v. Brown*, 567 F. Supp. 3d 1230,

1251 (D. Or. 2021) (same); *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or. 2021); *Norris v. Stanley*, 567 F. Supp. 3d 818, 820 (W.D. Mich. 2021), *appeal dismissed*, 2021 WL 6803021 (6th Cir. Nov. 24, 2021); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1173 (D.N.M. 2021), *aff'd*, 2022 WL 2129071 (10th Cir. June 14, 2022); *Harris v. Univ. of Mass., Lowell*, 557 F. Supp. 3d 304, 313 (D. Mass. 2021), *appeal dismissed*, 43 F.4th 187 (1st Cir. 2022).

**C.      Plaintiffs Cannot Meet Their Burden Under Rational Basis Review.**

Under rational basis review, and again to the extent the Court even reaches what should be a moot question, the Court would be required to uphold the prior mandate unless Plaintiffs overcome "every conceivable basis which might support it." *Glass v. Paxton*, 900 F.3d 233, 245 (5th Cir. 2018) (citation omitted). When "mounting a facial challenge" under rational basis review, a plaintiff's "burden is heavy: he must demonstrate that no possible application" of the regulation "can be squared with the Fifth Amendment." *Doe v. Sullivan*, 938 F.2d 1370, 1383 (D.C. Cir. 1991).[21] "Given the standard of review, it should come as no surprise that [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018).

The rescinded prior policy easily satisfied this standard—as every court applying it to the military's COVID-19 vaccine requirement has found. *E.g.*, *Doe #1–#14*, 572 F. Supp. 3d at 1240 ("[P]laintiffs have not met their extraordinary burden of showing the mandate lacks any rationality."). Indeed, one Court noted that requiring the COVID-19 vaccine was "common sense" because "[t]he vaccine mandate to which [Plaintiffs] objects is the one—in addition to the nine that already apply to

---

[21] Even if strict scrutiny applied, the now-defunct requirements that Plaintiffs challenge would have still been constitutional because mandatory vaccines are the least restrictive means to further a compelling government interest in preventing infectious disease. *E.g.*, *F.F. ex rel. Y.F. v. New York*, 65 Misc. 3d 616, 633, (N.Y. Sup. Ct. 2019); *Brown v. Smith*, 24 Cal. App. 5th 1135, 1145 (Cal. Ct. App. 2018); *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 996 (Cal. Ct. App. 2018); *cf. Roth v. Austin*, 603 F. Supp. 3d 741, 779-80 (D. Neb. 2022) (finding military's COVID-19 vaccine requirement as-applied satisfied RFRA standard of compelling government interest and least restrictive means); *Navy SEAL 1 v. Austin*, 600 F. Supp. 3d 1, 7-8 (D.D.C. 2022) (similar), *vacated & remanded*, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023).

*all* service members—intended to protect service members from the virus which has, in less than two years, killed more Americans than have been killed in action in all of the wars the United States has ever fought." *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1250 (W.D. Okla. 2021). Moreover, to the extent Plaintiffs challenge foreign entry requirements, no Plaintiffs alleges they are imminently set to travel or deploy to a country with such a requirement. And the government's foreign policy decisions—in addition to receiving great deference—easily surpass the hurdle of rational basis review.

Plaintiffs have argued that the prior COVID-19 vaccination requirement fails rational basis review because it does not include an exemption for those who were previously infected by COVID-19. But a policy requiring vaccination for those who have previously been infected easily cleared the low bar of rationality given the CDC's recommendation, while the COVID-19 vaccination requirement was in place, that those with prior infection still be vaccinated to strengthen the protection against serious illness. Specifically, the CDC recommended that all persons ages 6 months and over receive the COVID-19 vaccine "regardless of a history of symptomatic or asymptomatic SARS-CoV-2 infection." CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines* (updated June 30, 2022), https://perma.cc/HG5T-YTDV. Nothing alleged in Plaintiffs' complaint can overcome the high hurdle required to show the military was not acting rationally in following CDC guidance. *See Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1185 (S.D. Fla. 2021) (dismissing claims because "the Court cannot find that Defendants are irrational for following the recommendations of the CDC."); *accord Denis v. Ige*, 538 F. Supp. 3d 1063, 1078 (D. Haw. 2021).

## VIII.   Plaintiffs' Request for Relief under *Rumsfeld* Fails as a Matter of Law.

Plaintiffs seek declaratory and injunctive relief based on the supposed "*Rumsfeld III* consent decree" and ask the Court to "estop[]" Defendants from taking an unspecified "contrary position" in this litigation. FAC ¶ 310. Setting aside that it is unclear exactly what Plaintiffs want the Court to declare, enjoin or estop, Plaintiffs' request should be denied for a number of reasons, including that

*Rumsfeld* did not involve a consent decree, the injunction from *Rumsfeld* dissolved on its own terms, that case was limited to Anthrax, which is not at issue here, and the court's decision is not binding.

There was no consent decree in the *Doe v. Rumsfeld* anthrax cases. That case involved allegations that Service members were required to take an anthrax vaccine to protect against inhalation anthrax when it was unclear whether the available FDA-licensed anthrax vaccine at that time (AVA) was approved to prevent inhalation anthrax. *Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 124 (D.D.C. 2003) (*Rumsfeld I*). The court ultimately granted a preliminary injunction preventing the military from requiring Service members to take AVA to prevent inhalation anthrax. *Id.* at 135. "Shortly after the [*Rumsfeld I*] injunction, the FDA issued a final rule and order finding that AVA was safe and effective 'independent of the route of exposure,'" inherently approving its use for inhalation anthrax. *Bates v. Donley*, 935 F. Supp. 2d 14, 19 (D.D.C. 2013) (citing 69 Fed. Reg. 255, 260 (Jan. 5, 2004)). "Judge Sullivan, nonetheless, vacated the FDA's rule and order because the FDA failed to follow the required notice and comment procedures." *Id.* The court granted plaintiffs' motion for summary judgment and issued an injunction "[u]nless and until FDA properly classifies AVA [the anthrax vaccine in question] as a safe and effective drug for its intended use." *Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004) (*Rumsfeld II*). The court later clarified its injunction that Service members could continue to voluntarily receive the anthrax vaccine. *Doe v. Rumsfeld*, No. 03-707, 2005 WL 774857 (D.D.C. Feb. 6, 2005) (*Rumsfeld III*). To be clear, *Rumsfeld III* modified an injunction—it did not enter a consent decree. *Compare id.* with FAC ¶ 309.

The *Rumsfeld III* injunction dissolved on its own terms on December 19, 2005, when FDA explicitly "classified AVA as safe and effective and not misbranded" for inhalation anthrax. *Doe v. Rumsfeld*, 172 F. App'x 327, 327 (D.C. Cir. 2006) (*Rumsfeld IV*). The D.C. Circuit explained that "[b]y its own terms, then, the injunction has dissolved, and this case" is moot. *Id.* at 328.

The *Rumsfeld* opinion is not even binding within the D.C. Circuit, much less on this court.

"The D.C. Circuit did not affirm the reasoning of [*Rumsfeld*]—the Circuit mooted the appeal because a final, procedurally valid FDA rule found the AVA safe and efficacious, and the Circuit explicitly declined to opine on whether [*Rumsfeld*] was decided correctly." *Bates*, 935 F. Supp. 2d at 27 (declining to apply *Rumsfeld* to a pending case). Courts have also held that the reasoning in *Rumsfeld* "is not 'binding' on the [Air Force Board for Correction of Military Records]" or the Service Secretaries. *Id.*

Finally, the issue litigated in *Rumsfeld* is irrelevant to this case. In *Rumsfeld*, plaintiffs argued that the military was using an approved anthrax vaccine for an allegedly unapproved use (to prevent inhalation anthrax). *Id.* at 19 ("Judge Sullivan found that the FDA had not properly licensed the AVA for use against inhalation anthrax."). The court's holding was limited—it was limited to a single product (an anthrax vaccine) and offered limited prospective relief that the military could not require an allegedly off-label use without consent or without FDA approval that went through formal procedures. *Id.* Here, the FDA *has* approved two products for COVID-19—Comirnaty and Spikevax. There are no allegations that the military is requiring an off-label use of either product or any challenges to the procedures that the FDA used to approve them. Accordingly, the Court should dismiss this *Rumsfeld* claim because nothing about that case applies here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case in its entirety.[22]

Dated: April 21, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director

---

[22] Defendants filed an unopposed motion for an extension of pages. ECF No. 44. The Court has not yet ruled on that motion. Should the Court deny the motion, Defendants request an opportunity to resubmit this motion with fewer pages.

Federal Programs Branch

*/s/ Zachary A. Avallone*
ZACHARY A. AVALLONE (DC Bar No. 1023361)
JODY D. LOWENSTEIN (MT Bar No. 55816869)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-2705
Email: zachary.a.avallone@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Zachary A. Avallone
ZACHARY A. AVALLONE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch