## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JOSHUA WILSON, et al, | ) |
| | ) |
|     Plaintiffs | ) |
| v. | ) |
| | )   No. 4:22-cv-438 ALM |
| LLOYD AUSTIN, et al, | ) |
| | ) |
|     Defendants | ) |
| | ) |

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

*/s/  Jerri Lynn Ward*
Jerri Lynn Ward, Esq.
Texas Bar #20844200
Garlo Ward, P.C.
1017 Rose Circle
College Station, Texas 77840
(512) 302-1103 ext. 115
jward@garloward.com

*/s/ Dale Saran*
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 480-466-0369
Email: dalesaran@gmail.com

*/s/ Brandon Johnson*
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
Tel. 214-707-1775
Email: bcj@defendingtherepublic.org
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.  PLAINTIFFS' CLAIMS ARE NOT MOOT. ........................................................2

    A.  Defendants Bear a Significant Legal Burden to Prove Mootness. ............................2

    B.  Defendants Have Retained or Reenacted a *De Facto* Mandate. ...............................4

    C.  Defendants Have Not Taken Corrective Actions..........................................................7

    D.  Voluntary Cessation Does not Moot this case. ............................................................7

    E.  Defendants' unlawful Actions are Capable of repetition Yet Evading Review. .......7

II.  CONGRESS' RESCISSION IS RETROACTIVE AND REQUIRES DEFENDANTS TO RESTORE PLAINTIFFS TO PRE-MANDATE *STATUS QUO.* ........................................8

III. PLAINTIFFS' CLAIMS ARE JUSTICIABLE. ....................................................11

    A.  The Court Can Provide Specific Relief Requested by Plaintiffs. ............................11

    B.  There is No Exhaustion Requirement for Plaintiffs' Claims...................................14

IV. PLAINTIFFS HAVE STANDING. ......................................................................15

    A.  Plaintiffs Continue to Face Credible Threats of Further Punishment for Past Non-Compliance. ..............................................................................................15

    B.  The Plaintiffs Were Harmed by Statutory and Regulatory Violations That Remain in Place. ....................................................................................................16

V.  PLAINTIFFS HAVE STATED AN EQUAL PROTECTION CLAIM ...........................18

VI. PLAINTIFFS HAVE STATED A CLEAR VIOLATION OF 10 U.S.C. §1107A ..........18

VII. CONCLUSION ..................................................................................................21

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| **JOSHUA A. WILSON,** *et al.* | |
| **Plaintiffs** | |
| **v.** | **No. 4:22-cv-438-ALM** |
| **LLOYD AUSTIN, III,** *et al.* | |
| **Defendants.** | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

The Defendants' attempts to hide the illegal actions of the Food and Drug Administration must be denied. The Plaintiffs are military members – and U.S. citizens – who have a right to seek judicial review of the *ultra vires* acts of government officials where those acts have direct consequences that abrogate Plaintiffs' rights and cause harm to Plaintiffs' livelihood. The entire class of plaintiffs have suffered numerous concrete harms to their careers, including being fired, and now are told that they will be court-martialed over their refusal to take unlicensed biologics. Department of Defense officials have (suddenly) claimed the authority to declare unlicensed biologics as "equivalent" to other licensed – but conveniently unavailable – biologics while the FDA stands idly by in complete abandonment of its statutory charter. Plaintiffs have an absolute right to have these actions adjudicated by a federal court – indeed,  it is the only place to obtain such an answer. Plaintiffs ask this Court a very straightforward question of statutory construction that federal district courts are specifically empowered to decide: does the DoD – through its officials – *now* possess the authority to declare unlicensed biologic products *licensed* and thereby *force* members of the all-volunteer military take them? That is the central question before the

Court. Everything else in the government's brief is an attempt to distract from that.

## **ARGUMENT**

I.      **PLAINTIFFS' CLAIMS ARE NOT MOOT.**

     A.      **Defendants Bear a Significant Legal Burden to Prove Mootness.**

Defendants open their briefing on mootness with this revealing sentence as the factual declaration to back up their legal claim that Plaintiffs' claims are moot:

"Plaintiffs lack standing to seek retroactive relief because **all members** <u>who submitted accommodation requests</u> already **have had any adverse actions removed** from their records (***or will be removed soon***)." Def. Brf. at 8, ¶ I (emphasis added). The Defendants apparently believe saying "ALL" and "ANY" as words of totality in the first part of a sentence somehow makes this a strong factual statement, even where they simultaneously include qualifying clauses – "who submitted accommodation requests" – and parenthetical exceptions ("or will be removed soon(!)") that nullify the entire claim that preceded it. This is laughable on its face – when is "soon?" How will the Court know all of these adverse actions have ever been removed if the claims are dismissed? Is the Court to simply trust the DoD's naked assertion in light of what they've already done to servicemembers who filed RFRA claims?? This is a fair indicator of what follows in the Defendant's arguments on mootness. On this single statement alone the Plaintiffs are entitled to a ruling in their favor. The Defendants are openly admitting that they *haven't* removed all of the paperwork, don't intend to do it for anyone who didn't submit what the DoD defines as "accommodation requests," nor do they even address the high factual burden of proof that *they* bear on this issue.

In order to prove that the Plaintiffs' claims are all moot, the "Supreme Court has placed the difficult burden of demonstrating mootness squarely upon the party who asserts the defense." *Veasey v. Abbott*, 248 F. Supp. 3d 833, 835 (S.D. Tex. 2017); *see also*, *West Virginia v. EPA*, 142

S. Ct. 2587, 2607 (2022) ("[T]he Government, not petitioners, bears the burden to establish that a once-live case has become moot."). The *Veasey* Court explained:

> [T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U. S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968))). The Defendants have offered nothing factual to support mootness – indeed, their admission above is decisive against them. Empty future promises by their counsel do not constitute evidence sufficient to overcome their burden.

Defendants have introduced nowhere near the quantum of evidence required to meet their burden. In claiming that a case is moot, the Defendant "bears the formidable burden of showing that it is **absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (emphasis added). In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court held that a government actor's change in policy does not moot a case and articulated the same exact standard. *See also Laidlaw*, 528 U.S. 167 at 190. "This standard is strict because courts are naturally suspicious—or at least they should be—of officials who try to avoid judicial review by voluntarily mooting a case." *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J. concurring). "The skepticism is warranted because the opportunities and incentives for government defendants are obvious: Any 'defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he

achieves all his unlawful ends." *Id.* (citing *Already*, 568 U.S. at 91).

  **B.  Defendants Have Retained or Reenacted a *De Facto* Mandate.**

Congress used its plenary authority under Article I of the U.S. Constitution to order the DoD to remove the COVID-19 vaccines from the list of required shots for members of the armed forces as if they had never been there, as a condition of receiving funding in the FY2023 NDAA.[1] Yet in the very document purportedly rescinding the DoD Mandate, Secretary Austin retains existing restrictions, permits commands to consider a servicemember's refusal to receive the COVID-19 shot in making separation decisions,[2] and directs commands to consider vaccination status in making "deployment, assignment and other operational decisions." ECF 41-1, Jan. 10, 2023 Rescission Memo, at 2. Such broad, sweeping language "allow[s] the [military] to do just about anything it wants short of punishing [Plaintiffs] and drumming them out of service.").[3]

Defendants were aware and even telegraphed that the new policies would result in further religious discrimination. For example, Secretary of the Navy Carlos Del Toro stated in December

---

[1] Secretary Austin's Aug. 24, 2021 memo amended the Defendants' immunization policies to place the COVID-19 vaccines on the list of required vaccinations in Appendix D of AR 40-562. *See, e.g.*, *Abbott v. Biden*, 2022 WL 2287547, at *3 (E.D. Tex. June 24, 2022). Rescission removes that requirement and puts App. D back to what it was before the Mandate, *i.e.*, COVID-19 vaccines were and are not required. "Rescind" is derived from the Latin "rescission," which means "an annulling; avoiding, or making void; abrogation; rescission". BLACK'S LAW DICTIONARY at 1306 (6th ed. 1990). It is normally used in the context of "rescission of contract," meaning to "abrogate, annul, avoid or cancel a contract;" "void in its inception;" or "an undoing of it from the beginning." *Id.*

[2] *See* ECF 41-1 at 1. ("No individuals currently serving shall be separated *solely* on the basis of their refusal…") (emphasis added). Thus, commands can consider vaccination status, in conjunction with any other factor whatsoever, as the basis separate those who previously refused the shot based on their religious beliefs.

[3] *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305–06 (2022) ("*Austin*") (Alito, J., dissenting). *See also id.* at 1306 (this language "allows the [Air Force] to use respondents' unvaccinated status as a reason for directing them to perform whatever duties or functions the Navy wants, including sitting alone in a room pushing paper or reading manuals for the duration of the appellate process.").

2022 that the repeal of the mandate would "unquestionably . . . create almost two classes of citizens in our services . . . Those that can't deploy and those that can deploy."[4] Given that nearly all service members who refused vaccination have done so based on their sincerely held religious beliefs and have submitted an RAR, continuing to take vaccination status into account will continue Defendants' religious discriminatory policies and Plaintiffs' injuries therefrom. Defendants claim that the Assistant Secretary of Defense guidance issued February 24, 2023, eliminates this *de facto* mandate. *See* ECF 45 at 5-6 (*discussing* Feb. 24, 2023, Deputy Secretary of Defense Memo ("Deputy SECDEF Memo"), available at: https://perma.cc/3MXS-2CNR). But the orders implementing the Deputy Secretary's guidance in the individual service branches do not appear to prohibit commands from taking vaccination status into account in making assignment, deployment, and operational decisions. Where, as here, there is any conflict or ambiguity between Secretary Austin's January 10, 2023 directive and the DOD Assistant Secretary's February 24, 2023 Guidance Memo, "the Secretary's directive controls." *See* Def. MTD in *Navy Seals 1-26 v. Biden*, ECF 226, at 2. Thus, consistent with Secretary Austin's controlling January 10, 2023 directive, the *de facto* mandate remains in place for the Air Force.

Stated another way, by "rescinding" the Covid-19 mRNA shots from the list of required immunizations for military members, there is no longer any "status" with respect to that biologic. It no longer exists for DoD purposes – and it shouldn't for *anyone* in the military. The DoD shouldn't be *tracking* this for anyone, including the people who took it. Otherwise, it's just the negative image of the same exact photograph. Simply "removing" the offending paperwork for those who didn't take the shots doesn't change the fact that the DoD can identify them by the fact

---

[4] Heather Mongilio, Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines, USNI NEWS (Dec. 7, 2022), https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines.

they DON'T have what everyone else does – a record of the Covid-19 mRNA shots in their records. The DoD's actions in openly stating their intent to continue to monitor who did and – therefore, by simple set theory – who did NOT take this now-removed-biologic make it clear well-beyond their counsel's fallacious arguments that the DOD has not rescinded anything.

By its words and actions, Defendant DoD has also shown that it doesn't care one whit about Plaintiffs with any religious objection to the shots, which comprises the overwhelmingly majority of the entire class of those who did not take the shots, which also included medical and administrative exemption requests. All of the Armed Services were, prior to "rescission," enjoined by a number of federal district and Circuit Courts on behalf of individuals or in class actions. All four Armed Services were found to have engaged in sham RFRA processes, at least at the preliminary injunction stage. We should be clear what this indicates: the Defendant DoD systematically targeted religiously-minded members of the military for reprisal because they asserted a statutory right. This is not hyperbole – a Department of "Justice" attorney arguing in defense of these practices in *Doster v. United States* told a 6th Circuit Court of Appeals judge that the Defendant DoD's legal position was that it didn't believe it had to comply with the Religious Freedom Restoration Act unless and until it was sued in federal court. [6[th] Circuit Oral Argument Citation].

A case is not mooted if the challenged conduct continues after the repeal of an unconstitutional policy, *see, e.g. Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 662 (1993), or where, as here, a defendant "double[s] down" on its challenged action after repeal. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012). Defendants have doubled down on their wrongful conduct by repealing the vaccine mandate in name only, while continuing to discriminate against Plaintiffs and other

similarly situated unvaccinated class members.

### C.    Defendants Have Not Taken Corrective Actions.

Defendants have stated that they will remove or correct past adverse actions taken against unvaccinated service members. *See* ECF 45, at 8. To date, Defendants have not taken corrective actions to restore Plaintiffs to the position in which they would have been absent the unlawful mandates. Nor have they made any legally binding or enforceable commitment to do so at all, much less by any date certain. Defendants' promises to take corrective actions are meaningless because, in their view, no Plaintiff (with the exception of Plaintiff Brown) has suffered any adverse actions, *see id.* at 8, so there is nothing to correct. Such a strident non-promise at some unspecified point in the future is insufficient to establish mootness. *See, e.g., Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) ("a claim becomes moot when a plaintiff actually receives complete relief on that claim, not merely when that relief is offered or tendered").

### D.    Voluntary Cessation Does not Moot this case.

Defendants contend that the rescission of the mandates was not voluntary, but the very rescission document demonstrates that they have not ceased their illegal activity at all by retaining a *de facto* vaccine mandate. For Defendants' to actually render this case moot, they would have to show that "there is no reasonable expectation that the alleged violation will recur, and intervening events must have completely eradicated the effects of the conduct." *Cty. of Los Angeles*, 440 U.S. at 631. Defendants cannot meet this standard because their officials have "a track record of 'moving the goalposts'" and retain the "authority to reinstate [the challenged policies] at any time", subjecting Plaintiffs to a credible threat of discriminatory vaccination requirements in the future or punishment for past non-compliance. *Tandon*, 141 S. Ct. at 1297.

### E.    Defendants' unlawful Actions are Capable of repetition Yet Evading Review.

To qualify for this exception to mootness, Plaintiffs must show "(1) the challenged action

was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Fla. Bd. of Bus. Regul. v. N.L.R.B.,* 605 F.2d 916, 920 (5th Cir. 1979) (citation and quotation marks omitted). The rescinded mandate and the new mandates are "inherently capable of evading review" because it involves a virus that the Defendants admit is constantly changing and a vaccine that has grown less and less effective against that virus over time. Here, the vaccine mandate was in effect for less than 18 months, a time period the Supreme Court has repeatedly held to be insufficient to obtain complete judicial review. *See, e.g., First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978). With respect to the second requirement, Defendants have "already" "repeat[ed] [their] allegedly wrongful conduct", *City of Jacksonville*, 508 U.S. at 662, by reenacting a substantially similar *de facto* mandate and refusing to repeal or modify their discriminatory policies, procedures, and processes. Defendants continue to defend the lawfulness of the mandates and the language used in the Defendants' acts of rescission are qualified by legalistic phrasing that invite abuse of those who remain unvaccinated.

## II. CONGRESS' RESCISSION IS RETROACTIVE AND REQUIRES DEFENDANTS TO RESTORE PLAINTIFFS TO PRE-MANDATE *STATUS QUO*.

"Rescind" means "an annulling; avoiding; or making void; abrogation; rescission", while "rescission" means "void in its inception"; or "an undoing of it from the beginning." BLACK'S LAW DICTIONARY at 1306 (6th ed. 1990). Thus, by definition, "rescind" has retroactive effect. Congress used this specific term, which necessarily requires retroactive effect, to unambiguously direct Defendants and the courts to go back in time to undo the mandates from the beginning, *i.e.*, from the August 24, 2021 issuance through the present. Defendants themselves have acknowledged Congress' unambiguous directive that Section 525 should be applied retroactively by promising to remove adverse paperwork and correct adverse actions arising from past violations

of the now-rescinded mandate, *see, e.g.,* ECF 41-1 at 1 (though to date they have only done so on an *ad hoc* basis).

Congress used the term "rescind", which necessarily has retroactive effect, to unambiguously express its intent that Section 525 should reach back to remove the Covid-19 mRNA shots from the list of required vaccines as if they had not been there. By contrast, when Congress has desired to "repeal" a previous military policy, such as in the landmark "Don't Ask, Don't Tell Repeal Act of 2010," H.R. 2965, S. 4023, Congress used the word "repeal" to remove the offending statute, 10 U.S.C. § 654. Congress specifically chose the word "repeal" when it wanted to. Now the Defendants attempt to create statutory ambiguity where there is none because "rescind" is a very different word than "repeal." Congress is a body filled with attorneys,[5] the President of the United States is surrounded by lawyers, and a lawyer himself, as well as being a former Senator and Vice President when the "Repeal" of Don't Ask, Don't Tell occurred. Now the Defendants claim that Congress used a completely different word this time, "Rescind," but it means the same thing as when they used the different word, "Repeal."

Revealingly, the Defendants tells the Court that the definition of "rescind" that Plaintiffs' cite is only in "contract law;" in so doing, however, once again the Defendant admits that their motion must fail and Plaintiffs' case must go forward. The Plaintiffs' relationship to the DoD, as members of the All-Volunteer Force, is exclusively one of contract. The Plaintiffs are not conscripts, nor are they property of the State; the 13th Amendment has banished the practice of ownership of other human beings in these United States. No matter what the DoD would like to argue, the Plaintiffs here are *volunteer* members of the U.S. Armed Forces, who were recruited

---

[5] The American Bar Association website lists the bios of 175 attorneys in the 117th Congress, as of Jan. 2021. *See* https://tinyurl.com/39apfnzr

with enforceable contractual promises. Yes, it is an unusual contractual arrangement with significant burdens on one side, but that is exactly what the relationship is between the Plaintiffs and the DoD. That is why Plaintiffs sign "enlistment CONTRACTS" for specified terms of years.

Finally, neither Congress nor the Supreme Court have adopted a broad presumption that all legislation must be applied prospectively, as Defendants claim. *See* ECF 45 at 12 (*discussing Landsgraf v. USI Film Products*, 811 U.S. 244 (1944) and 1 U.S.C. § 109). The presumption against retroactivity does not apply to jurisdictional, procedural, or remedial statutes. *See Landsgraf*, 811 U.S. at 273-76. Section 525 is remedial for retroactive purposes because it confirms or clarifies rights and powers and rights to redress, *see* 2 Sutherland Statutory Construction §§ 41:3 (8th ed. Nov. 2022 Update), in particular, that service members may not be mandated COVID-19 vaccines or punished for noncompliance with Secretary Austin's now rescinded August 24, 2021 mandate.

Defendants also erroneously claim that 1 U.S.C. § 109 bars the retroactive application of Section 525. *See* ECF 45 at 12. This section is entitled "***Repeal*** of ***statutes*** affecting existing liabilities," and thus, by its own terms, cannot apply to Congress' ***rescission*** of an ***administrative rule***. SecDef Austin's Memorandum did not have the force and effect of law. He did not pass legislation by his Memorandum. Instead, this statute functions as a general savings clause authorizing federal prosecutors to continue to enforce criminal laws and impose criminal penalties for violations of laws that occurred prior to the effective date of repeal. While this statute is not relevant to Plaintiffs' claims nor does it apply to Section 525, Defendants' reliance on this statute here confirms that they believe they have the legal authority to continue to prosecute and punish unvaccinated service members under the UCMJ for failure to obey a lawful order. As discussed above, this demonstrates that Plaintiffs face a credible threat of criminal prosecution or punishment

for past violations, and this fact alone demonstrates that Plaintiffs' claims are not moot.

## III.    PLAINTIFFS' CLAIMS ARE JUSTICIABLE.

### A.    The Court Can Provide Specific Relief Requested by Plaintiffs.

In an effort to distract from their high burden to prove mootness, the government Defendants' brief resorts to simply misstating what Plaintiff's complaint asks for and then spends 7 pages attacking the *Franken*-complaint of its own making:

"Plaintiffs seek to salvage a moot lawsuit by requesting retrospective relief of 'restor[ing] Plaintiffs to the pre-Mandate *status quo ante* and to return them to the position in which they would have been absent the unlawful mandates.' FAC, Prayer for Relief, ¶ (6). Plaintiffs seek, among other things, promotions, reinstatement, specific assignments, and back pay. See FAC ¶ 178." Def. Brf. at 17.

The Court will search the Plaintiff's Prayer for Relief in vain for any request for "promotions, reinstatement, specific assignments, and back pay." Plaintiffs instead have itemized their requested relief in 11 paragraphs on p. 18 of the First Amended Complaint. Nine of those eleven paragraphs ask for Declaratory Judgment, one asks for fees, and one lone paragraph asks for "an Order to the Military Defendants to restore plaintiffs to the pre-Mandate status quo ante…" FAC, p. 6, ¶18 (6). If the Court declares that "recission" means what Plaintiff avers in its complaint, then it logically follows that the Plaintiffs should be returned to the *status quo ante*. That is a consequence of that judicial finding regarding what rescission means in the context of the enlistment contracts that the Plaintiffs have with the Defendant DoD. The *status quo ante*, by definition, can't possibly mean "promotions or backpay."

The Defendants' create their monster in the second sentence by claiming that "Plaintiffs seek, among other things…" and then the Brief includes a list of specific items, and cites to ¶178 of the Amended Complaint. But what is actually in ¶178 of Plaintiffs' complaint? It is the

11

*Defendants' own testimony* before a sub-committee of the House Armed Services Committee in which the Defendants testified that they would do none of the things listed to ameliorate the harms caused by the now-rescinded mandate. Paragraph 178  simply catalogs the Defendants' agents commitment to Congress not to provide ANY relief, which serves the dual purpose of (a) showing that the Plaintiffs have real injury-in-fact, and (b) that the Defendants have no intention of fixing any of it. Defendants' attempt to torture from Plaintiffs' complaint a confession that it never made also misses the point of the First Cause of Action (in which ¶178 appears), which is a request for Declaratory Relief regarding what "rescission" means.

An action for equitable relief remains live and in need of judicial resolution so long as any voluntary intervening relief by the defendant has not "completely and irrevocably eradicated the effects of the alleged [underlying] violation." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Defendants have stated their intention to continue using vaccination status to make a wide range of decisions involving service members, yet now will no longer consider requests for religious accommodation. The requested injunctive relief are the only avenue for Plaintiffs to protect their fundamental rights and to prevent future criminal prosecution under the UCMJ. Accordingly, a case cannot be moot where, as here, the replacement rules "threaten [Plaintiffs] in the same way as" as the challenged and rescinded rule, and the agency has "repeatedly refused to disavow enforcement against" Plaintiffs. *Franciscan Alliance v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022).

This Court can provide a declaratory judgment by this Court finding that Defendants' actions violated RFRA and other applicable laws and that any adverse actions suffered Plaintiffs for non-compliance (*e.g.*, discharge or denial of pay or benefits to which they were entitled) were

wrongful. While this Court cannot order backpay, or require reinstatement or promotion,[6] under principles of res judicata and/or collateral estoppel, declaratory relief can serve as a precursor to monetary relief against the Defendants for backpay in the Court of Federal Claims, which precludes this case from being moot. The Sixth Circuit Court of Appeals specifically noted in its *Doster* opinion that, in the context of class actions, a declaratory judgment can serve an important purpose:

> Rule 23(b)(2)'s narrow purpose does not foreclose using it as a springboard for additional proceedings. A class action might end with a final "award of prospective relief to the class" that enjoins the challenged practice but permits separate suits by class members seeking individual relief. *Cf. Cooper*, 467 U.S. at 876, 880–81. We, for example, have held that plaintiffs could use Rule 23(b)(2) to obtain a declaratory judgment about the meaning of a standard-form contract, and that class members could later use that judgment "as a predicate for monetary damages" in individual suits. *Gooch*, 672 F.3d at 427–29, 433; *see Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 279–80 (6th Cir. 2018); *see also* 18A Charles A. Wright et al., *Federal Practice and Procedure* § 4455.2, at 444–45 & n.5 (3d ed. 2017).

*Doster v. Kendall*, 54 F.4th 398, 439 (6th Cir. 2022).

This is exactly why Plaintiffs seek Declaratory Relief from this Court; and exactly why Plaintiffs' counsel have filed cases for backpay (and other associated relief) in the Court of Federal Claims. A declaratory judgment that the Defendants' combined actions were *ultra vires* would mean that the 8500 active duty members who were discharged were discharged wrongfully; and that would be a finding that Plaintiffs could then use in their unlawful discharge cases in the Court of Federal Claims. Just like the members in Doster could use a declaratory judgment in their case

---

[6] Plaintiffs do not, as Defendants erroneously suggest, seek backpay or monetary relief from this court. *See* ECF 45 at 20 & n.11. The term "backpay" appears only once in the complaint, where Plaintiffs cite Defendants' confirmation that they will not provide backpay, *see* ECF 41, ¶ 178, while the term "damage" is used to describe Plaintiffs' injuries, but not the relief sought. *See id.*, ¶¶ 148, 154, 305.

against the Air Force to show that the RFRA process was a sham and therefore, those members who filed RFRA claims and were subsequently discharged were discharged unlawfully. *See, e.g.*, *Klingenschmitt v. U.S.*, 119 Fed.Cl. 163 (Ct.Cl. 2014). Notwithstanding the Defendants attempts to mischaracterize Plaintiffs' actions as nefarious, the Plaintiffs are doing exactly what the Sixth Circuit has recognized as a valid and useful technique for ultimately obtaining full relief for class members.

### B.     There is No Exhaustion Requirement for Plaintiffs' Claims.

There is no exhaustion requirement for any of Plaintiffs' Declaratory Judgment actions. Plaintiffs, as citizens affected by the FDA's decision to abrogate its statutory duties and cede to Department of Defense officials the right to make "interchangeability" determinations about licensed and unlicensed products, is quintessentially the work of a federal district court under APA review. *See, e.g.*, *Genus Med. Techs. LLC v. FDA*, 994 F.3d 631 (D.C. Cir. 2021) (holding that the FDA's determination that it could choose to regulate a product as either a drug or a device, or both, was arbitrary and capricious and exceeded its statutory authority). "On this point the FDA is mistaken. In theory, it may be possible for a product to satisfy both definitions at once. What the FDA omits, however, is that the FDCA's statutory definitions are meaningful **only insofar as they carry concrete regulatory consequences**." *Id.*, at 639. Thus, of Plaintiffs 10 Causes of Action,[7] (IV)-(VIII) & (X) all deal with the FDA and specific *ultra vires* actions of the Assistant Secretary of Defense for Health Affairs with respect to licensed biologics under the FDCA, 21 U.S.C. § 355 *et seq*, and the PHSA, 42 U.S.C. §262. Claims (I) and (II) ask the Court to conduct straightforward judicial activity in regards to the meaning of the word "rescission" in a statute. Cause of Action III

---

[7] Plaintiffs' complaint has a scrivener's error and lists 2 "Eighth" causes of action. The second "Eighth" cause regarding Equal Protection should be the Ninth Cause of Action.

involves the interpretation of a statute, 10 U.S.C. § 1107a, and Cause of Action IX is a Constitutional Claim, neither of have exhaustion requirements.

## IV.    PLAINTIFFS HAVE STANDING.

### A.    Plaintiffs Continue to Face Credible Threats of Further Punishment for Past Non-Compliance.

Plaintiffs continue to face a credible threat of involuntary discharge and even criminal prosecution for violating the now-rescinded mandate, which prevents this case from being moot. *See, e.g., Tandon v. Newsom*, 141 S.Ct. 1294, 1297 (2021). This threat is neither abstract nor speculative, as demonstrated by the testimony of the DOD and Service Under-Secretaries at a February 28, 2023 hearing before the House Armed Services Committee ("HASC"). *See* ECF 41-14, Partial Transcript; full video available at: https://www.youtube.com/watch?v=TRSZsKt5j_0. There, Under-Secretaries for the DOD and each of the Armed Services repeatedly confirmed that the military deems the service members who did not comply with the now-rescinded mandate to have disobeyed a "lawful order" for which they may be involuntarily discharged and/or prosecuted under the Uniform Code of Military Justice ("UCMJ").[8] In the instant filing, Defendants double-down on their threat to pursue criminal UCMJ prosecutions and punishments for unvaccinated service members.[9]

---

[8] ECF 41-14, Feb. 28, 2023 HASC Hearing Transcript, at 2-3 (Chairman Banks questioning) & 4-5 (Rep. Gaetz questioning). The Under-Secretaries also confirmed that the military has no plans or procedures to reinstate discharged service members or to provide take specific corrective actions for current members, *see id.* at 4-5, who must pursue the existing futile and inadequate military remedies that failed them before.

[9] *See* ECF 45 at 12 (erroneously citing to 1 U.S.C. § 109, which permits the government to impose criminal penalties and fines for statutes that Congress has repealed, as authority for Defendants to continue to enforce and impose penalties for violations of requirements rescinded by DOD and the Armed Services).

**B.**     **The Plaintiffs Were Harmed by Statutory and Regulatory Violations That Remain in Place.**

Defendants brief makes the claim – as has virtually every filing with this Court – that Plaintiffs have no standing despite what the DoD has done, and continues to do, with its unlawful post-rescission mandates. Faced with these facts, Defendants brief simply asserts *ipse dixit* that Plaintiffs factual allegations before this Court are "False." See Def. Brf. at 29. This is not a well-taken argument, as the Defendant entirely ignores the standards of review  for purposes of a Motion to Dismiss either under Rule 12(b)(1) or 12(b)(6).[10] "[T]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities Inc.*, 94 F.3d 189, 194 (5th Cir.1996). "This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. In other words, a motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Ramming v. United States,* 281 F.3d 158, 161–62 (5th Cir. 2001)(some citations omitted). While the party asserting jurisdiction has the burden of showing subject matter jurisdiction exists, "[u]ltimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove *any set of facts* in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d, at 161 (emphasis added) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998)). Here, the Plaintiff's well-pleaded allegations, exhibits, and the Defendants' own admissions in its Motion

---

[10] Defendants' motion never mentions Federal Rule of Civil Procedure 12, so it isn't quite clear which of Defendants' arguments proceed under a 12(b)(1) subject matter jurisdiction theory or a 12(b)(6) theory.

show that Plaintiffs have sufficiently specific, factual allegations that could easily warrant the Court finding for the Plaintiffs.

The Court "is empowered to consider matters of fact which may be in dispute." *Id.,* 161; and the court may also "make factual findings which are decisive of its jurisdiction." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). In the end, however, "a complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957). This is a standard that the Defendants try to overcome by simply declaring "disputed" facts as "undisputed," or resolving factual disputes in their own favor, or treating counsel's assertions in litigation as "undisputed facts." *See, e.g.*, Def. Brf. at 30, "Plaintiff's factual predicate is wrong;" "Plaintiffs faced no harm from an alleged unavailability of BLA-licensed vaccines." *Id.*

Yet SSG Brown's circumstances, and the actions taken against many of the named and unnamed Plaintiffs, put the lie to all of this, so the Defendant's never mention it with respect to their standing argument.[11] SSG Steven Brown was first told that he would have to receive a vaccine and then showed up to do so on September 23, 2021. When he did, he noted that the only vaccine available to him was the unlicensed EUA product by Pfizer (BNT162b2). He specifically asked for the licensed product COMIRNATY®. *See* Ex. 2, SSG Brown Memo for the Record and Request for Admin Exemption dtd 23 Sep 2021; Ex. 3, DA Form 4856 dtd 23 Sep 2021. No licensed COMIRNATY® was available, but SSG Brown was then "extensively counseled" – which is to say, he was provided demonstrably untrue information about the mRNA shots in order to get him to take the unlicensed product, despite his attempt to comply with the SecDef's order

---

[11] *See, e.g.*, Ex. 1, Declaration Regarding MAFL Plaintiffs, including Decl. of COL Christen.

that ONLY products that were fully-licensed would be used. *See* Ex. 4, Counseling of Cpt Palomino. In that counseling, the CPT specifically relied upon the Assistant Secretary of Defense for Health Affairs "interchangeability" determination to force SSG Brown to take the unlicensed EUA product. *Id.* SSG Brown tried repeatedly to explain that this was not lawful, that interchangeability determinations could only be made under the Public Health Service Act, and for all of this, he was punished (repeatedly), given the GOMOR that still exists in his records, and drummed out of the service. *See* Ex. 5, SSG Brown Memo for the Record and Exemption Request dtd 29 Sep 2021; *see also* Ex. 6, Permanent entry of GOMOR of Nov. 2, 2021 and all associated papers. Exhibit 1 includes Col Christen's affidavit regarding her orders being curtailed and being forced into retirement. Those are the undisputed facts.

## V.      PLAINTIFFS HAVE STATED AN EQUAL PROTECTION CLAIM

As Plaintiffs demonstrate *supra* ¶ **I.B.**, the Defendants continue to track "vaccination status" with respect to a shot that is no longer on any list, anywhere, as a requirement for military service AND they continue to assert that they retain the decision to prosecute those who did not take it. *See* ¶ **IV.A**. Despite Congress' clear command to drop Covid-19 shots from the list of required vaccines, the Defendants continue to openly claim that they will use "vaccination status" with regard to Covid-19 in making operational decisions. *See* Def. Brf. at 20-21 (discussion of "judicious use" of Covid-19 vaccination status, as well as "country entry requirement.") The DoD clearly is treating those two groups differently, and does so in a case where so many of those within the entire class who refused also were those who submitted religious accommodations.

## VI.      PLAINTIFFS HAVE STATED A CLEAR VIOLATION OF 10 U.S.C. §1107A

The factual allegations contained in the Amended Complaint, (*see* FAC ¶ **IV-VI**), show exactly how the Defendant DoD and Defendant FDA worked together to attempt to avoid 10

U.S.C. §1107a and the informed consent requirement that only the President can waive. SSG Browns exhibits show exactly how it worked in practice. The Amicus Curiae brief in this case also explains how it has been DoJ lawyers creating novel terms such as "BLA-compliant lots" in other cases or simply misstating evidence that has allowed this fraud on military servicemembers to continue unchecked. *See* ECF 48, p. 11, FN 8. Moreover, the Defendants' counsel continues to advance arguments that have already been found by other federal judge's to be incorrect statements of the law with regard t §1107a. *See, e.g., Coker v. Austin*, No. 3:21-CV-1211-AW-HTC, 2022 WL 19333274, at *2 (N.D. Fla. Nov. 7, 2022) ("The rub is that the FDA and the military determined that an EUA vaccine—or at least the Pfizer EUA vaccine—is essentially the same as the FDA-approved version. The government acknowledges that the two are "legally distinct" but insists nonetheless that they are close enough such that the EUA version can be mandated without a presidential waiver. At the preliminary injunction stage, I concluded that the government's interpretation of § 1107a was unpersuasive. ECF No. 47 at 14. A fully approved FDA-compliant vaccine is not always the same as its EUA counterpart.")

Plaintiffs have pleaded more than sufficient facts for a reasonable factfinder to conclude that the Defendants' combined actions were specifically designed to avoid the informed consent requirements of § 1107a. In order to do so, the Defendants'  (a) had FDA declare (in a footnote) of a regulatory letter that an unlicensed and licensed product were "close enough," (b) then the SecDef claim that only "fully licensed" products would be used and that he was placing Covid-19 shots on the list of required vaccines for service in the military; and then (c) the FDA completely abrogated its statutory mandate for interchangeable biologics and allowed a DoD official claim that this was sufficient to justify the products being used "interchangeably"– which thereby allowed unlicensed products to be forced onto unsuspecting military members. It is no great leap

to suggest that this was all done to avoid having to comply with the requirements of 10 U.S.C. §1107a and vitiate Plaintiffs' informed consent rights.

The Anthrax vaccine litigation history – indeed, DoD's history going back to the Gulf War in the late 1980's – has shown a consistent and unrelenting attack upon the informed consent rights of members of the Armed Forces, which has now required Congressional or judicial intervention to stop DoD from experimenting on America's citizen soldiers on at least 3 different occasions in the last 30 years. DoD's callous indifference to the tens of thousands of servicemembers who suffered (and still do) from Gulf War Syndrome after DoD's waiver of Rule 50.23(d) and its use of unlicensed and investigational products in the Desert, to its debacle with tickborne encephalitis vaccine in the Balkans in the mid-90's, led directly to the passage of 10 U.S.C. §1107.[12]

The DoD then stomped right over §1107 by claiming for nearly five years (1998-2003) that the anthrax vaccine adsorbed (AVA) was licensed when it was clearly was being used investigationally. DoD was using AVA for a different route of exposure **and** on a different shot schedule, while DoD simultaneously had joined in the clinical protocol and court-martialed members who tried to point out that the vaccine was investigational. After years of litigation, in the final chapter of that litigation, the Court there found that DoD's and FDA's arguments defending its program – many of the same ones they have used here – were "not substantially justified" in the context of an Equal Access to Justice Act claim. As a result, Defendants were ordered to pay Plaintiffs' attorneys' fees.

"Given the explicit qualifications in the proposed order and the reversal in analysis in the

---

[12] *See* Dale Saran, *United States v. Members of the Armed Forces*: *The Truth Behind the DoD's Anthrax Vaccine Immunization Program,*" pp. 66-80  (2d. ed., 2020)

2003 final order, the Court concludes that defendants' litigation position was not substantially justified under the EAJA.

> In addition, for the government's position to be substantially justified, the agency's actions also must have been reasonable. Plaintiffs contend that the defendants' actions were clearly unreasonable when they instituted the AVIP program without any final FDA order approving the usage of AVA. *See Doe v. Rumsfeld*, 297 F.Supp.2d 119, 133–34 (D.D.C.2003) (concluding that AVIP program violated federal law and entering preliminary injunction because the FDA had not issued a final order and no study proved AVA's effectiveness against inhalation anthrax). Rather than appeal the Court's conclusions, the FDA abruptly altered course and issued a final order merely eight days after the Court's 2003 opinion. Such a response is indicative of the unreasonableness of the agency's initial stance. Given the unreasonableness of the agencies' initial position before the lawsuit, and their sharp changes in December 2003—issuing a final order after 18 years that contradicted the proposed order—the Court concludes that the government was not substantially justified in this case.

*Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 190 (D.D.C. 2007)(some citations omitted).

In other words, for someone like Plaintiff Christen, this is now the third different time during her career where DoD has knowingly used unlicensed or experimental biologics on the all-volunteer force.

## VII.   CONCLUSION

The Defendants Motion to Dismiss is not well-taken, contains no reference to its burden of proof, switches the burden to Plaintiffs, makes factual assertions in the face of the requirement to assume the facts of Plaintiff's complaint as true, and should be denied in its entirety.

Dated:  May 13, 2023

Respectfully submitted,

*/s/ Dale Saran*
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061

21

Telephone: 480-466-0369
Email: dalesaran@gmail.com

*/s/  Jerri Lynn Ward*
Jerri Lynn Ward, Esq.
Texas Bar #20844200
Garlo Ward, P.C.
1017 Rose Circle
College Station, Texas 77840
(512) 302-1103 ext. 115
jward@garloward.com

*/s/ Brandon Johnson*
Brandon Johnson, Esq.
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org

## **CERTIFICATE OF SERVICE**

This is to certify that on this 13th[13] day of May, 2023, the foregoing document was e-filed using the CM/ECF system.

*/s/ Dale Saran*
Dale Saran

---

[13] Plaintiffs' counsel attempted to file this late on the evening of May 12, 2023, but the Court's ECF system was unavailable. After repeated attempts, in accordance with the Court's website and L.R. CV-5(a)(10), Plaintiffs' counsel sent an email to opposing counsel, and then filed the next morning.