IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JOSHUA WILSON, et al, | ) |
| | ) |
|     Plaintiffs | ) |
| v. | ) |
| | )   No. 4:22-cv-438 ALM |
| LLOYD AUSTIN, et al, | ) |
| | ) |
|     Defendants | ) |
| | ) |

**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**

**I.    PLAINTIFFS' CLAIMS ARE NOT MOOT.**

According to Defendants, Plaintiffs have simply "misread" Secretary Austin's January 10, 2023 Rescission Memo to retain or reenact a *de facto* mandate for COVID vaccination. ECF 50 at 2. In their view, his directive that "[o]ther standing policies, procedures, and processes regarding immunizations remain in effect", ECF 41-1, Secretary Austin Jan. 10, 2023 Rescission Memo, at 2, refers to "*other immunizations* (which is why the term is plural)", ECF 50 at 2 (emphasis in original), *e.g.,* requirements for influenza shots, rather than COVID shots.

Secretary Austin's memo is entitled to the "Rescission of August 24, 2021 and November 30, 2021 [COVID] Vaccination Requirements for Members of the Armed Forces" and it solely addresses policies, procedures, and processes for COVID vaccination. Because the memo does not rescind or even modify immunization requirements for other diseases, a directive to retain these requirements would be entirely superfluous. The only reasonable reading that gives effect to the Secretary's statement is that it applies to other "policies, procedures, and processes" regarding COVID immunizations, of which there are many.

The now-rescinded August 24, 2021 memo was the legal basis for dozens of DOD and service-specific orders and policies implementing the COVID mandate, including other orders

1

challenged by Plaintiffs that remain in place such as the DOD's Interchangeability Directives. *See* Ex. 1, Dept. of the Army, Fragmentary Order 35 to HQDA EXORD 225-21 at 5-8 (Dec. 30, 2023), Attachment (three pages listing over 100 retained policies going up to Annex KKKKK, including the Sept. 14, 2021 Pfizer/Moderna Interchangeability Directive in Annex JJ and the May 3, 2023 Moderna Interchangeability Directive in Annex WWWW). Secretary Austin's memo used the plural in recognition of the fact that the vast majority of COVID-related immunization requirements will remain in place, as can be seen by a cursory inspection of the Army annexes.

**II.     RESCISSION REQUIRES RESTORATION OF PRE-MANDATE *STATUS QUO*.**

Defendants contend that "Plaintiffs have ignored significant evidence that Congress did not intend" Section 525 to apply retroactively. ECF 50 at 4. But they fail to identify, much less produce, this missing evidence to support their factual attack on this Court's jurisdiction. In other words, mere *ipse dixit*, albeit forcefully written.

The only "evidence" that this Court need consider, which is both uncontroverted and dispositive, is Congress' use of the term "rescind". Rescind is inherently retroactive, going back in time to the date of issuance. By contrast, "repeal" is presumptively prospective, unless Congress specifies an effective date prior to the date of enactment. This "words mean the opposite" has been the essence of the government's argument – and this entire program – from its inception. The required remedy—restoration of the status quo—follows from operation of rescinding the August 24, 2021 mandate, which nullified not only the initial order itself but also the subsequent orders for which the August 24, 2021 mandate provided the sole legal basis.

**III.    PLAINTIFFS' CLAIMS ARE JUSTICIABLE.**

There is a strong "presumption" favoring judicial review of agency action, *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993), which may only be overcome by a "clear statement" from Congress stripping the federal courts of jurisdiction. *Santos-Zacaria v. Garland*, 598 U.S. ---, 2023 WL

3356525, at *4 (May 18, 2023). In *Darby v. Cisneros*, the Supreme Court held that the APA does not impose an exhaustion requirement and instead "incorporates exhaustion requirements established by statute or agency rule." 509 U.S. 137, 145 (1993). There is "no military exception to *Darby*." *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 84 (D. Md. 2021) (*quoting Brezler v. Mills*, 220 F. Supp. 3d 303, 323 (E.D.N.Y. 2016). *See also Ostrow v. Sec'y of Air Force*, 48 F.3d 562 (D.C. Cir. 1995) (per curiam); *Crane v. Sec'y of Army*, 92 F.Supp.2d 155, 161 (W.D.N.Y. 2000).

Plaintiffs bring challenges under the APA for Defendants' violations of federal laws, including 10 U.S.C. § 1107a and the 2023 NDAA, that do not require exhaustion as a prerequisite for judicial review. Nor have Defendants identified any military administrative procedures for challenging generally applicable rules or regulations issued by Secretary Austin or a Service Secretary, so there is nothing for Plaintiffs to exhaust. Plaintiffs have, however, pursued available military remedies including religious accommodation requests and medical exemptions. *See* FAC, ¶¶ 160-162.

Defendants continue to insist that Plaintiffs must pursue relief from the applicable Board of Correction of Military Records ("BCMRs"), ECF 50 at 5-6, impermissibly transforming the BCMR procedure from an optional or alternative administrative procedure for challenging individual military personnel decisions, into a mandatory, jurisdictional exhaustion requirement for facial challenges to generally applicable military regulations or policies. None of the governing statutes or regulations require Plaintiffs to exhaust relief before the BCMR before seeking judicial review. But even if there were an exhaustion requirement, Plaintiffs would be excused from it because military remedies are both inadequate and futile. The BCMRs are empowered to make recommendations to the Service Secretary to "correct an error or remove an injustice" with respect

to individual service members. 10 U.S.C. § 1552(a)(1). They simply "cannot adjudicate a claim that the [military] policies *themselves* are unconstitutional or otherwise unlawful." *Roe v. Shanahan*, 359 F.Supp.3d 382, 403 (E.D. Va. 2019)(emphasis in original); *see also Axon Enterprise, Inc. v. FTC*, 143 S.Ct. 890, 905 (2023). BCMR proceedings would also be futile because "[n]othing suggests that the [BCMRs] would depart from the conclusions" of the Service Secretaries or other senior decisionmakers "and conclude that [their] determinations contained an 'error' to 'correct' or an 'injustice' to 'remove.'" *Roe*, 359 F.Supp.3d at 421. Accordingly, plaintiffs are not required to exhaust at a BCMR before seeking relief in federal court. *Id.* at 404.

The Supreme Court has repeatedly and quite recently directed lower courts not to read exhaustion requirements into statutes, and even where they are present, not to treat exhaustion as jurisdictional unless Congress "clearly states that it is." *See, e.g., Santos-Zacharia v. Garland*, 143 S.Ct. 1103, 2023 WL 3356525, at *4 (2023)(citation and quotation marks omitted). Treating exhaustion as jurisdictional "would disserve" the interest in judicial economy, *id.* at *5, because it would likely result in a flood of individual BCMR claims challenging a generally applicable regulation (and thus seeking relief that is unavailable) that could be more efficiently and expeditiously addressed in district court. This entire line of argument flows from the continued intentional and willful mischaracterization of Plaintiffs' claims as being simply a facial challenge to a military "vaccine" policy.

**IV.   PLAINTIFFS HAVE STANDING FOR CLAIMS AGAINST THE FDA.**

Defendants are correct that the Parties dispute the central jurisdictional fact of whether Defendants had any of the FDA-licensed vaccines mandated by Secretary Austin's August 24, 2021 memo. *See* ECF 50 at 7-8. It is undisputed that Defendants did not have any FDA-licensed vaccines from August 24, 2021 through at least June 2022. *See* FAC, ¶¶ 76-77. The Parties dispute whether the "Comirnaty-labeled" products obtained beginning in June 2022 were in fact FDA-

4

licensed products. Plaintiffs' complaint and sworn testimony presents uncontroverted evidence that the products they did obtain and offered to Plaintiffs were not FDA-licensed vaccines, and were instead, mislabeled, misbranded, expired and/or adulterated products that not only could not be mandated to service members, but could not legally be sold or administered to anyone. *See* FAC, ¶¶ 78-84.

Indeed, what happened to SSG Brown is the quintessential example that refutes Defendants' entire claim that they had licensed products. If they did, then SSG Brown could simply have been given these counsel-asserted, licensed biologics that never showed up anywhere that any plaintiff or intervenor can find, and which has been shown in other cases to have been non-orderable through the military medical supply system. *See, e.g.*, *Robert, et al. v. Austin*, *et al.*, 1: 1:21-cv-02228-RM-STV (D. CO.), ECF 43-4, Declaration of TSGT Tyler Whitney, USAF (Attached hereto as Ex. 2). SSG Brown was shown only EUA products, then told these were "equal" to the licensed ones, and then given a GOMOR, despite the fact that every vial offered said **EUA** conspicuously on the labels – and he told his command of that exact fact. This was deemed irrelevant specifically because of the Interchangeability Memos that Plaintiffs challenge in this action. SSG Brown has every right legal right as a citizen who suffered the harm to have a Court declare whether or not the legal rubric and official actions that were used to terminate his career stand up to legal scrutiny. The FDA's actions and inactions – and the DoD's – are both integral, inseverable parts of how SSG Brown's career was illicitly ruined and shortened.

SSG Brown's case couldn't have happened if the Defendants had licensed products, yet Defendants' counsel continues to attempt to insert themselves into the litigation as fact witnesses, claiming that their factual assertions in legal memoranda somehow carry the weight of being "jurisdictional facts" and can overcome the pleadings, testimony of witnesses, and the

government's own documents and pleadings. For example, the government's attorneys continue to insist that their litigation offer to Plaintiffs to take "Comirnaty-labelled" products somehow has jurisdictional effect. The offer did not include any guarantee of relief, nor that Plaintiffs would be put back to the status before this all began, nor that they would even be immunized from possible continued prosecution for the original failure to take the mRNA shots. Astoundingly, the government attorneys still argue that the Plaintiffs' rejection of that "offer" should somehow count as a jurisdictional barrier to the Plaintiffs' claims.

Plaintiffs should be afforded an opportunity for a hearing, at least limited discovery, and/or record review before the Court simply accepts at face value Defendants' factually unsupported view of these central and disputed merits questions. *See, e.g., Williamson v. Tucker,* 645 F.2d 404, 412-414 (5th Cir. 1981). The Court's May 24, 2023 "Order Governing Proceedings", ECF 52, will provide the opportunity for discovery relevant to resolution of these factual disputes regarding the Court's jurisdiction and to Plaintiffs' claims.

Defendants also confusingly suggest that Plaintiffs lack standing for their claims against the FDA because they have not sought relief in the BCMR, using SSG Brown's General Officer Memorandum of Reprimand ("GOMOR") as an illustrative example. *See* ECF 50 at 8-9. SSG Brown is not asking that this Court remove his GOMOR. Instead, SSG Brown and other Plaintiffs and class members, seek to enjoin the continued enforcement of the rescinded mandate and punishment or prosecution for past violations. In any case, Defendants' reply is an admission that SSG Brown does have standing and his claims are not moot because Defendants have not removed this adverse action or taken any corrective action. His injuries remain and he continues to have standing to assert these claims.

Finally, Plaintiffs have not, as Defendants claim, "waived any opposition to the dismissal

of their claims against the FDA." ECF 50 at 2. Plaintiffs allege the jurisdictional facts required to state a claim against the FDA and establish this Court's jurisdiction to hear such claims. *See* FAC, Section 5-6 and Counts 6-8. Moreover, Plaintiffs have already briefed this issue and responded to largely identical objections in previous submissions. *See* ECF 9 at 10-13 & ECF 15 at 16-18.

## V. CONCLUSION

Defendants' Motion to Dismiss should be denied.

Dated: May 26, 2023               Respectfully submitted,

/s/ Dale Saran
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 480-466-0369
Email: dalesaran@gmail.com

/s/ Jerri Lynn Ward
Jerri Lynn Ward, Esq.
Texas Bar #20844200
Garlo Ward, P.C.
1017 Rose Circle
College Station, Texas 77840
(512) 302-1103 ext. 115
jward@garloward.com

/s/ Brandon Johnson
Brandon Johnson, Esq.
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org

## CERTIFICATE OF SERVICE

This is to certify that on this 26th day of May, 2023, the foregoing document was e-filed using the CM/ECF system.

7

*/s/ Dale Saran*
Dale Saran