# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| JOSHUA A. WILSON, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action No.  4:22-CV-438 |
| v. | § | Judge Mazzant |
| | § | |
| LLOYD AUSTIN, III, et al., | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #45).  Having considered the motion, the briefing, and the relevant law, the Court finds that the motion should be **GRANTED.**

## BACKGROUND

This case arises out of the COVID-19 vaccine mandate issued by the Department of Defense ("DOD") that was implemented by the United States Armed Forces.  Plaintiffs Joshua A. Wilson, Thomas Blankenship, Steven Brown, Karyn Christen, Michael Doughty, Summer Fields, Derrick Gibson, Michael Groothousen, Carley Gross, Justin King, Ryan Madigan, Brittany Puckett, Benjamin Walker, Scott Wells, and Members of the Armed Forces for Liberty[1] (collectively, "Wilson") were all active-duty or reserve duty service members in the Air Force, Army, Marine Corps, and Navy and were subject to the mandate (Dkt. #41).  Consequently, Wilson filed this lawsuit against the Secretary of Defense, Defendant Lloyd Austin, II;

---

[1] According to the First Amended Complaint, "Members of the Armed Forces of Liberty" is an unincorporated association formed solely for the purpose of this litigation.  It consists of 510 members of the Armed Forces, all of whom were subject to the now-rescinded mandate (Dkt. #41 at p. 24).

Commissioner of the Food and Drug Administration, Defendant Robert Califf; and Secretary of Health and Human Services, Defendant Xavier Becerra (collectively, "Austin") for issuing the mandate and because of the alleged consequences in which Wilson faced in refusing the then-required vaccine.

## I.   The Initial Lawsuit

Wilson first filed this lawsuit in May 2022 because of the mandate that was issued by the military concerning COVID-19 vaccinations that all branches involved in this lawsuit were required to follow (Dkt. #1).  At first, the mandate outlined how it was required that each member of the Armed Services be vaccinated against COVID-19.  Later guidance clarified that there were certain exceptions to the mandate, as everyone had the ability to submit an accommodation request.  However, unless an accommodation request was submitted and it was accepted, the individual was subject to the mandate.

None of the named plaintiffs complied with the mandate.  Each named plaintiff—with the exception of Steven Brown—applied for some sort of accommodation in this case, as they did not wish to receive the COVID-19 vaccination.  As a result, they claim they each "have been subjected to adverse employment action and discipline; most have been denied their constitutionally protected religious liberties; and many have involuntarily separated or discharged, commenced the separation process, or would have been discharged already but for a series of nation-wide injunctions" (Dkt. #41 at p. 8).  Wilson contends that their choice to not receive the vaccine was for various reasons, including both medical and religious reasons.  In the initial complaint, Wilson alleged that the mandate was unconstitutional and unlawful for numerous reasons (Dkt. #1 at p. 2).

The nature of this lawsuit changed, however, when the guidance from the Secretary of Defense regarding the vaccine mandate was altered.

## II.     Rescinding the COVID-19 Mandate

On December 23, 2022—over a year after the mandate was issued—the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA") was enacted by Congress (Dkt. #34, Exhibit 1).  Section 525 of the NDAA directed Austin to rescind the mandate that was in place within thirty (30) days.  Therefore, on January 10, 2023, Austin issued a memorandum with the following title:

> MEMORANDUM     FOR     SENIOR     PENTAGON     LEADERSHIP COMMANDERS  OF  THE  COMBATANT  COMMANDS  DEFENSE AGENCY AND DOD FIELD ACTIVIY DIRECTORS
>
> SUBJECT: Recission of August 24, 2021 and November 30, 2021 Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces

(Dkt. #34, Exhibit 1) (the "January 10 Memorandum").

In the January 10 Memorandum, Austin proceeded to state that any previous memoranda concerning a COVID-19 vaccine mandate was rescinded, which meant that records would need to be updated and accommodation requests would no longer be needed.  Austin then stated that any service members who were administratively discharged on the sole basis on their refusal to receive a COVID-19 vaccine should not receive "any characterization less than a general (under honorable conditions) discharge" (Dkt. #34, Exhibit 1 at p. 3).  If any personnel record was overlooked and it needed alteration, Austin indicated that an individual may request a correction to their military department.  Finally, it was stated that "additional guidance to ensure uniform implementation of this memorandum" would be released (Dkt. #34, Exhibit 1).

## III.    Follow-Up Guidance After the January 10 Memorandum

Since the January 10 Memorandum, there has been further guidance provided on the recission and specific details on what all it entails for members of the Armed Services.  On February

24, 2023, the Deputy Secretary of Defense sent out a memorandum on the change in policy related to the COVID-19 vaccine mandate ("Deputy Memo").  The Deputy Memo detailed that all previously enacted Department of Defense "policies, directives, and guidance implementing those vaccination mandates [are] no longer in effect as of January 10, 2023" (Dkt. #45 at p. 19).  Those policies specifically included any limitations on deployments except for when it is necessary to travel internationally.  It was also specified in the Deputy Memo that commanders were not to consider COVID-19 immunization status in making decisions regarding deployment, assignment, and other operational decisions.  If such a status were to be considered, it would require prior authorization from the Assistant Secretary of Defense for Health Affairs.

Different branches also sent out guidance.  Austin points to the following:

- The Navy implemented "NAVADMIN 065/23" which explicitly stated that "COVID-19 vaccination status shall not be a consideration in assessing individual Service member suitability for deployment or other operational assignments;"

- The Secretary of the Air Force wrote in a memorandum that all COVID-19 vaccination requirements and related policies were hereby rescinded, and outlined the process in which members of the Air Force would need to remove any adverse information from their records;

- The Secretary of the Army also stated that all Department of Army policies specifically associated with the implementation of the COVID-19 vaccination mandate were rescinded;

- The National Guard sent out a clarification that unvaccinated members, so long as they are "otherwise qualified and eligible are no longer prohibited from, and may be directed to resume participation in drills, training, and/or other duty;" and

- The Air Force Reserve wrote that "COVID-19 vaccination status is no longer a barrier to service."

4

(Dkt. #45 at pp. 20–21).  Based on this guidance, Austin alleges that "no service member is currently required to receive the COVID-19 vaccine (other than a country entry requirement)" (Dkt. #45 at p. 21).  Wilson disagrees.  Wilson alleges that although the COVID-19 vaccination mandate was officially rescinded, "Defendants Have Retained or Reenacted a *De Facto* Mandate," meaning that the revocation of the mandate was a mere formality.  In reality, it is alleged that service members are still subject to a requirement that they are vaccinated against COVID-19, because in choosing not to comply, the named plaintiffs are treated differently than those that are vaccinated, which is unlawful (Dkt. #49 at p. 6).

## IV.    Related Lawsuits Around the Country

This lawsuit is not the first of its kind.  While the underlying merits of the case—a COVID-19 vaccine mandate—is a new policy that was enacted in response to the global pandemic, when the mandate was first issued, lawsuits across the country were filed.  Lawsuits have been filed against numerous defendants and alleging various claims on the matter.  *See e.g., Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023) (lawsuit against Air Force); *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:21-CV-2429, 2023 WL 2764767, at *3 (M.D. Fla. Apr. 3, 2023) (lawsuit against Navy and Marine Corps).  Additionally, the Court will note that in those cases, it is common that the named plaintiffs make the same request as Wilson originally did, a preliminary injunction to enjoin the Armed Services from being subject to the mandate and further declarations that the mandate as enacted was unlawful.  *See Robert v. Austin*, 72 4th 1160, 1163–64 (10th Cir. 2023) (identical defendants and claims as the case before the Court).  Since the January 10 Memorandum, various courts have found that both the request for preliminary injunction and the underlying merits of the case filed were moot (Dkt. #54; Dkt. #55; Dkt. #58; Dkt. #59; Dkt. #60).

In this circuit specifically, district courts have been posed a similar question to the one before the Court. *See Bazzrea v. Mayorkas*, --- F. Supp.3d ---, No. 3:22-CV-265, 2023 WL 3958912 (S.D. Tex. June 12, 2023); *Crocker v. Austin*, No. 22-0757, 2023 WL 4143224 (W.D. La. June 22, 2023); *Jackson v. Mayorkas*, No. 4:22-CV-825, 2023 WL 5311482 (N.D. Tex. Aug. 17, 2023).  In all three cases, the plaintiffs' claims were denied as moot.  Courts outside of this circuit have also dealt with this case, with the most recent iteration by the Fourth Circuit, affirming the district court's decision that the entire case was moot (Dkt. #59).  *Alvarado v. Austin*, No. 23-1419, Dkt. #25 (4th Cir. Aug. 3, 2023).

## V.     Procedural History

On May 23, 2022, Wilson filed the initial lawsuit, alleging six causes of action against Austin for constitutional violations and violations of the APA because of the mandate and what all it entailed (Dkt. #1 at pp. 61–83).  As previously mentioned, on January 10, 2023, the mandate was rescinded (Dkt. #34).  On February 13, 2023, the Court issued an Order, informing the parties that it was "inclined to deny the pending motion [for preliminary injunction] as moot" (Dkt. #35 at p. 2).  However, despite its inclination, the Court gave the parties an opportunity to brief the issue. But, instead of making arguments to the Court regarding why the motion was not moot, Wilson instead filed a motion to withdraw the pending motion for preliminary injunction (Dkt. #36).  The Court granted that request (Dkt. #38).

On March 24, 2023, Wilson filed a First Amended Complaint for Declaratory and Injunctive Relief (Dkt. #41).  While the majority of the claims were the same as before, Wilson now alleged three new causes of action, regarding the "post-Recission orders and policies retaining pre-Recission restrictions (or reenact[ing] a substantially similar *de facto* mandate[] or restrictions)" (Dkt. #41 at p. 60).  On April 21, 2023, Austin filed the pending motion to dismiss all of Wilson's

6

claims, contending that despite Wilson's attempts to craft new allegations, the subject of the lawsuit remains the same (Dkt. #45).  On May 13, 2023, Wilson filed a response (Dkt. #49).  On May 19, 2023, Austin filed a reply (Dkt. #50), to which Wilson filed a sur-reply on May 26, 2023 (Dkt. #53).

## LEGAL STANDARD

Article III of the Constitution limits federal-court jurisdiction to "cases" and "controversies," a requirement that must remain live throughout the suit's existence.  U.S. CONST. art. III, § 2; *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).  "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'"  *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008)

A motion under Rule 12(b)(1) may be brought for lack of subject matter jurisdiction on the grounds that a claim is moot.  FED. R. CIV. P. 12(b)(1).  A case becomes moot if it "no longer present[s] a case or controversy under Article III, § 2 of the Constitution."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Under the case or controversy requirement, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit."  *Id.* (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  *Id.*  "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception."  *Keyes v. Gunn*, 890 F.3d 232, 235 (5th Cir. 2018) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).

Additionally, a court should dismiss for lack of subject-matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate the case." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## ANALYSIS

The Court will begin by clarifying what arguments were raised by the parties.  The Court finds this as necessary because in the briefing, the parties spend a good amount of time disagreeing about what the other side is arguing.[2]  Austin filed this motion alleging that the case should be dismissed for various reasons, including the doctrines of mootness, justiciability, standing, and for failure to state a claim.  Wilson opposes each argument.

As a preliminary matter, the Court will address the issue of the alleged *de facto* mandate. Wilson argues that despite the recission of the mandate that was issued in the January 10 Memorandum, there is still a *de facto* mandate in place for members of the Armed Service. Wilson's arguments stem from the language of the January 10 Memorandum, where Austin specifically states that: "No individuals currently serving in the Armed Forces shall be separated *solely on the basis* of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds" (Dkt. #34, Exhibit 1) (emphasis added).  From this language, Austin argues that because their status as unvaccinated may still be

---

[2] To provide an example of this back and forth, Austin states that Wilson is arguing that the "NDAA's use of the word 'rescind' requires payment of back pay, retroactive promotions, and other retrospective relief" (Dkt. #45 at p. 21). Austin then provides arguments regarding why the plaintiffs are not entitled to any of that relief (Dkt. #45 at p. 21).  In response, Wilson clarifies that it is not asking for any of that relief.  Instead, the named plaintiffs are only asking for certain declarations from the Court and certain injunctive relief.

considered in making certain decisions, the so-called recission of the previous memoranda does not impact whether Wilson raises a valid claim.[3]

Wilson's "*de facto* mandate" argument serves as the basis for three causes of action that Wilson raises in its First Amended Complaint, alleging that the current state of affairs for members of the Armed Services—the "post-recission orders"—in the various branches are in violation of the NDAA, the APA, and the U.S. Constitution.  Additionally, Wilson argues that this *de facto* mandate entitles them to a ruling on the legality of the initial mandate as well.  Assuming that there is a *de facto* mandate currently in place, the Court fails to see how this would be exactly like the initial mandate that was enacted.  A new mandate would come with new guidelines and new ways to comply.  Wilson fails to argue how the named plaintiffs are injured by this new mandate and why such a new mandate would allow the Court to issue a ruling regarding the legality of the initial mandate.

To ensure that the Court properly addresses all of Wilson's claims, it will first discuss the mootness doctrine.  Then, assuming that the mootness doctrine does not also apply to the three causes of actions concerning the *de facto* mandate, the Court will address whether it can opine on Wilson's "post-recission" claims.  Ultimately, Austin's motion will be granted as to the entirety of the pending lawsuit for the reasons discussed below.

---

[3] These facts are heavily disputed by the parties—whether the members of the Armed Services are currently subject to a *de facto* mandate and whether vaccination status against COVID-19 may be considered in making certain internal decisions.  Instead of making a ruling on the legitimacy of the *de facto* mandate, the Court will proceed assuming that the Armed Services are subject to a *de facto* mandate.  Even with that assumption, Austin's motion to dismiss will be granted regardless.

## I.       Wilson's Claims in the First Amended Complaint Are Moot

The Court will begin on whether any of Wilson's claims are moot.  This analysis for mootness comes down to a single question—do plaintiffs still have a live claim after the mandate was rescinded?

The short answer: no.  The Court finds that after reviewing the January 10 Memorandum and the subsequent clarifications of the January 10 Memorandum, the Court is of the opinion that there is no longer a "personal interest" by the parties in the outcome, meaning there is no active case or controversy to which it may act.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) ("Even when a plaintiff has standing at the outset, '[t]here must be a case or controversy through all stages of a case.").  As Wilson points out at the outset of their briefing, the "central question before the Court" is whether the Department of Defense—through its officials—possesses the authority "to declare unlicensed biologic products *licensed* and thereby *force* members of the all-volunteer military take them?" (Dkt. #49 at p. 3) (emphasis in original).  Since members are no longer officially required to receive the vaccine, such a question would be improper for the Court to answer.  *See Boerschig v. Trans-Pecos Pipeline, L.L.C.*, 872 F.3d 701, 704 (5th Cir. 2017) (discussing how a request for injunctive relief generally becomes moot when the event sought to be enjoined takes place).

As Austin correctly pointed out, when a plaintiff brings a lawsuit to challenge an amended or repealed statute or regulation, mootness is considered "the default." *See Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023); *see also McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."); *Johnson v. Mississippi*, 586 F.2d 387, 388 (5th Cir. 1978) (per curiam).  The Court finds this principle should apply here as well, as there is "no axe left to fall" with the relevant

policy revoked by the Department of Defense.  *Crocker*, 2023 WL 4143224, at *5.  Since the Court finds no basis for granting injunctive or declaratory relief in Wilson's favor, it concludes that all of Wilson's claims are moot.  *See Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) ("An injunctive relief claim becomes moot when the 'plaintiff's continued susceptibility to injury' is no longer 'reasonably certain' or is based on 'speculation and conjecture.'  Similarly, a declaratory relief claim is moot if the relief would not affect 'the behavior of the defendant toward the plaintiff.'" (citations omitted)).

In making its decision, the Court found other courts' opinions that have come to the same conclusion as persuasive.  To start, in *Bazzrea*, the district court stated that there was no reason to declare the mandate unlawful or enjoin the implementation of the mandate because of the simple fact that it been rescinded.  2023 WL 39558912, at *4.  Here, the only difference is that Wilson alleges that there are "post-recission" orders currently in play, but the Court does not take Wilson's argument to allege that the "*de facto* mandate" is in the exact form as the mandate that was previously enacted.  To provide an example, the accommodation requests only served as a basis to avoid the initial mandates' enforcement.  Since the accommodation requests process was essentially discontinued by the January 10 Memorandum, this alleged mandate that currently exists must be different.  Therefore, the Court finds that the alleged "post-recission" conduct does not revamp the initial claims and allow the Court to rule on the legality of the Department of Defense' actions regarding the initial mandate.  *See Eccles v. Peoples Bank*, 333 U.S. 436, 431 (1948) (stating that when governmental action is involved, courts should not intervene unless the *need for equitable relief is clear*).  The Court does not see it appropriate to rule on the lawfulness of the initial mandate as requested by Wilson.

The Court also reads *Bazzrea* to have considered the same argument that Wilson currently makes—that there are still consequences from the initial mandate that can be ruled on. *See id.* at *6 ("The plaintiffs point to the possibility of future adverse actions as evidence that this case is not moot: the possibilities of being passed over for promotions and being assigned, deployed, or trained differently because of their vaccination status."). Those arguments were subsequently denied because the alleged harm was purely speculative and hypothetical. Thus, the arguments were "insufficient to sustain this case in the fact of the mandate recissions." *Id.* The Court agrees.

In *Crocker*, the district court pointed to a recently decided case by the Fifth Circuit—*Abbott v. Biden*, 70 F.4th 817 (5th Cir. 2023)—and distinguished it from the case at hand. 2023 WL 4143224, at *6. The Court agrees with the distinguishing factors, as that case concerned a federally mandated vaccine that state militiamen were required to follow. That case has no application to any of Wilson's claims. Therefore, with no Fifth Circuit case directly concerning the claims at hand, the Court agrees with the other district courts in this circuit.

Despite the Court's conclusion that the case is moot, the analysis is not over. There are certain exceptions to the mootness doctrine, that if applicable, would keep this case alive. *See Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020).

## II.   None of the Exceptions to the Mootness Doctrine Apply

There are two exceptions to the mootness doctrine that Wilson alleges are applicable here. First, Wilson alleges that the voluntary cessation exception applies because the mandate was rescinded as a way to avoid litigation (Dkt. #49 at p. 9). Then, Wilson alleges that capable of repetition yet evading review exception applies in this case because the mandate was only in place for a short duration of time, and it should be reasonably expected that members of the Armed

Forces will be subject to similar mandates in the future (Dkt. #49 at pp. 9–10).  Austin opposes both arguments.

### A.  The Voluntary Cessation Exception Does Not Apply

A defendant's voluntary conduct will render a case moot only if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom From Religion Foundation*, 58 F.4th at 833.  Wilson argues that Austin cannot meet this standard because they have a "track record of 'moving the goalposts' and retain the authority to reinstate the challenged policies at any time" (Dkt. #49 at p. 9).  The Court disagrees.

The government's ability to reimplement the policy at issue is insufficient to prove the voluntary-cessation exception.  *See id.*  This is mainly because "when a governmental entity, rather than another kind of defendant, voluntarily ceases possibly wrongful conduct, courts extend the defendant some solicitude."  *Bazzrea*, 2023 WL 3958912, at *6 (citing *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009)).  The Court finds no legitimate evidence offered by Wilson that the mandate is expected to recur.  In fact, Austin represents to the Court that they have no intention to reimplement the same "broad, force-wide COVID-19 vaccination requirement challenged in this case" (Dkt. #50 at p. 8).  Therefore, the Court "assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018).  Wilson's first argument will be denied.

### B.  The Capable of Petition Yet Evading Review Exception Does Not Apply

The "capable of petition yet evading review" exception overcomes a mootness argument only in exceptional circumstances.  *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016).  The two requirements for this exception to apply is "(1) "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable

expectation that the plaintiffs will be subject to the same action again." *Spell*, 962 F.3d at 180 (cleaned up).  Other courts that have discussed this exception with these facts have found both requirements to be lacking. *Bazzrea*, 2023 WL 3958912, at *7; *Crocker*, 2023 WL 4143224, at *7; *Jackson*, 2023 WL 5311482, at *5.

The duration requirement is typical in cases involving elections and pregnancies, as the challenged "governmental action" is too short to be fully litigated despite its impact that will continue "without a chance of redress." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974).  There is an important distinction between actions like pregnancies and elections and the challenged policy here. *Bazzrea*, 2023 3958912, at *7.  "A military vaccination requirement does not 'inevitably expire[ ]' and naturally constrain judicial review in the same way other regulations and laws under this exception do." *Crocker*, 2023 WL 4143224, at *7 (citing *ITT Rayonier, Inc. v. United States*, 651 F.2d 343, 346 (5th Cir. 1981)).  Accordingly, the fact that the mandate was in effect for less than eighteen months is not relevant here.  Wilson did not point to an underlying condition or event that was set to inevitably expire, and therefore, they cannot meet the duration requirement.

Regarding the second requirement, the Court will again point towards Austin's representations to the Court that they do not intend to enact a similar policy to the one at issue. Wilson's argument that because there is a *de facto* mandate currently in place will not be sufficient. At most, that argument is a "theoretical possibility," as the Court fails to see how Wilson's argument that they are being treated differently because of their decision not to receive the vaccine equates to a reasonable expectation that the plaintiffs will be subject to *same* action as the mandate initially challenged. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010).  The Court is

14

"not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong," and therefore, Wilson's second argument of why the mootness doctrine does not apply here will be denied. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

### C.  The Collateral Consequences Exception Does Not Apply

As previously mentioned, in the briefing between the parties, only two of the exceptions to the mootness doctrine were raised.  However, on May 2, 2023, a third party—Pritish Vora ("Vora")— filed a motion for leave to file a brief as amicus curiae (Dkt. #18).  The Court granted the request (Dkt. #51).  In the amicus brief, Vora raises not only the two exceptions to the mootness doctrine previously discussed, but also a third exception.  Vora argues that the collateral consequences exception to the mootness doctrine prevents the Court from rendering the case moot.  As amicus curiae, Vora may not raise an issue raised by neither party, absent exceptional circumstances. *Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285 (5th Cir. 1991).  Although no arguments were raised before the Court regarding exceptional circumstances, since mootness of the case is a threshold jurisdictional issue that the Court can raise *sua sponte*, it will discuss its applicability here. *See Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021).  Additionally, the Court will point out that in two of the three other lawsuits that were also filed in this circuit, an analysis was conducted on the collateral consequences exception.

The collateral consequences doctrine states that, even when a plaintiff's primary injury has ceased, the case is not moot if the challenged conduct continues to cause other harm that the court is capable of remedying. *See Sibron v. New York*, 392 U.S. 40, 53–59 (1968).  Vora argues that the consequences in this case are the personnel records of those service members that did not take the vaccine.  Specifically, Vora points to: (1) accommodation denials that remain on the record; and

15

(2) a General Officer Memorandum of Reprimand that remains on the record (Dkt. #48 at pp. 46). However, the Court will quickly dispose of that argument.

As mentioned in the January 10 Memorandum, "[t]he Military Departments will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand" and "Former Service members may petition their Military Department's Discharge Review Boards for Correction of Military or Naval Records to individually request a correction to their personnel records" (Dkt. #34, Exhibit 1).  Wilson has failed to point to a situation in which someone has petitioned for their status to be changed and such a request was denied, which is the only request that the Court views could potentially offer a remedy based on the facts presented.  *Hodges v. Calloway*, 499 F.2d 417, 420 (5th Cir. 1974) (discussing that a plaintiff challenging personnel status "will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies").  In addition, the Court will add that the alleged harm is purely reputational harm, which has been classified by the Fifth Circuit as "no meaningful relief" to satisfy the requirements of Article III.  *Jackson*, 2023 WL 5311482 at *4 (citing *Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011)).

None of the exceptions to the mootness doctrine apply in this case.  Therefore, the Court will dismiss the case in its entirety based on mootness grounds.

### III.   In the Alternative, the Court Does Not Have the Ability to Review Wilson's New Arguments Regarding "Post-Recission Orders"

Even assuming that the mootness analysis does not apply to the three causes of action concerning "post-recission orders," the lawsuit should still be dismissed in its entirety.  This is because the Court finds that those claims are nonjusticiable on other grounds.  *See Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) ("Justiciability concerns not only

16

the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention.").

There are a few different reasons for this.  To start, the Court finds that there is an issue both as to standing, and as to the timing of judicial intervention.  Additionally, the Court will not intervene in the military's internal judgments.

Regarding standing, "a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 617 (5th Cir. 2007).  As to valid timing, the question asked is "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Barbour*, 529 F.3d at 544.  These two doctrines overlap with one another, when there is an issue of whether an alleged injury is actual or imminent rather than conjectural or hypothetical. *Id.* at 545.

In the allegations made by Wilson regarding "post-recission" conduct, there is no conduct that the Court views as an imminent threat of injury if the service member is unvaccinated against COVID-19. *See Bazzrea*, 2023 WL 3958912, at *6 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (discussing how the alleged future injuries are insufficient for standing purposes, as it is "not the type of actual, imminent, concrete and particularized harm that Article III requires")).  The only possible harm is future harm.  On this point, Wilson agrees that the January 10 Memorandum states that it "will remove or correct past adverse actions taken against unvaccinated service members," but argues that this has not been done yet.[4]  Wilson fails to

---

[4] The Court will also point out that further guidance has highlighted that personnel records will need to be dealt with internally, and the process may differ for each branch.  The Court recognizes that the exhaustion requirement in the military context has been applied with some irregularity in various circuits, but requiring Wilson to exhaust his

mention how this delay has presently impacted any of the named plaintiffs.  Instead, at this time, such harm is merely conjectural or hypothetical.  Therefore, the Court finds that Wilson's post-recission claims currently are nonjusticiable.

As for the next point, the Court recognizes that it must tread lightly in this case, as Wilson is requesting that the Court "restore Plaintiffs and other service members to the pre-Mandate *status quo ante* and return them to the position in which they would have been absent the rescinded mandates" (Dkt. #41 at p. 83).  When deciding whether it will comment on how things like promotion or status of one's discharge are handled, various courts have found that is something that is better left for the military to decide.  *See Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301, 1302 (Kavanaugh, J., concurring); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (discussing how the case involving a retroactive promotion was "within the realm of nonjusticiable military personnel decisions" because the court was not competent to compare officers for the purposes of evaluating one's promotion over another); *Fisher v. United States*, 402 F.3d 1167, 1180–81 (Fed. Cir. 2005) (en banc).  The Court finds this is the case here, as the Court will not grant Wilson the requested relief.

*     *     *

When Wilson amended their complaint, they changed some of the relevant conduct at issue, but failed to identify any specific person affected by these alleged "post-recission" actions. *See Bazzrea*, 2023 WL 3958912, at *4 ("[N]one of the named plaintiffs are currently suffering adverse actions that convince the court that it still has jurisdiction.").  Mere speculation that those that are unvaccinated against COVID-19 are going to be treated differently than those that are

administrative remedies in this context would provide more clarity as to these "post-recission" claims.  *See Von Hoffburg v. Alexander*, 615 F.2d 633, 637–38 (5th Cir. 1980).

vaccinated will not be enough to keep this lawsuit alive.  Indeed, the Court views this case as containing claims that are either no longer justiciable or simply may be justiciable in the future. But at this moment, the case may not be heard.  *See Henschen v. City of Houston*, 959 F.2d 584, 590 (5th Cir. 1992) ("Certainly, such action must be reserved for the day when a truly justiciable case is at bar.").

Even taking the claim that the January 10 Memorandum and subsequent guidance that rescinded the previous mandate was a mere formality, Wilson fails to identify how the Court could decide this lawsuit based on the named parties and the alleged harm.  The Court fails to see a proper course as well.  Accordingly, because of the applicability of the mootness doctrine and the fact that the Court may not rule on the claims as alleged, the Court will grant the motion to dismiss regarding all of Wilson's pending claims.[5]

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #45) is hereby **GRANTED**.  The case is hereby **DISMISSED without prejudice.**

**IT IS SO ORDERED.**

**SIGNED this 1st day of September, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[5] Since the Court is disposing of the case on mere procedural grounds, it will not address any of the merits of Wilson's claims, including the importance of the word "rescind" in the January 10 Memorandum, as well as the legal importance of the Emergency Use Authorization status used by the FDA.